Jonathan D. Miller (Bar No. 220848)
jonathan@nps-law.com
Alison M. Bernal (Bar No. 264629)
alison@nps.law.com
NYE, PEABODY, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California  93101
Telephone: (805) 963-2345
Facsimile: (805) 563-5385

Attorney for Defendant, REGENTS OF THE
UNIVERSITY OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Doe,<br><br>            Plaintiff,<br><br>      v.<br><br>Regents of the University of California;<br><br>            Defendant. | CASE NO.:  2:15 CV 02478 MRW<br><br>**THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)**<br><br>*[Filed Concurrently with Request for Judicial Notice; Local Rule 7-3 Meet and Confer Declaration and [Proposed] Order]*<br><br>DATE:  July 29, 2015<br>TIME:   9:30 a.m.<br>CTRM.: 550<br><br>TRIAL DATE:      None set |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on July 29, 2015, at 9:30 a.m. in the courtroom

of the Honorable Michael R. Wilner, United States District Court for the Central

District of California, located at 255 East Temple Street, Courtroom 550,

 Los Angeles, California 90012, Defendant The Regents of the University of

California will, and hereby does, move to dismiss Plaintiff's Complaint with

prejudice pursuant to Fed. R. Civ. P. 12(b)(6). This motion is made following the

conference of counsel pursuant to Local Rule 7-3, which took place on June 16,

1

1 | 2015.

2 |     This motion is based on this Notice of Motion and Motion, the Memorandum

3 | of Points and Authorities, the Request for Judicial Notice, the documents on file

4 | with the Court, and such further evidence and argument as the Court may permit.

5 |

6 | Dated: June 25, 2015            NYE, PEABODY, STIRLING, HALE & MILLER, LLP

7 |

8 |             By:     /S/

9 |                   Jonathan D. Miller, Esq.
Alison M. Bernal, Esq.

10 |                   Attorneys for Defendant, REGENTS OF THE UNIVERSITY OF CALIFORNIA

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES...................................................1

I.      INTRODUCTION ...........................................................................................1

II.     SUMMARY OF THE ARGUMENT ............................................................2

III.    ARGUMENT ...................................................................................................4

     A.    Legal Standard ....................................................................................4

     B.    Plaintiff's Lawsuit is Completely Barred Because He Failed To Seek Judicial Exhaustion Through A Writ Of Mandate .........................5

     C.    The Regents Had Jurisdiction To Investigate And Discipline Plaintiff .................................................................................................7

     D.    Plaintiff Fails To State A Claim Under Title IX (1st Cause of Action)...................................................................................................8

          1.    There is no private right of action for regulatory enforcement under Title IX .........................................................9

          2.    Plaintiff has failed to state a claim for erroneous outcome ........10

          3.    Plaintiff has failed to state a claim for selective enforcement .................................................................................11

          4.    Several district courts have dismissed similar Title IX claims .................................................................................11

     E.    Plaintiff Fails To State A Claim Under California Civil Code § 51 ("the Unruh Act") (7th Cause of Action)...............................................14

          1.    The Unruh Act does not apply to the Regents...........................14

          2.    Plaintiff has failed to plead facts to support an Unruh claim .................................................................................15

     F.    Plaintiff Fails To State A Claim Under 42 U.S.C. § 1983 (8th Cause of Action) ................................................................................16

          1.    The Fifth Amendment...............................................................16

          2.    The Fourteenth Amendment .....................................................16

     G.    Plaintiff Fails To State A Claim For Breach Of Contract (2nd Cause of Action) ................................................................................20

     H.    Plaintiff Fails To State A Claim For Promissory Estoppel (4th Cause of Action) ..............................................................................21

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1          1.    Estoppel cannot be invoked against The Regents ....................... 21

2          2.    Plaintiff has failed to plead facts supporting a claim for
                 promissory estoppel ...................................................................... 22

3

4     I.    Plaintiff's Non-Statutory Tort Claims Against the Regents Are
            Barred (3rd, 5th and 6th Causes of Action) ........................................... 23

5     J.    Plaintiff Fails To State A Claim For Declaratory Judgment (9th
            Cause of Action) .................................................................................... 24

6

7   IV.   CONCLUSION ...................................................................................... 25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NOTICE OF MOTION AND MOTION TO DISMISS                    Case No. 2:15 CV 02478 MRW

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ....................................................................................13

*American States Ins. Co. v. Kearns,*
15 F.3d 142 (9th Cir. 1994) .........................................................................24

*Andersen v. Regents of Univ. of Calif.,*
22 Cal.App.3d 763 (1972) ..............................................................4, 20, 21, 23

*Archdale v. Am. Int'l Specialty Lines Ins. Co.,*
154 Cal.App.4th 449 (2007) .........................................................................24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................4, 5

*Baker v. Downey City Bd. of Educ.,*
307 F.Supp. 517 (C.D. Cal. 1969) ..................................................................8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................................5

*Berman v. Regents of Univ. of California,*
229 Cal.App.4th 1265 (2014) ................................................................1, 5, 6

*Betts v. Brady,*
316 U.S. 455(1942) ....................................................................................16

*Bingue v. Prunchak,*
512 F.3d 1169 (9th Cir. 2008) .....................................................................16

*Bleiler v. Coll. of Holy Cross,*
2013 WL 4714340 (D. Mass. 2013) .........................................................10, 11

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 1994),.........................................................................12

*Bray v. Alexandria Women's Health Clinic,*
506 U.S. 263 (1993) ....................................................................................15

*Charles S. v. Board of Education,*
20 Cal.App.3d 93 (1971) .............................................................................17

*City of Long Beach v. Mansell,*
3 Cal.3d 462 (1970) ....................................................................................22

*Cohn v. Corinthian Colleges, Inc.,*
169 Cal.App.4th 523 (2008) .........................................................................15

*Curran v. Mount Diablo Council of the Boy Scouts,*
17 Cal.4th 670 (1998) .................................................................................15

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

iii

*Do v. Regents of the Univ. of California,*
   216 Cal.App.4th 1474 (2013) ..................................................................5

*Doe v. University of the South,*
   687 F.Supp.2d 744 (E.D. Tenn. 2009) ...............................12, 24, 25

*Gebser v. Lago Vista Indep. Sch. Dist.,*
   524 U.S. 274 (1998) ...............................................................8, 10, 23

*Goldberg v. Regents of Univ. of California,*
   248 Cal.App.2d 867 (1967) ...........................................................passim

*Gomes v. Univ. of Maine Sys.,*
   304 F.Supp.2d 117 (D. Me. 2004) .......................................................8

*Goss v. Lopez,*
   419 U.S. 565 (1975) ...........................................................................18

*Harris v. Capital Growth Investors XIV,*
   52 Cal.3d 1142 (1991) ...............................................................14, 15

*Hill v. Bd. of Trustees of Michigan State Univ.,*
   182 F.Supp.2d 621 (W.D. Mich. 2001) ...............................................8

*Hoff v. Vacaville Unified Sch. Dist.,*
   19 Cal.4th 925, (1998) ........................................................................24

*Ileto v. Glock Inc.,*
   349 F.3d 1191 (9th Cir. 2003) ............................................................4

*Johnson v. City of Loma Linda,*
   24 Cal.4th 61 (2000) .......................................................................5, 6

*Johnson v. W. State Colorado Univ.,*
   2014 WL 5423175 (D. Colo. 2014) .....................................................9

*Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Auth.,*
   23 Cal.4th 305 (2000) ........................................................................22

*Kashmiri v. Regents of the Univ. of Calif.,*
   156 Cal.App.4th 809 (2007) ..............................................................20

*Kim,*
   supra, 80 Cal.App.4th at 165 ......................................................21, 22

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ............................................................16

*Logan v. Southern Calif. Rapid Transit Dist.,*
   136 Cal.App.3d 116 (1982) .................................................................7

*Lopez v. S. Cal. Rapid Transit Dist.,*
   40 Cal.3d 780 (1985) .........................................................................24

*Lopez v. Smith,*

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

iv

203 F.3d 1122 (9th Cir. 2000) ......................................................... 25

*Lucas v. Dep't of Corr.*,
66 F.3d 245 (9th Cir. 1995) .............................................................. 5

*Lucy v. Nevada, ex rel. Bd. of Regents of Nevada System of Higher Educ.*,
380 Fed.Appx. 608 (9th Cir. 2010) ................................................. 18

*Lyons v. Salve Regina College*,
565 F.2d 200 . (1st Cir. 1977) ......................................................... 20

*Miklosky v. Regents of Univ. of Calif.*,
44 Cal.4th 876 (2008) ..................................................................... 23

*Miller v. County of Santa Cruz*,
39 F.3d 1030 (9th Cir. 1994) ............................................................ 6

*Papasan v. Allain*,
478 U.S. 265 (1986) ......................................................................... 5

*Paulsen v. Golden Gate Univ.*,
25 Cal.3d 803 (1979) ..................................................................... 20

*Pizarro v. Lamb's Players Theatre*,
135 Cal.App.4th 1171 (2006) ......................................................... 14

*Poschman v. Dumke*,
31 Cal.App.3d 932(1973) ( ............................................................... 6

*Principal Life Ins. Co. v. Robinson*,
394 F.3d 665 (9th Cir. 2005) .......................................................... 24

*Qualified Patients Ass'n v. City of Anaheim*,
187 Cal.App.4th 734 (2010) ........................................................... 15

*Regents v. Superior Court*,
17 Cal.3d 537 (1976) ....................................................................... 2

*Ross v. Creighton Univ.*,
957 F.2d 410 ................................................................................... 20

*San Diego County v. California Water & Tel. Co.*,
30 Cal.2d 817 (1947) ................................................................ 21, 22

*San Francisco Labor Council v. Regents of the Univ. of California*,
26 Cal.3d 785 (1980) ....................................................................... 2

*Schweiker v. Wilson*,
450 U.S. 221 (1981) ....................................................................... 16

*Shuffer v. Board of Trustees*,
67 Cal.App.3d 208 (1977) ................................................................. 6

*Signal Hill Aviation Co. v. Stroppe*,
96 Cal.App.3d 627 (1979) .............................................................. 22

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

v

*Smith v. Regents of the Univ. of California,*
   4 Cal.4th 843(1993), ................................................................................. 3

*Stamps v. Superior Court,*
   136 Cal.App.4th 1441 (2006) ................................................................. 14

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) .......................................................... 5, 23

*Taormina v. California Dep't of Corr.,*
   946 F.Supp. 829 (S.D. Cal. 1996) ........................................................ 15

*Toscano v. Greene Music,*
   124 Cal.App.4th 685 (2004) .................................................................. 22

*Westlake Community Hospital v. Superior Court,*
   17 Cal.3d 465 (1976) ........................................................................... 5, 6

*Wickland Oil Terminals v. Asarco, Inc.,*
   792 F.2d 887 (9th Cir. 1986) ................................................................ 24

*Yu v. Vassar College,*
   2015 WL 1499408 (S.D.N.Y. 2015) ................................................. 12, 13

*Yusuf v. Vassar College,*
   35 F.3d 709 (2d Cir. 1994) ............................................... 8, 9, 10, 11

## Statutes

28 U.S.C.A. § 2201 .................................................................................. 24

42 U.S.C. § 1983 ............................................................................... passim

Article III of the United States Constitution ........................................ 24

Cal. Civ. Code § 51(b) ........................................................................... 14

Cal. Code of Civ. Proc. § 1094.5 ...................................................... passim

Cal. Const. art. IX, § 9 ......................................................................... 2, 18

Cal. Gov't Code § 811.2 ......................................................................... 24

Cal. Gov't Code § 815 ................................................................... 4, 23, 24

California Civil Code § 51 .............................................................. i, 2, 14

## Rules

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 4, 12

Federal Rule of Civil Procedure Rule 8(a) ............................................. 4

FRCP RULE 12(B)(6) ............................................................................... 1

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

**<u>Regulations</u>**

2

34 C.F.R. § 106.8 .......................................................................................9

3

4

**<u>Other Sources</u>**

U.S. Dep't of Education, Office for Civil Rights, Revised Sexual
        Harassment Guidance: Harassment of Students by School Employees,
        Other Students, or Third Parties – Title IX (2001) at 19-20, 21 ...........9

U.S. Dep't of Education, Office for Civil Rights, Dear Colleague Letter:
        Sexual Violence, April 4, 2011. .............................................................4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NOTICE OF MOTION AND MOTION TO DISMISS                    Case No. 2:15 CV 02478 MRW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff John Doe ("Plaintiff") filed this lawsuit against the Regents of the University of California ("Regents") alleging the University of California, Santa Barbara acted unfairly when it suspended Plaintiff for two-quarters. The suspension was issued after the University's disciplinary committee concluded Plaintiff sexually assaulted a female student. The committee made its determination only after investigating the matter and holding two hearings in which Plaintiff was permitted to present evidence.

As a preliminary matter, Plaintiff lawsuit is completely barred because he failed to seek judicial exhaustion through a writ of mandate. Cal. Code of Civ. Proc. § 1094.5. It is well-established the Regents' student disciplinary proceeding is quasi-judicial in nature, and the exclusive remedy to challenge the decision is through a writ of mandate. *Berman v. Regents of Univ. of California,* 229 Cal.App.4th 1265, 1267, 1272 (2014) (student sought writ of mandate to overturn two-quarter suspension following disciplinary hearing); see also *Goldberg v. Regents of Univ. of California*, 248 Cal.App.2d 867, 873 (1967) (mandate is the appropriate remedy to test the constitutionality of the suspension and dismissal of students from a state university). Because Plaintiff failed to pursue a writ prior to filing suit, the Regents' decision is binding and Plaintiff's claims are barred.

To avoid this result, Plaintiff argues that even if he committed the assault at issue, the Regents lacked jurisdiction to take disciplinary action because the assault took place during an off-campus event involving members of the University's Mock Trial Team. Plaintiff's complaint, however, concedes he was a student at the time of the assault, and thus, was subject to the University's Student Conduct Code. The Code prohibits students from committing sexual assault, regardless of whether the assault occurred off campus or on campus, and provides the University with jurisdiction to take appropriate corrective action.

1

In the nine causes of action that follow, Plaintiff contends the Regents' policies and procedures were gender biased; the Regents denied Plaintiff due process; the Regents breached its educational contract with Plaintiff; and the Regents was negligent in the imposition of discipline. Specifically, Plaintiff asserts causes of action for: (1) Violation of Title IX; (2) Breach of Contract; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Promissory Estoppel; (5) Negligence; (6) Negligent Infliction of Emotional Distress; (7) Violation of California Civil Code § 51 (the Unruh Civil Rights Act); (8)Violation of Due Process Rights Under 42 U.S.C. § 1983; and, (9) Declaratory Judgment. As demonstrated below, however, each of Plaintiff's causes of action fail as a matter of law and dismissal is appropriate.

## II.    <u>SUMMARY OF THE ARGUMENT</u>

Plaintiff's complaint, which challenges the Regents' decision to impose discipline following a finding Plaintiff sexually assaulted a female student, suffers from several flaws that require dismissal of Plaintiff's claims.

First, as highlighted above, Plaintiff's lawsuit fails in its entirety because he did not exhaust his judicial remedies by challenging the disciplinary action through a writ of mandate. Cal. Code of Civ. Proc. § 1094.5. The California legislature enacted section 1094.5 to provide the sole and exclusive procedure for challenging administrative decisions such as student discipline. Section 1094.5 requires great deference be given to an administrative body's decision, and mandates that subsequent review of the decision be conducted by the court (as opposed to a jury). This deference is especially warranted here because the Regents is not just a governmental agency, but a constitutionally autonomous entity. Cal. Const. art. IX, § 9. As the California Supreme Court has emphasized "the power of the Regents to operate, control and administer the University is virtually exclusive." *San Francisco Labor Council v. Regents of the Univ. of California,* 26 Cal.3d 785, 789 (1980), quoting *Regents v. Superior Court*, 17 Cal.3d 537 (1976). The California Supreme

N<small>YE</small>, P<small>EABODY</small>, S<small>TIRLING</small>, H<small>ALE</small> & M<small>ILLER</small>
33 W<small>EST</small> M<small>ISSION</small> S<small>TREET</small>, S<small>UITE</small> 201
S<small>ANTA</small> B<small>ARBARA</small>, C<small>ALIFORNIA</small>  93101

2

1    Court has also observed that "the Regents, to be effective, must have considerable

2    discretion to determine how best to carry out the University's educational mission."

3    *Smith v. Regents of the Univ. of California*, 4 Cal.4th 843, 852-53 (1993), cert.

4    denied *Regents v. Smith*, 510 U.S. 863 (1993). This authority extends to student

5    discipline matters. *Goldberg, supra*, 248 Cal.App.2d at 874. Although Plaintiff's

6    complaint seeks to have this Court overturn the Regents' disciplinary decision, he

7    has not pursued a writ of mandate under section 1094.5. Plaintiff's failure to pursue

8    the appropriate writ is fatal to his lawsuit and results in his claims being barred.

9    To the extent the court is inclined to consider the balance of Plaintiff's claims,

10   Plaintiff's Title IX cause of action fails because there is no private right of action for

11   Plaintiff to seek regulatory enforcement, which is the most his allegations amount

12   to. Plaintiff's Title IX and Unruh Act causes of action also fail because the

13   complaint does not plead facts to support a claim for gender bias. Specifically, there

14   is no claim Plaintiff was treated differently than similarly situated members of the

15   opposite gender. The complaint likewise fails to allege the disciplinary policies were

16   biased against Plaintiff based on his gender. As demonstrated in the Regents'

17   Request for Judicial Notice filed concurrently, the policies Plaintiff seeks to

18   challenge are gender-neutral, applying equally regardless of whether the accused is

19   male or female. Thus, there can be no claim the Regents violated Title IX or the

20   Unruh Act in the discipline of Plaintiff. The Unruh Act is further inapplicable as the

21   University is not a business establishment.

22   Additionally, Plaintiff's claim that the Regents denied him due process

23   through the disciplinary proceeding is not supported by the law. At most, due

24   process in a disciplinary proceedings requires two components: 1) notice of the

25   charges, and 2) an opportunity to be heard. *Goldberg, supra,* 248 Cal.App.2d at 881.

26   Plaintiff's complaint acknowledges he was provided *both* components. Thus, the

27   due process requirements articulated in *Goldberg* were satisfied and Plaintiff's cause

28   of action for violation of 42 U.S.C.A. § 1983 fails as a matter of law.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

1    Moreover, Plaintiff's causes of action for breach of contract and promissory

2   estoppel fail under the general rule University policies relating to educational

3   matters such as this do not create express contracts with students. To the extent

4   Plaintiff's claims are based on an implied contract, the most any such contract

5   provides is to be free from arbitrary expulsion. *Andersen v. Regents of Univ. of*

6   *Calif.*, 22 Cal.App.3d 763, 769-70 (1972).  The Regents' actions were not arbitrary,

7   and Plaintiff was not expelled, nor does he make such allegations. The promissory

8   estoppel cause of action also fails because it is uncertain – Plaintiff does not identify

9   which policies he contends constituted the "clear promises" the University breached.

10   Finally, Plaintiff's non-statutory tort causes of action for negligence,

11   negligent infliction of emotional distress, and breach of the implied covenant are

12   barred. Cal. Gov't Code § 815. Plaintiff's claim for declaratory relief also fails

13   because there is no actual controversy within the court's jurisdiction. For these

14   reasons, as further explained below, Plaintiff's claims must be dismissed.

15   **III.   ARGUMENT**

16       **A.   Legal Standard**

17   A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6)

18   requires the Court to determine whether a cognizable claim has been pled in the

19   complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). While the

20   pleading requirement of Federal Rule of Civil Procedure Rule 8(a) requires "a short

21   and plain statement of the claim showing that the plaintiff is entitled to relief," it

22   does not unlock the doors of discovery for a plaintiff armed with nothing more than

23   conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

24   To survive a motion to dismiss, a complaint must plead sufficient factual

25   matter to "allow the court to draw the reasonable inference that the defendant is

26   liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The emphasis is on

27   factual pleadings, as a pleading that offers "labels and conclusions," "a formulaic

28   recitation of the elements of a cause of action" or "naked assertions devoid of

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

4

1   further factual enhancement" will not suffice. *Id.*, citing and quoting *Bell Atl. Corp.*

2   *v. Twombly*, 550 U.S. 544, 555, 557 (2007). The court cannot not accept as true a

3   legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265,

4   286 (1986). Likewise, "the factual allegations that are taken as true must plausibly

5   suggest an entitlement to relief, such that it is not unfair to require the opposing

6   party to be subjected to the expense of discovery and continued litigation." *Starr v.*

7   *Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).[1]

8       The court may grant a motion to dismiss when the plaintiff's facts are facially

9   implausible in light of more likely explanations. *Ashcroft*, 556 U.S. at 681. If a

10  claim for relief cannot be cured by amendment, it should be dismissed without

11  affording leave to amend. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

12  **B.    <u>Plaintiff's Lawsuit is Completely Barred Because He Failed To</u>**
        **<u>Seek Judicial Exhaustion Through A Writ Of Mandate</u>**

13

14      Determinations of quasi-judicial proceedings are binding on the parties in

15  subsequent litigation. As the California Supreme Court held in *Westlake Community*

16  *Hospital v. Superior Court*, 17 Cal.3d 465 (1976), and reaffirmed in *Johnson v. City*

17  *of Loma Linda*, 24 Cal.4th 61 (2000), "unless a party to a quasi-judicial proceeding

18  challenges the agency's adverse findings made in that proceeding, by means of a

19  mandate action…those findings are *binding* in later civil actions." *Id.* at 69-70

20  (emphasis added).

21      Courts have previously recognized the Regents' student disciplinary

22  proceeding is quasi-judicial in nature. *Berman, supra,* 229 Cal.App.4th at 1272,

23  citing *Do v. Regents of the Univ. of California*, 216 Cal.App.4th 1474, 1487 (2013).

24  As the *Berman* court noted, the California constitution affords the Regents broad

25  autonomy in how it organizes and governs itself.  *Id.* at 1272.  Thus, the exclusive

26

27  _____

28  [1] While the Regents clearly dispute Plaintiff's version of facts set forth in the
    complaint, they will be presumed as true solely for purposes of this motion.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

remedy to challenge the Regents' student discipline decision is through a writ of
mandate under Code of Civil Procedure § 1094.5. *Id.* at 1267 (student sought writ of
mandate to overturn two-quarter suspension following disciplinary hearing); see
also *Goldberg, supra,* 248 Cal.App.2d at 873 (mandate is the appropriate remedy to
test the constitutionality of the suspension and dismissal of students from a state
university); *Shuffer v. Board of Trustees*, 67 Cal.App.3d 208, 218 (1977) (mandate
is appropriate remedy for student's allegation of discriminatory treatment by
university in connection with requirements to complete degree); *Poschman v.
Dumke*, 31 Cal.App.3d 932, 938 (1973) (overruled on other grounds by *Armistead v.
State Personnel Board*, 22 Cal.3d 198 (1978) (hearing of professor's grievance in
connection with denial of tenure, conducted in accordance with rules promulgated
by the trustees of the college, was a "hearing" before an "administrative body," and
thus writ of mandate under section 1094.5 is the proper remedy.)

As explained by the court in *Westlake*, the two primary purposes behind
*requiring* a writ of mandate are: (1) the interest in according proper respect to an
administrative agency's quasi-judicial procedures by precluding a party from
circumventing the established process for judicial review of such decisions by
means of a petition for administrative mandate; and (2) "providing a uniform
practice of judicial, rather than jury, review of quasi-judicial administrative
decisions." *Westlake, supra*, 17 Cal.3d at 484. In the absence of a writ of mandate
overturning the administrative decision, the decision is final and given full
preclusive effect. *Johnson, supra,* 24 Cal.4th at 69-70; see also *Miller v. County of
Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994) (an administrative hearing adjudication
binds the parties on the issues litigated).

Here, Plaintiff seeks to circumvent the procedures established by section
1094.5 in order to reverse the Regents' disciplinary decision. (Compl., 45:1-
6.)  Plaintiff, however, admits this matter comes before the court following a formal
hearing where evidence was presented. (Compl., ¶¶ 51, 52, 75.) While Plaintiff

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

6

1    disagrees with the Regents' decision imposing discipline, his exclusive remedy to

2    challenge that decision was through a writ of mandate. Plaintiff has nevertheless

3    failed to judicially exhaust his claims, and they are now barred. See, *Logan v.*

4    *Southern Calif. Rapid Transit Dist.,* 136 Cal.App.3d 116, 123-24 (1982) (any cause

5    of action that involves the substance of a hearing held by a governmental agency

6    must be tested under a section 1094.5 writ; a plaintiff may not ignore the

7    administrative decision by filing a separate action at law.) Accordingly, Plaintiff's

8    lawsuit must be dismissed.

9    **C.    The Regents Had Jurisdiction To Investigate And Discipline**
             **Plaintiff**

10

11          To avoid dismissal, Plaintiff alleges the Regents lacked jurisdiction to

12   investigate the sexual assault complaint against him because he was on a leave of

13   absence. Plaintiff's complaint, however, concedes he was still enrolled as a student

14   at the time of the alleged assault. As an enrolled student, Plaintiff agreed to abide by

15   the Student Conduct Code (the "Code").  The Code explicitly includes in its

16   definition of "Students" individuals who are on a leave of absence.[2] The Code states

17   the University may impose discipline for violations of its policy, which includes

18   sexual assault or any other conduct which threatens the safety of any person.[3]

19   Plaintiff concedes he participated in the University's student conduct hearing held

20   pursuant to the Code. (Compl., ¶¶  52, 75.) By maintaining his enrollment and

21   participating in the hearing, Plaintiff has waived his right to argue the University

22   lacked jurisdiction to impose discipline.

23          Moreover, a public university may discipline students for misconduct

24   occurring off-campus that is "detrimental to the interests of the university or to the

25   welfare of its students." Ops.Md.Atty.Gen. No. 89-002, 1, 7 (1989). See also,

26   _____

27

28   [2] Request for Judicial Notice, Exhibit 1, p. 3.
     [3] *Id.* at p. 12, 13.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

7

1   *Gomes v. Univ. of Maine Sys.*, 304 F.Supp.2d 117 (D. Me. 2004) (finding university

2   jurisdiction proper where student committed sexual assault of another student off-

3   campus); *Hill v. Bd. of Trustees of Michigan State Univ.*, 182 F.Supp.2d 621 (W.D.

4   Mich. 2001) (finding no violation of due process where student disciplined for off-

5   campus misconduct); *Baker v. Downey City Bd. of Educ.,* 307 F.Supp. 517 (C.D.

6   Cal. 1969) (upholding suspension of high school students for off-campus activity).

7   An accusation of sexual assault against a student is well within the definition of

8   conduct which would be "detrimental to the interests" of the University and affect

9   the welfare of its students. Accordingly, the University was fully within its power to

10  investigate the sexual assault and appropriately discipline Plaintiff.

11  **D.    Plaintiff Fails To State A Claim Under Title IX (1st Cause of Action)**

13   Turning to the balance of Plaintiff's complaint, Plaintiff's first cause of action

14  for violation of Title IX fails because it effectively seeks regulatory enforcement

15  under Title IX. The United State Supreme Court has made clear no private right of

16  action exists for regulatory enforcement under Title IX. *Gebser v. Lago Vista Indep.*

17  *Sch. Dist.,* 524 U.S. 274, 291-92 (1998) (While the Department of Education can

18  enforce Title IX regulations administratively, "[w]e have never held, however, that

19  the implied private right of action under Title IX allows recovery in damages for

20  violation of those sorts of administrative requirements."). To the extent Plaintiff is

21  alternatively claiming a substantive violation of Title IX based on his male gender,

22  that claim also fails because Plaintiff has not pled he was treated differently than a

23  person of another gender who was similarly situated.

24   Title IX recognizes two categories of potential claims for gender bias arising

25  from a disciplinary proceedings: erroneous outcome and selective enforcement.

26  *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). Under the erroneous

27  outcome theory, Plaintiff must plead facts sufficient to demonstrate he was innocent

28  and the erroneous outcome was the result of a gender bias. In the selective

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

8

enforcement theory, Plaintiff must allege that, regardless of his guilt or innocence, the severity of the penalty was affected by his gender. *Id.*  Both theories require Plaintiff prove gender bias was a source of the deprivation. *Johnson v. W. State Colorado Univ.*, 2014 WL 5423175 (D. Colo. 2014). As outlined below, Plaintiff has failed to plead facts sufficient to establish a gender bias under either theory, and his Title IX claim must be dismissed.

### 1.   There is no private right of action for regulatory enforcement under Title IX

Title IX of the Education Amendments of 1972 provides, "[n]o persons in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal assistance." The Department of Education has published regulations requiring a school subject to Title IX "adopt and publish grievance procedures providing for prompt and equitable resolution of student … complaints alleging any [prohibited] action." 34 C.F.R. § 106.8.

The Department of Education established guidelines to aid universities in implementing the requirements of Title IX. The Department's guidelines explain that "prompt and equitable resolution" requires the university to provide (1) notice to students of the procedures; (2) an "adequate, reliable, and impartial investigation of complaints;" (3) the "opportunity for both parties to present witnesses and other evidence;" and, (4) prompt notice of the final outcome.  U.S. Dep't of Education, Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties – Title IX (2001) at 19-20, 21.

In addition to these guidelines, on April 4, 2011, the Department of Education issued a "Dear Colleague" letter to institutions subject to Title IX.  U.S. Dep't of Education, Office for Civil Rights, Dear Colleague Letter: Sexual Violence, April 4, 2011. The Department identifies the letter as a "significant guidance document," and

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

9

1   provides examples of how universities could appropriately respond to sexual assault

2   allegations. The letter provides, among other things, that "[i]f a student files a

3   complaint with the school, regardless of where the conduct occurred, the school

4   must process the complaint in accordance with its established procedures." *Id.* at 4.

5       Plaintiff's complaint seeks to assign liability to the University under Title IX

6   for failing to properly enforce Title IX regulations and guidance set forth above.

7   Plaintiff contends "UCSB performed an unfair and biased investigation....in

8   violation of its own stated policies requiring that disciplinary proceeds be 'prompt,

9   fair and impartial." (Compl., ¶ 50.) Plaintiff then proceeds to identify how he

10  believes these policies should have been enforced. (Compl., ¶¶ 110-125.) Critically,

11  while the guidelines provide a resource for interpretation of Title IX, they do not

12  provide litigants a private right of action for an alleged violation of the guidelines.

13  *Gebser, supra;* see also *Bleiler v. Coll. of Holy Cross*, 2013 WL 4714340, at 4, fn.3

14  (D. Mass. 2013). For these reasons, to the extent Plaintiff's claim seeks to hold the

15  Regents liable for failure to follow Title IX regulations that claim fails.

16      **2.    Plaintiff has failed to state a claim for erroneous outcome**

17      To succeed on a claim under an erroneous outcome theory, Plaintiff must

18  plead particular facts sufficient to cast articulable doubt on the accuracy of the

19  outcome of the disciplinary proceeding because of gender bias toward Plaintiff.

20  *Yusuf, supra*, 35 F.3d at 715. Simply alleging that flaws in the proceeding led to an

21  erroneous outcome is insufficient to survive a motion to dismiss. *Id.* Instead,

22  Plaintiff must allege a causal connection between the claimed erroneous outcome

23  and gender bias. *Id.* Examples of allegations sufficient to make the requisite

24  showing include: gender biased statements by members of the disciplinary tribunal,

25  gender biased statements by pertinent university officials, or patterns of decision-

26  making that showed the influence of gender bias. *Id.*

27      Plaintiff cannot succeed under an erroneous outcome theory. While Plaintiff

28  argues the Regents reached an erroneous outcome, there is not one non-conclusory

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

10

1   factual allegation linking the outcome to a gender bias. Nowhere does Plaintiff plead

2   gender biased statements by the disciplinary tribunal or pertinent university

3   officials. The remaining conclusory statements that the Regents was "motivated by

4   sex" or "biased against males" are insufficient. See, *e.g.,* Compl., ¶¶ 82, 92, 104;

5   *Yusuf, supra,* at 715; *Johnson, supra,* at 5.

### 3.      Plaintiff has failed to state a claim for selective enforcement

7         The selective enforcement theory looks to whether the severity of the

8   punishment was effected by the plaintiff's gender. *Yusuf*, 35 F.3d at 715. In the

9   complaint, Plaintiff claims the punishment he received, a two-quarter suspension,

10  was "disproportionate to the severity of the charges." (Compl., ¶ 125.) There are no

11  allegations, however, to support the conclusion Plaintiff received "disproportionate"

12  punishment due to his gender. Instead, Plaintiff believes this punishment was overly

13  severe because of the weight the Regents placed on the various pieces of evidence.

14  (Compl., ¶ 103.) This argument is irrelevant for purposes of a Title IX analysis.

15  Rather, the focus must be on whether the punishment itself was motivated by a

16  gender bias. Because Plaintiff has pled no allegations to support this conclusion, his

17  selective enforcement theory also fails.

### 4.      Several district courts have dismissed similar Title IX claims

19        In *Bleiler, supra,* a male plaintiff was accused of sexually assaulting a female

20  student when she was "intoxicated and unable to give consent." Bleiler, like Plaintiff

21  in the instant action, contended the sexual acts were consensual. Following a

22  disciplinary hearing, the student conduct panel recommended Bleiler be expelled.

23  Bleiler appealed to the president of the college, claiming the hearing was

24  fundamentally unfair and the college had violated its disciplinary procedures. The

25  appeal was denied and the expulsion was upheld. Bleiler filed suit claiming, among

26  other things, violation of Title IX. Specifically, Bleiler argued the college's

27  disciplinary policies placed a heavier burden on males and were sexually biased.

28        In finding for the university, the *Bleiler* court reviewed the school's code of

11

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   conduct and found it was not biased against either gender – as the code prohibited

2   sexual assault regardless of gender.[4] The court held plaintiff was provided with all

3   protections of due process, including notice of the charges and an opportunity to

4   present evidence in his defense at a hearing. The court found no support for the

5   allegations that the hearing panel was biased on the basis of plaintiff's gender.

6       *Yu v. Vassar College*, 2015 WL 1499408 (S.D.N.Y. 2015) reached a similar

7   conclusion. There, a male plaintiff was accused of sexually assaulting a female

8   student who was too intoxicated to provide consent. Plaintiff alleged the sexual

9   interaction was consensual. The victim and plaintiff exchanged Facebook messages

10  afterwards in which she said "I had a wonderful time…" and "You didn't hurt

11  anyone." The female student later filed a complaint with the college against plaintiff

12  and said she sent the messages to keep the peace (she and plaintiff were rowing

13  teammates). Plaintiff was expelled following a disciplinary hearing, then sued

14  Vassar, claiming the investigation and hearing were biased.  Before granting

15  summary judgment for Vassar, the court discussed the current issue of sexual assault

16  on college campuses, explaining:

17          College administrators, politicians, academics, and students alike have
        clashed on how best to balance to the interests and rights of
18          complainants with those of the accused. The Court's role, of course, is
        neither to advocate for best practices or policies nor to retry the
19          disciplinary proceedings. See *Doe v. University of the South,* 687
        F.Supp.2d 744, 755 (E.D. Tenn. 2009) ("this Court's review is
20          substantially circumscribed; the law does not allow this Court to retry
        the University's disciplinary proceeding").

21

22  _____

23  [4] While the *Bleiler* court performed this review on a Rule 56 motion, here Plaintiff
    has put the Regents' Student Conduct Code before the Court in his pleading. The
24  Regents provided the Court with a full copy of the Code pursuant to the concurrent
    Request for Judicial Notice, allowing the Court to evaluate the gender-neutrality of
25  the code on this Rule 12(b)(6) motion.  *Branch v. Tunnell*, 14 F.3d 449 (9th Cir.
    1994), overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d
26  1119 (9th Cir. 2002).  The Regents' policies further have the force and effect of
27  statutes (*Kim v. Regents of Univ. of California*, 80 Cal.App.4th 160, 165 (2000)),
28  allowing this Court to consider such policies on a motion to dismiss.

*Yu*, 2015 WL 1499408, at 10.  The *Yu* court later explained its role as "limited to determining whether gender bias was a motivating factor behind an either erroneous outcome or unduly severe penalty." *Id.* at 31.

The *Yu* court concluded that while the plaintiff may disagree with the college's decision, and perhaps even a court rehearing the same evidence may disagree, that is not sufficient to support a Title IX claim, as the court cannot retry the proceeding. Instead, plaintiff presented no evidence the proceeding itself was flawed due to a gender bias, and thus even if a court disagreed with the factual conclusions of the panel, the college was entitled to judgment on the Title IX claim.

Here Plaintiff has not, and cannot, allege a causal connection between the alleged erroneous outcome and a gender bias. Likewise, Plaintiff has not pled any facts demonstrating selective enforcement of Title IX policies on the basis of gender. To the contrary, as this Court can evaluate, the procedures at issue are gender neutral.[5] They apply whether the accused is male or female. To the extent these procedures may be invoked more often against males accused of sexual assault than against females is outside the control of the Regents, and Title IX does not provide a private right of action to challenge disciplinary policies based on disparate impact.  *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Yu,* 2015 WL 1499408 at 10. Indeed, the Department of Education acknowledges the vast majority of sexual assaults are perpetrated by males against females.[6]  The Regents has no control over who commits or reports sexual assaults. The Regents is, however, required to investigate complaints of sexual assault. The fact the majority of those complaints are against males does not mean the process or outcome is gender biased. It is simply a reflection of the Department of Education's recognition that more females are sexually assaulted than males.  As Plaintiff has not, and cannot, allege he was

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[5] See Request for Judicial Notice, Exhibit 1, p. 5-9.
[6] "Dear Colleague Letter: Sexual Violence," at p. 2.

13

1 treated differently than a similarly-situated member of another gender, his Title IX

2 claim fails.

### E. Plaintiff Fails To State A Claim Under California Civil Code § 51 ("the Unruh Act") (7th Cause of Action)

The Unruh Civil Rights Act provides: "'All persons within the jurisdiction of

6 this state are free and equal, and no matter what their sex, race, color, religion,

7 ancestry, national origin, disability, medical condition, marital status, or sexual

8 orientation are entitled to the full and equal accommodations, advantages, facilities,

9 privileges, or services in all business establishments of every kind whatsoever." Cal.

10 Civ. Code § 51(b). "The objective of the [Unruh] Act is to prohibit businesses from

11 engaging in unreasonable, arbitrary[,] or invidious discrimination." *Pizarro v.*

12 *Lamb's Players Theatre*, 135 Cal.App.4th 1171, 1174 (2006). The more recent

13 interpretation of the Unruh Act by the California Supreme Court requires a plaintiff

14 claiming a violation to prove intentional discrimination. *Harris v. Capital Growth*

15 *Investors XIV*, 52 Cal.3d 1142, 1175 (1991). This type of arbitrary gender

16 discrimination is present where the policy "emphasizes irrelevant differences

17 between men and women" or perpetuates any irrational stereotypes. *Pizarro*, 135

18 Cal.App.4th at 1176.

19 Here, Plaintiff's Unruh Act cause of action fails in two respects. First, the

20 Unruh Act is inapplicable to the Regents because it is not a business establishment.

21 Second, Plaintiff has failed to plead facts establishing the Regents intentionally

22 discriminated against Plaintiff on the basis of gender.

### 1. The Unruh Act does not apply to the Regents

As a preliminary matter, Plaintiff's Unruh Act claim fails because the Regents

25 is not a business establishment. The Unruh Act allows recovery of damages for

26 discrimination "by a 'business establishment' in the course of furnishing goods,

27 services or facilities to its clients, patrons or customers." *Stamps v. Superior Court*,

28 136 Cal.App.4th 1441, 1449 (2006). Courts have concluded state institutions are not

14

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

"business establishments" under the Unruh Act. See *Qualified Patients Ass'n v. City of Anaheim*, 187 Cal.App.4th 734, 764-65 (2010); *Taormina v. California Dep't of Corr.*, 946 F.Supp. 829, 833 (S.D. Cal. 1996); see also *Curran v. Mount Diablo Council of the Boy Scouts*, 17 Cal.4th 670, 676-77 (1998) (organization is not a business establishment for purposes of the Unruh Act if the organization is not involved in the sale of access to the basic activities or services of the organization).

The Regents is a state institution. There are no factual allegations that the Regents furnish goods, services, or facilities to clients. Like the state institutions in *Qualified Patients Association* and *Taormina,* the Regents is not a business establishment subject to the Unruh Act.

### 2.      Plaintiff has failed to plead facts to support an Unruh claim

A claim for discrimination under the Unruh Act must be based on gender. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993). In *Cohn v. Corinthian Colleges, Inc.*, 169 Cal.App.4th 523 (2008), the court held that where a defendant's actions fail to emphasize the irrelevant difference between men and women, a claim for violation of the Unruh Act cannot be substantiated. *Id*. at 528.

Here, Plaintiff has failed to plead facts suggesting the Regents has emphasized an irrelevant gender based difference. As outlined above, the Regents' policies are gender neutral. The fact the policies may be applied more frequently against males cannot serve as basis for discrimination. Rather it is a reflection of the Department of Education's own acknowledgment that females are sexually assaulted with greater frequency than males. The Unruh Act, like Title IX, does not provide a private right of action to challenge disciplinary policies based on disparate impact. *Harris, supra,* 52 Cal.3d at 1171-72. As a result, Plaintiff's allegation the Regents more frequently prosecute claims against males versus females cannot reasonably serve as a basis for discrimination. Because Plaintiff has pled no additional facts establishing the Regents emphasized an irrelevant gender based difference, Plaintiff's claim for violation of the Unruh Act must be dismissed.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

15

**F.**   **Plaintiff Fails To State A Claim Under 42 U.S.C. § 1983 (8th Cause of Action)**

Plaintiff alleges his 42 U.S.C.A. § 1983 claim arises from deprivation of property rights under both the Fifth and Fourteenth Amendments. (Compl., ¶ 183.) As set forth below, the facts alleged in the complaint do not give rise to a claim for deprivation of a constitutional right.

### 1.   The Fifth Amendment

The Due Process Clause and the equal protection component of the Fifth Amendment apply only to actions of the federal government—not to those of state or local governments. "The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). "Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safe-guarded against state action in identical words by the Fourteenth." *Betts v. Brady*, 316 U.S. 455, 462 (1942), overruled on other grounds by *Gideon v. Wainwright*, 372 U.S. 335 (1963). Plaintiff does not, and cannot, allege The Regents is a federal actor, and therefore the Fifth Amendment due process claim must fail. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).

### 2.   The Fourteenth Amendment

The Fourteenth Amendment of the United States Constitution provides, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Amendment consists of both a due process and an equal protection component. Plaintiff has stated he is pursuing a claim under the due process component of the Fourteenth Amendment. (Compl., ¶ 183.) Specifically, Plaintiff claims he has a constitutionally-protected interest in his

16

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

good name, reputation, honor and integrity, and a property interest in his education, which the Regents deprived him of without due process. (Compl., ¶¶ 186-187.)

Students in public colleges and universities have certain constitutionally protected rights, and are entitled to due process in disciplinary proceedings taken against them. *Goldberg, supra,* 248 Cal.App.2d at 881. However, these due process rights are not the same rights afforded a criminal defendant in a criminal proceeding. Instead, to satisfy due process in a disciplinary proceeding all that is required is notice of the charges, and a hearing. *Id.* There is no requirement for a judicial-type hearing with the right to counsel, the right of cross-examination, or observance of the rules of evidence, and the privilege against self-incrimination. *Id.*

Moreover, a relatively minor sanction of suspension may be imposed without formal notice or a hearing. *Charles S. v. Board of Education*, 20 Cal.App.3d 93, 94 (1971). Under such circumstances, notice may be given by telephone, mail, or any appropriate method, and if a meeting with school officials is requested, it may be informal. *Id.* The only requirement is that the student be given an opportunity to be present at the meeting and to offer informal proof of his side of the case. *Id.*

In *Goldberg, supra*, four U.C. Berkeley students sued the Regents. The students were disciplined following their participation in a rally, during which they were arrested and charged with violations of the obscenity statute. *Goldberg, supra,* 248 Cal.App.2d at 871. The students claimed the resulting discipline deprived them of their constitutional right of due process. Prior to instituting discipline, the dean wrote to each plaintiff stating he had been charged with violating the student conduct and discipline policy, and quoted the pertinent portion of the policy. *Id.* Plaintiffs were notified a committee had been appointed to hear the matter, and that they could retain counsel to represent them at the hearing. Plaintiffs attended the hearing and presented evidence on their behalf. *Id.* at 872. The committee found the charges were substantiated, and constituted violations of the student conduct policy. The University imposed discipline ranging from suspension to expulsion. *Id.*

17

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

In finding no due process violations, the *Goldberg* court looked to the authority provided the Regents by the California constitution. In particular, the court examined Article IX, section 9 of the California Constitution, which provides the Regents with full powers of organization and government.  *Id.* at 874.  In doing so, the court acknowledged the Regents have the general rule-making or policy-making power in regard to the University and are fully empowered with respect to the organization and government of the University, including the authority to maintain order and decorum on the campus and the enforcement of the same by all appropriate means, including suspension or dismissal. *Id.* While plaintiffs claimed the wide-ranging authority of the Regents must be balanced against constitutional guarantees, the *Goldberg* court found this balance was met where the Regents provide notice of the specific charges under the applicable University regulations and a hearing. The court acknowledged the hearing need not be a full-blown judicial hearing with the right to cross-examine witnesses. *Id.* at 881. The *Goldberg* court also rejected plaintiffs' argument the hearing must provide for the same evidentiary rules an accused would be entitled to in a judicial proceeding, stating:

> [T]he University, as an academic community, can formulate its own standards, rewards and punishment to achieve its educational objectives. In this context, violations of certain rules of the outside community (parking, for example) are of little significance to the University's functions and objective.  Similarly, certain conduct that violates no laws of the external community, such as cheating on an examination, is properly proscribed by and disciplined by the University as it interferes with the University's basic educational purpose. Thus, except for the applicable constitutional limitations, the relationship between appropriate University rules and laws of the outside community is entirely coincidental.  The validity of one does not establish the validity of the other.

*Id.* at 876.  Thus, the *Goldberg* court upheld the trial court's ruling sustaining the Regents' demurrer to the plaintiffs' complaint.  See also, *Goss v. Lopez*, 419 U.S. 565, 581 (1975) (students facing suspension entitled to due process consisting of notice of the charges and an opportunity to present his side of the story); *Lucy v. Nevada, ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 380 Fed.Appx.

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

18

1   608, 610 (9th Cir. 2010) (No procedural due process violation where university

2   student provided "some kind of notice and was afforded some kind of hearing").

3        Here, Plaintiff concedes the Regents fully provided him with due process.

4   First, Plaintiff was provided notice of the charges against him, namely that he was

5   being charged with sexual assault in violation of Section 102.08 of the Student

6   Conduct Code. (Compl., ¶ 50.) While Plaintiff contends he should have been

7   permitted an opportunity to review the victim's statement or the investigation report,

8   the failure to provide this information to Plaintiff was not a violation of due process

9   under any extension of the law as it relates to student disciplinary proceedings. Due

10  process simply requires Plaintiff be provided notice of the charges, which he was.

11  *Goldberg*, 248 Cal.App.2d at 881.

12       Second, because the discipline imposed was suspension, as opposed to

13  expulsion, a hearing was arguably not required. *Charles S., supra*. Nevertheless, the

14  Regents went beyond that which it was required to do and provided Plaintiff with a

15  hearing.  During the hearing, Plaintiff, the victim, and three witness testified.

16  (Compl., ¶ 52.)  Plaintiff does not contend he was denied an opportunity to question

17  these witnesses, nor does he contend he was denied an opportunity to present his

18  version of events. (Compl., ¶ 75.) The Regents then held a second hearing to ask the

19  witnesses additional questions. (Compl., ¶52.) It was only after hearing all this

20  evidence that a decision was reached.

21       The complaint makes various allegations as to the adequacy of the hearing,

22  including that the investigative report presented a skewed rendition of the facts, that

23  Plaintiff was denied counsel at the second hearing, and that the hearing committee

24  improperly denied Plaintiff the right to present character evidence and admitted

25  irrelevant evidence. The allegations, even if true, however do not constitute due

26  process violations. As *Goldberg* made clear, there is no right to counsel or right to

27  cross-examine witnesses. This was not a judicial hearing, and the rules of evidence

28  need not be followed explicitly.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Although Plaintiff disagrees with the weight given to certain evidence there are no facts supporting he was denied due process. By providing formal notice, a hearing with witnesses, and allowing Plaintiff to present evidence, the Regents provided more due process than required by law. As a result, the complaint fails to state a claim that the Regents violated Plaintiff's due process rights under the Fourteenth Amendment, and this claim must be dismissed.

### G.   Plaintiff Fails To State A Claim For Breach Of Contract (2nd Cause of Action)

Although courts have characterized the relationship between the student and educational institution as contractual, they have recognized contract law should not be strictly applied.  "The student-university relationship is unique, and it should not be and cannot be stuffed into one doctrinal category...." *Lyons v. Salve Regina College*, 565 F.2d 200, 202. (1st Cir. 1977).  Courts often defer to any challenge based in contract to universities' academic and disciplinary decisions. (See, e.g., *Kashmiri v. Regents of the Univ. of Calif.*, 156 Cal.App.4th 809, 825 (2007), citing *Ross v. Creighton Univ.*, 957 F.2d 410, 414–415 (7th Cir.1992).  Importantly, no court has found an express contract exists between university and student based on the university's disciplinary policies, as Plaintiff alleges. *See, e.g., Kashmiri, supra,* 156 Cal.App.4th at 827. Rather, courts have held disciplinary decisions by universities are afforded the "rule of flexibility" in this area because of the lack of a satisfactory standard of care by which to evaluate these decisions. *Id.,* citing *Ross, supra,* 957 F.2d at 414; *Paulsen v. Golden Gate Univ.*, 25 Cal.3d 803, 808 (1979).

And while an implied contract may exist under certain circumstances, the potential terms of an implied contract as they pertain to a student disciplinary proceeding are exceedingly narrow. In *Andersen, supra*, the court recognized the only implied contractual conditions that may be found under student discipline are: (1) "that the student will not be arbitrarily expelled, and (2) that the student will submit himself to reasonable rules and regulations for the breach of which, in a

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

20

1  proper case, he may be expelled." *Andersen, supra,* 22 Cal.App.3d at 769-70, citing

2  49 Cal.Jur.2d, Universities and Colleges, s. 58, p. 505; see also *Goldberg, supra,*

3  248 Cal.App.2d at 881.

4       In the present case, there are no facts alleged to support the conclusion the

5  Regents breached this implied contract. Simply put, Plaintiff was not expelled, let

6  alone arbitrarily expelled. The complaint concedes Plaintiff's sole discipline was a

7  two-quarter suspension. (Compl., ¶ 5.) The distinction between expulsion and

8  suspension is logical: the implied contract stated by the *Andersen* court exists to

9  allow a student who enrolls and pays his required fees to be entitled to an education.

10  The Regents in this case, however, did not deny Plaintiff his right to an education.

11  To the contrary, Plaintiff is still enrolled as a student and has now completed his

12  suspension. Thus, Plaintiff is free to continue his education with the Regents, and

13  the disciplinary decision has not impaired Plaintiff's ability to realize the benefits of

14  any claimed implied contract of education. Because the Regents did not arbitrarily

15  expel Plaintiff there is no breach of any implied contract and Plaintiff's claims in

16  this regard must be dismissed.

17      **H.**    <u>**Plaintiff Fails To State A Claim For Promissory Estoppel (4th**</u>
<u>**Cause of Action)**</u>

18          **1.**    **Estoppel cannot be invoked against The Regents**

19

20       Estoppel may not be invoked against a governmental entity "where the

21  procedure specified in a statute…is the measure of the power to act." *San Diego*

22  *County v. California Water & Tel. Co.*, 30 Cal.2d 817, 825 (1947). The "policies

23  and procedures [of the Regents] have the force and effect of statute." *Kim, supra,* 80

24  Cal.App.4th at 165. These policies, which have the force of law, delineate the

25  measure of the Regents' power to act. The policies applicable to Plaintiff's

26  discipline provide:

27      The primary purpose of any University disciplinary proceeding is to
determine the guilt or innocence of the accused student. Deviations from

28      established procedures shall not invalidate a finding of a hearing body

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   unless the deviation significantly affected the result. It is recognized that
2   University faculty, staff, and students are principally engaged in the
    business and the pursuit of education, and are not legally trained
3   personnel. As such they should be guided more by principles of fairness
    and common sense than by formal rules of evidence or procedure.[7]

4       In this way, the policies grant the Regents broad latitude in how to conduct

5   disciplinary hearings. Thus, there is no basis to invoke estoppel against the Regents

6   and order Plaintiff's discipline reversed because the Regents' power to act is

7   specifically limited by its policies, which have the effect of statute. *San Diego*

8   *County*, 30 Cal.2d at 825; *Kim, supra,* 80 Cal.App4th at 165.

9           **2.    Plaintiff has failed to plead facts supporting a claim for
                    promissory estoppel**
10

11      Promissory estoppel is a doctrine which employs equitable principles to

12  satisfy the requirement that consideration must be given in exchange for the promise

13  sought to be enforced. *Kajima/Ray Wilson v. Los Angeles County Metro. Transp.*

14  *Auth.*, 23 Cal.4th 305, 310 (2000). The elements of a promissory estoppel claim are

15  (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages

16  measured by the extent of the obligation assumed and not performed. *Toscano v.*

17  *Greene Music*, 124 Cal.App.4th 685, 692 (2004). Although equitable in nature,

18  promissory estoppel is akin to a cause of action based on contract, except that the

19  consideration needed to form an enforceable contract is provided by detrimental

20  reliance. *Id.* at 692-693; *Signal Hill Aviation Co. v. Stroppe*, 96 Cal.App.3d 627, 640

21  (1979). The doctrine implies an intentional and deliberate attempt to deceive. *City of*

22  *Long Beach v. Mansell*, 3 Cal.3d 462, 488-89 (1970). Given that the claim

23  effectively sounds in fraud, there is a strong presumption against the imposition of

24  equitable estoppel against a public agency such as the Regents. *Id.* at 496-497.

25      Moreover, Plaintiff's promissory estoppel claim fails for the same reasons

26  discussed in the breach of contract section, section III(G), *supra*.  Specifically,

27  ───────────────

28  [7] Request for Judicial Notice, Exhibit 1, p. 5.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

22

1   courts have held that the policies and procedures promulgated by the Regents do not

2   create an express agreement or promise between the university and its students

3   which is subject to an action for breach of contract or estoppel.  See, e.g., *Andersen,*

4   *supra,* 22 Cal.App.3d at 769-70.

5        Further still, the promissory estoppel claims fails because it is uncertain.  A

6   complaint must contain "sufficient allegations of underlying facts to give fair notice

7   and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at

8   1216. In describing the "clear promise" the Regents allegedly breached, the

9   complaint simply states: "UCSB's various policies constitute clear and

10  unambiguous representation and promises that UCSB should have reasonably

11  expected to induce action or forbearance by John Doe."  (Compl., ¶ 149.)  The

12  complaint does not state which policies Plaintiff is referring to, and the Regents

13  should not be required to guess in order to defend itself effectively.  *Id.*

14       Finally, as noted above, the United States Supreme Court has negated any

15  private right of action to seek enforcement of the policies at issue under Title IX.

16  *Gebser, supra,* 524 U.S. at 291-92. It stands to reason Plaintiff should not be able to

17  circumvent this prohibition by couching the same enforcement claims under a

18  promissory estoppel theory. (Compl., ¶¶ 148-150).

19  **I.   Plaintiff's Non-Statutory Tort Claims Against the Regents Are**
    **Barred (3rd, 5th and 6th Causes of Action)**

20

21       Plaintiff's third, fifth, and sixth causes of action are for breach of the implied

22  covenant of good faith and fair dealing, negligence, and negligent infliction of

23  emotional distress, respectively.  Each of these claims fail because the Regents is

24  immune from suit for common law tort claims, and none of these claims are

25  statutorily based.  Cal. Gov't Code § 815; *Miklosky v. Regents of Univ. of Calif.*, 44

26  Cal.4th 876, 899 (2008) (section 815 abolishes common law tort liability for public

27  entities, including the Regents).

28       The Regents is a public entity as defined by the California Torts Claims Act.

23

Cal. Gov't Code § 811.2. "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815. Thus, it is well established that "in California 'all government tort liability must be based on statute.'" *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal.4th 925, 932, (1998) (citing *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 785 (1985)).

Here, both the negligence and negligent infliction of emotion distress claims are common law tort claims. Likewise, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing sounds in tort as it seeks extra-contractual damages, including emotional distress. (Compl., ¶ 144); See also *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal.App.4th 449 (2007). Because these claims are not statutorily based and sound in tort they are barred against the Regents and must be dismissed. Cal. Gov't Code § 815.

**J.**   **Plaintiff Fails To State A Claim For Declaratory Judgment (9th Cause of Action)**

Plaintiff's ninth cause of action is for declaratory judgment. The Declaratory Judgment Act (DJA), 28 U.S.C.A. § 2201, permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C.A. § 2201; see *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th Cir. 1986). The "actual controversy" requirement of the DJA is the same as the "case or controversy" requirement of Article III of the United States Constitution. *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Under the DJA, a two-part test is used to determine whether a declaratory judgment is appropriate. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). First, the court must determine if there exists an actual case or controversy within the court's jurisdiction. *Id.* If so, the court must decide whether to exercise its jurisdiction. *Id.*

In *Doe, supra,* a former male student sued the University of the South

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

24

1   claiming the student was unfairly subjected to discipline after the university found
2   plaintiff had sexually assaulted a female student. The *Doe* plaintiff made a number
3   of claims against the university, including a claim for declaratory judgment. In
4   dismissing plaintiff's claim for declaratory judgment, the court declined to use its
5   discretionary power to exercise jurisdiction and award declaratory relief. The court
6   stated a declaratory judgment would neither resolve the underlying controversy
7   between the parties, nor would it serve a useful purpose in clarifying the issues
8   before the court. *Doe, supra,* 687 F.Supp.2d at 760.

9          Here, Plaintiff claims he is entitled to declaratory relief because his
10  "education and future career has been severely damaged" which will "cause
11  irreversible damages to John Doe's future educational and employment prospects,
12  with no end in sight." (Compl., ¶ 199.) Plaintiff identifies the justiciable controversy
13  between the parties as the "outcome, permanency, and future handling of John
14  Doe's formal student record at UCSB."  (Compl., ¶ 200.)

15         This cause of action fails for two reasons. First, there is no actual controversy
16  within the Court's jurisdiction. The jurisdiction in this case is derived by virtue of
17  the Title IX and 42 U.S.C.A. § 1983 claims. As discussed above, both claims should
18  be dismissed. Second, even if there were jurisdiction, the Court here, like the *Doe*
19  court, should decline to exercise its jurisdiction because issuing declaratory
20  judgment would neither resolve the underlying controversy, nor aid the court in
21  clarifying the issues.

22  **IV.   CONCLUSION**

23         For the forgoing reasons, the court should dismiss Plaintiff's complaint.
24  Dismissal with prejudice is appropriate here, because it is clear Plaintiff can plead
25  no set of facts establishing a plausible entitlement to relief on any of his claims. See
26  *Lopez v. Smith*, 203 F.3d 1122, 1129-30 (9th Cir. 2000).

27  ///

28  ///

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    Dated: June 25, 2015                NYE, PEABODY, STIRLING, HALE &
                                         MILLER, LLP
2

3                                        By: ___/S/_____
4                                            Jonathan D. Miller, Esq.
                                             Alison M. Bernal, Esq.
5                                            Attorneys for Defendant, REGENTS OF
                                             THE UNIVERSITY OF CALIFORNIA

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

26

NOTICE OF MOTION AND MOTION TO DISMISS        Case No. 2:15 CV 02478 MRW

1

## PROOF OF SERVICE

2

### STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA

3

At the time of service, I was over 18 years of age and **not a party to this**

4 **action**. I am employed in the County of Santa Barbara, State of California.  My business address is 33 West Mission Street, Suite 201, Santa Barbara, California 93101.

5

On June 25, 2015, I served ☐ the originals ☒ true copies of the following

6 document(s) described as following document(s):

7

**THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S NOTICE OF**

8 **MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP RULE 12(B)(6)**

9

on the interested parties in this action as follows:

10  Yasha Bronshteyn                     Attorneys for Plaintiff John Doe
    Ginzburg & Bronshteyn, LLP
11  11111 Santa Monica Blvd., Suite 1840
    Los Angeles, CA 90025
12  Phone: (310) 914-3222
    vasha@gbllp-law.com

13
     Andrew T. Miltenberg                Attorneys for Plaintiff John Doe
14  Nesenoff & Miltenberg, LLP
    363 7th Avenue, 5th Floor
15  New York, New York 10001
    Phone: 212-736-4500
16  AMiltenberg@nmllplaw.com

17

18
        ☒         **BY CM/ECF NOTICE OF ELECTRONIC FILING**: I caused
19  said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's
20  transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

21

22
        I declare under penalty of perjury under the laws of the State of California
23  that the above is true and correct.

24      Executed on June 25, 2015, at Santa Barbara, California.

25                                      _____/S/_____
                                        Brenda Rosales
26

27

28

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101