1  YASHA BRONSHTEYN, ESQ. (SBN 210248)
   GINZBURG & BRONSHTEYN, LLP
2  11111 Santa Monica Blvd., #1840
   Los Angeles, CA 90025-3352
3  Telephone number:    (310) 914-3222
   Facsimile number:    (310) 914-4242

4  WARSHAW BURSTEIN, LLP
   555 Fifth Avenue
5  New York, NY 10017
   Telephone number:    (212) 984-7700
6  Facsimile number:    (212) 972-9150

7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11

12  John Doe,                          | CASE NO.:  2:15 CV 02478 (SVW)(JEM)

13          Plaintiff,                  | PLAINTIFF'S OPPOSITION TO THE
                                        | REGENTS OF THE UNIVERSITY OF
14          v.                          | CALIFORNIA'S MOTION TO DISMISS

15  Regents of the University of California; |
    Defendant,                         | DATE: November 23, 2015
16                                      | TIME: 1:30 p.m.
17                                      | CTRM.: 550

            Defendant.                  | TRIAL DATE:  None set
18
                                        | Judge Stephen V. Wilson
19

20

21        MEMORANDUM OF LAW IN SUPPORT OF
      PLAINTIFF'S OPPOSITION TO THE REGENTS OF THE
22    UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS

23

24

25

26

27

28

─────────────────────────────────────────────
Joint Stipulation                              Case No. 2:15 cv 02478 (SVW)(JEM)

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................. ..........................iii

PRELIMINARY STATEMENT ................................................................ .....................................1

STATEMENT OF FACTS…………………………………………… …………………...1

I.    ARGUMENT......................................................................................... ...........................3

POINT A
          THE LEGAL STANDARD GOVERNING
          MOTION TO DISMISS ................................................................. .............................3

POINT B
          WRIT OF MANDAMUS IS NOT PLAINTIFF'S
          EXCLUSIVE REMEDY ...................................................................... ........................4

POINT C
          THE UNIVERSITY ACTED WITHOUT JURISDICTION ...............................6

POINT D
          THE COMPLAINT STATES A CLAIM
          OF TITLE IX DISCRIMINATION ...................................... .........................9

          1.   The Controlling Title IX Standard............................ ........................9
          2.   Plaintiff Has Stated a Claim Under Title IX – Erroneous Outcome............11
          3.   The Allegations State a Claim of Selective Enforcement................14
          4.   A Claim Under California Civil Code §51 (Unruh Act) Has
               Been Stated……………………………………… ……………14

POINT E
          THE PLAINTIFF HAS STATED CLAIMS
          UNDER 42 U.S.C. § 1983 FOR DUE
          PROCESS VIOLATIONS.............................................. ..........................15

POINT F
          THE COMPLAINT STATES
          STATE LAW CLAIMS………………………………… ………...18

          1.   The Complaint States a Breach of Contract Claim...... ...................18
          2.   Plaintiff's Estoppel and Reliance Claim is Sufficiently Pleaded............20
          3.   The Complaint States Claims for Negligence and NIEL ...............21

POINT G
          DECLARATORY JUDGMENT.............................................. ...........................24

i

Case 2:15-cv-02478-SVW-JEM Document 33 Filed 10/26/15 Page 3 of 33 Page ID #:206

1   II. ALTERNATIVELY LEAVE TO AMEND IS WARRANTED ....... ................................24

2   III. CONCLUSION ....................................................................................... ................................24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Opposition To Motion To Dismiss       Case No. 2:15 cv 02478 (SVW, JEM)

1

## TABLE OF AUTHORITIES

2

3

**Cases**                                                                                    **Page Number**

4

*Adler v. Los Angeles Unified School Dist.*

5       98 Cal.App.3d 280, 288 (1979) ----------------------------------------------------------- 6

*Ahern v. Dillenback,*

6       1 Cal. App. 4th 36, 1 Cal. Rptr. 2d 339 (1991) -------------------------------------------- 28

*Atlantica Holdings, Inc.,*

7       2014 WL 917055----------------------------------------------------------------------------- 4

*Back v. Hastings On Hudson Union Free Sch. Dist.,*

8       365 F.3d 107, 125-26 (2d Cir. 2004)------------------------------------------------------- 17

*Barrett v. Forest Labs., Inc.,*

9       39 F. Supp. 3d 407, 432 (S.D.N.Y. 2014 --------------------------------------------------- 16

10   *Bell Atl. Corp. v. Twombly,*

        550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007-------- --------------------------- 4

11   *Biediger v. Quinnipiac Univ.,*

        691 F.3d 85, 96-97 (2d Cir. 2012)--------------------------------------------------------- 7

12   *Bleiler v. Coll. of Holy Cross,*

13      No. CIV.A. 11-11541-DJC, 2013 WL 4714340, -------------------------------------- 13,15

*Boren v. State Pers. Bd.,*

14      37 Cal. 2d 634, 638, 234 P.2d 981, 983 (1951)--------------------------------------------- 8

*Cabral v. Ralphs Grocery Co.,*

15      51 Cal. 4th 764, 771, 248 P.3d 1170, 1174 (2011------------------------------------------ 29

*California Toll Bridge Auth. v. Wentworth,*

16      212 Cal. 298, 309, 298 P. 485, 489 (1931) ------------------------------------------------ 8

17   *Carey ex rel. Carey v. Maine Sch. Admin. Dist. No. 17,*

        754 F.Supp. 906, 919 (D.Me.1990) -------------------------------------------------------- 21

18   *CenCor, Inc. v. Tolman*

        (Colo.1994) 868 P.2d 396 ---------------------------------------------------------------- 24

19   *Charles S. v. Bd. of Educ.,*

        20 Cal. App. 3d 83, 93, 97 Cal. Rptr. 422 (Ct. App. 1971)--------------------------------- 21

20   *City of Los Angeles v. Cohn,*

21      101 Cal. 373, 378, 35 P. 1002, 1004 (1894).---------------------------------------------- 27

*Cohen v. Avande, Inc.,*

22      874 F.Supp.2d 315, 319 (S.D.N.Y. 2012) --------------------------------------------------- 4

*Cohen v. Brown Univ.,*

23      101 F.3d 155, 178-79 [1st Cir. 1996]).------------------------------------------------ 12, 18

24   *Davison ex rel. Sims v. Santa Barbara High Sch. Dist.,*

        48 F. Supp. 2d 1225, 1233 ---------------------------------------------------------------- 19

25   *De Zemplen v. Home Fed. Sav. & Loan Ass'n,*

        221 Cal. App. 2d 197, 207--------------------------------------------------------------- 27

26   *Dixon v. Alabama State Board of Education, supra,*

        294 F.2d 150 (1961) ---------------------------------------------------------------------- 21

27   *Doe v. Cutter Biological, Inc., a Div. of Miles Labs., Inc.,*

28      971 F.2d 375, 383 (9th Cir. 1992) ------------------------------------------------------- 30

*Doe v. Middlebury College,*

                                                                                          iii

No. 1:15-cv-00192; ------------------------------------------------------------------------------- 25

*Doe v. Regents of the Univ. of California,*
216 Cal. App. 4th 1474, 157 Cal. Rptr. 3d 630 (2013) ----------------- ---------------------------- 6

*Doe v. Salisbury Univ.,*
2015 WL 3478134, at *9. --------------------------------------------------- ----------------------- 22,25

*Doe v. Univ. of the South,*
2011 WL 1258104 (E.D. Tenn. 2011 --------------------------------------- ------------------------------ 29

*Doe v. Univ. of the South,*
687 F. Supp. 2d 744, 759 (E.D. Tenn. 2009) -------------------------------- ------------------------------ 31

*Erickson v. Pardus,*
551 U.S. 89, 93–94 (2007)------------------------------------------------ -------------------------------- 4

*Farrell v. Placer Cnty.,*
23 Cal. 2d 624, 145 P.2d 570 (1944)------------------------------------- ------------------------------- 27

*Fielder v. Board of Education,*
346 F.Supp. 722 (D.Neb.1972 -------------------------------------------------- ----------------------- 22

*Foman v. Davis,*
371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) ----- --------------------------------- 32

*Givens v. Poe,*
346 F.Supp. 202 (W.D.N.C. 1972 ---------------------------------------- ------------------------------- 22

*Goldberg v. Regents of Univ. of Cal.,*
248 Cal. App. 2d 867, 873-74, ------------------------------------------------------------------ 5

*Gomes v. Univ. of Maine Sys.,*
365 F. Supp. 2d 6, 15 (D. Me. 2005------------------------------------------- ------------------- 15,20, 24

*Goodman v. President & Trs. of Bowdoin Coll.,*
135 F.Supp.2d 40, 55 (D.Me.2001 ------------------------------------------- ------------------------------- 25

*Gorman v. Univ. of Rhode Island,*
837 F.2d 7, 12 (1st Cir. 1988) ----------------------------------------------- ---------------------------- 20

*Goss v. Lopez,*
419 U.S. 565, 574, 95 S. Ct. 729, 736, 42 L. Ed. 2d 725 (1975---- --------------------- 15, 20

*Harm v. Frasher,*
181 Cal. App. 2d 405, 415, 5 Cal. Rptr. 367, 373 (1960) ----------- ----------------------------- 26

*Harris v. Amgen, Inc.,*
788 F.3d 916, 934 (9th Cir. 2015) ------------------------------------------- ---------------------------- 5

*Holmes v. Grubman,*
568 F.3d 329, 335 (2d Cir. 2009) -------------------------------------------- --------------------------- 4

*John Doe v. Middlebury College,*
No. 1:15-cv-00192 (D. Vt. Sept. 16, 2015) ------------------------------- ----------------------------- 22

*John Doe v. Washington & Lee Univ.,*
No. 6:14-CV-00052----------------------------------------------------------- ----------------- 12, 17

*Kashmiri v. Regents of Univ. of California,*
156 Cal. App. 4th 809, 826, 67 Cal. Rptr. 3d 635, 648 (2007)----- ----------------------------24

*Keene v. Rodgers,*
316 F.Supp. 217, 221 (D.Me.1970 --------------------------------------- ----------------------------- 21

*Kentucky Fried Chicken of Cal., Inc. v. Superior Court,*
14 Cal. 4th 814, 824, 927 P.2d 1260, 1266 (1997----------------- ------------------------------30

*King v. DePauw Univ.,*
2014 WL 4197507 at *13---------------------------------------------------- -------------------22, 25, 31

*Lawson v. Mgmt. Activities, Inc.,*
69 Cal. App. 4th 652, 656, 81 Cal. Rptr. 2d 745, 748 (1999) ------ ---------------------------28

iv

1   *Littlejohn v. City of New York,*
        No. 14-1395-CV, 2015 WL 4604250, at*8 (2d Cir. Aug. 3, 2015-- --------------------------13

2   *Logan v. S. Cal. Rapid Transit Dist.,*
        136 Cal. App. 3d 116, 123, 185------------------------------------------------------------ 6

3   *Lopez v. Smith,*
        203 F.3d 1122, 1127 (9th Cir. 2000----------------------------------------------------4, 32

4   *Mangla v. Brown Univ.,*
        135 F.3d 80, 83 (1st Cir.1998 --------------------------------------------------------------25

5   *Mansourian v. Regents of Univ. of Cal.,*
        602 F.3d 957, 965, n. 9 (9th Cir. 2010 ---------------------------------------------------- 7

6   *Marin v. University of Puerto Rico,*
7       377 F.Supp. 613 (D.P.R.1974)----------------------------------------------------------------23

    *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck,*
8       370 F.3d 275, 295 (2d Cir. 2004)------------------------------------------------------------12

9   *McCormick ex rel. McCormick,*
        370 F.3d at 295 ----------------------------------------------------------------------------15

10  *Miklosy v. Regents of Univ. of California,*
        44 Cal. 4th 876, 899, 188 P.3d 629, 643 (2008----------------------------------------------28

11  *Mills v. Board of Education,*
        348 F.Supp. 866 (D.D.C.1972) ---------------------------------------------------------------22

12  *Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.,*
        964 F. Supp. 1369, 1389 (N.D. Cal. 1997) -------------------------------------------------19
13
    *Ocasio-Hernández v. Fortuño-Burset,*
14      640 F.3d 1, 14 (1st Cir. 2011)--------------------------------------------------------------16

    *Parks School of Business, Inc. v. Symington,*
15      51 F.3d 1480, 1484 (9th Cir. 1995) --------------------------------------------------------- 4

    *Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.,*
16      911 F.2d 242, 247 (9th Cir. 1990) -----------------------------------------------------5, ,32

17  *Principal Life Ins. Co. v. Robinson,*
        394 F.3d 665, 669 (9th Cir. 2005). ---------------------------------------------------------31

18  *Reliford v. Univ. of Akron,*
        81 Ohio App. 3d 157, 158, 610 N.E.2d 521, 522 (1991);----------- ------------------------- 9

19  *Reynolds v. Sterling College, Inc. (2000)*
        170 Vt. 620, 621, 750 A.2d 1020, 1022 -----------------------------------------------------24
20
    *Rodriguez v. Bethlehem Steel Corp.,*
21      12 Cal. 3d 382, 399, 525 P.2d 669 (1974)---------------------------------------------------29

    *Rossiter v. Benoit (1979)*
22      88 Cal.App.3d 706, 713---------------------------------------------------------------------- 6

    *San Diego Cnty. v. California Water & Tel. Co.,*
23      30 Cal. 2d 817, 825, 186 P.2d 124, 130 (1947-----------------------------------------------27

    *San Francisco Unified Sch. Dist. v. State of California,*
24      131 Cal. App. 3d 54, 65-66, 182 Cal. Rptr. 525 (Ct. App. 1982)-- --------------------------- 7

25  *Sassaman v. Gamache,*
        566 F.3d 307, 313 (2d Cir. 2009) -----------------------------------------------------------13

26  *Streit v. Bushell,*
        424 F.Supp.2d 633 (S.D.N.Y. 2006). ------------------------------------------------------- 5

27  *Sutherland v. Barclays American/Mortgage Corp.,*
        53 Cal. App. 4th 299, 314, 61 Cal. Rptr. 2d 614 (1997 ------------------------------------26
28
    *Swierkiewicz v. Sorema N. A.,*

v

534 U.S. 506, 506-07, 122 S. Ct. 992, 994-95, 152 L. Ed. 2d 1 (2002)------------------------16

*Vandermost v. Alpha Beta Co.,*
   164 Cal. App. 3d 771, 210 Cal. Rptr. 613 (Ct. App. 1985) ----------- ------------------------------29

*Vasquez v. Los Angeles County,*
   487 F.3d 1246, 1249 (9th Cir. 2007) -------------------------------------------- ----------------------------- 4

*Wallace v. Florida A & M Univ.,*
   433 So. 2d 600, 602 (Fla. Dist. Ct. App. 1983)-------------------------------- ------------------------------- 9

*Wells v. Xavier Univ.,*
   2014 WL 972172 (S.D. Ohio Mar. 12, 2014------------------------------------------ ----------------------------12

*Weser v. Glen,*
   190 F.Supp.2d 384, 395 (E.D.N.Y. 2002)------------------------------------ ---------------------------------18

*Westlake Cmty. Hosp. v. Superior Court,*
   17 Cal. 3d 465, 485, 551 P.2d 410, 422 (1976);---------------------------- ----------------------------- 6,8

*Williams v. Franklin & Marshall College,*
   2000 WL 62316 at *2 (E.D. Pa. 2000----------------------------------------- ------------------------------12

*Wisconsin v. Constantineau,*
   400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971 ------------- -------------------------------20

*Woodis v. Westark Cmty. Coll.,*
   160 F.3d 435, 440 (8th Cir. 1998 ------------------------------------------- --------------------------------- 9

*Yeasin v. Univ. of Kansas,*
   No. 113,098 ------------------------------------------------------------------ ------------------------------- 9

*Yu v. Vassar College,*
   2015 WL 1499408 (S.D.N.Y. 2015 ------------------------------------------- ------------------------------15

*Yusuf v. Vassar College,*
   35 F.3d at 715 ------------------------------------------------------------------- ------------------------------12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

vi

Case 2:15-cv-02478-SVW-JEM  Document 33  Filed 10/26/15  Page 8 of 33  Page ID #:211

## PRELIMINARY STATEMENT

Plaintiff John Doe ("Plaintiff") submits this Memorandum of Law in opposition to the Regents of University of California's ("University" or "Regents") motion to dismiss ("Motion") the Complaint for failure to state a claim. The Motion should be denied in its entirety. The University had no jurisdiction to discipline Plaintiff for what constituted consensual sexual activity with Jane Doe on June 16, 2014 in a private home at Lake Tahoe, nearly 500 miles away from campus.

Even assuming that jurisdiction as properly extended, a writ of mandate is not the exclusive remedy for a student seeking redress for gender discrimination and due process violations against a California public college. Plaintiff does not merely seek to "overturn" the decision finding him responsible of the Charge; he seeks relief for the discriminatory way in which the University investigated and decided his student conduct proceeding.

Plaintiff states *bona fide* claims for relief under Title IX of the Education Amendments of 1972, 42 U.S.C. § 1983, and state law. Plaintiff's case was decided just months after six female University students filed a highly-publicized Title IX complaint with the Department of Education Office of Civil Rights (OCR) claiming that their respective sexual assault complaints were mishandled by the University. *See,* Students File Federal Complaint Alleging UCSB Mishandled Sexual Assault Cases, *available at* http://dailynexus.com/2014 09-12/students-file-federal-complaint-alleging-ucsb-mishandled-rape-case/ (last visited October 13, 2015). The Complaint details sex discrimination against Plaintiff; a male student who was found responsible of sexual assault following a fatally flawed and biased process, driven by pressure from OCR.

## STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT

### A.    The Evening of June 16, 2014

During the weekend of June 14-16, 2014, Plaintiff, Jane Doe and a group of their friends traveled to Jane Doe's parents' home in Lake Tahoe to celebrate the end of the school year. (Cmplt. ¶ 32.) During the trip, Jane Doe repeatedly bragged about a "threesome" she had previously

1    participated in with a model and photographer in New York. (Cmplt. ¶ 34.) On June 16, 2014, Jane

2    Doe, L.B., and D.J. advised B.R that they wanted to engage in group s x, but only if Plaintiff was

3    involved too. (Cmplt. ¶ 37.) Plaintiff agreed to participate. (Cmplt. ¶ 39 )

4          Plaintiff and Jane Doe engaged in consensual sexual intercou se that night ("Incident").

5    (Cmplt. ¶¶ 44-45.) According to accounts by Plaintiff, L.B., D.J. and B. ?., at no point leading up to

6    or through the sexual activity did Jane Doe exhibit any signs of incapacit tion. (Cmplt. ¶ 73.) In fact,

7
     Jane Doe was a willing participant; she got on top of Plaintiff at ne point, she kissed him
8
9    passionately, she rubbed his hair during oral sex, and verbalized that sl e liked what he was doing.

10   (Cmplt. ¶ 45.) The following morning, everyone joked about the night b fore. (Cmplt. ¶ 49.)

11         At the time of the Incident, Plaintiff was on a leave of absence fr m the University, and Jane

12   Doe was no longer a student at the University – the semester had co cluded and her transfer to

13   Cornell University had been finalized several months prior. (Cmplt. ¶¶ 56-57.)

14
     **B.      The University Charge of Non-Consensual Sex and The Inve tigation.**
15
16         Five months later, Plaintiff was charged with sexual assault base on the Incident, before any

17   witnesses were ever interviewed.  (Cmplt. ¶ 50.)  At the beginning of he process, Assistant Dean

18   Suzanne Perkin asked Plaintiff if he was "ready to take responsibility?" Cmplt. ¶ 61.)

19         Ms. Perkin performed an unfair and biased investigation; she gathered evidence of text

20   messages and Facebook messages between Jane Doe and witnesses wh were not in the room and

21   did not personally observe Jane Doe's alleged state of intoxication at the time of sexual activity

22
     (Cmplt. ¶¶ 59, 70-71.); accepted prejudicial character evidence against I laintiff but not against Jane
23
24   Doe (Cmplt. ¶¶ 70, 83-85.); ignored eye-witness accounts of Witness 3.R. and Witness L.B. who

25   both testified that Jane Doe appeared "fine," "energetic" and "bubbly" and that she "did not seem

26   intoxicated" (Cmplt. ¶ 73.); and presented a cherry-picked summary of ritness statements, omitting

27   key, qualifying facts to support a predetermined conclusion that J ne Doe was incapable of

28   consenting to sexual activity with Plaintiff (Cmplt. ¶ 76.)

2

1    The first hearing was held on December 11, 2014 ("First H aring") before the Sexual

2    Violence Conduct Committee (the "Committee"). (Cmplt. ¶ 52.) Then on December 16, 2014, the

3    Committee re-opened the case to make additional inquiries, based on Jane Doe's last-minute

4    inclusion of Facebook messages between herself and a non-UCSB frien who she confided in about

5    the case. (Cmplt. ¶¶ 52, 88.) However, Plaintiff was advised that he would not have an opportunity

6    to make a statement or submit any evidence at the second hearing. (Cm plt. ¶ 185.) The University

7    insisted on scheduling a second hearing on the one date that Plain iff's attorney advisor was

8    unavailable, December 19, 2014 ("Second Hearing"). (Cmplt. ¶ 66.) Despite the evidence and

9    testimony provided, the Committee found Plaintiff responsible for sexua assault, and was sanctioned

10   to a two-quarter suspension ("Decision"). (Cmplt. ¶ 5.) Plaintiff's trar script and records will now

11

12   reflect that he was found responsible of "sexual assault."

13   **C.    Plaintiff's Appeal and Damages.**

14   Plaintiff appealed from the Decision on January 29, 2015, where he listed numerous

15   procedural errors, and based upon newly discovered evidence, namely, hat the Facebook messages

16   were authored by a fictitious person and fabricated by Jane Doe in an a tempt to support her claims

17   ("Appeal"). (Cmplt. ¶ 90.) However, the University denied his Appeal o February 16, 2015 without

18   any explanation or rationale for the denial. (Cmplt. ¶ 91.) As a result of the University's actions,

19

20   Plaintiff has suffered tremendous damages and faces significant losses to his future. (Cmplt. ¶ 138.)

21   ## I. ARGUMENT

22   ## A. THE LEGAL STANDARD GOVERNING MOTIC NS TO DISMISS

23

24   This Court, in *Atlantica Holdings, Inc.*, 2014 WL 917055 * 4, reviewed the legal standard

25   applicable to a motion to dismiss as follows:

26      In reviewing a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept the
        factual allegations set forth in the complaint as true and draw all reasonable inferences in

27      favor of the plaintiff." *Cohen v. Avande, Inc.*, 874 F.Supp.2d 31 i, 319 (S.D.N.Y. 2012)
        (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). Th : Court will not dismiss

28      any claims pursuant Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to

1     state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
2     570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that is, one that contains "factual content that
      allows the court to draw the reasonable inference that the defendant is liable for the
      misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868
3     (2009).

4             In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

5     and construe them in the light most favorable to the plaintiff. *See, Id.* at 555; *Erickson v. Pardus*, 551

6     U.S. 89, 93–94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1245, 1249 (9th Cir. 2007). In

7     addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc.*

8     *v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). If the court dismisses the

9
      complaint, it should grant leave to amend even if no request to amend is made "unless it determines
10

11    that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

12    F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California*

13    *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

14
              A Court is to consider a motion to dismiss in terms of the plaintiff's actual pleadings in the
15
      Complaint, and not in terms of a defendant's selective characterization of the facts. *Streit v. Bushell*,
16

17    424 F.Supp.2d 633 (S.D.N.Y. 2006). *Harris v. Amgen, Inc.*, 788 F.3d 916, 934 (9th Cir. 2015) (courts

18    must consider the complaint in its entirety, as well as other sources courts ordinarily examine when

19    ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint

20    by reference, and matters of which a court may take judicial notice).

21
      ## B.  WRIT OF MANDAMUS IS NOT PLAINTIFF'S EXCLUSIVE REMEDY
22

23            Citing to a litany of writ of mandamus case law, the Regent vigorously argue that the

24    Complaint is legally defective by virtue of the fact that he did not seek his remedies through a writ

25    of mandate. (Regents Mem. 1.) However, the Regents' citation (to primarily employment rights

26    cases) is grossly misplaced in that none of these cases affirmatively hold that a writ of mandamus is

27    the sole, exclusive remedy for Plaintiff, nor do they hold that a student claiming gender

28    discrimination is relegated to the sole remedy of writ of mandamus. *Goldberg v. Regents of Univ. of*

1    *Cal.*, 248 Cal. App. 2d 867, 873-74, 57 Cal. Rptr. 463, 468 (Ct. App. 1967) (mandate is the

2    appropriate remedy for students seeking reinstatement and challenging the First Amendment

3    constitutionality of their suspension and dismissal); *Westlake Cmty. Hosp. v. Superior Court*, 17 Cal.

4    3d 465, 551 P.2d 410 (1976) (before instituting tort action for malicious prosecution, physician was

5    first required to succeed in overturning quasi-judicial revocation of privileges in a mandamus action);

6    *Do v. Regents of the Univ. of California*, 216 Cal. App. 4th 1474, 157 Cal. Rptr. 3d 630 (2013)

7    (employment rights case involving former employee's action against state university for writ of

8    mandamus challenging his termination); *Logan v. S. Cal. Rapid Transit Dist.*, 136 Cal. App. 3d 116,

9    

10   123, 185 Cal. Rptr. 878, 882 (Ct. App. 1982) (employment termination proceedings precluded

11   plaintiff from filing tort and contract action prior to seeking writ of mandate, but federal claims were

12   properly brought in plenary action).

13       More importantly, none of the Regents' citations involve a plaintiff seeking relief under Title

14   IX of the Education Amendments of 1972. In *Logan v. S. Cal. Rapid Transit Dist.*, it was held that

15   the state may not impair federally created rights or impose conditions upon them. 136 Cal. App. 3d

16

17   116, 124, 185 Cal. Rptr. 878, 883 (citing *Adler v. Los Angeles United School Dist.* (1979) 98

18   Cal.App.3d 280, 288, 159 Cal.Rptr. 528; *Graham v. City of Biggs* (1979) 96 Cal.App.3d 250, 255–

19   256, 157 Cal.Rptr. 761; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 713, 152 Cal.Rptr. 65.)). In

20   fact, federal law controls where a method of review under federal statute provides the aggrieved

21   party with more protection or broader scope of review than is available under Cal. Code of Civ. Proc.

22   § 1094.5. *San Francisco Unified Sch. Dist. v. State of California*, 131 Cal. App. 3d 54, 65-66, 182

23   

24   Cal. Rptr. 525 (Ct. App. 1982) (Section 1094.5 procedure was unavailable to review administrative

25   decisions under the Education of All Handicapped Children Act absent waiver or on other special

26   circumstances).

27       Plaintiff's action is premised on the overall mishandling of his student conduct proceeding

28   as a result of gender discrimination in violation of Title IX and state law, not, as the Regents argue,

                                                                                                    5

1   on "re-trying" his student conduct case or overturning the decision based on the deficient record

2   below. Like the Education of All Handicapped Children Act (20 U.S.C. § 1401, *et seq.*) in *San*

3   *Francisco Unified Sch. Dist.*, under Title IX, the University has accepted federal financial assistance

4   in exchange for its agreement to abide by certain duties and responsibilities, namely, to refrain from

5   discriminating against students on the basis of gender with respect to any education program. 20

6   U.S.C. §§ 1681, *et seq.* Title IX affords students procedural safeguards relating to cases of sexual

7   assault, including the right to an adequate, reliable and impartial investigation, right to present

8   evidence and witnesses, right to due process, right to appeal any determination, and the right to "bring

9   a civil action with respect to the complaint presented pursuant to this section. *Mansourian v. Regents*

10  *of Univ. of Cal.*, 602 F.3d 957, 965, n. 9 (9th Cir. 2010) (OCR's Title IX regulations interpret the

11  statute and are entitled to *Chevron* deference); *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 96-97 (2d

12  Cir. 2012) (substantial deference given to OCR's interpretation of Title IX's implementing

13  regulations).

14  

15  Alternatively, should the Court be inclined to agree that Plaintiff must overturn the

16  underlying proceeding through a writ of mandamus procedure prior to seeking relief on his state law

17  claims, Plaintiff submits that his complaint "could conceivably be found sufficient to warrant treating

18  the complaint as a petition for writ of mandate" and that the Court may remand the action to the

19  Superior Court of California, County of Santa Barbara accordingly  *Westlake Cmty. Hosp. v.*

20  *Superior Court*, 17 Cal. 3d 465, 485, 551 P.2d 410, 422 (1976); *Boren v. State Pers. Bd.*, 37 Cal. 2d

21  634, 638, 234 P.2d 981, 983 (1951) (it is unimportant that the pleading is not formatted as a petition

22  for mandamus or certiorari, so long as plaintiff states facts entitling him to some type of relief);

23  *California Toll Bridge Auth. v. Wentworth*, 212 Cal. 298, 309, 298 P. 485, 489 (1931) (court elected

24  to treat action as writ of mandate, despite parties' failure to submit action under appropriate statutes).

25  

26  ## C. **THE UNIVERSITY ACTED WITHOUT JURISDICTION**

27  

28

Case 2:15-cv-02478-SVW-JEM  Document 33  Filed 10/26/15  Page 14 of 33  Page ID #:217

Citing to a Maryland Attorney General Opinion, 74 Md. Op. A ty. Gen. 147 (Opinion No. 89-002), the Regents claim that jurisdiction over the Incident was prop r, despite compelling facts against same. (Regents Mem. 7; Cmplt. ¶¶ 56-57.) The Regents' citati n fails to note that the full Opinion requires that the state university provide *constitutional sa eguards that apply to all disciplinary actions* before it discipline a student for off-campus misc nduct.  74 Md. Op. Att'y Gen. 147 (1989). The Opinion also details the constitutional limitations to off-campus discipline:

> An educational institution may discipline its students for prohibi ed conduct, whether it occurs on campus or off, "so long as there is no invidiou discrimination, no deprival of due process, no abridgement of a right protected in th circumstances, and no capricious, clearly unreasonable or unlawful action employ d...." General Order on Judicial Standards, 45 F.R.D. at 141

74 Md. Op. Att'y Gen. 147 (1989) (citing General Order on Jud cial Standards, 45 F.R.D. at 141). Off-campus discipline must be based upon reasonably clear rules s that the student is on notice of what conduct would be considered a violation, and the school "may of arbitrarily discriminate in the range and type of penalties or in the procedural safeguards afforded arious classes of offenders." 74 Md. Op. Att'y Gen. 147 (1989).

Generally, courts uphold off-campus student discipline where t e student was convicted of a crime, and the school policies specifically provided for off-campus di cipline. *Reliford v. Univ. of Akron*, 81 Ohio App. 3d 157, 158, 610 N.E.2d 521, 522 (1991); *Wali ace v. Florida A & M Univ.*, 433 So. 2d 600, 602 (Fla. Dist. Ct. App. 1983); *Woodis v. Westark C ity. Coll.*, 160 F.3d 435, 440 (8th Cir. 1998). However, there is no criminal conviction at issue here in Plaintiff's case.

In *Yeasin v. Univ. of Kansas*, No. 113,098, 2015 WL 5617617 ( an. Ct. App. Sept. 25, 2015), the court overturned a student's expulsion where the University erron ously interpreted the Student Code as giving it jurisdiction to discipline off-campus conduct. As th *Yeasin* Court explained, the purpose of publishing policies is to provide students with advance notice of what standards of conduct are expected:

The University's Student Code and sexual harassment policy controls the issues arising in this case. The purpose of the Student Code is to outline the rights of students and many of the standards of conduct expected within the University's community. The Student Code advises that students must "adhere to all published rules, regulations and policies" and the failure to do so may subject a student to disciplinary action. The record on appeal discloses that posttrial, the University advised the district court that in light of its decision, the Student Code has been revised. Those revisions are not in the record and they did not affect the district court's decision. We do not consider those revisions either.

*Yeasin*, No. 113,098, 2015 WL 5617617, at *12.

By its own policies, the University was divested of jurisdiction over the Incident given the overwhelming factors against exercising jurisdiction. The Code states that the University may exercise jurisdiction over student conduct that occurs off University property in *certain situations*. In considering whether to exercise off campus jurisdiction, a variety of factors are considered: (1) whether the alleged victim is a member of campus community; (2) whether a crime has been reported to the criminal authorities; (3) the risk of future harm involved; and (4) whether the off-campus conduct is part of a series of actions that occurred both on and off campus. (Cmplt. ¶ 55.) Any request to extend the University's jurisdiction beyond the typical borders must be reviewed by the Associate Dean for Judicial Affairs, Dean of Students, Vice Chancellor for Student Affairs and a committee composed of both faculty members and students. (Student Code of Conduct, p. 25.) While certain off-campus behavior is automatically subject to the Code, the Code does not state that the aforementioned factors are eliminated from consideration. (*Id*.)

In its Decision, the Committee does not even acknowledge consideration of the aforementioned factors, nor does it confirm that the requisite review was obtained by the University prior to commencing an investigation. (Cmplt. ¶¶ 55-58.) Notably, the Incident occurred during summer break, at a private home located several hundred miles away from campus and was not school-sponsored in any way. (Cmplt. ¶ 56.) At the time of the Incident, Plaintiff was not a current

1    student at the University; he was on a leave of absence, had not taken a class in at least six months,

2    and was inactive with the Mock Trial team since March, 2014. (Cmplt ¶ 56.) Similarly, Jane Doe

3    was no longer a student at the University, as the semester had conclude and her transfer to Cornell

4    University had been finalized several months prior. (Cmplt. ¶ 57.) Evidently, neither the alleged

5    victim nor the accused student was a member of the campus community Moreover, a crime was not

6    reported to the criminal authorities, and there was no risk of future harm to Jane Doe since she had

7    already finalized her transfer to a different school. Additionally, there was no evidence that the

8    Incident was part of a "series of actions." Consequently, none of the factors that would permit the

9
     University to exercise its jurisdiction over the Incident, pursuant to its own Code of Conduct, were

10

11   present in this matter, and its decision to proceed anyway was arbitrary and capricious.

12           Nothing about the University's policies clearly notified Plaintiff that he would be subject to

13   discipline for his alleged conduct during a six-month leave of absence w th a non-student, on summer

14   break, occurring off-campus, on private property, at a non-school s ponsored. *Yeasin*, 2015 WL

15
     5617617, at *12; 74 Md. Op. Att'y Gen. 147. Certainly, Title IX w is not intended to extend to
16
     activity in locations removed from the school unless both parties atten that school thereby creating
17

18   a potentially hostile environment. *See*, 20 U.S.C. §§ 1681, *et seq*.

19   ## D. THE COMPLAINT STATES A CLAIM OF TITLE IX DI CRIMINATION

20           Citing to the pleading standards of *Twombly* and *Iqbal*, the Regents contend that Plaintiff's

21   Title IX claim must fail because his allegations of gender discriminat on are conclusory and do not

22   give rise to a plausible inference of gender bias. (Regents Mer . 10-11.) However, critical

23
     examination of the allegations as a whole and the controlling Title IX standard leads to the contrary
24
     conclusion that the Complaint does sufficiently state a Title IX claim.
25

25   ### 1. The Controlling Title IX Standard.

27           In *Yusuf v. Vassar College*, 35 F.3d at 715, the Second Circuit! eld that the attack of a student

28   conduct proceeding on grounds of gender bias can be expected to fall g nerally within two categories,

9

1    namely, erroneous outcome and selective enforcement. The *Yusuf* standard is still applied and used

2    as the controlling legal standard for a cause of action under Title IX by other district courts. *See,*

3    *John Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4547996 (W.D. Va. Aug. 5,

4    2015); *Wells v. Xavier Univ.*, 2014 WL 972172 (S.D. Ohio Mar. 12, 2014); *see also, Williams v.*

5    *Franklin & Marshall College*, 2000 WL 62316 at *2 (E.D. Pa. 2000).

6        A Title IX claim is stated when the application of gender-neutral policies and practices has

7    been influenced by gender stereotypes. *McCormick ex rel. McCormick v Sch. Dist. of Mamaroneck,*

8    370 F.3d 275, 295 (2d Cir. 2004) (citing *Cohen v. Brown Univ.*, 101 F.3d 155, 178-79 [1st Cir.

9

10   1996]). To this end, the court in *Cohen v. Brown Univ.* stated:

11       To assert that Title IX permits institutions to provide fewer athletics participation
         opportunities for women than for men, based upon the premise that women are less
12       interested in sports than are men, is (among other things) to ignore the fact that Title
         IX was enacted in order to remedy discrimination that results from stereotyped
13       notions of women's interests and abilities. Interest and ability rarely develop in a
         vacuum; they evolve as a function of opportunity and experience.... [T]o allow a
14       numbers-based lack-of-interest defense to become the instrument of further
         discrimination against the underrepresented gender would pervert the remedial
15       purpose of Title IX.

16
     101 F.3d 155 at 178-79; *see also, Bleiler v. Coll. of Holy Cross*, No. CIV.A. 11-11541-DJC, 2013
17
     WL 4714340, at *5 (D. Mass. Aug. 26, 2013) ("'The 'archaic assumptions' standard, which has been
18
     applied where plaintiffs seek equal athletic opportunities, finds discriminatory intent in actions
19
     resulting from classifications based upon archaic assumptions about gender").
20

21       When decisions are based on invidious sex stereotypes, a reasonable jury could infer the

22   existence of discriminatory intent. *Sassaman v. Gamache*, 566 F.3d 307, 313 (2d Cir. 2009)

23   (analyzing gender discrimination under Title VII)[1]. At the pleading stage, however, a plaintiff need

24

25

26

27   _____
     [1] Since Title IX was modeled after Title VI and VII of the Civil Rights Act of 1964, courts regularly consider Title VI
28   and VII legal precedent as guidance for the application of Title IX. *Cannon v. Univ of Chicago*, 441 U.S. 677, 678, 99
     S. Ct. 1946, 1948, 60 L. Ed. 2d 560 (1979).                                                              10

1    only allege facts to give plausible support to a minimal inference of discriminatory motivation.

2    *Littlejohn v. City of New York*, No. 14-1395-CV, 2015 WL 4604250, at' 3 (2d Cir. Aug. 3, 2015).

3        **2. Plaintiff Has Stated A Claim Under Title IX – Erroneous Ou tcome.**

4        The Regents cite to *Yusuf* for the kind of allegations supporting a Title IX sex discrimination

5    claim, namely, gender biased statements by members of the discip inary tribunal or pertinent

6    university officials, or patterns of decision-making that showed the influence of gender bias.

7    (Regents Mem. 10.); 35 F.3d at 715. But when citing to such example s, the Second Circuit never

8    stated that it was presenting an exhaustive list of qualifying facts, nor d d it hold that the allegations

9

10   in the complaint should be viewed out-of-context or in a vacuum when analyzing the plausibility of

11   a Title IX claim. The Regents' over-reading of the *Yusuf* holding is unv arranted here.

12       The allegations of the Complaint set forth the University's di criminatory conduct on the

13   basis of Plaintiff's male gender. A cause of action for intentional sex c iscrimination in violation of

14   Title IX is pleaded in ¶¶ 83-93; 114-127, including specific facts goii g to gender bias in the way

15   Plaintiff's guilt was presumed by Ms. Perkin from the outset, the way t ie case was investigated, the

16   types of evidence received and ignored, the improper placement of an a dditional burden of proof on

17

18   Plaintiff, the consideration of Plaintiff's prior sexual history as eviden e of his guilt with respect to

19   Jane Doe, and the gender-biased patterns of decision-making at the Un versity.

20       Plaintiff's allegations, when reviewed as a whole, describe how the investigative process at

21   the University made a credibility finding in favor of Jane Doe, notwiths anding the fact that the three

22   other individuals who were in the room during that time did not obs rve Jane Doe to be refusing

23   consent, or showing signs of incapacitation during the time period k ading up to and through her

24   sexual activity with Plaintiff. More importantly, when reviewing the llegations within the correct

25   context, Plaintiff has pleaded that the University has knowledge of th : fact that sexual misconduct

26   claims are brought by female students against male students, yet I as made it procedurally and

27

28   factually insurmountable for a male student to defend himself against uch a claim since (a) there is

11

1    a presumption of guilt against male students, evidenced by Ms. Perkin s comment (Cmplt. ¶¶ 61,

2    116, 123); (b) the University had knowledge that there is a higher incide ice of female complainants

3    against male students (Cmplt. ¶ 126); and (c) the University's burden c f proof may be satisfied by

4    the testimony of the complainant and individuals who were not even present during the Incident

5    (Cmplt. ¶ 69-70). *McCormick ex rel. McCormick*, 370 F.3d at 295. The allegations of ¶¶ 83-93; 114-

6    127 clearly satisfy the requirement to connect a flawed outcome to gence er bias according to *Yusuf*.

7        Unlike *Blieler v. Holy Cross*, 2013 WL 4714340 (D. Mass. 2013) or *Yu v. Vassar College*,

8    2015 WL 1499408 (S.D.N.Y. 2015), which were decided on summary judgment, the instant case

9

10   must be analyzed under the motion to dismiss standard. First, *Blie er* and *Yu* involve private

11   universities where the concept of "due process" has no constitutional u iderpinning, as compared to

12   state universities such as the University. *Goss v. Lopez*, 419 U.S. 565, 5 74, 95 S. Ct. 729, 736, 42 L.

13   Ed. 2d 725 (1975) (Students facing suspension of 10 days or less must b : given oral or written notice

14   of the charges against him and, an explanation of the evidence agains him, and an opportunity to

15   present his version; longer suspensions or expulsions may require more formal procedures); *Gomes*

16
     *v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 15 (D. Me. 2005) ("A : tudent 'facing expulsion or
17

18   suspension from a public educational institution is entitled to the protec tions of due process'").

19       Next, unlike the plaintiffs in *Blieler* and *Yu*, Plaintiff has adequately pleaded gender

20   discrimination based on the University's diametric treatment of Plainti f versus Jane Doe during the

21   investigation process (Cmplt. ¶¶ 83-93), together with the statistical disparities and stereotypes,

22   which influenced Ms. Perkin's bias and recommendation that Plai tiff be found "responsible"

23
     (Cmplt. ¶¶ 100-112). The erroneous outcome and discriminatory an mus are adequately pleaded
24
     when considered in the context of Ms. Perkin's comment at the outse l of the disciplinary process,
25

26   "Are you ready to take responsibility?", that she charged Plaintiff with : exual assault before speaking

27   to any witnesses, and the fact that the University is recently unde r investigation by OCR for

28   mishandling sexual assault complaints filed by six female students. *See*, Students File Federal

                                                                                              12

Complaint   Alleging   UCSB   Mishandled   Sexual   Assault   Cases,   *available   at* http://dailynexus.com/2014-09-12/students-file-federal-complaint-allegi ıg-ucsb-mishandled-rape-case/. At this juncture, the allegations demonstrate a good faith basis to believe that a pattern of discrimination will be made clearer in discovery. *Swierkiewicz v. Soren a N. A.*, 534 U.S. 506, 506-07, 122 S. Ct. 992, 994-95, 152 L. Ed. 2d 1 (2002); *Barrett v. Forest La s., Inc.*, 39 F. Supp. 3d 407, 432 (S.D.N.Y. 2014) (in most cases, plaintiffs will be unable to provide eliable statistics before they have access to discovery); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011); *Marrerro-Rodriguez v. Municipality of San Juan*, 677 F.3d 497, 502 (1 t Cir. 2012).

Plaintiff's case is more akin to *John Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996. In *John Doe v. Washington & Lee Univ.*, plaintiff s Title IX claim survived a motion to dismiss where he pleaded sufficient facts to cast doubt on t ıe accuracy of the outcome reached in the proceeding against him, and how the Title IX office 's bias was material to the outcome of plaintiff's case. *Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996, at \*10; *Back v. Hastings On Hudson Union Free Sch. Dist.*, 3 55 F.3d 107, 125-26 (2d Cir. 2004) (impermissible bias of a single individual at any stage of the pr ocess may taint the ultimate employment decision, even absent evidence of illegitimate bias on the part of the ultimate decision maker, as long as such individual played a meaningful role in the proce ıs).

As the "Title IX Officer or other designated official," Ms. Per in determined the scope of the investigation, drafted a summary of the findings, and recom nended sanctions. (Sexual Harassment and Sexual Violence Policy, p. 12.) Ms. Perkin's imm ıdiate bias of Plaintiff was indicated by her statement, "Are you ready to take responsibility?" and her decision to charge Plaintiff before speaking to any of the witnesses. Ms. Perkin's bias tai ted her investigation, which requires her to write a report, summarize the evidence, and determine whether the Policy has been violated. (*Id.*, p. 14.) The Committee does not engage in fact-finding, oes not interview witnesses, and does not have input on how witness/fact summaries are written; it 's reliance upon Ms. Perkin's

1    narrative is critical to their findings. *Id.* Ms. Perkin's influence was ever greater here since she was

2    present while the Committee made deliberations. The Decision based on discriminatory animus

3    against male students accused of sexual assault, and influenced by recen pressure from OCR.

4    ### 3. The Allegations State A Claim Of Selective Enforcement

5        Under the *Yusuf* standard, a claim for selective enforcement requ res a plaintiff to assert that,

6    regardless of his guilt or innocence, the severity of the penalty and/or the decision to initiate the

7    proceeding was affected by his male gender. 35 F.3d at 715.

8

9        As indicated in the Complaint, the sanction assessed to Plainti f was disproportionate and

10   influenced by the gender biased investigation (Cmplt. ¶ 104), an the fact that "UCSB is

11   knowledgeable of the fact that complaints of sexual misconduct are d sproportionately lodged by

12   females against males" (Cmplt. ¶ 79). Title IX permits an inference of g nder discrimination in light

13   of the existence of significant gender-based statistical disparities. *Coh n v. Brown University*, 101

14   F.3d 155, 171 (1st Cir. 1996); *Weser v. Glen*, 190 F.Supp.2d 384, 39: (E.D.N.Y. 2002) (statistics

15   may be used as circumstantial evidence to support an individual dispa ate treatment claim). When

16   drawing all reasonable inferences in the light most favorable to Plaint ff, he has stated a claim of

17   selective enforcement based on his male gender.

18

19       Finally, Plaintiff has not asserted a claim under the Title IX enf rcing regulations issued by

20   the U.S. Department of Education Office of Civil Rights. (Regents Nem. 9-10.) Plaintiff merely

21   points out the numerous obligations and duties that have not been met by the University during his

22   student conduct case, which have been outlined by the OCR. *See*, U.S. Department of Education

23   Office for Civil Rights Revised Sexual Harassment Guidance, January 2001.

24

25   ### 4. A Claim Under California Civil Code § 51 (Unruh Act) Has Been Stated.

26       Claiming that Unruh Act is inapplicable to the Regents be ause it is not a "business

27   establishment" (Regents Mem. 14-15) is simply inaccurate. California as recognized a claim under

28   the Unruh Civil Rights Act by students against their schools for discrim ination. *Davison ex rel. Sims*

14

*v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1233 (C.D. Ca . 1998) (motion to dismiss Unruh claim denied where plaintiff's allegations that the school failed to respond to her efforts to notify it of peer racial discrimination constituted intentional discrimination under the Act); *Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389 (N.D. Cal. 1997) (Given the broad reach that the California Supreme Court has attributed to the Unruh Act, defendants' argument that the Act was not meant to apply to sexual harassment in schools fails).

Based on the allegations in the Complaint, Plaintiff has sufficiently pleaded circumstances demonstrating that the application of gender-neutral policies and practices has been influenced by the University's gender stereotypes of who should and should not be in control during a sexual encounter, and who should and should not be credited in arriving at a determination of incapacitation during an event that is largely "he said/she said."

## E. PLAINTIFF HAS STATED CLAIMS UNDER 42. U.S.C. § 1983 FOR DUE PROCESS VIOLATIONS

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Pursuant to the Fourteenth Amendment, a student enjoys a property interest in a public education. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736, 42 L. Ed. 2d 725 (1975); *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988). The Due Process Clause forbids arbitrary deprivations of liberty where his good name, reputation, honor, or integrity is at stake because of the government's actions. *Goss*, 419 U.S. at 574, 95 S. Ct. at 736.

At a public university, a student facing serious charges of misconduct and exposure to substantial sanctions is entitled to receive notice and a fundamentally fair hearing. *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 16 (D. Me. 2005). Minimum due process requirements must be satisfied in cases involving a charge of sexual assault, which can implicate a person's good name, reputation, honor and integrity. *Goss*, 419 U.S. at 574, 95 S.Ct. 729 (quoting *Wisconsin v.*

*Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (197.1)). A finding of guilt can "have a major immediate and life-long impact on [their] personal life, education, employment, and public engagement." *Goss,* 419 U.S. at 574, 95 S.Ct. 729.

Courts have recognized the following minimum due process requirements owed to students facing major disciplinary charges:

> (1) [T]he student must be advised of the charges against him; (2) he must be informed of the nature of the evidence against him; (3) he must be given in opportunity to be heard in his own defense; and (4) he must not be punished except on the basis of substantial evidence.

*Gomes,* 365 F. Supp. 2d at 15-16 (citing *Keene v. Rodgers,* 316 F.S pp. 217, 221 (D.Me.1970) (quoting Charles Alan Wright, *The Constitution on the Campus,* 22 V ind. L.Rev. 1027, 1071–72 (1969)).

Additionally, the *Keene* court added: 1) the student must be permitted the assistance of a lawyer, at least in major disciplinary proceedings; 2) he must be permitted to confront and to cross-examine the witnesses against him; and, 3) he must be afforded the right to an impartial tribunal, which must make written findings. *Id.* (citations omitted); *see also Care ex rel. Carey v. Maine Sch. Admin. Dist. No. 17,* 754 F.Supp. 906, 919 (D.Me.1990) (setting forth the seven minimum requirements which must be observed in student disciplinary hearings to assure the requisite balance).

First, the Regents discount Plaintiff's due process rights by claiming that he was only suspended and, therefore, was not entitled to the level of due process suggested in *Dixon v. Alabama State Board of Education, supra,* 294 F.2d 150 (1961). However, such statement ignores the salient fact that even though Plaintiff was ultimately suspended for two quarters, he was exposed to sanctions as serious as expulsion. *Charles S. v. Bd. of Educ.,* 20 Cal. App. 3d 83, 93, 97 Cal. Rptr. 422 (Ct. App. 1971) (*Dixon* dealt with expulsion of college students, so stricter standards are obviously required). Moreover, glaringly omitted from the Regents' analysis is the importance of the mark on Plaintiff's disciplinary record, namely, guilty of "sexual misconduct," which brands him as

1  a sexual predator. His future plans for law school will most certainly be curtailed, and any argument

2  to the contrary is ignorant of the realities of stigmas and public perception. *John Doe v. Middlebury*

3  *College*, No. 1:15-cv-00192 (D. Vt. Sept. 16, 2015) (John Doe will experience irreparable harm from

4  the gap in his education due to a charge of sexual assault, which will last for the remainder of his

5  professional life, and any explanation is unlikely to fully erase the stigma); *King v. DePauw Univ.*,

6  2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014) (any explanation is unlikely to fully erase the

7  stigma associated with a finding of sexual misconduct when plaintiff is asked to explain the situation

8  to future employers or graduate school admissions committees); *Doe v. Salisbury Univ.*, No. CIV.

9  JKB-14-3853, 2015 WL 3478134, at *9 (D. Md. June 2, 2015) (the longstanding impact of being

10  labeled responsible of "sexual assault" is so severe that monetary damages alone are insufficient).

11

12  Students have a right to counsel and right to confront and examine adverse witnesses during

13  a disciplinary hearing involving serious charges. *See, Givens v. Poe,* 346 F.Supp. 202 (W.D.N.C.

14  1972) (students have right to counsel and right to confront and examine adverse witnesses); *Fielder*

15  *v. Board of Education,* 346 F.Supp. 722 (D.Neb.1972) (right to cross-examine is constitutionally

16  required; right to counsel and cross-examination by counsel is at least "good technique"). In *Mills v.*

17  *Board of Education,* 348 F.Supp. 866 (D.D.C.1972), the court prescribed hearing procedures for a

18  class of young students with special needs which procedures included the right to a representative,

19  which could be legal counsel, and the right of the parent or guardian, *or* his representative, to confront

20  and cross-examine witnesses. In *Marin v. University of Puerto Rico,* 377 F.Supp. 613 (D.P.R.1974),

21  the court held that *the students* were entitled to cross-examine opposing witnesses with the assistance

22  of retained counsel.

23

24  As outlined in the complaint, Plaintiff was not provided with a copy of the First Investigative

25  Report until two days before the First Hearing, and was not allowed to review a copy of the Second

26  Investigative Report until a mere three and a half hours before the Second Hearing. (Cmplt. ¶¶ 63-

27  68; 185.) Given that Plaintiff was facing major sanctions of suspension or expulsion, the University's

unwillingness to provide the evidence it gathered or accommodate a 1-day rescheduling of the Second Hearing constituted a deprivation of Plaintiff's right to the assistance of counsel. (Cmplt. ¶¶ 67; 185.) Although Ms. Perkin and the Committee considered evidence from countless other witnesses who were not in the room on the night of the Incident, namely, C.B., M.M., D.J. F.T., C.W. and "Juliana Amarah," (Cmplt. ¶¶ 62, 88) the University failed to invite o the hearings anyone other than Plaintiff, Jane Doe, L.B., D.J. and B.R. (Cmplt. ¶ 52.) Plainti f was unable to rebut the misleading character evidence submitted against him by such witnesses who were not present at the time of the Incident (Cmplt. ¶ 83, 85), his concerns about the vera ity of "Juliana Amarah's" Facebook messages went ignored, and he was unable to question Jane Doe about factual inconsistencies raised by the Facebook messages. (Cmplt. ¶¶ 88, 185. As a result, John Doe was denied the opportunity to thoroughly cross-examine all witnesses against him (Cmplt. ¶ 185), and he was denied the opportunity to effectively and fully prepare and be hea d in his defense. (Cmplt. ¶¶ 67; 185.) Despite the overwhelming evidence from percipient witnesses supporting Plaintiff's defense that Jane Doe was not incapacitated during the time of their se ual encounter, Plaintiff was still found responsible of sexual misconduct. (Cmplt. ¶¶ 73-76.) The University's finding was in violation of Plaintiff's due process rights guaranteed by the Fourteenth Amendment.

## F. THE COMPLAINT STATES STATE LAW CLAIMS

### 1. The Complaint States A Breach of Contract Claim.

The Regents' argument that no express contract has been for ied by the policies between Plaintiff and the University completely misses the point. (Regents M m. 20.) Whether express or implied, courts have uniformly held that a contract between an educati nal institution and a student "confers duties upon both parties which cannot be arbitrarily disreg rded and may be judicially enforced." *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4 th 809, 826, 67 Cal. Rptr. 3d 635, 648 (2007) (student's fee dispute constituted a specific promi e under student's breach of contract claim) (citing *DeMarco, supra,* at pp. 361–362). The schoo 's failure to uphold specific

promises contained in its contract with the student will give rise to a cause of action for breach of that specifically promised educational service. *Id.*; *CenCor, Inc. v. Toman* (Colo.1994) 868 P.2d 396; *Reynolds v. Sterling College, Inc.* (2000) 170 Vt. 620, 621, 750 A.2d 1020, 1022. The student-college relationship is essentially contractual in nature. *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 38 (D. Me. 2005) (citing *Mangla v. Brown Univ.*, 135 F.3d 80, 83 1st Cir. 1998); *Goodman v. President & Trs. of Bowdoin Coll.*, 135 F.Supp.2d 40, 55 (D.Me.2001).

There is no comparison between the instant case, which involved allegations of sexual misconduct with that of campus protests (*Goldberg*, 248 Cal. App. 2d 867) or cheating in a math class (*Anderson*, 22 Cal.App.3d 763). Clearly, what is at stake in *Goldberg* and *Anderson* was much less significant than what Plaintiff has endured, namely, being labeled and stigmatized as a sexual predator and having his education record tarnished forever. *Doe v. Middlebury College*, No. 1:15-cv-00192; *King v. DePauw Univ.*, 2014 WL 4197507 at *13; *Doe v. Salisbury Univ.*, 2015 WL 3478134, at *9.

Plaintiff has indisputably stated a cause of action for breach of contract against the University. The Complaint states that upon Plaintiff's acceptance to the University, the parties entered into an express or implied contract by way of the policies. (Cmplt ¶ 19.) Under the policies, the University agreed to the following: (i) provide "a prompt, fair, and impartial investigation and resolution" during student conduct proceedings (Cmplt. ¶ 27); (ii) afford students procedural due process (Cmplt. ¶ 20); (iii) proper enforcement of University policies and regulations (*Id.*); (iv) apply a preponderance of the evidence standard (*Id.*); (v) maintain the highest standards of quality, institutional integrity, and freedom (*Id.*); and (vi) create and maintain an atmosphere free of harassment, exploitation, or intimidation (*Id.*). Plaintiff accepted the terms of the policies by his payment of tuition. (Cmplt. ¶ 143.)

However, Plaintiff did not receive procedural due process where he was denied the opportunity to thoroughly cross-examine all witnesses against him (Cmplt. ¶ 185), denied the

opportunity to effectively and fully prepare and be heard in his defense (Cmplt. ¶¶ 67; 185), and deprived of his right to the assistance of counsel (Cmplt. ¶¶ 67; 185). Plaintiff did not receive a fair and impartial investigation or resolution in light of the fact that he was found responsible of sexual assault, despite the overwhelming evidence from percipient witnesses that Jane Doe was not incapacitated during the time of her sexual encounter with Plaintiff. The University's student conduct process did not demonstrate the highest standards of quality or integrity and allowed Plaintiff to be subject to harassment by Jane Doe's false complaint of sexual assault.

Every contract includes an implied covenant of good faith and fair dealing which "precludes each party from engaging in conduct that will deprive the other party of the benefits of the agreement." *Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal. App. 4th 299, 314, 61 Cal. Rptr. 2d 614 (1997); *Harm v. Frasher*, 181 Cal. App. 2d 405, 415, 5 Cal. Rptr. 367, 373 (1960); *see also*, Restatement (Second) of Contracts § 205. Based on the foregoing, Plaintiff has sufficiently alleged that the University breached the covenant of good faith and fair dealing in the parties' contracts.

## 2. **Plaintiff's Estoppel and Reliance Claim Is Sufficiently Pleaded.**

Absent a determination that the policies created a contract between the parties, Plaintiff has alternatively pleaded the elements of promissory estoppel. A claim of promissory estoppel is allowed where injustice can be avoided only by enforcement of the promise, this usually occurring where the plaintiff has made a complete and substantial change of position in reliance upon the promise. *De Zemplen v. Home Fed. Sav. & Loan Ass'n*, 221 Cal. App. 2d 197, 207 34 Cal. Rptr. 334 (Ct. App. 1963); Restatement (Second) of Contracts § 90.

The claim that a governmental entity may not be sued under a theory of promissory estoppel is not without exception. In exceptional cases, or where justice and right requires, a governmental body may be bound by estoppel. *San Diego Cnty. v. California Water & Tel. Co.*, 30 Cal. 2d 817,

825, 186 P.2d 124, 130 (1947); *Farrell v. Placer Cnty.*, 23 Cal. 2d 624, 45 P.2d 570 (1944); *City of Los Angeles v. Cohn*, 101 Cal. 373, 378, 35 P. 1002, 1004 (1894).

Asserting that the policies give the Regents the power to act with egard to discipline (Regents Mem. 21) is ignorant of the fact that Plaintiff's breach of contract cau e of action, and alternative theory for promissory estoppel are based upon the University's fai ure to uphold specifically identified policies, i.e. promises. (Cmplt. ¶¶ 20-30, 131) In the po icies, the University made promises and representations that it would provide Plaintiff with a fair o portunity to defend himself from Jane Doe's false claim of sexual misconduct, upon which Plaintifi relied to his detriment. *See*, Section III (A), *supra*. As a result of the University's discriminatory acti ns, Plaintiff was wrongfully found responsible of "sexual misconduct," he sustained a two-quarter s ispension on his record, and his future plans for law school are greatly compromised.

## 3. The Complaint States Claims for Negligence and NIED.

In response to Plaintiff's tort claims, the Regents assert the det nse of immunity under the California Torts Claims Act, Cal. Gov't Code 815. (Regents Mem. 23-3 l.) First, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is addres ed in Section III(A), *supra*, and is not a tort claim; at no point did Plaintiff assert a case of actic 1 for *tortious* breach of the implied covenant of good faith and fair dealing.

Also, federal claims, such as civil rights violations, 42 J.S.C. § 1983, or gender discrimination, Title IX, 20 U.S.C. §§ 1681, *et seq.*, are not subject to the California Torts Claims Act. *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 89S, 188 P.3d 629, 643 (2008) (Section 815 abolishes all common law or judicially declared forms o liability for public entities, except for such liability as may be required by the state or federal const tution). Since Plaintiff's tort claims for negligence and negligent infliction of emotional distress aros from the University's duties under Title IX, such claims fall under the same exception.

1   A cause of action for negligence and negligent infliction of emotional distress under

2   California law requires: (1) a legal duty to use due care, (2) a breach of the duty, (3) a reasonably

3   close causal connection between defendant's breach and the resulting injury, and (4) loss or damage

4   to the plaintiff. *Ahern v. Dillenback*, 1 Cal. App. 4th 36, 1 Cal. Rptr 2d 339 (1991); *Lawson v.*

5   *Mgmt. Activities, Inc.*, 69 Cal. App. 4th 652, 656, 81 Cal. Rptr. 2d 745, 748 (1999) (negligent

6   infliction of emotional distress is not analyzed as an independent tort, and carries with it the same

7   elements as traditional negligence).

8

9   The imposition of a duty presents a question of law for the court . *Vandermost v. Alpha Beta*

10  *Co.*, 164 Cal. App. 3d 771, 210 Cal. Rptr. 613 (Ct. App. 1985). In California, each person owes a

11  duty of care and is liable for injuries caused by his failure to exercise reasonable care in the

12  circumstances. *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771, 248 P.3d 1170, 1174 (2011).

13  In *Doe v. Univ. of the South*, 2011 WL 1258104 (E.D. Tenn. 2011), a male student was

14  wrongly accused and found responsible of sexually assaulting a female student and expediently

15  forced out of the institution following several missteps during the conduct process. The district court

16  held that a jury could find that the University must take reasonable care in both composing and

17  implementing a conduct process, and that failure to do so breaches the duty of reasonable care:

18

19  As in [*Atria v. Vanderbilt Univ.*, 142 F. App'x 246 (6th Cir.2005)], in this case a jury could
    find that the harm caused by the University's allegedly and arguably haphazard

20  implementation of its own Sexual Assault Policies was foreseeable, especially where here,
    as there, the harm was severe: a wrongful conviction by a disciplinary committee.

21

22  *Doe v. Univ. of the South*, 4:09-CV-62, 2011 WL 1258104 *21.

23  Tennessee, like California, recognizes a duty of care to avoid reasonably foreseeable harm to

24  others. *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal. 3d 382, 399, 525 P 2d 669 (1974); Restatement

25  (Second) of Torts § 291 (1965)). As in *Doe v. Univ. of the South*, here, a jury could find that the

26  University must take reasonable care in both composing and implementing a conduct process, and

27  that failure to do so makes for a breach of the duty of reasonable care.

28

22

1    The University's standard of care is informed by case law, the ins itution's own rules, custom

2    and practice in the industry and regulations. *Doe v. Cutter Biological, Inc., a Div. of Miles Labs.,*

3    *Inc.*, 971 F.2d 375, 383 (9th Cir. 1992) (evidence of custom, usage, or ndustry practice is relevant

4    in determining whether a particular defendant has met the appropriate standard of care); *Kentucky*

5    *Fried Chicken of Cal., Inc. v. Superior Court*, 14 Cal. 4th 814, 824, 927 P.2d 1260, 1266 (1997) (in

6    particular situations a more specific standard [of care] may be establishec by judicial decision, statute

7    or ordinance). It follows that the University does owe a duty of car to Plaintiff to conduct its

8    disciplinary proceedings in a reasonable manner, without a prejudicial a nd haphazard application of

9    its policies with respect to Plaintiff.

10

11    Specifically, under Title IX, the University owed Plaintiff a luty to provide, *inter alia*,

12    "[a]dequate, reliable, and impartial investigation of complaints, includii g the opportunity to present

13    witnesses and other evidence." *See,* U.S. Department of Education Ofl ce for Civil Rights Revised

14    Sexual Harassment Guidance, January 2001, p. 20. This duty include 1 a duty to protect Plaintiff

15    from unreasonable risk of harm stemming from the false allegations c f sexual misconduct lodged

16    against him by Jane Doe, which amounts to a crime under California sta te law.

17

18    The University breached this duty, causing significant life-alterir g damages to Plaintiff. *King*

19    *v. DePauw Univ.*, 2014 WL 4197507 at *13. The University was aware c f key exculpatory witnesses,

20    L.B., D.J. and B.R. (Cmplt. ¶¶ 52, 73), who attested to Jane Doe's lack ol incapacitation just moments

21    before she had sexual intercourse with Plaintiff, yet chose to rely upon w tnesses who did not observe

22    her in that room, including one witness who was alleged to be a fictitio is individual (Cmplt. ¶¶ 88-

23    89, 185.) The University failed to consider relevant character or credibil ty evidence about Jane Doe,

24    yet relied upon damaging character evidence submitted by non-percip ent witness against Plaintiff

25    (Cmplt. ¶¶ 81-83.) Plaintiff was denied the opportunity to thoroughly cross-examine all witnesses

26    against him (Cmplt. ¶ 185), and he was unable to effectively and fully prepare and be heard in his

27    defense. (Cmplt. ¶¶ 67; 185.) The University's finding of responsit ility for sexual misconduct

28

Case 2:15-cv-02478-SVW-JEM  Document 33  Filed 10/26/15  Page 31 of 33  Page ID #:234

1    against Plaintiff constituted negligence in breach of its duties unde: Title IX, and has caused

2    emotional damages to Plaintiff as a result.

3    ### G. Declaratory Judgment.

4         There is no dispute that the district court has discretion and autho rity to declare the rights and

5    other legal relations of any interested party seeking such declaratio: under 28 U.S.C. § 2201.

6    *Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 669 (9th Cir. 2005).

7         However, unlike the plaintiff in *Doe v. Univ. of the South,* 687 F. Supp. 2d 744, 759 (E.D.

8    Tenn. 2009) who unsuccessfully sought a declaratory judgment that t e University's policies and

9

10   Procedures governing Sexual Assault Allegations violates the Cler Act, Plaintiff's requested

11   declaration would settle the underlying controversy between the parties By seeking a reversal of the

12   outcome of the student hearing, restoring his reputation, expunging hi records and ruling that the

13   University's policies are unconstitutional as applied, Plaintiff's requ ests go to the heart of the

14   underlying dispute, namely, that the University mishandled his case and :ame to an erroneous finding

15   based upon a discriminatory animus. (Cmplt. ¶ 194.)

16

17   ## II. ALTERNATIVELY, LEAVE TO AMEND IS W, RRANTED

18        Notwithstanding the foregoing, should the Court determine that 'laintiff's Title IX claim was

19   not adequately pleaded, Plaintiff hereby seeks leave to amend the Com ilaint. Fed. R. Civ. P. 15(a);

20   *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 22. (1962); *Lopez v. Smith,* 203

21   F.3d 1122, 1127 (9th Cir.2000) *(quoting Cook, Perkiss and Liehe, Inc. v. Northern California*

22   *Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir.1990). Based on the fi regoing, and given the great

23   public interest in education decisions involving campus sexual assaul : such as the one at bar, the

24   Court should exercise its discretion to grant Plaintiff leave to amend hi Complaint.

25

26   ## III. CONCLUSION

27        Based on the foregoing, the Regents' motion to dismiss shot ld be denied, and the Court

28   should order such further and other relief as deemed just and proper.

24

Case 2:15-cv-02478-SVW-JEM   Document 33   Filed 10/26/15   Page 32 of 33   Page ID #:235

1

2

3   Dated: October 26, 2015                 GINZBURG & BRONSHT YN, LLP

4

5

6                                           By:      _yasha bronshteyn_

7                                                 Yasha Bronshteyn, Es .
                                                  Attorney for Plaintiff, IOHN DOE

8

9   Dated: October 26, 2015                 WARSHAW BURSTEIN, I LP

10

11

12                                          By: _____

13                                               Kimberly C. Lau, Esq
                                                 Attorney for Plaintiff, JOHN DOE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                                     25

1 | PROOF OF SERVICE

2 | (C.C.P. 1013A, 2015.5)

3

4 | **STATE OF CALIFORNIA**

5 | I am employed in the county of Los Angeles, State of California. I am over the age of

6 | eighteen years and not a party to the within action; my business address is 11111 Santa Monica

7 | Blvd Ste 1840, Los Angeles, CA 90025.

8 | On October 26, 2015, I served the foregoing document, PLAINTIFF'S OPPOSITION TO

9 | THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS described

10 | as on the interested parties in this action by ELECTRONIC SUBMISSION of the document(s) via

11 | Portable Document Format (.pdf) by uploading such documents using the Court's CM/ECF case

12 | filing system which automatically generates a Notice of Electronic Filing or NEF which allows

13 | registered e-filers to retrieve the document(s) automatically. Notice will be electronically mailed

14 | to:

15 | Jonathan D. Miller, Esq.
Alison M. Bernal, Esq.

16 | Jonathan@nps-law.com
alison@nps-law.com

17

18 | Attorneys for Defendant, REGENTS OF THE UNIVERSITY OF CALIFORNIA

19 | __X__ **(Federal)** I certify under penalty of perjury under the laws of the United States of America

20 | that the foregoing is true and correct.

21

22 | Executed on October 26, 2015 at Los Angeles, California.

23

24

25 | *yasha bronshteyn*

26 | Yasha Bronshteyn, Esq.                    **Signature**

27 | Attorney for Plaintiff, JOHN DOE

28