1
YASHA BRONSHTEYN, ESQ. (SBN 210248)
GINZBURG & BRONSHTEYN, LLP
11111 Santa Monica Blvd., #1840
2
Los Angeles, CA 90025-3352
Telephone number:     (310) 914-3222
3
Facsimile number:     (310) 914-4242
4
WARSHAW BURSTEIN, LLP
555 Fifth Avenue
5
New York, NY 10017
Telephone number:     (212) 984-7700
6
Facsimile number:     (212) 972-9150
7

8
## UNITED STATES DISTRICT COURT
9
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

11

| | |
|---|---|
| John Doe, | CASE NO.: 2:15 CV 02478 (SVW)(JEM) |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS |
| v. | |
| Regents of the University of California; Defendant, | DATE: November 23, 2015 TIME: 1:30 p.m. CTRM.: 550 |
| Defendant. | TRIAL DATE:  None set |
| | **Judge Stephen V. Wilson** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS

Joint Stipulation                                        Case No. 2:15 cv 02478 (SVW)(JEM)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...............................................................................iii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS.................................................................................. 1

I.    ARGUMENT............................................................................................. 3

   POINT A
          THE LEGAL STANDARD GOVERNING
          MOTION TO DISMISS ................................................................... 3
   POINT B
          WRIT OF MANDAMUS IS NOT PLAINTIFF'S
          EXCLUSIVE REMEDY .................................................................. 4
   POINT C
          THE UNIVERSITY ACTED WITHOUT JURISDICTION .............. 6
   POINT D
          THE COMPLAINT STATES A CLAIM
          OF TITLE IX DISCRIMINATION ................................................... 9

          1.   The Controlling Title IX Standard................................................ 9
          2.   Plaintiff Has Stated a Claim Under Title IX – Erroneous Outcome.............11
          3.   The Allegations State a Claim of Selective Enforcement.................…...........14
          4.   A Claim Under California Civil Code §51 (Unruh Act) Has
               Been Stated………………………………………………….....14
   POINT E
          THE PLAINTIFF HAS STATED CLAIMS
          UNDER 42 U.S.C. § 1983 FOR DUE
          PROCESS VIOLATIONS.................................................................. 15
   POINT F
          THE COMPLAINT STATES
          STATE LAW CLAIMS………………………………….................18

          1.   The Complaint States a Breach of Contract Claim………………................18
          2.   Plaintiff's Estoppel and Reliance Claim is Sufficiently Pleaded…...........20
          3.   The Complaint States Claims for Negligence and NIED……………….21
   POINT G
          DECLARATORY JUDGMENT ....................................................... 24

II.    ALTERNATIVELY LEAVE TO AMEND IS WARRANTED ....................................... 24

III.   CONCLUSION ................................................................................................. 24

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                    **Page Number**

3

4

*Adler v. Los Angeles Unified School Dist.*

5
    98 Cal.App.3d 280, 288 (1979) ------------------------------------------------- 6

*Ahern v. Dillenback*,

6
    1 Cal. App. 4th 36, 1 Cal. Rptr. 2d 339 (1991) ----------------------------------28

*Atlantica Holdings, Inc.*,

7
    2014 WL 917055------------------------------------------------------------------ 4

*Back v. Hastings On Hudson Union Free Sch. Dist.*,

8
    365 F.3d 107, 125-26 (2d Cir. 2004)------------------------------------------------17

9   *Barrett v. Forest Labs., Inc.*,
    39 F. Supp. 3d 407, 432 (S.D.N.Y. 2014 -----------------------------------------16

10  *Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007---------------------------- 4

11  *Biediger v. Quinnipiac Univ.*,
    691 F.3d 85, 96-97 (2d Cir. 2012)------------------------------------------------- 7

12  *Bleiler v. Coll. of Holy Cross*,

13
    No. CIV.A. 11-11541-DJC, 2013 WL 4714340,----------------------------------- 13,15

*Boren v. State Pers. Bd.*,

14
    37 Cal. 2d 634, 638, 234 P.2d 981, 983 (1951)----------------------------------- 8

*Cabral v. Ralphs Grocery Co.*,

15
    51 Cal. 4th 764, 771, 248 P.3d 1170, 1174 (2011-------------------------------------29

*California Toll Bridge Auth. v. Wentworth*,

16
    212 Cal. 298, 309, 298 P. 485, 489 (1931) ----------------------------------------- 8

17  *Carey ex rel. Carey v. Maine Sch. Admin. Dist. No. 17*,
    754 F.Supp. 906, 919 (D.Me.1990) ----------------------------------------------21

18  *CenCor, Inc. v. Tolman*
    (Colo.1994) 868 P.2d 396 ------------------------------------------------------24

19  *Charles S. v. Bd. of Educ.*,
    20 Cal. App. 3d 83, 93, 97 Cal. Rptr. 422 (Ct. App. 1971) ---------------------------21

20  *City of Los Angeles v. Cohn*,

21
    101 Cal. 373, 378, 35 P. 1002, 1004 (1894).-----------------------------------------27

*Cohen v. Avande, Inc.*,

22
    874 F.Supp.2d 315, 319 (S.D.N.Y. 2012) ----------------------------------------- 4

*Cohen v. Brown Univ.*,

23
    101 F.3d 155, 178-79 [1st Cir. 1996]).------------------------------------------- 12, 18

24  *Davison ex rel. Sims v. Santa Barbara High Sch. Dist.*,
    48 F. Supp. 2d 1225, 1233------------------------------------------------------19

25  *De Zemplen v. Home Fed. Sav. & Loan Ass'n*,
    221 Cal. App. 2d 197, 207------------------------------------------------------27

26  *Dixon v. Alabama State Board of Education, supra*,

27
    294 F.2d 150 (1961) ---------------------------------------------------------21

*Doe v. Cutter Biological, Inc., a Div. of Miles Labs., Inc.*,

28
    971 F.2d 375, 383 (9th Cir. 1992) ---------------------------------------------30

*Doe v. Middlebury College*,

iii

No. 1:15-cv-00192; --------------------------------------------------------------------------25
*Doe v. Regents of the Univ. of California,*
    216 Cal. App. 4th 1474, 157 Cal. Rptr. 3d 630 (2013) -------------------------------------- 6
*Doe v. Salisbury Univ.,*
    2015 WL 3478134, at *9. ------------------------------------------------------------- 22,25
*Doe v. Univ. of the South,*
    2011 WL 1258104 (E.D. Tenn. 2011 -----------------------------------------------------29
*Doe v. Univ. of the South,*
    687 F. Supp. 2d 744, 759 (E.D. Tenn. 2009) -----------------------------------------------31
*Erickson v. Pardus,*
    551 U.S. 89, 93–94 (2007)------------------------------------------------------------------ 4
*Farrell v. Placer Cnty.,*
    23 Cal. 2d 624, 145 P.2d 570 (1944)-----------------------------------------------------27
*Fielder v. Board of Education,*
    346 F.Supp. 722 (D.Neb.1972 -----------------------------------------------------------22
*Foman v. Davis,*
    371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) --------------------------------32
*Givens v. Poe,*
    346 F.Supp. 202 (W.D.N.C. 1972 -------------------------------------------------------22
*Goldberg v. Regents of Univ. of Cal.,*
    248 Cal. App. 2d 867, 873-74, ---------------------------------------------------------- 5
*Gomes v. Univ. of Maine Sys.,*
    365 F. Supp. 2d 6, 15 (D. Me. 2005--------------------------------------------- 15,20, 24
*Goodman v. President & Trs. of Bowdoin Coll.,*
    135 F.Supp.2d 40, 55 (D.Me.2001 -----------------------------------------------------25
*Gorman v. Univ. of Rhode Island,*
    837 F.2d 7, 12 (1st Cir. 1988)-----------------------------------------------------------20
*Goss v. Lopez,*
    419 U.S. 565, 574, 95 S. Ct. 729, 736, 42 L. Ed. 2d 725 (1975----------------------------- 15, 20
*Harm v. Frasher,*
    181 Cal. App. 2d 405, 415, 5 Cal. Rptr. 367, 373 (1960)--------------------------------26
*Harris v. Amgen, Inc.,*
    788 F.3d 916, 934 (9th Cir. 2015) ------------------------------------------------------ 5
*Holmes v. Grubman,*
    568 F.3d 329, 335 (2d Cir. 2009)------------------------------------------------------- 4
*John Doe v. Middlebury College,*
    No. 1:15-cv-00192 (D. Vt. Sept. 16, 2015) -----------------------------------------------22
*John Doe v. Washington & Lee Univ.,*
    No. 6:14-CV-00052------------------------------------------------------------------- 12, 17
*Kashmiri v. Regents of Univ. of California,*
    156 Cal. App. 4th 809, 826, 67 Cal. Rptr. 3d 635, 648 (2007)--------------------------------24
*Keene v. Rodgers,*
    316 F.Supp. 217, 221 (D.Me.1970 ------------------------------------------------------21
*Kentucky Fried Chicken of Cal., Inc. v. Superior Court,*
    14 Cal. 4th 814, 824, 927 P.2d 1260, 1266 (1997-----------------------------------------30
*King v. DePauw Univ.,*
    2014 WL 4197507 at *13--------------------------------------------------------22, 25, 31
*Lawson v. Mgmt. Activities, Inc.,*
    69 Cal. App. 4th 652, 656, 81 Cal. Rptr. 2d 745, 748 (1999) ------------------------------28

iv

*Littlejohn v. City of New York,*
    No. 14-1395-CV, 2015 WL 4604250, at*8 (2d Cir. Aug. 3, 2015----------------------------13

*Logan v. S. Cal. Rapid Transit Dist.,*
    136 Cal. App. 3d 116, 123, 185--------------------------------------------------------- 6

*Lopez v. Smith,*
    203 F.3d 1122, 1127 (9th Cir. 2000 -------------------------------------------------4, 32

*Mangla v. Brown Univ.,*
    135 F.3d 80, 83 (1st Cir.1998 ------------------------------------------------------------25

*Mansourian v. Regents of Univ. of Cal.,*
    602 F.3d 957, 965, n. 9 (9th Cir. 2010-------------------------------------------------- 7

*Marin v. University of Puerto Rico,*
    377 F.Supp. 613 (D.P.R.1974)------------------------------------------------------------23

*McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck,*
    370 F.3d 275, 295 (2d Cir. 2004)-------------------------------------------------------12

*McCormick ex rel. McCormick,*
    370 F.3d at 295 ---------------------------------------------------------------------------15

*Miklosy v. Regents of Univ. of California,*
    44 Cal. 4th 876, 899, 188 P.3d 629, 643 (2008----------------------------------------28

*Mills v. Board of Education,*
    348 F.Supp. 866 (D.D.C.1972) ----------------------------------------------------------22

*Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.,*
    964 F. Supp. 1369, 1389 (N.D. Cal. 1997)--------------------------------------------19

*Ocasio-Hernández v. Fortuño-Burset,*
    640 F.3d 1, 14 (1st Cir. 2011)------------------------------------------------------------16

*Parks School of Business, Inc. v. Symington,*
    51 F.3d 1480, 1484 (9th Cir. 1995) ------------------------------------------------- 4

*Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.,*
    911 F.2d 242, 247 (9th Cir. 1990) ------------------------------------------------5, ,32

*Principal Life Ins. Co. v. Robinson,*
    394 F.3d 665, 669 (9th Cir. 2005).-----------------------------------------------------31

*Reliford v. Univ. of Akron,*
    81 Ohio App. 3d 157, 158, 610 N.E.2d 521, 522 (1991);--------------------------- 9

*Reynolds v. Sterling College, Inc. (2000)*
    170 Vt. 620, 621, 750 A.2d 1020, 1022 ----------------------------------------------24

*Rodriguez v. Bethlehem Steel Corp.,*
    12 Cal. 3d 382, 399, 525 P.2d 669 (1974)--------------------------------------------29

*Rossiter v. Benoit (1979)*
    88 Cal.App.3d 706, 713-------------------------------------------------------------- 6

*San Diego Cnty. v. California Water & Tel. Co.,*
    30 Cal. 2d 817, 825, 186 P.2d 124, 130 (1947-----------------------------------------27

*San Francisco Unified Sch. Dist. v. State of California,*
    131 Cal. App. 3d 54, 65-66, 182 Cal. Rptr. 525 (Ct. App. 1982)-------------------- 7

*Sassaman v. Gamache,*
    566 F.3d 307, 313 (2d Cir. 2009)-----------------------------------------------------13

*Streit v. Bushell,*
    424 F.Supp.2d 633 (S.D.N.Y. 2006). ------------------------------------------------ 5

*Sutherland v. Barclays American/Mortgage Corp.,*
    53 Cal. App. 4th 299, 314, 61 Cal. Rptr. 2d 614 (1997 --------------------------------26

*Swierkiewicz v. Sorema N. A.,*

v

534 U.S. 506, 506-07, 122 S. Ct. 992, 994-95, 152 L. Ed. 2d 1 (2002)----------------------- 16

*Vandermost v. Alpha Beta Co.,*
    164 Cal. App. 3d 771, 210 Cal. Rptr. 613 (Ct. App. 1985) ------------------------------------- 29

*Vasquez v. Los Angeles County,*
    487 F.3d 1246, 1249 (9th Cir. 2007) ------------------------------------------------------------ 4

*Wallace v. Florida A & M Univ.,*
    433 So. 2d 600, 602 (Fla. Dist. Ct. App. 1983)------------------------------------------------- 9

*Wells v. Xavier Univ.,*
    2014 WL 972172 (S.D. Ohio Mar. 12, 2014---------------------------------------------------- 12

*Weser v. Glen,*
    190 F.Supp.2d 384, 395 (E.D.N.Y. 2002)----------------------------------------------------- 18

*Westlake Cmty. Hosp. v. Superior Court,*
    17 Cal. 3d 465, 485, 551 P.2d 410, 422 (1976);---------------------------------------------- 6,8

*Williams v. Franklin & Marshall College,*
    2000 WL 62316 at *2 (E.D. Pa. 2000---------------------------------------------------------- 12

*Wisconsin v. Constantineau,*
    400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971 --------------------------------------- 20

*Woodis v. Westark Cmty. Coll.,*
    160 F.3d 435, 440 (8th Cir. 1998 ------------------------------------------------------------- 9

*Yeasin v. Univ. of Kansas,*
    No. 113,098 ------------------------------------------------------------------------------- 9

*Yu v. Vassar College,*
    2015 WL 1499408 (S.D.N.Y. 2015 ---------------------------------------------------------- 15

*Yusuf v. Vassar College,*
    35 F.3d at 715 --------------------------------------------------------------------------- 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PRELIMINARY STATEMENT**

Plaintiff John Doe ("Plaintiff") submits this Memorandum of Law in opposition to the Regents of University of California's ("University" or "Regents") motion to dismiss ("Motion") the Complaint for failure to state a claim. The Motion should be denied in its entirety. The University had no jurisdiction to discipline Plaintiff for what constituted consensual sexual activity with Jane Doe on June 16, 2014 in a private home at Lake Tahoe, nearly 500 miles away from campus.

Even assuming that jurisdiction as properly extended, a writ of mandate is not the exclusive remedy for a student seeking redress for gender discrimination and due process violations against a California public college. Plaintiff does not merely seek to "overturn" the decision finding him responsible of the Charge; he seeks relief for the discriminatory way in which the University investigated and decided his student conduct proceeding.

Plaintiff states *bona fide* claims for relief under Title IX of the Education Amendments of 1972, 42 U.S.C. § 1983, and state law. Plaintiff's case was decided just months after six female University students filed a highly-publicized Title IX complaint with the Department of Education Office of Civil Rights (OCR) claiming that their respective sexual assault complaints were mishandled by the University. *See,* Students File Federal Complaint Alleging UCSB Mishandled Sexual Assault Cases, *available at* http://dailynexus.com/2014-09-12/students-file-federal-complaint-alleging-ucsb-mishandled-rape-case/ (last visited October 13, 2015). The Complaint details sex discrimination against Plaintiff; a male student who was found responsible of sexual assault following a fatally flawed and biased process, driven by pressure from OCR.

**STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT**

A.   **The Evening of June 16, 2014**

During the weekend of June 14-16, 2014, Plaintiff, Jane Doe and a group of their friends traveled to Jane Doe's parents' home in Lake Tahoe to celebrate the end of the school year. (Cmplt. ¶ 32.)  During the trip, Jane Doe repeatedly bragged about a "threesome" she had previously

participated in with a model and photographer in New York. (Cmplt. ¶ 34.)  On June 16, 2014, Jane Doe, L.B., and D.J. advised B.R that they wanted to engage in group sex, but only if Plaintiff was involved too. (Cmplt. ¶ 37.)  Plaintiff agreed to participate. (Cmplt. ¶ 39.)

Plaintiff and Jane Doe engaged in consensual sexual intercourse that night ("Incident"). (Cmplt. ¶¶ 44-45.)  According to accounts by Plaintiff, L.B., D.J. and B.R., at no point leading up to or through the sexual activity did Jane Doe exhibit any signs of incapacitation. (Cmplt. ¶ 73.) In fact, Jane Doe was a willing participant; she got on top of Plaintiff at one point, she kissed him passionately, she rubbed his hair during oral sex, and verbalized that she liked what he was doing. (Cmplt. ¶ 45.) The following morning, everyone joked about the night before. (Cmplt. ¶ 49.)

At the time of the Incident, Plaintiff was on a leave of absence from the University, and Jane Doe was no longer a student at the University – the semester had concluded and her transfer to Cornell University had been finalized several months prior. (Cmplt. ¶¶ 56-57.)

**B.**    **The University Charge of Non-Consensual Sex and The Investigation.**

Five months later, Plaintiff was charged with sexual assault based on the Incident, before any witnesses were ever interviewed.  (Cmplt. ¶ 50.)  At the beginning of the process, Assistant Dean Suzanne Perkin asked Plaintiff if he was "ready to take responsibility?" (Cmplt. ¶ 61.)

Ms. Perkin performed an unfair and biased investigation; she gathered evidence of text messages and Facebook messages between Jane Doe and witnesses who were not in the room and did not personally observe Jane Doe's alleged state of intoxication at the time of sexual activity (Cmplt. ¶¶ 59, 70-71.); accepted prejudicial character evidence against Plaintiff but not against Jane Doe (Cmplt. ¶¶ 70, 83-85.); ignored eye-witness accounts of Witness B.R. and Witness L.B. who both testified that Jane Doe appeared "fine," "energetic" and "bubbly" and that she "did not seem intoxicated" (Cmplt. ¶ 73.); and presented a cherry-picked summary of witness statements, omitting key, qualifying facts to support a predetermined conclusion that Jane Doe was incapable of consenting to sexual activity with Plaintiff (Cmplt. ¶ 76).

The first hearing was held on December 11, 2014 ("First Hearing") before the Sexual Violence Conduct Committee (the "Committee"). (Cmplt. ¶ 52.)  Then on December 16, 2014, the Committee re-opened the case to make additional inquiries, based on Jane Doe's last-minute inclusion of Facebook messages between herself and a non-UCSB friend who she confided in about the case. (Cmplt. ¶¶ 52, 88.)  However, Plaintiff was advised that he would not have an opportunity to make a statement or submit any evidence at the second hearing. (Cmplt. ¶ 185.)  The University insisted on scheduling a second hearing on the one date that Plaintiff's attorney advisor was unavailable, December 19, 2014 ("Second Hearing").  (Cmplt. ¶ 66.)  Despite the evidence and testimony provided, the Committee found Plaintiff responsible for sexual assault, and was sanctioned to a two-quarter suspension ("Decision"). (Cmplt. ¶ 5.)  Plaintiff's transcript and records will now reflect that he was found responsible of "sexual assault."

**C.   Plaintiff's Appeal and Damages.**

Plaintiff appealed from the Decision on January 29, 2015, where he listed numerous procedural errors, and based upon newly discovered evidence, namely, that the Facebook messages were authored by a fictitious person and fabricated by Jane Doe in an attempt to support her claims ("Appeal"). (Cmplt. ¶ 90.) However, the University denied his Appeal on February 16, 2015 without any explanation or rationale for the denial. (Cmplt. ¶ 91.) As a result of the University's actions, Plaintiff has suffered tremendous damages and faces significant losses to his future. (Cmplt. ¶ 138.)

## I. ARGUMENT

### A. THE LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

This Court, in *Atlantica Holdings, Inc.*, 2014 WL 917055 * 4, reviewed the legal standard applicable to a motion to dismiss as follows:

> In reviewing a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Cohen v. Avande, Inc.*, 874 F.Supp.2d 315, 319 (S.D.N.Y. 2012) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). The Court will not dismiss any claims pursuant Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to

state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See, Id.* at 555; *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

A Court is to consider a motion to dismiss in terms of the plaintiff's actual pleadings in the Complaint, and not in terms of a defendant's selective characterization of the facts. *Streit v. Bushell*, 424 F.Supp.2d 633 (S.D.N.Y. 2006). *Harris v. Amgen, Inc.*, 788 F.3d 916, 934 (9th Cir. 2015) (courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice).

## B.  WRIT OF MANDAMUS IS NOT PLAINTIFF'S EXCLUSIVE REMEDY

Citing to a litany of writ of mandamus case law, the Regents vigorously argue that the Complaint is legally defective by virtue of the fact that he did not seek his remedies through a writ of mandate. (Regents Mem. 1.) However, the Regents' citation (to primarily employment rights cases) is grossly misplaced in that none of these cases affirmatively hold that a writ of mandamus is the sole, exclusive remedy for Plaintiff, nor do they hold that a student claiming gender discrimination is relegated to the sole remedy of writ of mandamus. *Goldberg v. Regents of Univ. of*

*Cal.*, 248 Cal. App. 2d 867, 873-74, 57 Cal. Rptr. 463, 468 (Ct. App. 1967) (mandate is the appropriate remedy for students seeking reinstatement and challenging the First Amendment constitutionality of their suspension and dismissal); *Westlake Cmty. Hosp. v. Superior Court*, 17 Cal. 3d 465, 551 P.2d 410 (1976) (before instituting tort action for malicious prosecution, physician was first required to succeed in overturning quasi-judicial revocation of privileges in a mandamus action); *Do v. Regents of the Univ. of California*, 216 Cal. App. 4th 1474, 157 Cal. Rptr. 3d 630 (2013) (employment rights case involving former employee's action against state university for writ of mandamus challenging his termination); *Logan v. S. Cal. Rapid Transit Dist.*, 136 Cal. App. 3d 116, 123, 185 Cal. Rptr. 878, 882 (Ct. App. 1982) (employment termination proceedings precluded plaintiff from filing tort and contract action prior to seeking writ of mandate, but federal claims were properly brought in plenary action).

More importantly, none of the Regents' citations involve a plaintiff seeking relief under Title IX of the Education Amendments of 1972. In *Logan v. S. Cal. Rapid Transit Dist.*, it was held that the state may not impair federally created rights or impose conditions upon them. 136 Cal. App. 3d 116, 124, 185 Cal. Rptr. 878, 883 (citing *Adler v. Los Angeles Unified School Dist.* (1979) 98 Cal.App.3d 280, 288, 159 Cal.Rptr. 528; *Graham v. City of Biggs* (1979) 96 Cal.App.3d 250, 255–256, 157 Cal.Rptr. 761; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 713, 152 Cal.Rptr. 65.)). In fact, federal law controls where a method of review under federal statute provides the aggrieved party with more protection or broader scope of review than is available under Cal. Code of Civ. Proc. § 1094.5. *San Francisco Unified Sch. Dist. v. State of California*, 131 Cal. App. 3d 54, 65-66, 182 Cal. Rptr. 525 (Ct. App. 1982) (Section 1094.5 procedure was unavailable to review administrative decisions under the Education of All Handicapped Children Act absent waiver or on other special circumstances).

Plaintiff's action is premised on the overall mishandling of his student conduct proceeding as a result of gender discrimination in violation of Title IX and state law, not, as the Regents argue,

1   on "re-trying" his student conduct case or overturning the decision based on the deficient record

2   below. Like the Education of All Handicapped Children Act (20 U.S.C. § 1401, *et seq.*) in *San*

3   *Francisco Unified Sch. Dist.*, under Title IX, the University has accepted federal financial assistance

4   in exchange for its agreement to abide by certain duties and responsibilities, namely, to refrain from

5   discriminating against students on the basis of gender with respect to any education program. 20

6   U.S.C. §§ 1681, *et seq.* Title IX affords students procedural safeguards relating to cases of sexual

7   assault, including the right to an adequate, reliable and impartial investigation, right to present

8   evidence and witnesses, right to due process, right to appeal any determination, and the right to "bring

9   a civil action with respect to the complaint presented pursuant to this section. *Mansourian v. Regents*

10  *of Univ. of Cal.*, 602 F.3d 957, 965, n. 9 (9th Cir. 2010) (OCR's Title IX regulations interpret the

11  statute and are entitled to *Chevron* deference); *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 96-97 (2d

12  Cir. 2012) (substantial deference given to OCR's interpretation of Title IX's implementing

13  regulations).

14

15          Alternatively, should the Court be inclined to agree that Plaintiff must overturn the

16  underlying proceeding through a writ of mandamus procedure prior to seeking relief on his state law

17  claims, Plaintiff submits that his complaint "could conceivably be found sufficient to warrant treating

18  the complaint as a petition for writ of mandate" and that the Court may remand the action to the

19  Superior Court of California, County of Santa Barbara accordingly. *Westlake Cmty. Hosp. v.*

20  *Superior Court*, 17 Cal. 3d 465, 485, 551 P.2d 410, 422 (1976); *Boren v. State Pers. Bd.*, 37 Cal. 2d

21  634, 638, 234 P.2d 981, 983 (1951) (it is unimportant that the pleading is not formatted as a petition

22  for mandamus or certiorari, so long as plaintiff states facts entitling him to some type of relief);

23  *California Toll Bridge Auth. v. Wentworth*, 212 Cal. 298, 309, 298 P. 485, 489 (1931) (court elected

24  to treat action as writ of mandate, despite parties' failure to submit action under appropriate statutes).

25

26

27  **C. THE UNIVERSITY ACTED WITHOUT JURISDICTION**

28

Citing to a Maryland Attorney General Opinion, 74 Md. Op. Atty. Gen. 147 (Opinion No. 89-002), the Regents claim that jurisdiction over the Incident was proper, despite compelling facts against same. (Regents Mem. 7; Cmplt. ¶¶ 56-57.) The Regents' citation fails to note that the full Opinion requires that the state university provide *constitutional safeguards that apply to all disciplinary actions* before it discipline a student for off-campus misconduct.   74 Md. Op. Att'y Gen. 147 (1989). The Opinion also details the constitutional limitations to off-campus discipline:

> An educational institution may discipline its students for prohibited conduct, whether it occurs on campus or off, "so long as there is no invidious discrimination, no deprival of due process, no abridgement of a right protected in the circumstances, and no capricious, clearly unreasonable or unlawful action employed...." General Order on Judicial Standards, 45 F.R.D. at 141

74 Md. Op. Att'y Gen. 147 (1989) (citing General Order on Judicial Standards, 45 F.R.D. at 141). Off-campus discipline must be based upon reasonably clear rules so that the student is on notice of what conduct would be considered a violation, and the school "may not arbitrarily discriminate in the range and type of penalties or in the procedural safeguards afforded various classes of offenders." 74 Md. Op. Att'y Gen. 147 (1989).

Generally, courts uphold off-campus student discipline where the student was convicted of a crime, and the school policies specifically provided for off-campus discipline. *Reliford v. Univ. of Akron*, 81 Ohio App. 3d 157, 158, 610 N.E.2d 521, 522 (1991); *Wallace v. Florida A & M Univ.*, 433 So. 2d 600, 602 (Fla. Dist. Ct. App. 1983); *Woodis v. Westark Cmty. Coll.*, 160 F.3d 435, 440 (8th Cir. 1998). However, there is no criminal conviction at issue here in Plaintiff's case.

In *Yeasin v. Univ. of Kansas*, No. 113,098, 2015 WL 5617617 (Kan. Ct. App. Sept. 25, 2015), the court overturned a student's expulsion where the University erroneously interpreted the Student Code as giving it jurisdiction to discipline off-campus conduct. As the *Yeasin* Court explained, the purpose of publishing policies is to provide students with advance notice of what standards of conduct are expected:

1   The University's Student Code and sexual harassment policy controls
    the issues arising in this case. The purpose of the Student Code is to
2   outline the rights of students and many of the standards of conduct
    expected within the University's community. The Student Code
3   advises that students must "adhere to all published rules, regulations
    and policies" and the failure to do so may subject a student to
4   disciplinary action. The record on appeal discloses that posttrial, the
5   University advised the district court that in light of its decision, the
    Student Code has been revised. Those revisions are not in the record
6   and they did not affect the district court's decision. We do not consider
7   those revisions either.

8   *Yeasin*, No. 113,098, 2015 WL 5617617, at *12.

9       By its own policies, the University was divested of jurisdiction over the Incident given the

10  overwhelming factors against exercising jurisdiction. The Code states that the University may

11  exercise jurisdiction over student conduct that occurs off University property in *certain situations*.

12  In considering whether to exercise off campus jurisdiction, a variety of factors are considered: (1)

13  whether the alleged victim is a member of campus community; (2) whether a crime has been reported

14  to the criminal authorities; (3) the risk of future harm involved; and (4) whether the off-campus

15  conduct is part of a series of actions that occurred both on and off campus. (Cmplt. ¶ 55.) Any request

16  to extend the University's jurisdiction beyond the typical borders must be reviewed by the Associate

17  Dean for Judicial Affairs, Dean of Students, Vice Chancellor for Student Affairs and a committee

18  composed of both faculty members and students. (Student Code of Conduct, p. 25.) While certain

19  off-campus behavior is automatically subject to the Code, the Code does not state that the

20  aforementioned factors are eliminated from consideration. (*Id.*)

21

22      In its Decision, the Committee does not even acknowledge consideration of the

23  aforementioned factors, nor does it confirm that the requisite review was obtained by the University

24  prior to commencing an investigation. (Cmplt. ¶¶ 55-58.) Notably, the Incident occurred during

25  summer break, at a private home located several hundred miles away from campus and was not

26  school-sponsored in any way. (Cmplt. ¶ 56.) At the time of the Incident, Plaintiff was not a current

27

28

student at the University; he was on a leave of absence, had not taken a class in at least six months, and was inactive with the Mock Trial team since March, 2014. (Cmplt. ¶ 56.) Similarly, Jane Doe was no longer a student at the University, as the semester had concluded and her transfer to Cornell University had been finalized several months prior. (Cmplt. ¶ 57.) Evidently, neither the alleged victim nor the accused student was a member of the campus community. Moreover, a crime was not reported to the criminal authorities, and there was no risk of future harm to Jane Doe since she had already finalized her transfer to a different school. Additionally, there was no evidence that the Incident was part of a "series of actions." Consequently, none of the factors that would permit the University to exercise its jurisdiction over the Incident, pursuant to its *own* Code of Conduct, were present in this matter, and its decision to proceed anyway was arbitrary and capricious.

Nothing about the University's policies clearly notified Plaintiff that he would be subject to discipline for his alleged conduct during a six-month leave of absence with a non-student, on summer break, occurring off-campus, on private property, at a non-school sponsored. *Yeasin*, 2015 WL 5617617, at *12; 74 Md. Op. Att'y Gen. 147. Certainly, Title IX was not intended to extend to activity in locations removed from the school unless both parties attend that school thereby creating a potentially hostile environment. *See,* 20 U.S.C. §§ 1681, *et seq.*

## D.  THE COMPLAINT STATES A CLAIM OF TITLE IX DISCRIMINATION

Citing to the pleading standards of *Twombly* and *Iqbal*, the Regents contend that Plaintiff's Title IX claim must fail because his allegations of gender discrimination are conclusory and do not give rise to a plausible inference of gender bias. (Regents Mem. 10-11.) However, critical examination of the allegations as a whole and the controlling Title IX standard leads to the contrary conclusion that the Complaint does sufficiently state a Title IX claim.

### 1.  The Controlling Title IX Standard.

In *Yusuf v. Vassar College*, 35 F.3d at 715, the Second Circuit held that the attack of a student conduct proceeding on grounds of gender bias can be expected to fall generally within two categories,

9

namely, erroneous outcome and selective enforcement. The *Yusuf* standard is still applied and used as the controlling legal standard for a cause of action under Title IX by other district courts. *See, John Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015); *Wells v. Xavier Univ.*, 2014 WL 972172 (S.D. Ohio Mar. 12, 2014); *see also, Williams v. Franklin & Marshall College*, 2000 WL 62316 at *2 (E.D. Pa. 2000).

A Title IX claim is stated when the application of gender-neutral policies and practices has been influenced by gender stereotypes. *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 295 (2d Cir. 2004) (citing *Cohen v. Brown Univ.*, 101 F.3d 155, 178-79 [1st Cir. 1996]). To this end, the court in *Cohen v. Brown Univ.* stated:

> To assert that Title IX permits institutions to provide fewer athletics participation opportunities for women than for men, based upon the premise that women are less interested in sports than are men, is (among other things) to ignore the fact that Title IX was enacted in order to remedy discrimination that results from stereotyped notions of women's interests and abilities. Interest and ability rarely develop in a vacuum; they evolve as a function of opportunity and experience.... [T]o allow a numbers-based lack-of-interest defense to become the instrument of further discrimination against the underrepresented gender would pervert the remedial purpose of Title IX.

101 F.3d 155 at 178-79; *see also, Bleiler v. Coll. of Holy Cross*, No. CIV.A. 11-11541-DJC, 2013 WL 4714340, at *5 (D. Mass. Aug. 26, 2013) ("'The 'archaic assumptions' standard, which has been applied where plaintiffs seek equal athletic opportunities, finds discriminatory intent in actions resulting from classifications based upon archaic assumptions about gender").

When decisions are based on invidious sex stereotypes, a reasonable jury could infer the existence of discriminatory intent. *Sassaman v. Gamache*, 566 F.3d 307, 313 (2d Cir. 2009) (analyzing gender discrimination under Title VII)[1]. At the pleading stage, however, a plaintiff need

---

[1] Since Title IX was modeled after Title VI and VII of the Civil Rights Act of 1964, courts regularly consider Title VI and VII legal precedent as guidance for the application of Title IX. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 678, 99 S. Ct. 1946, 1948, 60 L. Ed. 2d 560 (1979).

only allege facts to give plausible support to a minimal inference of discriminatory motivation. *Littlejohn v. City of New York*, No. 14-1395-CV, 2015 WL 4604250, at*8 (2d Cir. Aug. 3, 2015).

### 2. **Plaintiff Has Stated A Claim Under Title IX – Erroneous Outcome.**

The Regents cite to *Yusuf* for the kind of allegations supporting a Title IX sex discrimination claim, namely, gender biased statements by members of the disciplinary tribunal or pertinent university officials, or patterns of decision-making that showed the influence of gender bias. (Regents Mem. 10.); 35 F.3d at 715. But when citing to such examples, the Second Circuit never stated that it was presenting an exhaustive list of qualifying facts, nor did it hold that the allegations in the complaint should be viewed out-of-context or in a vacuum when analyzing the plausibility of a Title IX claim. The Regents' over-reading of the *Yusuf* holding is unwarranted here.

The allegations of the Complaint set forth the University's discriminatory conduct on the basis of Plaintiff's male gender. A cause of action for intentional sex discrimination in violation of Title IX is pleaded in ¶¶ 83-93; 114-127, including specific facts going to gender bias in the way Plaintiff's guilt was presumed by Ms. Perkin from the outset, the way the case was investigated, the types of evidence received and ignored, the improper placement of an additional burden of proof on Plaintiff, the consideration of Plaintiff's prior sexual history as evidence of his guilt with respect to Jane Doe, and the gender-biased patterns of decision-making at the University.

Plaintiff's allegations, when reviewed as a whole, describe how the investigative process at the University made a credibility finding in favor of Jane Doe, notwithstanding the fact that the three other individuals who were in the room during that time did not observe Jane Doe to be refusing consent, or showing signs of incapacitation during the time period leading up to and through her sexual activity with Plaintiff. More importantly, when reviewing the allegations within the correct context, Plaintiff has pleaded that the University has knowledge of the fact that sexual misconduct claims are brought by female students against male students, yet has made it procedurally and factually insurmountable for a male student to defend himself against such a claim since (a) there is

a presumption of guilt against male students, evidenced by Ms. Perkin's comment (Cmplt. ¶¶ 61, 116, 123); (b) the University had knowledge that there is a higher incidence of female complainants against male students (Cmplt. ¶ 126); and (c) the University's burden of proof may be satisfied by the testimony of the complainant and individuals who were not even present during the Incident (Cmplt. ¶ 69-70). *McCormick ex rel. McCormick*, 370 F.3d at 295. The allegations of ¶¶ 83-93; 114-127 clearly satisfy the requirement to connect a flawed outcome to gender bias according to *Yusuf*.

Unlike *Blieler v. Holy Cross*, 2013 WL 4714340 (D. Mass. 2013) or *Yu v. Vassar College*, 2015 WL 1499408 (S.D.N.Y. 2015), which were decided on summary judgment, the instant case must be analyzed under the motion to dismiss standard. First, *Blieler* and *Yu* involve private universities where the concept of "due process" has no constitutional underpinning, as compared to state universities such as the University. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736, 42 L. Ed. 2d 725 (1975) (Students facing suspension of 10 days or less must be given oral or written notice of the charges against him and, an explanation of the evidence against him, and an opportunity to present his version; longer suspensions or expulsions may require more formal procedures); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 15 (D. Me. 2005) ("A student 'facing expulsion or suspension from a public educational institution is entitled to the protections of due process'").

Next, unlike the plaintiffs in *Blieler* and *Yu*, Plaintiff has adequately pleaded gender discrimination based on the University's diametric treatment of Plaintiff versus Jane Doe during the investigation process (Cmplt. ¶¶ 83-93), together with the statistical disparities and stereotypes, which influenced Ms. Perkin's bias and recommendation that Plaintiff be found "responsible" (Cmplt. ¶¶ 100-112). The erroneous outcome and discriminatory animus are adequately pleaded when considered in the context of Ms. Perkin's comment at the outset of the disciplinary process, "Are you ready to take responsibility?", that she charged Plaintiff with sexual assault before speaking to any witnesses, and the fact that the University is recently under investigation by OCR for mishandling sexual assault complaints filed by six female students. *See,* Students File Federal

1  Complaint  Alleging  UCSB  Mishandled  Sexual  Assault  Cases,  *available  at*

2  http://dailynexus.com/2014-09-12/students-file-federal-complaint-alleging-ucsb-mishandled-rape-

3  case/. At this juncture, the allegations demonstrate a good faith basis to believe that a pattern of

4  discrimination will be made clearer in discovery. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 506-

5  07, 122 S. Ct. 992, 994-95, 152 L. Ed. 2d 1 (2002); *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407,

6  432 (S.D.N.Y. 2014) (in most cases, plaintiffs will be unable to provide reliable statistics before they

7  have access to discovery); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011);

8

9  *Marrerro-Rodriguez v. Municipality of San Juan*, 677 F.3d 497, 502 (1st Cir. 2012).

10  Plaintiff's case is more akin to *John Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052,

11  2015 WL 4647996. In *John Doe v. Washington & Lee Univ.*, plaintiff's Title IX claim survived a

12  motion to dismiss where he pleaded sufficient facts to cast doubt on the accuracy of the outcome

13  reached in the proceeding against him, and how the Title IX officer's bias was material to the

14  outcome of plaintiff's case. *Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL

15  4647996, at *10; *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 125-26 (2d Cir.

16  2004) (impermissible bias of a single individual at any stage of the process may taint the ultimate

17  employment decision, even absent evidence of illegitimate bias on the part of the ultimate decision

18  maker, as long as such individual played a meaningful role in the process).

19

20  As the "Title IX Officer or other designated official," Ms. Perkin determined the scope of

21  the investigation, drafted a summary of the findings, and recommended sanctions. (Sexual

22  Harassment and Sexual Violence Policy, p. 12.) Ms. Perkin's immediate bias of Plaintiff was

23  indicated by her statement, "Are you ready to take responsibility?" and her decision to charge

24  Plaintiff before speaking to any of the witnesses. Ms. Perkin's bias tainted her investigation, which

25  requires her to write a report, summarize the evidence, and determine whether the Policy has been

26  violated. (*Id.*, p. 14.) The Committee does not engage in fact-finding, does not interview witnesses,

27  and does not have input on how witness/fact summaries are written; it's reliance upon Ms. Perkin's

28

narrative is critical to their findings. *Id*. Ms. Perkin's influence was even greater here since she was present while the Committee made deliberations. The Decision based on discriminatory animus against male students accused of sexual assault, and influenced by recent pressure from OCR.

### 3.  **The Allegations State A Claim Of Selective Enforcement**

Under the *Yusuf* standard, a claim for selective enforcement requires a plaintiff to assert that, regardless of his guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by his male gender. 35 F.3d at 715.

As indicated in the Complaint, the sanction assessed to Plaintiff was disproportionate and influenced by the gender biased investigation (Cmplt. ¶ 104), and the fact that "UCSB is knowledgeable of the fact that complaints of sexual misconduct are disproportionately lodged by females against males" (Cmplt. ¶ 79).  Title IX permits an inference of gender discrimination in light of the existence of significant gender-based statistical disparities. *Cohen v. Brown University*, 101 F.3d 155, 171 (1st Cir. 1996); *Weser v. Glen*, 190 F.Supp.2d 384, 395 (E.D.N.Y. 2002) (statistics may be used as circumstantial evidence to support an individual disparate treatment claim). When drawing all reasonable inferences in the light most favorable to Plaintiff, he has stated a claim of selective enforcement based on his male gender.

Finally, Plaintiff has not asserted a claim under the Title IX enforcing regulations issued by the U.S. Department of Education Office of Civil Rights. (Regents Mem. 9-10.) Plaintiff merely points out the numerous obligations and duties that have not been met by the University during his student conduct case, which have been outlined by the OCR. *See,* U.S. Department of Education Office for Civil Rights Revised Sexual Harassment Guidance, January 2001.

### 4.  **A Claim Under California Civil Code § 51 (Unruh Act) Has Been Stated.**

Claiming that Unruh Act is inapplicable to the Regents because it is not a "business establishment" (Regents Mem. 14-15) is simply inaccurate. California has recognized a claim under the Unruh Civil Rights Act by students against their schools for discrimination. *Davison ex rel. Sims*

*v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1233 (C.D. Cal. 1998) (motion to dismiss Unruh claim denied where plaintiff's allegations that the school failed to respond to her efforts to notify it of peer racial discrimination constituted intentional discrimination under the Act); *Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389 (N.D. Cal. 1997) (Given the broad reach that the California Supreme Court has attributed to the Unruh Act, defendants' argument that the Act was not meant to apply to sexual harassment in schools fails).

Based on the allegations in the Complaint, Plaintiff has sufficiently pleaded circumstances demonstrating that the application of gender-neutral policies and practices has been influenced by the University's gender stereotypes of who should and should not be in control during a sexual encounter, and who should and should not be credited in arriving at a determination of incapacitation during an event that is largely "he said/she said."

## E. PLAINTIFF HAS STATED CLAIMS UNDER 42. U.S.C. § 1983 FOR DUE PROCESS VIOLATIONS

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Pursuant to the Fourteenth Amendment, a student enjoys a property interest in a public education. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736, 42 L. Ed. 2d 725 (1975); *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988). The Due Process Clause forbids arbitrary deprivations of liberty where his good name, reputation, honor, or integrity is at stake because of the government's actions. *Goss*, 419 U.S. at 574, 95 S. Ct. at 736.

At a public university, a student facing serious charges of misconduct and exposure to substantial sanctions is entitled to receive notice and a fundamentally fair hearing. *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 16 (D. Me. 2005). Minimum due process requirements must be satisfied in cases involving a charge of sexual assault, which can implicate a person's good name, reputation, honor and integrity. *Goss*, 419 U.S. at 574, 95 S.Ct. 729 (quoting *Wisconsin v.*

*Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)). A finding of guilt can "have a major immediate and life-long impact on [their] personal life, education, employment, and public engagement." *Goss,* 419 U.S. at 574, 95 S.Ct. 729.

Courts have recognized the following minimum due process requirements owed to students facing major disciplinary charges:

> (1) [T]he student must be advised of the charges against him; (2) he must be informed of the nature of the evidence against him; (3) he must be given an opportunity to be heard in his own defense; and (4) he must not be punished except on the basis of substantial evidence.

*Gomes*, 365 F. Supp. 2d at 15-16 (citing *Keene v. Rodgers,* 316 F.Supp. 217, 221 (D.Me.1970) (quoting Charles Alan Wright, *The Constitution on the Campus,* 22 Vand. L.Rev. 1027, 1071–72 (1969)).

Additionally, the *Keene* court added: 1) the student must be permitted the assistance of a lawyer, at least in major disciplinary proceedings; 2) he must be permitted to confront and to cross-examine the witnesses against him; and, 3) he must be afforded the right to an impartial tribunal, which must make written findings. *Id.* (citations omitted); *see also Carey ex rel. Carey v. Maine Sch. Admin. Dist. No. 17,* 754 F.Supp. 906, 919 (D.Me.1990) (setting forth the seven minimum requirements which must be observed in student disciplinary hearings to assure the requisite balance).

First, the Regents discount Plaintiff's due process rights by claiming that he was only suspended and, therefore, was not entitled to the level of due process suggested in *Dixon v. Alabama State Board of Education, supra*, 294 F.2d 150 (1961). However, such statement ignores the salient fact that even though Plaintiff was ultimately suspended for two quarters, he was exposed to sanctions as serious as expulsion. *Charles S. v. Bd. of Educ.*, 20 Cal. App. 3d 83, 93, 97 Cal. Rptr. 422 (Ct. App. 1971) (*Dixon* dealt with expulsion of college students, so stricter standards are obviously required). Moreover, glaringly omitted from the Regents' analysis is the importance of the mark on Plaintiff's disciplinary record, namely, guilty of "sexual misconduct," which brands him as

a sexual predator. His future plans for law school will most certainly be curtailed, and any argument to the contrary is ignorant of the realities of stigmas and public perception. *John Doe v. Middlebury College*, No. 1:15-cv-00192 (D. Vt. Sept. 16, 2015) (John Doe will experience irreparable harm from the gap in his education due to a charge of sexual assault, which will last for the remainder of his professional life, and any explanation is unlikely to fully erase the stigma); *King v. DePauw Univ.*, 2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014) (any explanation is unlikely to fully erase the stigma associated with a finding of sexual misconduct when plaintiff is asked to explain the situation to future employers or graduate school admissions committees); *Doe v. Salisbury Univ.*, No. CIV. JKB-14-3853, 2015 WL 3478134, at *9 (D. Md. June 2, 2015) (the longstanding impact of being labeled responsible of "sexual assault" is so severe that monetary damages alone are insufficient).

Students have a right to counsel and right to confront and examine adverse witnesses during a disciplinary hearing involving serious charges. *See, Givens v. Poe,* 346 F.Supp. 202 (W.D.N.C. 1972) (students have right to counsel and right to confront and examine adverse witnesses); *Fielder v. Board of Education,* 346 F.Supp. 722 (D.Neb.1972) (right to cross-examine is constitutionally required; right to counsel and cross-examination by counsel is at least "good technique"). In *Mills v. Board of Education,* 348 F.Supp. 866 (D.D.C.1972), the court prescribed hearing procedures for a class of young students with special needs which procedures included the right to a representative, which could be legal counsel, and the right of the parent or guardian, *or* his representative, to confront and cross-examine witnesses. In *Marin v. University of Puerto Rico,* 377 F.Supp. 613 (D.P.R.1974), the court held that *the students* were entitled to cross-examine opposing witnesses with the assistance of retained counsel.

As outlined in the complaint, Plaintiff was not provided with a copy of the First Investigative Report until two days before the First Hearing, and was not allowed to review a copy of the Second Investigative Report until a mere three and a half hours before the Second Hearing. (Cmplt. ¶¶ 63-68; 185.) Given that Plaintiff was facing major sanctions of suspension or expulsion, the University's

unwillingness to provide the evidence it gathered or accommodate a 1-day rescheduling of the Second Hearing constituted a deprivation of Plaintiff's right to the assistance of counsel. (Cmplt. ¶¶ 67; 185.) Although Ms. Perkin and the Committee considered evidence from countless other witnesses who were not in the room on the night of the Incident, namely, C.B., M.M., D.J. F.T., C.W. and "Juliana Amarah," (Cmplt. ¶¶ 62, 88) the University failed to invite to the hearings anyone other than Plaintiff, Jane Doe, L.B., D.J. and B.R. (Cmplt. ¶ 52.) Plaintiff was unable to rebut the misleading character evidence submitted against him by such witnesses who were not present at the time of the Incident (Cmplt. ¶ 83, 85), his concerns about the veracity of "Juliana Amarah's" Facebook messages went ignored, and he was unable to question Jane Doe about factual inconsistencies raised by the Facebook messages. (Cmplt. ¶¶ 88, 185.) As a result, John Doe was denied the opportunity to thoroughly cross-examine all witnesses against him (Cmplt. ¶ 185), and he was denied the opportunity to effectively and fully prepare and be heard in his defense. (Cmplt. ¶¶ 67; 185.) Despite the overwhelming evidence from percipient witnesses supporting Plaintiff's defense that Jane Doe was not incapacitated during the time of their sexual encounter, Plaintiff was still found responsible of sexual misconduct. (Cmplt. ¶¶ 73-76.) The University's finding was in violation of Plaintiff's due process rights guaranteed by the Fourteenth Amendment.

## F.   THE COMPLAINT STATES STATE LAW CLAIMS

### 1.   The Complaint States A Breach of Contract Claim.

The Regents' argument that no express contract has been formed by the policies between Plaintiff and the University completely misses the point. (Regents Mem. 20.) Whether express or implied, courts have uniformly held that a contract between an educational institution and a student "confers duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced." *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 826, 67 Cal. Rptr. 3d 635, 648 (2007) (student's fee dispute constituted a specific promise under student's breach of contract claim) (citing *DeMarco, supra,* at pp. 361–362). The school's failure to uphold specific

promises contained in its contract with the student will give rise to a cause of action for breach of that specifically promised educational service. *Id.*; *CenCor, Inc. v. Tolman* (Colo.1994) 868 P.2d 396; *Reynolds v. Sterling College, Inc.* (2000) 170 Vt. 620, 621, 750 A.2d 1020, 1022. The student-college relationship is essentially contractual in nature. *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 38 (D. Me. 2005) (citing *Mangla v. Brown Univ.,* 135 F.3d 80, 83 (1st Cir. 1998); *Goodman v. President & Trs. of Bowdoin Coll.,* 135 F.Supp.2d 40, 55 (D.Me.2001).

There is no comparison between the instant case, which involved allegations of sexual misconduct with that of campus protests (*Goldberg*, 248 Cal. App. 2d 867) or cheating in a math class (*Anderson*, 22 Cal.App.3d 763). Clearly, what is at stake in *Goldberg* and *Anderson* was much less significant than what Plaintiff has endured, namely, being labeled and stigmatized as a sexual predator and having his education record tarnished forever. *Doe v. Middlebury College*, No. 1:15-cv-00192; *King v. DePauw Univ.*, 2014 WL 4197507 at *13; *Doe v. Salisbury Univ.*, 2015 WL 3478134, at *9.

Plaintiff has indisputably stated a cause of action for breach of contract against the University. The Complaint states that upon Plaintiff's acceptance to the University, the parties entered into an express or implied contract by way of the policies. (Cmplt ¶ 19.) Under the policies, the University agreed to the following: (i) provide "a prompt, fair, and impartial investigation and resolution" during student conduct proceedings (Cmplt. ¶ 27); (ii) afford students procedural due process (Cmplt. ¶ 20); (iii) proper enforcement of University policies and regulations (*Id.*); (iv) apply a preponderance of the evidence standard (*Id.*); (v) maintain the highest standards of quality, institutional integrity, and freedom (*Id.*); and (vi) create and maintain an atmosphere free of harassment, exploitation, or intimidation (*Id.*). Plaintiff accepted the terms of the policies by his payment of tuition. (Cmplt. ¶ 143.)

However, Plaintiff did not receive procedural due process where he was denied the opportunity to thoroughly cross-examine all witnesses against him (Cmplt. ¶ 185), denied the

opportunity to effectively and fully prepare and be heard in his defense (Cmplt. ¶¶ 67; 185), and deprived of his right to the assistance of counsel (Cmplt. ¶¶ 67; 185).  Plaintiff did not receive a fair and impartial investigation or resolution in light of the fact that he was found responsible of sexual assault, despite the overwhelming evidence from percipient witnesses that Jane Doe was not incapacitated during the time of her sexual encounter with Plaintiff. The University's student conduct process did not demonstrate the highest standards of quality or integrity, and allowed Plaintiff to be subject to harassment by Jane Doe's false complaint of sexual assault.

Every contract includes an implied covenant of good faith and fair dealing which "precludes each party from engaging in conduct that will deprive the other party of the benefits of the agreement." *Sutherland v. Barclays American/Mortgage Corp.,* 53 Cal. App. 4th 299, 314, 61 Cal. Rptr. 2d 614 (1997); *Harm v. Frasher,* 181 Cal. App. 2d 405, 415, 5 Cal. Rptr. 367, 373 (1960); *see also,* Restatement (Second) of Contracts § 205. Based on the foregoing, Plaintiff has sufficiently alleged that the University breached the covenant of good faith and fair dealing in the parties' contracts.

## 2. **Plaintiff's Estoppel and Reliance Claim Is Sufficiently Pleaded.**

Absent a determination that the policies created a contract between the parties, Plaintiff has alternatively pleaded the elements of promissory estoppel. A claim of promissory estoppel is allowed where injustice can be avoided only by enforcement of the promise, this usually occurring where the plaintiff has made a complete and substantial change of position in reliance upon the promise. *De Zemplen v. Home Fed. Sav. & Loan Ass'n,* 221 Cal. App. 2d 197, 207, 34 Cal. Rptr. 334 (Ct. App. 1963); Restatement (Second) of Contracts § 90.

The claim that a governmental entity may not be sued under a theory of promissory estoppel is not without exception. In exceptional cases, or where justice and right requires, a governmental body may be bound by estoppel. *San Diego Cnty. v. California Water & Tel. Co.,* 30 Cal. 2d 817,

825, 186 P.2d 124, 130 (1947); *Farrell v. Placer Cnty.*, 23 Cal. 2d 624, 145 P.2d 570 (1944); *City of Los Angeles v. Cohn*, 101 Cal. 373, 378, 35 P. 1002, 1004 (1894).

Asserting that the policies give the Regents the power to act with regard to discipline (Regents Mem. 21) is ignorant of the fact that Plaintiff's breach of contract cause of action, and alternative theory for promissory estoppel are based upon the University's failure to uphold specifically identified policies, i.e. promises. (Cmplt. ¶¶ 20-30, 131) In the policies, the University made promises and representations that it would provide Plaintiff with a fair opportunity to defend himself from Jane Doe's false claim of sexual misconduct, upon which Plaintiff relied to his detriment. *See,* Section III (A), *supra.* As a result of the University's discriminatory actions, Plaintiff was wrongfully found responsible of "sexual misconduct," he sustained a two-quarter suspension on his record, and his future plans for law school are greatly compromised.

### 3. **The Complaint States Claims for Negligence and NIED.**

In response to Plaintiff's tort claims, the Regents assert the defense of immunity under the California Torts Claims Act, Cal. Gov't Code 815. (Regents Mem. 23-34.) First, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is addressed in Section III(A), *supra*, and is not a tort claim; at no point did Plaintiff assert a case of action for *tortious* breach of the implied covenant of good faith and fair dealing.

Also, federal claims, such as civil rights violations, 42 U.S.C. § 1983, or gender discrimination, Title IX, 20 U.S.C. §§ 1681, *et seq.*, are not subject to the California Torts Claims Act. *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 899, 188 P.3d 629, 643 (2008) (Section 815 abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution). Since Plaintiff's tort claims for negligence and negligent infliction of emotional distress arose from the University's duties under Title IX, such claims fall under the same exception.

A cause of action for negligence and negligent infliction of emotional distress under California law requires: (1) a legal duty to use due care, (2) a breach of the duty, (3) a reasonably close causal connection between defendant's breach and the resulting injury, and (4) loss or damage to the plaintiff. *Ahern v. Dillenback*, 1 Cal. App. 4th 36, 1 Cal. Rptr. 2d 339 (1991); *Lawson v. Mgmt. Activities, Inc.*, 69 Cal. App. 4th 652, 656, 81 Cal. Rptr. 2d 745, 748 (1999) (negligent infliction of emotional distress is not analyzed as an independent tort, and carries with it the same elements as traditional negligence).

The imposition of a duty presents a question of law for the courts. *Vandermost v. Alpha Beta Co.*, 164 Cal. App. 3d 771, 210 Cal. Rptr. 613 (Ct. App. 1985). In California, each person owes a duty of care and is liable for injuries caused by his failure to exercise reasonable care in the circumstances. *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771, 248 P.3d 1170, 1174 (2011).

In *Doe v. Univ. of the South*, 2011 WL 1258104 (E.D. Tenn. 2011), a male student was wrongly accused and found responsible of sexually assaulting a female student and expediently forced out of the institution following several missteps during the conduct process. The district court held that a jury could find that the University must take reasonable care in both composing and implementing a conduct process, and that failure to do so breaches the duty of reasonable care:

> As in [*Atria v. Vanderbilt Univ.*, 142 F. App'x 246 (6th Cir.2005)], in this case a jury could find that the harm caused by the University's allegedly and arguably haphazard implementation of its own Sexual Assault Policies was foreseeable, especially where here, as there, the harm was severe: a wrongful conviction by a disciplinary committee.

*Doe v. Univ. of the South*, 4:09-CV-62, 2011 WL 1258104 *21.

Tennessee, like California, recognizes a duty of care to avoid reasonably foreseeable harm to others. *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal. 3d 382, 399, 525 P.2d 669 (1974); Restatement (Second) of Torts § 291 (1965)). As in *Doe v. Univ. of the South*, here, a jury could find that the University must take reasonable care in both composing and implementing a conduct process, and that failure to do so makes for a breach of the duty of reasonable care.

The University's standard of care is informed by case law, the institution's own rules, custom and practice in the industry and regulations. *Doe v. Cutter Biological, Inc., a Div. of Miles Labs., Inc.*, 971 F.2d 375, 383 (9th Cir. 1992) (evidence of custom, usage, or industry practice is relevant in determining whether a particular defendant has met the appropriate standard of care); *Kentucky Fried Chicken of Cal., Inc. v. Superior Court*, 14 Cal. 4th 814, 824, 927 P.2d 1260, 1266 (1997) (in particular situations a more specific standard [of care] may be established by judicial decision, statute or ordinance). It follows that the University does owe a duty of care to Plaintiff to conduct its disciplinary proceedings in a reasonable manner, without a prejudicial and haphazard application of its policies with respect to Plaintiff.

Specifically, under Title IX, the University owed Plaintiff a duty to provide, *inter alia*, "[a]dequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence." *See,* U.S. Department of Education Office for Civil Rights Revised Sexual Harassment Guidance, January 2001, p. 20. This duty included a duty to protect Plaintiff from unreasonable risk of harm stemming from the false allegations of sexual misconduct lodged against him by Jane Doe, which amounts to a crime under California state law.

The University breached this duty, causing significant life-altering damages to Plaintiff. *King v. DePauw Univ.*, 2014 WL 4197507 at *13. The University was aware of key exculpatory witnesses, L.B., D.J. and B.R. (Cmplt. ¶¶ 52, 73), who attested to Jane Doe's lack of incapacitation just moments before she had sexual intercourse with Plaintiff, yet chose to rely upon witnesses who did not observe her in that room, including one witness who was alleged to be a fictitious individual (Cmplt. ¶¶ 88-89, 185.) The University failed to consider relevant character or credibility evidence about Jane Doe, yet relied upon damaging character evidence submitted by non-percipient witness against Plaintiff (Cmplt. ¶¶ 81-83.) Plaintiff was denied the opportunity to thoroughly cross-examine all witnesses against him (Cmplt. ¶ 185), and he was unable to effectively and fully prepare and be heard in his defense. (Cmplt. ¶¶ 67; 185.) The University's finding of responsibility for sexual misconduct

against Plaintiff constituted negligence in breach of its duties under Title IX, and has caused emotional damages to Plaintiff as a result.

### G. Declaratory Judgment.

There is no dispute that the district court has discretion and authority to declare the rights and other legal relations of any interested party seeking such declaration under 28 U.S.C. § 2201. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

However, unlike the plaintiff in *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 759 (E.D. Tenn. 2009) who unsuccessfully sought a declaratory judgment that the University's policies and Procedures governing Sexual Assault Allegations violates the Clery Act, Plaintiff's requested declaration would settle the underlying controversy between the parties. By seeking a reversal of the outcome of the student hearing, restoring his reputation, expunging his records and ruling that the University's policies are unconstitutional as applied, Plaintiff's requests go to the heart of the underlying dispute, namely, that the University mishandled his case and came to an erroneous finding based upon a discriminatory animus. (Cmplt. ¶ 194.)

## II. ALTERNATIVELY, LEAVE TO AMEND IS WARRANTED

Notwithstanding the foregoing, should the Court determine that Plaintiff's Title IX claim was not adequately pleaded, Plaintiff hereby seeks leave to amend the Complaint. Fed. R. Civ. P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962); *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir.1990). Based on the foregoing, and given the great public interest in education decisions involving campus sexual assault such as the one at bar, the Court should exercise its discretion to grant Plaintiff leave to amend his Complaint.

## III. CONCLUSION

Based on the foregoing, the Regents' motion to dismiss should be denied, and the Court should order such further and other relief as deemed just and proper.

24

1

2

3   Dated: October 26, 2015           GINZBURG & BRONSHTEYN, LLP

4

5

6                                     By: _____*yasha bronshteyn*_____

7                                         Yasha Bronshteyn, Esq.
                                          Attorney for Plaintiff, JOHN DOE

8

9   Dated: October 26, 2015           WARSHAW BURSTEIN, LLP

10

11

12                                    By: _____

13                                        Kimberly C. Lau, Esq.
                                          Attorney for Plaintiff, JOHN DOE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

(C.C.P. 1013A, 2015.5)

**STATE OF CALIFORNIA**

I am employed in the county of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 11111 Santa Monica Blvd Ste 1840, Los Angeles, CA 90025.

On October 26, 2015, I served the foregoing document, PLAINTIFF'S OPPOSITION TO THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS described as on the interested parties in this action by ELECTRONIC SUBMISSION of the document(s) via Portable Document Format (.pdf) by uploading such documents using the Court's CM/ECF case filing system which automatically generates a Notice of Electronic Filing or NEF which allows registered e-filers to retrieve the document(s) automatically.  Notice will be electronically mailed to:

Jonathan D. Miller, Esq.
Alison M. Bernal, Esq.
Jonathan@nps-law.com
alison@nps-law.com

Attorneys for Defendant, REGENTS OF THE UNIVERSITY OF CALIFORNIA

  X   **(Federal)** I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on October 26, 2015 at Los Angeles, California.




Yasha Bronshteyn, Esq.                          **Signature**

Attorney for Plaintiff, JOHN DOE