1  Jonathan D. Miller (Bar No. 220848)
   jonathan@nps-law.com
2  Alison M. Bernal (Bar No. 264629)
   alison@nps.law.com
3  NYE, PEABODY, STIRLING, HALE & MILLER, LLP
   33 West Mission Street, Suite 201
4  Santa Barbara, California 93101
   Telephone: (805) 963-2345
5  Facsimile: (805) 563-5385

6  Attorney for Defendant, REGENTS OF THE
   UNIVERSITY OF CALIFORNIA
7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 John Doe,                          CASE NO.: 2:15 CV 02478(SVW)(JEM)

12         Plaintiff,                 **THE REGENTS OF THE
                                      UNIVERSITY OF CALIFORNIA'S
13     v.                             REPLY TO PLAINTIFF'S
                                      OPPOSITION TO MOTION TO
14 Regents of the University of       DISMISS**
   California;
15                                    DATE: November 23, 2015
         Defendant.                   TIME:  1:30 p.m.
16                                    CTRM.: 550
17                                    TRIAL DATE:    None set
18

19

20

21

22

23

24

25

26

27

28

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

i

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................... 1

II.   PLAINTIFF'S FAILURE TO JUDICIALLY EXHAUST GIVES
      PRECLUSIVE EFFECT TO THE UNIVERSITY'S DISCIPLINARY
      DECISION ........................................................................................ 4

III.  EVEN IF PLAINTIFF WAS NOT COLLATERALLY ESTOPPED
      FROM BRINGING THIS LAWSUIT, EACH OF HIS CLAIMS FAILS
      ........................................................................................................ 6

      A.   The University Had Jurisdiction to Discipline Plaintiff ........... 6

      B.   The Complaint Does Not Support A Claim For Violation Of Title
           IX Under Either A Selective Enforcement Or Erroneous Outcome
           Standard .................................................................................. 7

           1.   Erroneous Outcome ........................................................ 8

           2.   Selective Enforcement ................................................. 10

      C.   The Unruh Act Cause Of Action Fails To Allege The Requisite
           Gender Bias ........................................................................... 11

      D.   The Allegations In The Complaint Show Plaintiff Received All
           Due Process Rights Afforded A Student During A Conduct
           Hearing ................................................................................. 12

      E.   Each State Law Claim Fails As A Matter Of Law ................ 15

           1.   Breach of Contract ...................................................... 15

           2.   Promissory Estoppel .................................................... 16

           3.   Negligence and Negligent Infliction of Emotional Distress ...... 17

      F.   There Is No Issue For This Court To Review On Declaratory
           Judgment .............................................................................. 18

IV.   CONCLUSION ............................................................................... 19

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

REPLY TO OPPOSITION TO MOTION TO DISMISS          Case No. 2:15 CV 02478 SVW

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3    *Andersen v. Regents of the Univ. of Calif.,* 22 Cal.App.3d 763 (1972) ..............16, 18

4    *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976) ........................................4

5    *Becerra v. County of Santa Cruz,* 68 Cal.App.4th 1450 (1998)...............................19

6    *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (20074)..............................................11

7    *Berman v. Regents of the Univ. of Calif.,* 229 Cal.App.4th 1265 (2014)...............8, 9

8    *Brown v. Castleton State Coll.*, 663 F.Supp.2d 392 (D.Vt. 2009) ...........................11

9    *Campbell v. Regents of the Univ. of Calif.,* 35 Cal.4th 311 (2005)..........................13

10   *Clifford v. Regents of the Univ. of Calif.*, 2012 WL 1565702 (E.D. Cal.
       April 30, 2012).........................................................................................19

11

12   *DePiero v. City of Macedonia*, 180 F.3d 770 (6th Cir. 1999)....................................4

13   *Doe v. The Ohio State Univ.* 2015 WL 6107678 (S.D. Ohio, October 16,
       2015) ...............................................................................................14, 15

14   *Doe v. Univ. of the South*, 687 F.Supp.2d 744 (E.D.Tenn.2009) .................11, 12, 20

15   *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175 (2003)...............19

16   *Eilrich v. Remas,* 839 F.2d 630 (9th Cir. 1988).........................................................7

17   *Fielder v. Board of Education*, 346 F.Supp. 722 (D. Neb. 1972) ...........................16

18   *Flaim v. Med. College of Ohio*, 418 F.3d 629 (6th Cir. 2005)..................................15

19   *Fleet v. Bank of America, N.A.,* 229 Calk.App.4th 1403 (2014)..............................18

20   *Foo v. Trustees of Indiana University,* 88 F.Supp.2d 937 (S.D.Ind.1999) ..............17

21   *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274 (1998)..............................10

22   *Givens v. Poe*, 346 F.Supp. 202 (W.D.N.C. 1972)....................................................16

23   *Goldberg v. Regents of the Univ. of Calif.,* 248 Cal.App.2d 867 (1967) ........7, 13, 16

24   *Gomes v. Univ. of Maine Sys.,* 304 F.Supp.2d 117 (D. Me. 2004) ......................9, 15

25   *Goss v. Lopez,* 419 U.S. 565 (1975) ..........................................................14, 15, 16

26   *Haley v. Va. Commonwealth,* 948 F.Supp. 573 (E.D.Va. 1996) ..............................12

27   *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142 (1991) ............................14

28   *Harris v. Saint Joseph's Univ.*, 2014 WL 1910242 (E.D.Pa. May 13, 2014)..........12

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

iii

*Iverson v. Muroc Unified School Dist.*, 32 Cal.App.4th 218 (1995)........................19

*JiQiang Xu v. Michigan State University*, 195 Fed.Appx. 452 (6th Cir. 2006)......................................................................................................................4

*Johnson v. Temple University*, 2013 WL 5298484 (E.D. Penn. September 19, 2013)...........................................................................................................15

*Johnson v. W. State Colo. Univ.*, 71 F.Supp.3d 1217 (D.Colo. 2014) .....................13

*Kashmiri v. Regents of the Univ. of Calif.* (2007) 156 Cal.App.4th 809............17, 19

*Kramer v. Pollock–Krasner Foundation*, 890 F.Supp. 250 (S.D.N.Y.1995)...........11

*Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994).....................3, 7, 8, 20

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2005) ..........................20

*Qualified Patients Ass'n v. City of Anaheim*, 187 Cal.App.4th 734 (2010).............13

*Regents of Univ. of Calif. v. City of Santa Monica*, 77 Cal.App.3d 130 (1978)......................................................................................................................13

*Routh v. Univ. of Rochester,* 981 F.Supp.2d 184 (W.D.N.Y.2013) ........................12

*Sanders–Peay v. NYC Dep't of Educ.*, 2014 WL 6473507 (E.D.N.Y. Nov. 18, 2014)..............................................................................................................10

*Taormina v. CA Dept. of Corrections*, 946 F.Supp. 829 (S.D. Cal. 1996) ..............13

*United States v. Utah Construction & Mining Co*., 384 U.S. 394 (1966)...................6

*Univ. of Tenn. v. Elliott,* 487 U.S. 788 (1986)..........................................................3

*Weser v. Glen*, 190 F.Supp.2d 384 (E.D.N.Y. 2002) ..............................................13

*Westlake Community Hosp. v. Superior Court*, 17 Cal.3d 465 (1976) .................3, 6

*Yu v. Vassar College*, 2015 WL 1499408 (S.D.N.Y., March 31, 2015) ............10, 12

*Yusuf v. Vassar College,* 35 F.3d 709 (2d Cir. 1994)........................................10, 12

**Statutes**

Cal. Code of Civ. Proc., § 1094.5 ..............................................................................5

Cal. Govt. Code § 815 .............................................................................................5, 19

Cal. Civ. Code § 51...................................................................................................4

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in the proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions. *Westlake Community Hosp. v. Superior Court*, 17 Cal.3d 465, 484 (1976).

A plaintiff may not sidestep this requirement of judicial exhaustion simply by framing his claims in a civil action as violations of federal instead of state law. To the contrary, the Ninth Circuit has held that where a plaintiff fails to exhaust judicial remedies via a timely administrative mandamus action, the administrative decision has the effect of a final state court judgment. *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-38 (9th Cir. 1994). Federal courts are required to give preclusive effect to the findings of state administrative tribunals in subsequent civil rights and other federal actions. *Univ. of Tenn. v. Elliott,* 487 U.S. 788, 799 (1986); *Miller, supra*. Where a plaintiff fails to seek review via a writ of mandate, the adverse administrative decision bars any federal suit brought pursuant 42 U.S.C. § 1983, Title IX, or otherwise, under doctrines of res judicata and collateral estoppel. *Miller,* 39 F.3d at 1032.

This defect inheres to each of Plaintiff's causes of action. Because he has not challenged the University's disciplinary finding against him through a writ of mandate, this Court is required to give the finding preclusive effect, barring each of Plaintiff's claims. Nothing spotlights this procedural defect better than Plaintiff's own statement of what he seeks to accomplish via his declaratory judgment claim: "By seeking a reversal of the outcome of the student hearing, restoring his reputation, expunging his records and ruling that the University's policies are unconstitutional as applied, Plaintiff's requests go to the heart of the underlying dispute." (Opp, 24:11-14.) This Court cannot reverse the outcome of the student conduct hearing; the outcome upholding discipline is binding on this Court because

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   Plaintiff has not challenged that outcome in a mandamus action.

2        But even if this Court were to examine the merits of the Complaint, the

3   Regents are still entitled to dismissal on each cause of action.

4        First, the University had jurisdiction pursuant to its published Student

5   Conduct Code to discipline Plaintiff for off-campus conduct. The Conduct Code

6   notifies students of what type of behavior constitutes policy violations, including

7   sexual assault. All students, including those on leave of absence, are subject to the

8   Conduct Code, and the Code, by its express language, allows the University to

9   discipline for conduct occurring off campus.

10        Second, the allegations in the Complaint are insufficient to support a finding

11   of gender discrimination actionable under either Title IX or California's Unruh Act

12   (Civil Code § 51). There are no *facts* which would even remotely show a causal

13   connection between the claimed erroneous outcome and gender bias. This is because

14   Plaintiff has not, and cannot, set forth plausible allegations that he was treated

15   differently, or suffered a more severe punishment, than a similarly-situated member

16   of the opposite sex.

17        Third, the allegations in the Complaint show Plaintiff was provided with all

18   due process rights necessary for a university to impose a suspension, including

19   notice of the hearing and an opportunity to present a defense. Moreover, a claim that

20   a school failed to follow its own procedure does not itself violate due process.

21   *JiQiang Xu v. Michigan State University*, 195 Fed.Appx. 452, 457 (6th Cir. 2006);

22   *DePiero v. City of Macedonia*, 180 F.3d 770, 787–88 (6th Cir. 1999). It is only

23   when an agency's disregard of its rules results in a procedure which in itself

24   impinges upon due process rights that a federal court should intervene in the

25   decisional processes of state institutions. *Id.; Bates v. Sponberg*, 547 F.2d 325, 329–

26   30 (6th Cir. 1976). As pled in the Complaint, there was no deprivation of due

27   process rights, as Plaintiff was provided with notice of the hearing, and an

28   opportunity to present his defense at the hearing. This is precisely the process

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2

required under both the due process requirements applicable to student disciplinary hearings and the Regents' policies.

Fourth, the state law contract and negligence claims fail because under even the most generous definition of the contract created between university and student, the Regents have not deprived Plaintiff of any contractual rights. Plaintiff was not subject to arbitrary expulsion; he was merely suspended for two quarters, then allowed to continue with his education. Further, the Regents absolutely are barred from tort liability not based on statute. Cal. Govt. Code § 815. The negligence and negligent infliction of emotional distress claims therefore fail as a matter of law.

Finally, there is no basis for declaratory relief. The relief Plaintiff seeks, namely to reverse what he deems to be an erroneous outcome, can only be accomplished by an action in superior court for writ of administrative mandate. Cal. Code of Civ. Proc., § 1094.5. Thus, there is no actionable controversy because of Plaintiff's failure to judicially exhaust his remedies, and the Court should decline to exercise jurisdiction on the declaratory judgment claim.

Throughout Plaintiff John Doe's Complaint, and his opposition to the motion to dismiss, he stresses the importance of his due process rights as they relate to student disciplinary proceedings. But these due process rights do not exist in the abstract; they exist to provide Plaintiff with certain rights throughout the administrative process, namely to have notice of the hearing and an opportunity to present evidence in his defense at the hearing. Yet while arguing strenuously to uphold his due process rights, Plaintiff has failed to avail himself to the very process he seeks to uphold. Plaintiff's failure to appeal the University's administrative decision via the proper avenue, a writ of administrative mandamus, gives preclusive binding effect to the University's disciplinary decision and bars his entire action. For these reasons, the Regents requests this Court grant its motion to dismiss.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

1
2
## II.   PLAINTIFF'S FAILURE TO JUDICIALLY EXHAUST GIVES PRECLUSIVE EFFECT TO THE UNIVERSITY'S DISCIPLINARY DECISION

3   Unless a party to a quasi-judicial proceeding challenges the agency's adverse

4   finding made in that proceeding by bringing a mandate action in superior court,

5   those findings are binding in later civil actions. *Westlake, supra,* 17 Cal.3d at 484.

6   As the court explained in *Westlake*, "so long as such a quasi-judicial decision is not

7   set aside through appropriate review procedures the decision has the effect of

8   establishing the propriety of the [defendant's] action." *Id*. A quasi-judicial decision

9   is set aside when a court in a mandate proceeding determines the decision cannot

10   stand "either because of a substantive or procedural defect." *Id.*

11   The court in *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 70, explained the

12   two reasons which underscore the importance of requiring judicial exhaustion via a

13   writ of mandate before bringing a civil action for damages:

14   (1) [T]he interest in according proper respect to an administrative
15   agency's quasi-judicial procedures by precluding a party from
circumventing the established process for judicial review of such
16   decisions by means of a petition for administrative mandate; and (2)
'providing a uniform practice of judicial, rather than jury, review of
17   quasi-judicial administrative decisions.'

18   *Id.*, citing *Westlake, supra,* 17 Cal.3d at 484. Neither policy would be served by

19   allowing Plaintiff in this case to proceed with his civil action before properly

20   exhausting his judicial remedies by bringing a mandate action in superior court.

21   The rules requiring a court give preclusive effect to an administrative decision

22   which has not been set aside via a writ of mandate apply equally in federal courts as

23   they do in state court. The United States Supreme Court has recognized it is sound

24   policy to apply principles of issue preclusion to the fact-finding of administrative

25   bodies acting in a judicial capacity. In *United States v. Utah Construction & Mining*

26   *Co*., 384 U.S. 394 (1966), the Court held that the fact-finding of an administrative

27   agency was binding in a subsequent action in federal court between the same parties.

28   The Court explained:

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

4

1

2

3

4

5

> Although the decision here rests upon the agreement of the parties as modified by the Wunderlich Act, we note that the result we reach is harmonious with general principles of collateral estoppel. Occasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

6    *Id.*, at 421–422 (footnotes omitted). Thus, *Utah Construction* held that giving

7    preclusive effect to administrative fact-finding serves the value underlying general

8    principles of collateral estoppel: the parties' interest in avoiding the cost and

9    vexation of repetitive litigation and the public's interest in conserving judicial

10   resources. *Id.*

11        The Ninth Circuit has specifically applied this rule to cases where a plaintiff

12   brings a § 1983 claim in federal court without ever having first sought review of the

13   administrative decision in a mandamus proceeding in superior court. *Miller, supra.*

14   The *Miller* court, relying on the Ninth Circuit's earlier decision in *Eilrich v. Remas,*

15   839 F.2d 630 (9th Cir. 1988), stated that the only question for a federal court faced

16   with the question of whether to give preclusive effect to an administrative decision

17   is "whether the administrative hearing met the requirements of California law such

18   that a California court would have accorded the determination preclusive effect."

19   *Miller,* 39 F.3d at 1033. Where there is an adequate opportunity for judicial review

20   available under California law, the plaintiff may not "obstruct the preclusive use of

21   the state administrative decision simply by foregoing [the] right to appeal." *Id.*¸

22   citing *Eilrich,* 839 F.2d at 632.

23        In this case, Plaintiff has an adequate opportunity for judicial review available

24   under California: to bring a petition for writ of mandate under California Code of

25   Civil Procedure § 1094.5. California courts have held that a section 1094.5 writ of

26   mandate is the appropriate remedy for a student discipline decision. *Goldberg v.*

27   *Regents of the Univ. of Calif.,* 248 Cal.App.2d 867, 873 (1967). This is because the

28   Regents' disciplinary hearing proceeding is quasi-judicial in nature, with a hearing

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

5

1  in which evidence is required to be given and discretion is vested in the inferior

2  tribunal. *Berman v. Regents of the Univ. of Calif.,* 229 Cal.App.4th 1265, 1272

3  (2014). Thus, to challenge either the constitutionality or findings of the University's

4  disciplinary decision, Plaintiff must first seek judicial review via a writ of

5  administrative mandate under § 1094.5 in superior court. Plaintiff's failure to do so

6  bars his present suit for civil damages. *Miller, supra,* 39 F.3d at 1032. The Regents

7  therefore requests this Court dismiss Plaintiff's complaint in its entirety.

8  **III.    EVEN IF PLAINTIFF WAS NOT COLLATERALLY ESTOPPED FROM BRINGING THIS LAWSUIT, EACH OF HIS CLAIMS FAILS**

9      **A.    The University Had Jurisdiction to Discipline Plaintiff**

10

11      The University policies applicable in this case do not require Plaintiff be

12  convicted of a crime in order for the University to exercise jurisdiction over an off-

13  campus assault. The Conduct Code applies to all students, including those on leaves

14  of absence. (RFJN, Ex. 1. P. 3.) The Code allows the University to exercise off-

15  campus jurisdiction:

16      In addition to privately owned residence halls, the University may
        exercise jurisdiction over student conduct that occurs off University
17      property. In considering whether to exercise off-campus jurisdiction in
        an individual case, the following may be considered: the seriousness of
18      the alleged misconduct, whether the alleged victim is a member of the
        campus community, whether a crime has been reported to the criminal
19      authorities, the risk of future harm involved, whether the off-campus
        conduct is part of a series of actions that occurred both on and off
20      campus, and the ability of the University to gather evidence including
        the testimony of witnesses.

21

22  (RFJN, Ex. 1, pp. 5-6.) In this way, the Code unambiguously allows the University

23  to exercise jurisdiction over conduct, including sexual assaults, which occur off

24  campus, and provides guidance as to factors the University *may* consider in deciding

25  whether to exercise such jurisdiction.

26      Courts analyzing similar jurisdictional requirements at other schools have

27  found sexual assaults to be of the type of conduct which poses a risk of future harm,

28  thereby warranting exercise of off-campus jurisdiction. *See, e.g., Gomes v. Univ. of*

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

6

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    *Maine Sys.,* 304 F.Supp.2d 117 (D. Me. 2004). This is in line with the Department

2    of Education's mandate that schools "have an obligation to respond to student-on-

3    student sexual harassment that initially occurred off school grounds, outside a

4    school's education program or activity. If a student files a complaint with the

5    school, regardless of where the conduct occurred, the school must process the

6    complaint in accordance with its procedures."[1] Moreover, the California

7    Constitution affords the Regents broad autonomy in how it organizes and governs

8    itself. *Berman, supra,* 229 Cal.App.4th at 1272. Thus, although the trial court will

9    independently review and interpret the language of the Student Conduct Code, it

10   affords the Regents' interpretation of its Code great weight. *Id.*

11          In this case, even accepting every allegation in the Complaint as true, Plaintiff

12   was a student at the University accused of sexual assault against another student.

13   The other student, Jane Doe, filed a complaint with the University. The University

14   therefore had an obligation to respond, in line with its policies and mandates from

15   the Department of Education. Allowing the Regents the broad deference to interpret

16   their own Conduct Code, this Court should not overturn the Regents' decision to

17   exercise jurisdiction to investigate and discipline Plaintiff for sexual assault

18   committed off-campus.

19   **B.    The Complaint Does Not Support A Claim For Violation Of Title
           IX Under Either A Selective Enforcement Or Erroneous Outcome
20         Standard**

21          Initially, Plaintiff's opposition fails to rebut the Regents' argument that he

22   cannot base a private right of action for regulatory enforcement under Title IX.

23   Instead, Plaintiff states he is merely citing the regulations to point out the "numerous

24   obligations and duties that have not been met by the University" during Plaintiff's

25   student conduct case. (Opp. 14:19-22.) This makes the Regents' point: Plaintiff is

26   seeking to assign liability to the Regents for alleged failure to uphold its obligations

27   _____

28   [1] "Dear Colleague Letter: Sexual Violence," at p. 4.

under the regulations. This is an improper attempt to assert a private right of action for regulatory enforcement under Title IX. *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274 (1998). But even if this Court considers the Title IX claim beyond its attempt to seek regulatory enforcement, the complaint still fails to state facts sufficient to constitute a cause of action on either an erroneous outcome or selective enforcement theory.

### 1. Erroneous Outcome

Plaintiff has failed to plead facts to show a causal connection between the claimed erroneous outcome and gender bias. *Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d Cir. 1994). "Naked assertions of ... discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Sanders–Peay v. NYC Dep't of Educ.*, 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014).

Plaintiff's recitation of the "facts" he claims support an erroneous outcome theory are in reality conclusory allegations, including that the University overlooked witnesses and evidence favorable to him in order to make it "procedurally and factually insurmountable for a male student to defend himself against such a claim," and that there is a "presumption of guilt" against male students. (Opp. 11:27-28.) These conclusions are insufficient to withstand dismissal. Plaintiff cannot overcome the insumontable fact that the University's policies apply equally to male and female respondents. There are no allegations in the Complaint to rebut this fact.

Moreover, the vast majority of Plaintiff's allegations he contends support a finding of gender discrimination focus on statements or actions by Suzanne Perkin. Perkin was the Associate Dean of Students, the investigator; she was not a member of the committee which heard and made the recommendation of discipline, nor the ultimate decision maker. (See RFJN, Ex. 1, pp. 7-10; Compl., ¶ 29.) In *Yu v. Vassar College*, 2015 WL 1499408 (S.D.N.Y., March 31, 2015), the Court noted that even

8

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

1  if there are allegations of discriminatory statements by an investigator, where the

2  investigator "had no decision making role in the outcome of the hearing, and there is

3  no reason to believe that the panel members could have confused [his] testimony to

4  be anything other than the statements of the investigator—they were presented, after

5  all, with his Investigator Report as part of the hearing file—rather than as a

6  percipient witness with personal knowledge of the events." The same analysis

7  applies here. The only evidence Plaintiff points to as supporting an erroneous

8  outcome theory are purported statements and bias during the investigation by

9  someone who was not the ultimate decision maker.[2] Even accepting these statements

10  as true, as this Court must do, they are not sufficient to find a violation of Title IX

11  on the erroneous outcome theory.[3]

12      Nor does Plaintiff's allegation that Jane Doe was treated more favorably or

13  given more credibility allow him to proceed on an erroneous outcome theory. The

14  mere fact Plaintiff is male and Jane Doe is female does not suggest the disparate

15  treatment was due to Plaintiff's sex. Indeed, the alleged treatment "'could equally

16  have been prompted by lawful, independent goals,' " such as a desire to take

17  allegations of rape on campus seriously and to treat complainants with a high degree

18  of sensitivity. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 567 (quoting *Kramer v.*

19  *Pollock–Krasner Foundation*, 890 F.Supp. 250, 256 (S.D.N.Y.1995)). Courts in

20  other jurisdictions have reached similar conclusions, dismissing Title IX claims

21  which contain largely the same allegations as presented here. See, e.g., *Brown v.*

22  *Castleton State Coll.*, 663 F.Supp.2d 392, 403–04 (D.Vt. 2009) (dismissing a Title

23  IX claim); *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 755–56 (E.D.Tenn.2009)

24  _____

25  [2] The opposition references a recent OCR investigation. This was not set forth in the

26  Complaint, has not been requested to be judicially-noticed, and is therefore not

27  properly before this Court on the Regents' motion to dismiss.

    [3] The Regents dispute the veracity of these allegations, but even if they were

28  accepted as true, they do not support a finding of erroneous outcome.

9

(same); see also, e.g., *Yu, supra*, 2015 WL 1499408, at *22–27 (granting summary judgment on the ground the plaintiff failed to establish the outcome of his disciplinary proceedings was biased because of his gender); *Haley v. Va. Commonwealth Univ*., 948 F.Supp. 573, 576–81 (E.D.Va. 1996) (same). The allegations in the Complaint here do not rise to the level of supporting a causal connection between the claimed erroneous outcome and gender bias, and Plaintiff therefore has not sufficiently pled a claim for erroneous outcome under Title IX.

### 2.    Selective Enforcement

For similar reasons, Plaintiff's selective enforcement claim also fails. A selective enforcement claim must plausibly allege that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715. Courts have interpreted this to require a plaintiff allege particular circumstances suggesting a meaningful inconsistency in punishment and particular circumstances suggesting gender bias was a motivating factor behind the inconsistency. *Harris v. Saint Joseph's Univ.*, 2014 WL 1910242, at *4 (E.D.Pa. May 13, 2014). In *Yusuf, supra,* the court dismissed a claim for selective enforcement under Title IX where there were no allegations the school treated similarly situated members of the opposite sex, i.e., members of the opposite sex facing comparable disciplinary charges, differently. *Yusuf*, 35 F.3d at 716 (affirming dismissal of a Title IX selective enforcement claim where the plaintiff failed to allege that any woman was treated differently and that the allegedly disparate treatment of another accused student was based on similar disciplinary charges); see also, e.g., *Routh v. Univ. of Rochester,* 981 F.Supp.2d 184, 211–12 (W.D.N.Y.2013); *Doe v. Univ. of the South*, *supra,* 687 F.Supp.2d at 756–57.

Here, the Complaint fails to establish any *factual* allegations beyond mere conclusory statements to support the conclusion that female students were treated more favorably in similar situations. Title IX does not provide a private right of

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   action to challenge disciplinary policies based on disparate impact. See *Weser v.*
2   *Glen*, 190 F.Supp.2d 384, 395 (E.D.N.Y. 2002). Instead, to state a selective
3   enforcement claim, Plaintiff was required to allege facts sufficient to give rise to an
4   inference he was intentionally discriminated against because of his sex. *Johnson v.*
5   *W. State Colo. Univ.*, 71 F.Supp.3d 1217 (D.Colo. 2014) ("Plaintiff argues that he
6   has stated a claim under the erroneous outcome standard and the selective
7   enforcement standard ... [B]oth require that a Plaintiff show that gender bias was a
8   source of the deprivation."). Plaintiff has failed to do so, and his Title IX claim
9   based on selective enforcement must be dismissed.

10          **C.     The Unruh Act Cause Of Action Fails To Allege The Requisite**
                     **Gender Bias**
11
12          Plaintiff's Unruh Act claim fails for two reasons. First, the Unruh Act
13   (California Civil Code § 51) does not apply to state institutions, such as the Regents.
14   Second, Plaintiff has not pled facts to show intentional discrimination beyond mere
15   disparate impact, which is not actionable under the Unruh Act.
16          First, California courts have repeatedly held state institutions are not
17   "business establishments" subject to the Unruh Act. See *Qualified Patients Ass'n v.*
18   *City of Anaheim*, 187 Cal.App.4th 734, 764-65 (2010); *Taormina v. California Dept.*
19   *of Corrections*, 946 F.Supp. 829, 833 (S.D. Cal. 1996). While Plaintiff cites various
20   cases for the proposition that school districts have been held to be business
21   establishments, these cases are inapplicable to the Regents. The California
22   Constitution establishes the Regents as a "public trust ... with full powers of
23   organization and government." Cal. Const., art. IX, § 9, subd. (a); *Campbell v.*
24   *Regents of the Univ. of Calif.,* 35 Cal.4th 311, 320 (2005). The Regents is therefore
25   a constitutionally-created arm of the state. *Armstrong v. Meyers, et al.*, 964 F.2d
26   948, 949-950 (9th Cir. 1992); *Goldberg, supra,* 248 Cal.App.2d at 874; *Regents of*
27   *University of California v. City of Santa Monica*, 77 Cal.App.3d 130, 135 (1978)
28   ["[t]he Regents have been characterized as 'a branch of the state itself' or 'a

N‌ye, P‌eabody, S‌tirling, H‌ale & M‌iller
33 W‌est M‌ission S‌treet, S‌uite 201
S‌anta B‌arbara, C‌alifornia 93101

11

statewide administrative agency.'"]. Thus, the analysis finding other statewide institutions not to be business establishments, such as the Department of Corrections, applies to the Regents. There are no allegations in the Complaint to suggest the Regents were in the business of providing goods, services, or facilities to clients. The Unruh Act does not apply as the Regents is not a business establishment.

Second, Plaintiff has not pled facts to show the Regents emphasized an irrelevant gender based difference. The California Supreme Court has held the Unruh Act prohibits only intentional discrimination and not practices that have a disparate impact on one class of persons. *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1149 (1991). Plaintiff has not set forth any facts to show he was denied "advantages, facilities, privileges, or services" at the University because of his sex or that would demonstrate the Regents intentionally discriminated against Plaintiff. Plaintiff was not denied any advantages or services because of his sex; he was provided a full evidentiary hearing, only after which he was suspended for two quarters because he was found to have sexually assaulted another student. Under *Harris* Plaintiff must adequately plead the Regents intentionally failed, because of Plaintiff's sex, to appropriately discipline Plaintiff for his reported sexual assault. Plaintiff has not met this burden.

**D.    The Allegations In The Complaint Show Plaintiff Received All Due Process Rights Afforded A Student During A Conduct Hearing**

The due process required a student during a disciplinary proceeding has been defined by the Supreme Court as requiring notice of the hearing and an opportunity to be heard. *Goss v. Lopez,* 419 U.S. 565, 579-582 (1975). There is no requirement that the accused be afforded the right to counsel, the right to cross-examine witnesses, or to call his own witnesses. *Id*. at 583.

In *Doe v. The Ohio State Univ.*¸ 2015 WL 6107678 (S.D. Ohio, October 16, 2015) the court held the "opportunity to be heard" prong means a disciplinary

"hearing, whether formal, informal, live or not, must be meaningful and must provide the accused with the opportunity to 'respond, explain, and defend.'" *Id*. at *3, quoting *Flaim v. Med. College of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005) at 635. "Meaningful" depends on the context of the case, and may include the opportunity to make a statement and present evidence, call witnesses, and potentially to cross-examine witnesses. *Id.* The court in *Doe v. The Ohio State University* found this process was satisfied where the university held a hearing where the victim and accused testified, and there was the presentation of character evidence.

Similarly, in *Johnson v. Temple University*, 2013 WL 5298484 (E.D. Penn. September 19, 2013), the court found due process was satisfied where the student is provided a notice of the charges against him and a copy of the basis of those charges. The student is given the opportunity to be heard by disciplinary committee members, and, in more serious cases, the university holds a full panel hearing, where the student can hear the testimony against him, testify, and present witnesses and evidence.

While Plaintiff's Opposition cites to another recitation of the due process requirements, as set forth in *Gomes, supra,* 365 F.Supp.2d at 15-16, these requirements are no different than the ones set forth in *Doe, Johnson,* or *Goss.* The *Gomes* requirements include the student be provided (1) notice of the charges against him, (2) the nature of the evidence against him; (3) an opportunity to be heard in his own defense; and, (4) to not be punished except on the basis of substantial evidence. *Id.* What each of these decisions have in common is the basic structural requirements the Supreme Court delineated in *Goss*: the student must be provided with notice of the charges, and an opportunity to defend himself against those charges at an evidentiary hearing. The allegations in the Complaint show Plaintiff was provided with both requirements.

Plaintiff was provided with notice of the charges. (Compl., ¶ 50.) He was

13

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  provided with the nature of the evidence against him, when the University provided

2  him its entire investigatory report before the hearing. (Compl., ¶ 64.) He was

3  provided an opportunity to be heard in his own defense, cross-examining the

4  witnesses at length. (Compl., ¶¶ 51, 75.) And while Plaintiff may disagree with the

5  credibility of witnesses or the weight the committee gave to witnesses' testimony,

6  there is no doubt there was substantial evidence presented during the hearing which

7  could support implementation of discipline: five witnesses testified over two

8  sessions of hearings. (Compl., ¶¶ 52, 62.) In *Gomes,* the court found that even where

9  a university deprives the student of critical documents, does not supply the witness

10  list until the last minute, and excludes references to potentially negative character

11  evidence about the complainant, the student was afforded all due process rights, and

12  thus granted judgment in favor of the University. Here, the University went beyond

13  the minimum due process rights required in a student discipline proceeding.

14      Plaintiff further argues he had an absolute right to counsel and to cross-

15  examine witnesses, citing *Givens v. Poe*, 346 F.Supp. 202 (W.D.N.C. 1972) and

16  *Fielder v. Board of Education*, 346 F.Supp. 722 (D. Neb. 1972). Importantly, neither

17  of these cases, nor any other case cited by Plaintiff, mandates a student be provided

18  the right to counsel. Rather, these cases recommend, but do not require, counsel in

19  cases where there can be Fifth Amendment issues or expulsion. The controlling

20  authority in fact says there is no requirement for students to have the right of

21  counsel. *Goss, supra; see also Goldberg, supra.* This is because student disciplinary

22  actions are not full-blown criminal hearings, and thus students do not have full

23  procedural rights such as the right to cross-examine and the right to counsel.

24  *Andersen v. Regents of the Univ. of Calif.,* 22 Cal.App.3d 763, 770 (1972). Here,

25  Plaintiff does not contend he was not informed of his right to counsel, nor does he

26  contend he was not represented at the first hearing. Plaintiff's allegations relating to

27  counsel focus on the scheduling of the second hearing session. Yet, Plaintiff chose

28  to proceed with the second hearing on a date his counsel was unavailable, rather

14

than putting the hearing off until school resumed.

There is no dispute the University provided Plaintiff with notice of the charges against him, notice of the evidence against him by virtue of the investigative report, and an opportunity to present his side of the story by his own testimony and cross-examining multiple witnesses. These facts as alleged in the complaint show the Regents satisfied Plaintiff's due process requirements under any due process test. See *Foo v. The Trustees of Indiana University,* 88 F.Supp.2d 937, 952 (S.D.Ind.1999) (in a school disciplinary proceeding, administrator complied with due process requirements where he gave the student notice of the charges against him, showed him the evidence supporting the charges, questioned the student about the alleged misconduct, and allowed the student to tell his side of the story). Plaintiff's cause of action for violation of due process under 42 U.S.C. § 1983 should therefore be dismissed.[4]

**E.      Each State Law Claim Fails As A Matter Of Law**

**1.      Breach of Contract**

In opposing the Regents' motion to dismiss the breach of contract claim, Plaintiff argues his case must be distinguished from disciplinary cases involving campus protests and cheating because his case involves something must more significant, namely sexual assault. (Opp., 19:7-14.) This misses the point, in that the contractual relationship, if any, created between the Regents and students, does not extend to disciplinary policies, whether those policies are being applied to a cheating case or a sexual assault. In other words, Plaintiff cannot base his contractual claim on an alleged violation of the University's disciplinary policies. *Kashmiri v. Regents of the Univ. of Calif.* (2007) 156 Cal.App.4th 809, 827. This is

---

[4] Plaintiff did not address the Regents' argument why due process under the Fifth Amendment was inapplicable, and therefore the Regents' reply focuses on the Fourteenth Amendment due process analysis.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

precisely the claim Plaintiff is making: that the University breached its contract by failing to adhere to its disciplinary policies. (Opp., p. 19.) This cannot form the basis of a breach of contract action.

Instead, the contractual rights provided Plaintiff by way of his payment of tuition are limited in this context to the right not to be arbitrarily expelled. *Andersen v. Regents of the Univ. of Calif.*, 22 Cal.App.3d 763, 769-770 (1972). Despite Plaintiff's arguments to the contrary, these limited contractual rights apply regardless of whether the student is accused of plagiarism or rape. The Regents cannot expand or conversely limit contractual rights based on the charges of a particular case. And in this case, because there are no allegations to show Plaintiff was arbitrarily expelled, there are no allegations to show the Regents breached the limited contract with Plaintiff, and the breach of contract must be dismissed.

### 2.       Promissory Estoppel

The promissory estoppel claim fails for the same reasons as the breach of contract claim. A cause of action for promissory estoppel "substitutes reliance on a promise for consideration in the usual sense of something bargained for and given in exchange." *Fleet v. Bank of America, N.A.,* 229 Calk.App.4th 1403, 1412 (2014). Thus, if "actual consideration was given by the promise, promissory estoppel does not apply." *Id.*

In the first instance, promissory estoppel cannot apply because there was actual consideration: payment of all fees when due. But even if this Court were to substitute reliance on a promise for consideration, Plaintiff can still not plead facts sufficient to support this cause of action. The promise offered by the University in this context, in exchange for a student's payment of all fees when due, is for the student to be free from arbitrary expulsion. *Andersen, supra,* 22 Cal.App.3d at 769-770. Plaintiff was not expelled, and thus not deprived of any promise.

Plaintiff's claim that the promise was founded in the University's disciplinary policies further shows why this cause of action fails. A plaintiff cannot base contract

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

16

claims on alleged violations of disciplinary policies. *Kashmiri,* 156 Cal.App.4th at 827. This is a defect which cannot be cured, as the only possible "promise" upon which Plaintiff can base a promissory estoppel claim was a promise to be free from arbitrary expulsion. There are no other contractual rights provided Plaintiff on any implied or express promises, and thus no actionable promissory estoppel.

### 3. Negligence and Negligent Infliction of Emotional Distress

The Regents is a public entity created by statute. Cal. Govt. Code § 811.2. As a public entity, the Regents is liable only to the extent provided by statute. Cal. Govt. Code § 815; *Iverson v. Muroc Unified School Dist.*, 32 Cal.App.4th 218, 227 (1995). The California Tort Claims Act governs actions at law for civil liability against public entities and their officers and employees. Cal. Govt. Code § 810*, et seq*. A plaintiff seeking recovery against a governmental entity must show there is an express statutory duty on the part of the defendant. *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175 (2003); *Iverson, supra,* 32 Cal.App.4th at 227. Thus, "in the absence of some constitutional requirement, public entities may be liable only if a statute declares them to be liable. *Becerra v. County of Santa Cruz,* 68 Cal.App.4th 1450 (1998). Federal courts have explicitly held that Government Code § 815(a) bars negligence claims against the Regents. See, e.g., *Clifford v. Regents of the Univ. of Calif.*, 2012 WL 1565702 (E.D. Cal. April 30, 2012).

The Regents have not argued that Government Code § 815(a) protects them from suits based on 42 U.S.C. § 1983 or Title IX, as Plaintiff implies. Those causes of action are founded on statute, and thus outside the purview of Government Code § 815(a). But what § 815(a) does protect against is negligence claims, regardless of whether the underlying facts are the same as for other statutory claims. There is no possible amendment which could allow the Regents to be liable on a non-statutory tort, and thus the negligence and negligent infliction of emotional distress claims must be dismissed without leave to amend.

17

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

**F.     There Is No Issue For This Court To Review On Declaratory Judgment**

The Regents do not dispute the District Court has the "authority to declare the rights and other legal relations of any interested party seeking such declaration under 28 U.S.C. § 2201." (Opp., 24:4-5.) But where Plaintiff's conclusion stops short is its failure to analyze the two-part test outlined by *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) for when the Court may exercise this authority. First, is there an actual case or controversy within this Court's jurisdiction? Second, should the Court exercise jurisdiction? The present case does not meet these requirements.

There is no actual controversy within the Court's jurisdiction. Plaintiff's explanation of the controversy he seeks this Court to review is "a reversal of the outcome of the student hearing." (Opp., 24:11-12.) As explained above, this Court is without jurisdiction to reverse the student conduct hearing. Plaintiff has not appealed the disciplinary decision via a writ of administrative mandate under California Code of Civil Procedure § 1094.5, and his failure to do so deprives this Court of jurisdiction to consider the merits of that hearing. In short, the Court must accept the decision as binding precedent under the doctrines of collateral estoppel and res judicata. *Miller, supra,* 39 F.3d at 1032-38. Moreover, as discussed above, each of the causes of action raised in the Complaint independently fail on their merits, and thus, like the court in *Doe v. University of the South*, *supra*, this Court should decline to exercise jurisdiction.

///
///
///
///
///
///

18

**IV.    CONCLUSION**

For the foregoing reasons, in addition to those set forth in its moving papers, Defendant the Regents of the University of California respectfully requests this Court dismiss Plaintiff's Complaint. Because Plaintiff is incapable of amending the Complaint to allege he complied with his judicial exhaustion requirements, the Complaint should be dismissed without leave to amend.


Dated: November 2, 2015                    NYE, PEABODY, STIRLING, HALE &
                                           MILLER, LLP


                                           By:  ____/S/_____
                                               Jonathan D. Miller, Esq.
                                               Alison M. Bernal, Esq.
                                               Attorney for Defendant, REGENTS OF
                                               THE UNIVERSITY OF CALIFORNIA

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

REPLY TO OPPOSITION TO MOTION TO DISMISS          Case No. 2:15 CV 02478 SVW

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Santa Barbara, State of California.  My business address is 33 West Mission Street, Suite 201, Santa Barbara, California 93101.

On November 2, 2015, I served ☐ the originals ☒ true copies of the following document(s) described as following document(s):

**THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

on the interested parties in this action as follows:

Yasha Bronshteyn                           Attorneys for Plaintiff John Doe
Ginzburg & Bronshteyn, LLP
11111 Santa Monica Blvd., Suite 1840
Los Angeles, CA 90025
Phone: (310) 914-3222
vasha@gbllp-law.com

Kimberly C. Lau                            Attorneys for Plaintiff John Doe
Warshaw Burstein, LLP
555 Fifth Avenue, 12th Floor
New York, New York 10017
Phone: 212-984-7700
klau@wbcsk.com

☒          **BY CM/ECF NOTICE OF ELECTRONIC FILING**: I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on November 2, 2015, at Santa Barbara, California.

_____/S/_____
Lindsey LeBlanc

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101