1  Jonathan D. Miller (SBN 220848)
   jonathan@nps-law.com
2  Alison M. Bernal (SBN 264629)
   alison@nps-law.com
3  NYE, PEABODY, STIRLING, HALE & MILLER, LLP
   33 West Mission Street, Suite 201
4  Santa Barbara, California  93101
   Telephone: (805) 963-2345
5  Facsimile: (805) 563-5385

6  Attorney for Defendant, THE REGENTS OF THE
   UNIVERSITY OF CALIFORNIA and SUZANNE
7  PERKIN

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11 | John Doe,                          | CASE NO.:  2:15 CV 02478(SVW)(JEM)

12 |              Plaintiff,            | **THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

13 |       v.

14 | Regents of the University of       |
   | California; Suzanne Perkin         | DATE:  April 25, 2016

15 |              Defendants.           | TIME:  1:30 p.m.
                                          CTRM.: 6
16

17                                       TRIAL DATE:     None set

18

19

20

21

22

23

24

25

26

27

28

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................................... 1

II.  LEGAL ARGUMENT ............................................................................... 6

   A.   The Amended Complaint Does Not Allege A Deprivation of Education Benefits On The Basis Of Gender In Violation Of Title IX ............................................................................................ 6

      1.   Plaintiff cannot premise liability on OCR materials ................... 6

      2.   Plaintiff has failed to plead facts sufficient to establish a claim under an erroneous outcome theory ................................... 7

      3.   There are no facts alleged to support a selective enforcement theory ................................................................. 11

   B.   There Is No Actionable Due Process Violation ................................... 12

      1.   Defendant Perkin Is Entitled To Eleventh Amendment Immunity .............................................................................. 12

      2.   Perkin is additionally shielded by qualified immunity .............. 14

         a.   Plaintiff was provided the due process rights afforded students in disciplinary hearings ........................ 15

         b.   Perkin did not violate a clearly established Constitutional right ............................................................ 18

   C.   The Declaratory Judgment Claim Should Be Dismissed ..................... 19

   D.   California law requires a party seeking reversal of an administrative decision to *first* petition for writ of mandate ............... 19

III. CONCLUSION ....................................................................................... 21

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

<u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.1988) .................................................. 26

*Andersen v. Regents of the Univ. of Calif.*, 22 Cal.App.3d 763, 770 (1972) .............. 6

*Armstrong v. Meyers*, 964 F.2d 948, 949-50 (9th Cir. 1992) ..................................... 5

*Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 622 (6th Cir. 2006) .......................... 13

*Bixby v. Pierno*, 4 Cal.3d 130, 143-44 (1971) ........................................................... 24

*Charles S. v. Board of Education*, 20 Cal.App.3d 83, 89-90 (1971) .................... 6, 22

*Cory v. White*, 457 U.S. 85, 91 (1982) ...................................................................... 15

*Doe v. Brown Univ.*, 2016 WL 715794 (D.R.I. Feb. 22, 2016) .................................. 9

*Doe v. Case Western Univ.*, 2015 WL 552201, at 6 (N.D. Ohio, Sept. 16, 2015) ..................................................................................................................... 4

*Doe v. Columbia University*, 2015 WL 1840402, at 9 (S.D.N.Y. 2015) ................. 12

*Doe v. The Ohio State Univ.¸* 2015 WL 6107678 (S.D. Ohio, October 16, 2015) ................................................................................................................... 19

*Doe v. University of Cincinnati*, 2016 WL 1161935, at 14 (S.D. Ohio, Mar. 22, 2016) ........................................................................................... 4, 11, 13, 14

*Doe v. University of the South*, 687 F.Supp.2d 744 (E.D. Tenn. 2009) ................... 23

*Edelman v. Jordan*, 415 US 651, 676-677 (1974) ..................................................... 17

*Ex Parte Young*, 209 U.S. 123 (1908) ................................................................. 15, 16

*Fielder v. Board of Education*, 346 F.Supp. 722 (D. Neb. 1972) ............................. 21

*Flaim v. Med. College of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005) .......................... 19

*Foo v. The Trustees of Indiana Univ.*, 88 F.Supp.2d 937, 952 (S.D.Ind. 1999) ..................................................................................................................... 22

*Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945) ................... 15

*Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 290-292 (1988) ............ 7, 8

*Givens v. Poe*, 346 F.Supp. 202 (W.D.N.C. 1972) .................................................... 21

*Goldberg v. Regents of the Univ. of Calif.*, 248 Cal.App.2d 867 (1967) ........... 21, 24

*Gomes v. Univ. of Maine Sys.*, 365 F.Supp.2d 6, 15-16 (D. Maine, 2005) .............. 20

*Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 16 (1st Cir. 1988) ........................... 21

iii

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

*Goss v. Lopez*, 419 U.S. 565, 579 (1975) ....................................................... 6, 18, 21

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) .................................................... 5, 17

*Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) ................................................................ 15

*Henson v. Honor Comm. of Univ. of Virginia.*, 719 F.2d 69, 74 (4th Cir.1983) ................................................................................................................... 21

*Horner v. Kentucky High Sch. Ath. Ass'n*, 206 F.3d 685, 692 (6th Cir. 2000) ................................................................................................................. 14

*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61 ............................................... 24

*Johnson v. Temple University*, 2013 WL 5298484 (E.D. Penn. September 19, 2013) ............................................................................................................... 19

*K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) .................................................. 16

*Karasek v. Regents of the Univ. of Calif.*, 2015 WL 8527338 at 10 (N.D. Cal. Dec. 11, 2015) ............................................................................................... 8

*League of Women Voters of Ohio v. Brunner,* 548 F.3d 463, 475 (6th Cir. 2008) .................................................................................................................. 16

*Lone Star Sec. & Video, Inc. v. Bureau of Sec. & Investigative Services*, 209 Cal.App.4th 445, 453 (2012) ........................................................................ 10

*Ludlow v. Northwestern University*, 2015 WL 5116867 (N.D. Ill., Aug. 28, 2015) .................................................................................................................. 10

*Madera v. Board of Education,* 386 F.2d 778 (2d Cir.1967) .................................... 21

*Mallory v. Ohio Univ.*, 76 Fed.Appx. 634, 640 (6th Cir. 2003) ............................... 13

*Marshall v. Indiana*, 2016 WL 1028362, at 6-7 (S.D. Ind. Mar. 15, 2016) .............. 18

*Morgan v. Bd. of Pension Comrs.*, 85 Cal.App.4th 836, 842 (2000) ....................... 25

*Okpalobi v. Foster*, 244 F.3d 405, 416-417 (5th Cir. 2001).................................... 15

*Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir.1993) ................................................ 21

*Papasan v. Allain*, 478 U.S. 265, 277-278 (1986)................................................... 16

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009) .................................................... 18

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) .................. 23

*Sahm v. Miami Univ.*, 2015 WL 2406065, at 4 (S.D. Ohio, Mar. 20, 2015)...3, 11, 12

*Salau v. Denton*, 2015 WL 5885641, at 7 (W.D. Miss., Oct. 8, 2015) .......... 6, 12, 18

*Sanders-Peay v. NYC Dep't of Educ.*, 2014 WL 6473507, at 3 (E.D.N.Y. Nov. 18, 2014) ................................................................................................... 11

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

iv

*Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998)................................15

*Suever v. Connell*, 439 F.3d 1142, 1148 (9th Cir. 2006)...........................16

*Vaughn v. Regents of the Univ. of Calif.*, 504 F.Supp. 1349, 1351 (E.D. Cal. 1981) ..........................................................................................17

*Yu v. Vassar College,* 97 F.Supp.3d 448, 462-63 (S.D.N.Y. Mar. 31, 2015) .......8, 10

*Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994)...........................2, 7, 8, 11

## **Statutes**

28 U.S.C. § 2201 ...................................................................................19

42 U.S.C. § 1983 ............................................................................1, 2, 4

California Code of Civil Procedure, § 1094.5 ......................................19, 20

California Code of Civil Procedure, § 1085 .......................................6, 21

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY TO OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT

Case No. 2:15 CV 02478 SVW

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff John Doe ("Plaintiff") was accused of sexually assaulting a fellow student at the University of California, Santa Barbara. The Regents of the University of California ("Regents" or "University") investigated the charges and held two full evidentiary hearings in which Plaintiff participated. At the conclusion of the hearings, the University hearing panel found Plaintiff responsible for violating the University's student conduct code. As a result, the hearing panel recommended Plaintiff be suspended for two academic quarters. The Chancellor accepted the hearing panel's recommendation and imposed a two-quarter suspension. It is undisputed the suspension has now been served and Plaintiff is permitted to continue with his education at the University. See Plaintiff's Opposition ("Opp.") at 18.

Plaintiff has nevertheless sued the University arguing the University's decision to impose discipline deprived him of an educational opportunity on the basis of gender, in violation of Title IX. Plaintiff separately contends the University's Assistant Dean of Students, Suzanne Perkin ("Perkin") – who investigated the charges but did not issue the sanction – violated his due process rights under 42 U.S.C. § 1983. Plaintiff is also pursuing pendent claims for writ of mandate and declaratory relief. As explained below, all of Plaintiff's claims fail as a matter of law and the University's and Perkin's motion to dismiss should be granted.

At the inception, and in an effort to create a cognizable claim, Plaintiff's opposition asks this Court to expand the law interpreting Title IX and 42 U.S.C. § 1983 far beyond its current boundaries in matters involving student conduct hearings. In support of this argument, Plaintiff points to several purported biases and deprivations, which he contends are actionable conduct under Title IX and 42 U.S.C. § 1983. Specifically, Plaintiff argues: (1) defendant Perkin was biased by the national dialogue encouraging universities to investigate cases of sexual assault and

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

1 allowed this bias to influence her decision to investigate Plaintiff's case; (2) the

2 University hearing panel demonstrated bias by not allowing Plaintiff to fully cross-

3 examine witnesses or present sufficient character evidence; (3) the University

4 hearing panel further demonstrated bias by crediting the victim's testimony

5 regarding consent over Plaintiff's testimony; and, (4) Plaintiff was denied the right

6 of counsel at the second of the two evidentiary hearings that took place. Under the

7 existing law applicable to student conduct hearings, even if each of these arguments

8 were accepted as true, they do not give rise to a violation of either Title IX or 42

9 U.S.C. § 1983.

10       To succeed on a Title IX claim, Plaintiff must plead facts sufficient to

11 establish gender bias under either an erroneous outcome or selective enforcement

12 theory. *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). In particular,

13 Plaintiff must prove that either the University hearing panel or the Chancellor

14 reached an erroneous outcome due to gender bias toward Plaintiff, or that the

15 severity of the punishment was affected by Plaintiff's gender (i.e. selective

16 enforcement). None of the allegations set forth above plead facts sufficient to

17 establish a violation under either of these theories.

18       As a threshold matter, Plaintiff cannot establish a Title IX claim under an

19 erroneous outcome theory based on the actions of defendant Perkin. Plaintiff

20 concedes Perkin was not on the hearing panel, and was not the decision-maker on

21 whether Plaintiff would be subject to sanction. Thus, there are no facts to suggest

22 Perkin contributed to an erroneous outcome, because Plaintiff acknowledges the

23 evidentiary hearing and disciplinary decision solely involved the neutral hearing

24 panel and the Chancellor. Plaintiff's remaining allegations on the erroneous

25 outcome theory similarly fail because (1) there are not sufficient facts to cast doubt

26 on the accuracy of the outcome that was reached by the hearing panel and the

27 Chancellor; and (2) there is no causal connection between the alleged flawed

28 disciplinary outcome and gender bias.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2

1    Plaintiff's Amended Complaint acknowledges Jane Doe consumed five drinks

2  and a hydrocodone pill, and that Jane Doe testified she did not consent to the sexual

3  contact. Amended Complaint ("AC"), ¶¶ 43, 139, 165. The student conduct code

4  states that consent is affirmative, unambiguous, and voluntary; consent cannot be

5  given when a person is incapacitated. AC ¶ 25. Thus, the hearing committee's

6  finding that Plaintiff violated the conduct code because Jane Doe was incapable of

7  providing affirmative consent was based on substantial evidence cited in Plaintiff's

8  own Amended Complaint.

9    Moreover, even if there was doubt as to the accuracy of the decision, there is

10  not a single non-conclusory factual allegation linking the outcome to a gender bias.

11  Plaintiff argues at length that the national dialogue relating to sexual assault

12  necessarily means the University had a bias against males. This argument ignores

13  that Title IX and the University's own policies require the University to investigate

14  complaints of sexual assault. Plaintiff cannot seek to impose liability against the

15  University for that which it is otherwise required by law to do.

16    At best, Plaintiff's allegations claim that the University had a bias against

17  those accused of sexual assault. This is not the same as gender bias to establish a

18  Title IX violation. *Sahm v. Miami Univ.*, 2015 WL 2406065, at 4 (S.D. Ohio, Mar.

19  20, 2015) ("Demonstrating that a university official is biased in favor of the alleged

20  victims of sexual assault claims, and against the alleged perpetrators is not the

21  equivalent of demonstrating bias against male students."); See also *Doe v.*

22  *University of Cincinnati*, 2016 WL 1161935, at 14 (S.D. Ohio, Mar. 22, 2016). Title

23  IX was enacted to protect against the deprivation of educational opportunities on the

24  basis of gender. However, one does not receive the protection of Title IX merely

25  because he or she has been accused of sexual assault. Here, Plaintiff has failed to

26  plead any facts to suggest the University hearing panel or the Chancellor acted with

27  any specific bias against Plaintiff based on his gender in finding him responsible for

28  violating the University's affirmative consent policy. Accordingly, there are no facts

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

1  to support Plaintiff's Title IX claim under an erroneous outcome theory.

2       Plaintiff also fails to plead an actionable Title IX claim under a selective

3  enforcement theory. To do so, Plaintiff must demonstrate selective enforcement

4  "through the identification of a comparator of the opposite sex who was treated

5  more favorably by the educational institution when facing similar disciplinary

6  charges." *Doe v. Case Western Univ.*, 2015 WL 552201, at 6 (N.D. Ohio, Sept. 16,

7  2015). Plaintiff has not articulated, with the requisite specificity, how he was treated

8  less favorably than similarly-situated females. The only factual allegation in the

9  Amended Complaint which refers to gender-specific terms is the acknowledgment

10  that more sexual assaults are committed by males. This fact, however, is not

11  independently actionable. *Univ. of Cincinnati*, 2016 WL 1161935, at 14. Indeed, the

12  U.S. Department of Education's Office of Civil Rights ("OCR") acknowledges

13  national statistics show more males commit sexual assaults than females. But as the

14  court in *University of Cincinnati* concluded this fact alone does not transform every

15  sexual assault hearing into a Title IX case, nor does it inherently make the

16  University's gender-neutral policies biased against males. Rather, such arguments

17  pull Title IX to illogical extremes that are not supported by the statute itself or any

18  interpreting case law. *Id*. Here, Plaintiff has not pled sufficient facts establishing he

19  was treated less favorably than a similarly-situated member of the opposite sex. As a

20  result, Plaintiff's Title IX selective enforcement claim also fails.

21       Plaintiff has similarly failed to plead a claim for violation of due process

22  under 42 U.S.C. § 1983 because defendant Perkin is entitled to sovereign immunity

23  under the Eleventh Amendment. Perkin is the Assistant Dean of Students and the

24  Director of the Office of Judicial Affairs. Perkin investigated Jane Doe's complaint.

25  In that regard, Plaintiff's Amended Complaint concedes Perkin was acting in her

26  official capacity at all times relevant to this matter. Accordingly, Perkin is entitled to

27  sovereign immunity. *Armstrong v. Meyers*, 964 F.2d 948, 949-50 (9th Cir. 1992).

28  Plaintiff's reliance on the *Ex Parte Young* doctrine, which is the exception to

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

4

1   sovereign immunity, is misplaced because Perkin has no authority to either

2   discipline Plaintiff, remove the discipline, or otherwise grant the relief Plaintiff

3   requests, and because the "prospective" relief sought by Plaintiff is not ongoing and

4   continuing. AC, Exhibit A, p. 10-12. Again, Plaintiff acknowledges his suspension

5   has already been served. Opp. at 18.

6          However, even if the Court were to determine Perkin is being sued in her

7   personal capacity, rather than official capacity, she would still be entitled to

8   qualified immunity from Plaintiff's § 1983 claim. Qualified immunity is appropriate

9   where an individual defendant has not violated clearly established constitutional

10  rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, Plaintiff's Amended

11  Complaint does not plead any facts to suggest Perkin violated a clearly established

12  constitutional right. To the contrary, Plaintiff's opposition argues for an expansion

13  of existing constitutional due process rights presently afforded to students in

14  conduct hearings. The Supreme Court, however, has confirmed due process is fully

15  satisfied in this context by providing notice of the charges and a hearing. *Goss v.*

16  *Lopez*, 419 U.S. 565, 579 (1975). Plaintiff's allegations acknowledge the University

17  satisfied both of these requirements. And while Plaintiff argues he should have had

18  the right to counsel and the right to cross-examination, these are not due process

19  rights courts have required in student conduct hearings. *Charles S. v. Board of*

20  *Education*, 20 Cal.App.3d 83, 89-90 (1971); *Andersen v. Regents of the Univ. of*

21  *Calif.*, 22 Cal.App.3d 763, 770 (1972); *Salau v. Denton*, 2015 WL 5885641, at 7

22  (W.D. Miss., Oct. 8, 2015). As the law existed at the time of this matter, none of the

23  alleged actions of defendant Perkin violated Plaintiff's clearly established

24  constitutional rights. Thus, to the extent Perkin is not entitled to sovereign

25  immunity, she is separately entitled to qualified immunity.

26          Finally, Plaintiff's pendent claims for declaratory relief and writ of mandate

27  fail because there is no remaining federal claims over which this court would

28  otherwise have jurisdiction. In addition, Plaintiff's claim for writ of mandate under

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

5

California Code of Civil Procedure, sections 1085 and 1094.5 separately fails because Plaintiff was required to petition the court for a writ of mandate *before* seeking monetary relief via a civil action. Plaintiff failed to do so, waiving his right to now bring the claim for writ of mandate. Plaintiff's claim under section 1085 also fails because the allegations do not support a finding that the University failed to comply with a ministerial duty.

For these reasons, and those set for in more detail below, the Regents and Perkin respectfully request this Court grant their motion to dismiss the Amended Complaint.

## II.   **LEGAL ARGUMENT**

### A.   **The Amended Complaint Does Not Allege A Deprivation of Education Benefits On The Basis Of Gender In Violation Of Title IX**

Title IX is not the proper mechanism to challenge a disciplinary decision reached by a university unless the decision is clearly erroneous and the error was made because of a gender bias (i.e. erroneous outcome) or the complainant was treated differently than a similarly situated female (i.e. selective enforcement). *Yusuf,* 35 F.3d at 715. To satisfy this threshold, Plaintiff must allege something more than disparate impact – he must allege facts showing the decision was made not based on the evidence, but based on complainant's gender. Plaintiff cannot substitute gender-specific terms into the University's policies and the exhibits attached to the complaint, all of which discuss sexual assault in terms of the victim/survivor and the respondent/accused. These terms are not interchangeable, and artfully wording a complaint to substitute the words does not create a gender bias where the plain language of the University's policies demonstrate that none exists.

#### 1.   **Plaintiff cannot premise liability on OCR materials**

Civil liability cannot be premised on an alleged violation of the OCR guidance materials, including the Dear Colleague Letter, because such materials do

not have the force and effect of law. *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 290-292 (1988); *See also Karasek v. Regents of the Univ. of Calif.*, 2015 WL 8527338 at 10 (N.D. Cal. Dec. 11, 2015).

Plaintiff's opposition argues the Amended Complaint's extensive references to the OCR guidance materials is simply "useful background information," and not intended to be the basis for civil liability against the University. Opp. at 8:4. This argument is undercut by the allegations in the Amended Complaint. The Amended Complaint alleges: "[The Regents] deprived John Doe, on the basis of his sex, of his rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of UCSB's guidelines and regulations." AC, ¶¶ 160-161. *Gebser* held an "alleged failure to comply with the regulations, however, does not establish the requisite actual notice and deliberate indifference. And in any event, the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX." *Gebser,* 524 U.S. at 291-92. But even if the Court considers the Title IX claim beyond its attempt to seek regulatory enforcement, Plaintiff has still failed to state facts sufficient to support a finding of either erroneous outcome or selective enforcement.

### 2. Plaintiff has failed to plead facts sufficient to establish a claim under an erroneous outcome theory

A claim for erroneous outcome under Title IX must do more than simply allege the University reached the wrong decision; it must causally link the wrong decision to a gender bias. *Yusuf,* 35 F.3d at 715; *Yu v. Vassar College,* 97 F.Supp.3d 448, 462-63 (S.D.N.Y. Mar. 31, 2015). Here, Plaintiff's allegations neither support a finding the University reached the wrong decision, nor do they link any claimed wrong decision to a *gender* bias.

First, the facts alleged in the Amended Complaint, even if all true, do not cast doubt on the accuracy of the outcome. Plaintiff contends there was consent through action, and because Jane Doe did not say "no." AC, ¶ 139. But Plaintiff concedes

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   Jane Doe consumed a hydrocodone pill and at least five drinks prior to the

2   encounter, and testified she did not consent to the sexual contact. AC, ¶¶ 43, 139,

3   165. Under the student conduct code, consent cannot be given if a person is

4   incapacitated. AC, ¶ 25. While this may or may not rise to the level of a criminal

5   rape, the University's task is to determine if there was a violation of the student

6   conduct code, which provides a narrower definition of consent than a criminal

7   proceeding. Under the University's policy, consent is informed, affirmative,

8   unambiguous, voluntary, revocable, and cannot be given if a person is incapacitated.

9   AC, ¶ 25. Thus, based on the evidence relating to Jane Doe's level of intoxication

10  and her testimony she did not consent, the hearing committee's decision was

11  supported by substantial evidence. Plaintiff's allegation to the contrary is solely

12  based on the hearing committee believing Jane Doe over his version of events. AC,

13  ¶¶ 119, 128. Such facts, however, are not sufficient to substantiate a claim for

14  violation of Title IX on an erroneous outcome theory. *Yu,* 97 F.Supp.3d at 475.

15      The cases cited by Plaintiff in support of his erroneous outcome theory are

16  distinguishable and unavailing. For instance, in *Doe v. Brown Univ.*, 2016 WL

17  715794 (D.R.I. Feb. 22, 2016), the victim testified she provided consent. *Id.* at 4.

18  Plaintiff acknowledges at the hearing Jane Doe testified she did not consent. AC, ¶

19  167. Thus, the hearing panel in this case had substantial evidence on which to base

20  its findings. To overcome this disparity, Plaintiff takes issue with the hearing body's

21  decision to believe Jane Doe over Plaintiff. Courts, however, have rejected similar

22  arguments by male respondents alleging Title IX claims. For example, in *Yu* the

23  court rejected plaintiff's argument that the hearing committee could not have

24  believed the complainant's version of events in the face of exculpatory evidence

25  unless there was a gender bias. *Yu,* 97 F.Supp.3d at 475; see also*, Ludlow v.*

26  *Northwestern University*, 2015 WL 5116867 (N.D. Ill., Aug. 28, 2015) (dismissing

27  Title IX claim, even where parties had consensual relationship before and after

28  alleged assault); *University of Cincinnati*, 2016 WL 1161935 (court granted motion

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

8

1  to dismiss Title IX claim where eye witness and respondents said there was consent,

2  but victims said there was not, and there was inconsistent evidence relating to

3  victims' level of intoxication).

4        Further, the cases cited in the moving papers demonstrate an administrative

5  body is allowed to consider one witness's testimony as substantial evidence to

6  support a decision. *See, e.g., Kearl,* 189 Cal.App.3d at 1052; *Lone Star Sec. &*

7  *Video, Inc. v. Bureau of Sec. & Investigative Services*, 209 Cal.App.4th 445, 453

8  (2012). Plaintiff is correct in that these cases all involved a higher evidentiary

9  standard in order to find an accused guilty (clear and convincing) than a student

10 conduct hearing (preponderance of evidence). Opp. at 12:1-2. But if one witness's

11 testimony is sufficient to satisfy the higher evidentiary standard, it necessarily meets

12 the lower evidentiary standard as well. Moreover, the argument that Jane Doe was

13 not credible is not for Plaintiff, or another witness, to make. Instead, the hearing

14 body is firmly tasked with weighing credibility. *Yu,* 97 F.Supp.3d at 462 ("the Court

15 cannot now-absent flawed process and gender discrimination-second-guess the

16 panelists' credibility determinations and factual conclusions."). The hearing body

17 here found Jane Doe's testimony she did not consent to be credible. This testimony,

18 coupled with the other witness testimony as to the amount of alcohol and painkiller

19 Jane Doe consumed, provided substantial evidence upon which the hearing

20 committee could find Plaintiff violated the student conduct code. The decision was

21 therefore not clearly erroneous.

22        Second, even if the allegations did show the hearing committee reached the

23 wrong decision, there are no allegations linking that decision to Plaintiff's gender.

24 To satisfy the *Yusuf* standard for erroneous outcome, there must be some "causal

25 link between the defendants' conduct and the plaintiff's protected characteristic."

26 *Sanders-Peay v. NYC Dep't of Educ.*, 2014 WL 6473507, at 3 (E.D.N.Y. Nov. 18,

27 2014). At most, the allegations demonstrate a bias against those accused of sexual

28 assault. However, as the *University of Cincinnati* court recently observed:

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

9

1
2
3

> [A]t worst UC's actions were biased in favor of alleged victims of sexual assault and against students accused of sexual assault. However, this is not the same as gender bias because sexual assault victims can be either male or female. *Sahm v. Miami Univ.*, 110 F. Supp.3d 774, 778-79 (S.D. Ohio 2015)

4   *University of Cincinnati,* 2016 WL 1161935 at 14.

5        Here, Plaintiff has not alleged anyone involved in his claim ever made a

6   gender-bias statement toward Plaintiff. To satisfy the erroneous outcome standard,

7   Plaintiff must set forth "particularized facts sufficient to suggest that gender bias

8   was a motivating factor for an erroneous disciplinary decision – namely, that

9   establish University officials made comments that demonstrate gender-based animus

10   or that there were patterns of decision-making that tended to show the influence of

11   gender." *Salau,* 2015 WL 5885641, at 4. In dismissing a similar claim for violation

12   of Title IX, the *Salau* court held "'the mere fact that Plaintiff is male and [the

13   alleged victim] is female does not suggest that the disparate treatment was because

14   of Plaintiff's sex.' [Citations.] '[D]emonstrating that a university official is biased in

15   favor of the alleged victims of sexual assault claims, and against the alleged

16   perpetrators is not the equivalent of demonstrating bias against male students.'" *Id.*

17   at 3, citing *Doe v. Columbia University*, 2015 WL 1840402, at 9 (S.D.N.Y. 2015)

18   (appeal taken); *Sahm,* 2015 WL 2406065, at 4.

19        Moreover, the procedures at issue are gender neutral.[1] They apply whether the

20   accused is male or female, and whether the alleged violation is sexual assault or a

21   number of other violations. In each case there is a complainant and respondent, and

22   the procedures apply to that person not on the basis of their gender, but on the basis

23   of their position within the complaint process. Plaintiff contends that despite the

24   procedures being gender-neutral, the Court can infer a gender bias based on the

25   University's acknowledgment that more sexual assaults are committed by males.

26   But this statement has no relation to Plaintiff's investigation and hearing. Plaintiff

27   

28   [1] See AC, Ex. A.

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

1   does not allege that anybody on the hearing committee or involved in the decision to

2   discipline Plaintiff made any statements to Plaintiff relating to his gender or that

3   even inferentially related to a gender bias. Therefore, there are no allegations to

4   support a finding the University reached the wrong decision because of a gender

5   bias, and the erroneous outcome theory fails.

### 3.   There are no facts alleged to support a selective enforcement theory

8       A claim for selective enforcement requires Plaintiff allege the University

9   treated a similarly-situated member of the opposite sex more favorably than

10  Plaintiff. *Mallory v. Ohio Univ*., 76 Fed.Appx. 634, 640 (6th Cir. 2003). In an

11  attempt to satisfy this standard, Plaintiff alleges the University acknowledged

12  "sexual assaults are predominantly committed by men against women," and this can

13  be used to infer there was gender bias. Opp., 15:20-21. The law, however, does not

14  support this conclusion.

15      In *University of Cincinnati,* the plaintiff raised a similar argument.

16  Specifically, the *Cincinnati* plaintiff alleged the vast "outside" and "political"

17  pressures to find more males guilty of sexual assault. The plaintiff cited statistics

18  which purported to show the university discriminated against males in investigating

19  and imposing discipline for sexual misconduct, including allegations that only males

20  had been investigated and disciplined for sexual misconduct. The court, however,

21  discounted these statistics because they failed to prove the university had a pattern

22  or practice of discriminating against males in sexual assault cases. As the court

23  explained:

24          In order for the statistical evidence to be meaningful, it must eliminate
            the most likely non-discriminatory reason for the disparity. *Bender v.*
25          *Hecht's Dept. Stores*, 455 F.3d 612, 622 (6th Cir. 2006). There are,
            however, at least two related non-discriminatory reasons for the
26          disparity between males and females in sexual misconduct disciplinary
            cases: 1) UC has only received complaints of male-on-female sexual
27          assault; and 2) males are less likely than females to report sexual
            assaults. Plaintiff's statistics do not eliminate or attempt to account for
28          these reasons and, consequently, do not tend to show that UC's

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

11

1  disciplinary system discriminates against males in cases involving
   sexual misconduct. Moreover, since recovery under Title IX under a
2  disparate impact theory is not permitted, Plaintiffs' cannot state a claim
   by alleging that UC's otherwise gender-neutral disciplinary procedures
3  disproportionately affect men. *Horner v. Kentucky High Sch. Ath.
   Ass'n*, 206 F.3d 685, 692 (6th Cir. 2000).

4

5  *University of Cincinnati,* 2016 WL 1161935 at 14.

6       The statistics alleged by Plaintiff are similar to those in *University of*

7  *Cincinnati*. They do not eliminate or account for the more likely reasons for the

8  statistics, namely that the University may only receive complaints of assaults

9  committed by males, or that males may be less likely to report assaults than females.

10 More importantly, the University's policies attached as Exhibit A to the Amended

11 Complaint are gender-neutral. Plaintiff cannot state a claim by alleging the

12 University's gender-neutral policies disproportionately affect men. *Horner,* 206

13 F.3d at 692. Instead, Plaintiff must demonstrate selective enforcement "through the

14 identification of a comparator of the opposite sex who was treated more favorably

15 by the educational institution when facing similar disciplinary charges." *Case*

16 *Western Univ.*, 2015 WL 5522001 at 6. The *Case Western* court found the complaint

17 did not meet this standard where the plaintiff did not identify any female counterpart

18 to support his selective enforcement claim, noting the female victim is not a

19 counterpart for the purposes of a selective enforcement claim. *Id.* Likewise here, the

20 allegations are insufficient to find Plaintiff was treated less favorably than a

21 similarly-situated female.

22       **B.    There Is No Actionable Due Process Violation**

23            **1.    Defendant Perkin Is Entitled To Eleventh Amendment
                      Immunity**

24

25       The Eleventh Amendment bars a suit against state officials when "the state is

26 the real, substantial party in interest." *Ford Motor Co. v. Department of Treasury*,

27 323 U.S. 459, 464 (1945). Thus, "[t]he general rule is that relief sought nominally

28 against an officer is in fact against the sovereign if the decree would operate against

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

12

the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam). A suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. See *Cory v. White*, 457 U.S. 85, 91 (1982).

While Plaintiff recognizes Perkin cannot be sued for monetary damages, he argues Perkin can be sued for due process violation for prospective relief under the *Ex Parte Young* exception to sovereign immunity. This argument ignores two important facts: (1) Perkin has no authority to either discipline Plaintiff, remove the discipline, or otherwise grant the "prospective" relief requested by Plaintiff; (2) the "prospective" relief sought by Plaintiff is all, in fact, retroactive relief.

First, the *Ex Parte Young* doctrine is limited to situations where the defendant state official has "some connection with the enforcement of the act." *Ex Parte Young*, 209 U.S. 123 (1908). The state official sued must have direct responsibility for enforcement of the allegedly unconstitutional statute, rather than merely the authority to execute state laws generally. *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341-1342 (11th Cir. 1999); *Okpalobi v. Foster*, 244 F.3d 405, 416-417 (5th Cir. 2001) (en banc); *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). Otherwise, suing the state official would be just an indirect way of suing the state and the action would be subject to Eleventh Amendment immunity. *Ex Parte Young*, 209 US at 157. Here, the Amended Complaint does not allege Perkin was on the hearing committee. The Amended Complaint does not allege Perkin questioned any witnesses at the hearings. The Amended Complaint does not allege Perkin issued the discipline, or denied Plaintiff's appeal. The Amended Complaint does not allege Perkin promulgated the University's policies and procedures. The Amended Complaint does not allege Perkin was the decision maker. Even if Plaintiff believes his due process rights were violated, Perkin cannot remedy the violation.

Second, there are no threatened violations of constitutional rights. To the extent there were violations, which Defendants dispute, all such violations already

13

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

occurred. The *Ex Parte Young* doctrine applies only to "ongoing and continuous" violations of federal law – a plaintiff may not use the doctrine to adjudicate the legality of past conduct. *Papasan v. Allain*, 478 U.S. 265, 277-278 (1986); *Suever v. Connell*, 439 F.3d 1142, 1148 (9th Cir. 2006) (Controller's practice of publishing constitutionally inadequate notice for escheated property was "ongoing"); *League of Women Voters of Ohio v. Brunner,* 548 F.3d 463, 475 (6th Cir. 2008) (voting rights violations would continue absent injunctive relief). Here, Plaintiff has already served his suspension. There is no ongoing and continuous violation of federal law.

Moreover, even if the exception for injunction suits against state officials applied, it does not authorize suits for retroactive money damages against a state official for his or her acts. See *Edelman v. Jordan*, 415 US 651, 676-677 (1974). Plaintiff unquestionably seeks monetary damages against defendant Perkin, which is barred by the Eleventh Amendment. AC, p. 41, ¶ (ii).

This is a case where the alleged due process claim, while naming Perkin, is in fact a suit against the state itself. There is no relief, even nominally, which can be granted by Perkin. Any relief sought by Plaintiff must in fact be provided by the Regents, an arm of the state entitled to sovereign immunity. *Vaughn v. Regents of the Univ. of Calif.*, 504 F.Supp. 1349, 1351 (E.D. Cal. 1981).

### 2. Perkin is additionally shielded by qualified immunity

Plaintiff's complaint, by its plain language, is a suit against Perkin in her official capacity. *See, e.g.,* AC, ¶¶ 13, 83, 124, 129, 130. An official sued in his or her official capacity has the same immunity as the state, and is entitled to Eleventh Amendment immunity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). An official sued in his or her personal capacity, although deprived of Eleventh Amendment immunity, may separately assert a defense of qualified immunity. *Id.* Thus, even if this Court were to read the complaint as being against Perkin in her personal capacity, she is entitled to qualified immunity.

Qualified immunity shields state officials from civil liability when their

14

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

conduct does not violate a clearly established constitutionally right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding whether to grant qualified immunity, a court must determine (a) whether the alleged facts make out a constitutional violation, and (b) whether the constitutional right at issue was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A right is clearly established if it would be clear to a reasonable official his or her conduct was unlawful. *Id.* at 202. A court may exercise its discretion as to the order in which it addresses each prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the facts alleged do not make out a constitutional violation, nor do they show Perkin violated a clearly established constitutional right.

### a. Plaintiff was provided the due process rights afforded students in disciplinary hearings

The process required for student conduct hearings is a much lower threshold than a criminal proceeding. "At the very minimum, therefore, students facing suspension ... must be given some kind of notice and afforded some kind of hearing." *Goss,* 419 U.S. at 579. The hearing need not be formal, but "in being given an opportunity to explain his version of the facts at this discussion, the student [must] first be told what he is accused of doing and what the basis of the accusation is." *Id.* at p. 582.

In cases involving student conduct hearings, courts have repeatedly held due process is satisfied where the student receives notice of the charges, including the sections of the conduct code allegedly violated, notice of a hearing, and an opportunity at a hearing to present his or her version of the events. *See, e.g., Salau,* 2015 WL 5885641, at 7 (no due process violation where plaintiff was expelled after he received notice of the code of conduct violations alleged against him prior to the hearing, notice of a formal hearing, the hearing was conducted, but university refused plaintiff's request to continue hearing to obtain counsel); *Marshall v.*

15

1  *Indiana*, 2016 WL 1028362, at 6-7 (S.D. Ind. Mar. 15, 2016) (no due process

2  violation where university had attorney at hearing, but student denied right to

3  counsel). The allegations show Plaintiff received these protections.

4     In *Doe v. The Ohio State Univ.*¸ 2015 WL 6107678 (S.D. Ohio, October 16,

5  2015) the court held the "opportunity to be heard" prong means a disciplinary

6  "hearing, whether formal, informal, live or not, must be meaningful and must

7  provide the accused with the opportunity to 'respond, explain, and defend.'" *Id*. at 3,

8  quoting *Flaim v. Med. College of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005) at 635.

9  "Meaningful" depends on the context of the case, and may include the opportunity

10  to make a statement and present evidence, call witnesses, and potentially to cross-

11  examine witnesses. *Id.* The court in *The Ohio State University* found this process

12  was satisfied where the university held a hearing where the victim and accused

13  testified, and there was the presentation of character evidence.

14     Similarly, in *Johnson v. Temple University*, 2013 WL 5298484 (E.D. Penn.

15  September 19, 2013), the court found due process was satisfied where the student is

16  provided a notice of the charges against him and a copy of the basis of those

17  charges. The student is given the opportunity to be heard by disciplinary committee

18  members, and, in more serious cases, the university holds a full panel hearing,

19  where the student can hear the testimony against him, testify, and present witnesses

20  and evidence.

21     While Plaintiff's Opposition cites to another recitation of the due process

22  requirements, as set forth in *Gomes v. Univ. of Maine Sys.,* 365 F.Supp.2d 6, these

23  requirements are no different than the ones set forth in *Doe, Johnson,* or *Goss.* The

24  *Gomes* requirements include the student be provided (1) notice of the charges

25  against him, (2) the nature of the evidence against him; (3) an opportunity to be

26  heard in his own defense; and, (4) to not be punished except on the basis of

27  substantial evidence. *Gomes v. Univ. of Maine Sys.,* 365 F.Supp.2d 6, 15-16 (D.

28  Maine, 2005). What each of these decisions have in common is the basic structural

Nye, Peabody, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California  93101

16

1   requirements the Supreme Court delineated in *Goss*: the student must be provided

2   with notice of the charges, and an opportunity to defend himself against those

3   charges at an evidentiary hearing. The allegations in the Amended Complaint show

4   Plaintiff was provided with both requirements.

5          Plaintiff was provided with notice of the charges. AC, ¶ 65. He was also

6   provided with the nature of the evidence against him. AC, ¶ 78. He was further

7   provided an opportunity to be heard in his own defense, cross-examining the

8   witnesses at length. AC, ¶¶ 84, 87. And while Plaintiff may disagree with the

9   credibility of witnesses or the weight the committee gave to witnesses' testimony,

10  by Plaintiff's own admission there was substantial evidence presented during the

11  hearing which could support implementation of discipline: five witnesses testified

12  over two sessions of hearings. AC, ¶ 84. In *Gomes*, the court found that even where

13  a university deprives the student of critical documents, does not supply the witness

14  list until the last minute, and excludes references to potentially negative character

15  evidence about the complainant, the student was afforded all due process rights, and

16  thus granted judgment in favor of the University. Here, the University went beyond

17  the minimum due process rights required in a student discipline proceeding.

18         Plaintiff further argues he had an absolute right to counsel and to cross-

19  examine witnesses, citing *Givens v. Poe*, 346 F.Supp. 202 (W.D.N.C. 1972) and

20  *Fielder v. Board of Education*, 346 F.Supp. 722 (D. Neb. 1972). Importantly, neither

21  of these cases, nor any other case cited by Plaintiff, mandates a student be provided

22  the right to counsel. Rather, these cases recommend, but do not require, counsel in

23  cases where there can be Fifth Amendment issues. The controlling authority in fact

24  says there is no requirement for students to have the right to counsel. *Goss, supra;*

25  see also *Goldberg v. Regents of the Univ. of Calif.,* 248 Cal.App.2d 867 (1967). This

26  is because student disciplinary actions are not full-blown criminal hearings, and thus

27  students do not have full procedural rights such as the right to cross-examine and the

28  right to counsel. *Andersen,* 22 Cal.App.3d at 770; *See also, Gorman v. Univ. of*

17

1   *Rhode Island*, 837 F.2d 7, 16 (1st Cir. 1988) (the "weight of authority is against

2   representation by counsel at disciplinary hearings, unless the student is also facing

3   criminal charges stemming from the incident in question"); *Osteen v. Henley*, 13

4   F.3d 221, 225 (7th Cir.1993); *Henson v. Honor Comm. of Univ. of Virginia.*, 719

5   F.2d 69, 74 (4th Cir.1983); *Madera v. Board of Education,* 386 F.2d 778 (2d

6   Cir.1967); *Charles S. v. Board of Education*, 20 Cal.App.3d 83, 89-90 (1971).

7      Here, Plaintiff does not contend the University failed to inform him of his

8   ability to have counsel present, nor does he contend he was not represented at the

9   first hearing. Plaintiff's allegations relating to counsel focus on the scheduling of the

10   second hearing session. Yet, Plaintiff chose to proceed with the second hearing on a

11   date his counsel was unavailable, rather than putting the hearing off until school

12   resumed.[2]

13      There is no dispute the University provided Plaintiff with notice of the

14   charges against him and the opportunity to be heard. These facts as alleged in the

15   Amended Complaint show the Regents satisfied Plaintiff's due process

16   requirements. See *Foo v. The Trustees of Indiana Univ.,* 88 F.Supp.2d 937, 952

17   (S.D.Ind. 1999) (in a school disciplinary proceeding, administrator complied with

18   due process requirements where he gave the student notice of the charges against

19   him, showed him the evidence supporting the charges, questioned the student about

20   the alleged misconduct, and allowed the student to tell his side of the story).

21   Plaintiff's cause of action for violation of due process under 42 U.S.C. § 1983 must

22   therefore be dismissed.

        **b.**        **Perkin did not violate a clearly established Constitutional right**

25      Further, because Plaintiff has failed to identify a knowing violation of clearly

26   _____

27   [2] RFJN, Ex. 1, filed in support of Defendants' Motion to Dismiss Amended

28   Complaint.

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

REPLY TO OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT

Case No. 2:15 CV 02478 SVW

established due process rights, as defined by California law or the Ninth Circuit,

Perkin, an individual defendant, is entitled to qualified immunity against Plaintiff's

due process claims. *Saucier,* 533 U.S. at 236. While Plaintiff may argue the law

should require more due process in student conduct hearings, in this case, Perkin

complied with the law as set forth by the Supreme Court in providing Plaintiff with

notice of the charges and a hearing. She cannot now be held personally liable for not

granting Plaintiff additional processes which were not clearly required by the law.

*Id.*

### C.    The Declaratory Judgment Claim Should Be Dismissed

The Regents do not dispute the District Court has the "authority to declare the

rights and other legal relations of any interested party seeking such declaration

under 28 U.S.C. § 2201." Opp., 21:24-25. But under the two-part test outlined by

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005), however, the

court must determine if there exists an actual case or controversy within the court's

jurisdiction. *Id.* If so, the court must decide whether to exercise its jurisdiction. *Id.*

This case meets neither requirement. First, there is no actual controversy

within the Court's jurisdiction. Plaintiff's explanation of the controversy he seeks

this Court to review is "a reversal of the outcome of the student hearing." Opp.,

22:4-5. This relief can only be granted through the exercise of the proper

administrative procedure set forth in California Code of Civil Procedure, § 1094.5.

Second, Plaintiff's claims which give rise to this Court's jurisdiction are

based on Title IX and 42 U.S.C. § 1983. Because both of these claim fails, this

Court should decline to exercise jurisdiction under the Declaratory Judgment Act.

*Doe v. University of the South*, 687 F.Supp.2d 744 (E.D. Tenn. 2009).

### D.    California law requires a party seeking reversal of an administrative decision to *first* petition for writ of mandate

The Regents' moving papers do not request reconsideration of this Court's

prior order. The Court's order on the motion to dismiss the original complaint

19

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1    analyzed whether California's administrative mandate process was a jurisdictional

2    bar on Plaintiff's claims, finding it was as to several of the claims. The Court's

3    order, however, was not tantamount to finding a claim for writ of mandate would

4    necessarily withstand a motion to dismiss. Dkt. # 43, p. 4.

5         The remedy for a California student who disputes the outcome of his or her

6    disciplinary proceeding is to petition the court for writ of mandate under California

7    Code of Civil Procedure § 1094.5. *Goldberg,* 248 Cal.App.2d at 873. The failure to

8    do so bars further adjudication of the party's claims. *Johnson v. City of Loma Linda*

9    (2000) 24 Cal.4th 61, 69-70. This rule makes logical sense. The writ procedure set

10   forth in § 1094.5, and interpreting case law, provides guidelines for how courts

11   should review administrative decisions. A court hearing a petition for writ of

12   mandate must make the following inquiry: (1) did the respondent proceed without,

13   or in excess of, jurisdiction; (2) was there a fair trial; and, (3) was there a prejudicial

14   abuse of discretion. Calif. Code of Civil Proc., § 1094.5(b). There are two potential

15   standards of review for the trial court hearing a writ petition: independent judgment

16   and substantial evidence. The court is authorized to exercise its independent

17   judgment on the evidence where the decision substantially affects a fundamentally

18   vested right. *Bixby v. Pierno,* 4 Cal.3d 130, 143-44 (1971). In all other cases, the

19   court uses the substantial evidence standard in light of the record as a whole. Calif.

20   Code of Civil Proc., § 1094.5(c).

21        The rule requiring a Plaintiff petition for writ of mandate before seeking civil

22   liability prevents the Court from making a dual inquiry. The court tasked with

23   reviewing a writ of mandate reviews the evidence on a different standard than a

24   court hearing a Title IX or due process claim. It is for this reason California courts

25   hold a plaintiff seeking to reverse an administrative decision must petition for writ

26   of mandate *before* bringing a civil action. *Y.K.A. Industries, supra,* 174 Cal.App.4th

27   at 355 [emphasis added]; See also *Johnson,* 24 Cal.4th at 69-70 (claim for civil

28   damages barred unless plaintiff *first* challenged administrative decision through

20

1   mandamus). Plaintiff failed to do this, therefore barring the present claim under

2   California Code of Civil Procedure § 1094.5.

3       Plaintiff's claim under California Code of Civil Procedure § 1085 also fails.

4   This statute only applies where (1) there is no other plain, speedy, and adequate

5   remedy at law; (2) the University has a clear, present, and ministerial duty to act in a

6   particular way; and, (3) the plaintiff has a clear, present and beneficial right to

7   performance of that duty. *Morgan v. Bd. of Pension Comrs*., 85 Cal.App.4th 836,

8   842 (2000). A "ministerial duty" is one that is required to be performed in a

9   prescribed manner under the mandate of legal authority without the exercise of

10  discretion or judgment. *Id*. at 843. Here, Plaintiff had an adequate remedy at law,

11  namely the proper writ procedure, to be utilized prior to bringing this civil action,

12  and there is no ministerial duty. The decision whether to find a student responsible

13  for a conduct code violation necessarily involves the exercise of judgment. This case

14  does not fall within the parameters for writ relief under Section 1085.

15  **III.   CONCLUSION**

16      For the foregoing reasons, in addition to those set forth in the moving papers,

17  the Court should dismiss Plaintiff's Amended Complaint. "If the court determines

18  that the 'allegation of other facts consistent with the challenged pleading could not

19  possibly cure the deficiency,' then a dismissal without leave to amend is proper."

20  *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.1988). Here, Plaintiff has already been

21  given leave to amend, and the new allegations in the Amended Complaint show

22  Plaintiff could not cure the deficiencies. Thus, dismissal with prejudice is

23  appropriate.

24  Dated: April 11, 2016             NYE, PEABODY, STIRLING, HALE &
                                       MILLER, LLP
25

26                                     By: _____/S/_____
                                          Jonathan D. Miller, Esq.
27                                        Alison M. Bernal, Esq.
                                          Attorney for Defendant, REGENTS OF
28                                        THE UNIVERSITY OF CALIFORNIA
                                          and SUZANNE PERKIN

                                          21

NYE, PEABODY, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101