UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [55].

On April 3, 2015, Plaintiff John Doe filed this Title IX suit against Defendant Regents of the University of California. On December 14, 2015, the Court granted Defendant's motion to dismiss. (Dkt. 43). On January 25, 2016, Plaintiff filed a First Amended Complaint ("FAC") and added Defendant Suzanne Perkin. (Dkt. 48). Presently before the Court is Defendants' motion to dismiss Plaintiff's FAC. (Dkt. 55). For the reasons stated below, the Court GRANTS Defendants' motion.

### I. Plaintiff's Allegations

#### A. The Alleged Sexual Assault

On June 14, 2014, Plaintiff John Doe, Jane Doe, and a group of their friends traveled to Lake Tahoe to celebrate the end of the school year. (FAC ¶ 34). Throughout the trip, Jane Doe bragged about a "threesome" she had previously engaged in. (*Id.* ¶ 36).

On June 16, 2014, after drinking together, Jane Doe, L.B., and D.J. advised B.R. that they wanted to engage in group sex, but only if Plaintiff also participated. (*Id.* ¶¶ 38-39). Plaintiff agreed and the friends engaged in group sex. (*Id.* ¶¶ 41-49). Unbeknownst to Plaintiff, L.B., B.R., and D.J., Jane Doe took a hydrocodone pill for an ankle injury and consumed five drinks before engaging in the group sex. (*Id.* ¶ 43). Plaintiff alleges that Jane Doe was a willing participant throughout—getting on top of Plaintiff at one point, kissing him passionately, rubbing his hair during oral sex, and verbalizing that she liked what he

Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

was doing. (*Id.* ¶ 46). Jane Doe did not exhibit any signs of incapacitation and the following morning, the friends joked about the night before. (*Id.* ¶¶ 46, 51).

At the time of the trip, Plaintiff was on a leave of absence from the University of California at Santa Barbara ("UCSB") and Jane Doe had just finalized her transfer to another school. (*Id.* ¶¶ 69-70).

### B. National and Local Pressure Regarding Sexual Misconduct

Plaintiff alleges that prior to and during the relevant events in this case, UCSB experienced growing local and national pressure to resolve complaints of sexual misconduct:

- In 2014, the California State Auditor ("CSA") reviewed California's compliance with reports of campus crime, including sexual assault, and found that six California institutions were not in compliance with federal reporting requirements. (*Id.* ¶ 52). One such institution was the University of California, San Diego, a sister school to UCSB. (*Id.*).

- In February 2014, the UCSB campus was on high alert for sexual predators following reports that female UCSB students were victims to a gang rape. (*Id.* ¶ 53).

- In June 2014, reports of sexual assault at UCSB were six times the rate at California Polytechnic State University. (*Id.* ¶ 56). Under Student Affairs campus resources for "Distressed Students Guide," UCSB states that "Sexual assaults at UCSB are predominantly committed by men against women." (*Id.* ¶ 55).

- In July 2014, UC President Janet Napolitano established a Task Force to implement strategies for schools within the UC system to more effectively respond to sexual violence and sexual assault on campus. (*Id.* ¶ 58). Assistant Dean of Students Suzanne Perkin ("Defendant Perkin" or "Perkin") was a participant of the Task Force. (*Id.*).

- On September 3, 2014, six female UCSB students filed a highly-publicized Title IX complaint with the Department of Education Office of Civil Rights claiming that USCB failed to adequately handle their complaints of sexual assault. (*Id.* ¶ 59).

|  |  | : |
|---|---|---|
|  | Initials of Preparer | |
|  | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | John Doe v. Regents of The University of California | | |

- Also in September 2014, the Centers for Disease Control and Prevention ("CDC") released a report that one in five women in the United States has been raped during her lifetime. (*Id.* ¶ 60). Following the CDC report, student protests began at UCSB calling for greater strides against sexual assault on campus. (*Id.*).

- On November 14, 2014, Perkin participated in a roundtable discussion at UCSB regarding sexual assault on campus. (*Id.* ¶ 61). Perkin was personally criticized for failing to handle investigations of sexual misconduct and for not finding more men guilty of sexual misconduct. (*Id.*).

- Campaigns such as "Don't Be That Guy" and "Make Your Move" posted flyers on and around the UCSB campus to warn the community that male students were perpetrators of sexual assault. (*Id.* ¶ 64).

### C. UCSB's Investigation

Plaintiff alleges that Perkin's investigation went beyond UCSB's jurisdiction because the Lake Tahoe trip was off campus and unrelated to any school activity, and Jane Doe was no longer a student at the time of the trip. (*Id.* ¶¶ 66, 68-71).

On November 6, 2014, Plaintiff received notice that he was being charged with sexual assault in violation of Section 102.28 of the UCSB General Standards of Conduct. (*Id.* ¶ 65). On November 13, 2014, Plaintiff met with Defendant Perkin. (*Id.*). At the meeting, Perkin asked Plaintiff, "Are you ready to take responsibility?" but Plaintiff declined to do so. (*Id.* ¶ 67). At John Doe's request, Perkin read Jane Doe's statement aloud to him. (*Id.*). On November 25, 2014, Plaintiff was advised that a hearing would take place before a disciplinary committee on December 11, 2014. (*Id.* ¶ 77).

On December 9, 2014, Plaintiff received Perkin's First Investigative Report. (*Id.* ¶ 78). Plaintiff contends that although the First Investigative Report was riddled with various inaccuracies and mischaracterized Plaintiff's testimony, Perkin refused to revise it. (*Id.* ¶¶ 79-82). Plaintiff alleges that Perkin's report was biased as a result of "extreme pressure to find more male students responsible of sexual assault, combined with the campus environment that 'sexual assaults at UCSB are predominantly committed by men against women.'" (*Id.* ¶ 86). In particular, Perkin's investigation concluded ten days

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

after the Roundtable discussion where she was personally criticized for not finding more men guilty of sexual misconduct. (*Id.*).

### D. The Disciplinary Hearings and Suspension

The first hearing took place on December 11, 2014 before the Sexual Violence Conduct Committee (the "Committee"). (*Id.* ¶ 87). Plaintiff, Jane Doe, and witnesses D.J., L.B., and B.R. provided their testimony. (*Id.*). Perkin was not a member of the Committee, but was present during the Committee's deliberations. (*Id.* ¶ 94). Plaintiff alleges that he was deprived of a meaningful opportunity to be heard because (1) his request to produce character witnesses was denied, while Jane Doe was permitted to introduce such witnesses; and (2) he was denied the opportunity to thoroughly question witnesses. (*Id.* ¶¶ 88-93). For example, when John Doe asked L.B. whether Jane Doe's behavior had ever suggested that she was a dishonest person, the Committee interjected and directed L.B. to limit her testimony to the events of June 16, 2014. (*Id.* ¶ 93). Plaintiff asserts that these procedural deficiencies were "driven by the gender-based notion that 'sexual assaults at UCSB are predominantly committed by men against women.'" (*Id.* ¶ 90).

On December 16, 2014, Perkin advised Plaintiff that the Committee had deliberated and sought to re-open the hearing to ask the witnesses additional questions. (*Id.* ¶ 95). Plaintiff alleges that despite his representation to Perkin that his attorney would be available any day during the week except for December 19, 2014, Perkin scheduled the hearing for that date.[1] (*Id.* ¶ 97). Perkin prepared a Second Investigative Report consisting of various text and Facebook messages between Jane Doe and L.B., M.M., C.B., and an individual named "Juliana Amarah." (*Id.* ¶ 98). The report was provided to Plaintiff three and a half hours before the December 19, 2014 hearing. (*Id.* ¶ 99). Plaintiff alleges that at the second hearing, he was again denied the right to thoroughly question witnesses. (*Id.* ¶ 100).

Following the second hearing, the Committee issued a decision finding Plaintiff responsible for sexual assault. (*Id.* ¶ 104). The Committee recommended a two-quarter suspension, as well as exclusion from participating in registered campus organizations upon Plaintiff's return. (*Id.*). The decision was

---

[1] The Court DENIES Defendants' request for judicial notice of e-mail communications between Plaintiff and Defendant Perkin. While Defendant Perkin's scheduling of the second hearing is one example of the alleged procedural deficiencies, Plaintiff does not refer to the e-mail communications between them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

upheld by the Vice Chancellor for Student Affairs on January 15, 2015. (*Id.* ¶ 104). On January 29, 2015, Plaintiff appealed the decision based on the following grounds: (1) lack of substantial bases of fact to support the sanction; (2) substantial violations of fair process in the proceedings; (3) excessive or inappropriate sanction; and (4) newly discovered important evidence not known at the time of the hearing. (*Id.* ¶ 106). Plaintiff's appeal was denied by the Chancellor on February 16, 2015. (*Id.*).

### E. Allegations of Gender Bias

Plaintiff alleges, upon information and belief, that "male students at UCSB who are accused of sexual misconduct are treated less favorably than female students who are accused of sexual misconduct due to the fact that 'sexual assaults at UCSB are predominantly committed by men against women.'" (*Id.* ¶ 110). Plaintiff also alleges that "male students at UCSB who are accused of sexual misconduct are sanctioned less favorably than a female students [sic] who are accused of sexual misconduct due to the fact that 'sexual assaults are predominantly committed by men against women.'" (*Id.* ¶ 111). In light of the national and local pressure to combat sexual assault on campuses, Plaintiff contends that UCSB is biased against male students as evidenced by Defendant Perkin's inaccurate investigation and report, the procedural deficiencies during his hearings, and the Committee's ultimate crediting of Jane Doe's version of events over Plaintiff's.

### II. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted).

### III. Discussion

#### A. Title IX

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

As a preliminary note, the Court emphasizes the narrow task before it. The Court is not tasked with weighing Plaintiff's account of the alleged sexual assault against Jane Doe's account of the event, or with weighing in on how universities should address sexual misconduct on campuses. The Court's task is simply to determine whether Plaintiff has alleged sufficient non-conclusory allegations to plausibly infer that he was discriminated against because of his sex.

Title IX prohibits any school that receives federal funds from discriminating on the basis of sex. 20 U.S.C. § 1681. A claim under Title IX cannot be premised on the disparate impact a policy has with respect to a protected group. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 367 (S.D.N.Y. 2015). Therefore, it is insufficient to show that a policy or practice disproportionally affects one sex; rather, "a plaintiff must ultimately show that the defendant discriminated against him or her *because of sex*; that the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Columbia Univ.*, 101 F. Supp. 3d at 367 (emphasis in original).

When a student challenges the outcome of a school disciplinary proceeding under Title IX, courts have followed the framework developed in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994). In *Yusuf*, the Second Circuit explained that Title IX recognizes two categories of potential claims for gender bias arising from a student disciplinary proceeding: erroneous outcome and selective enforcement. *Id.* at 715.

1. **Erroneous Outcome**

Under an erroneous outcome theory, a plaintiff must plead facts sufficient to (1) cast doubt on the accuracy of the disciplinary proceeding, and (2) show that the inaccuracy was motivated by gender bias against the plaintiff. *Id.* at 715. For example, such facts may include gender biased statements by members of the disciplinary tribunal, gender biased statements by pertinent university officials, or patterns of decision-making that show the influence of gender bias. *Id.*

Plaintiff contends that he has alleged sufficient facts to cast doubt on the accuracy of the proceeding because UCSB ignored ample evidence that Jane Doe consented to the group sex and instead credited Jane Doe's version of events. In particular, UCSB failed to credit testimony that Jane Doe expressed interest in group sex only if Plaintiff was involved, that when Plaintiff asked her, "are we really going to do this?" she responded "yes," that she did not appear incapacitated to the other eyewitnesses, and that she was an active participant throughout (i.e., kissing Plaintiff passionately, rubbing his hair as he

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

performed oral sex on her, assisting in the removal of clothing, and verbally expressing to Plaintiff that she liked what he was doing).

Plaintiff has not sufficiently cast doubt on the accuracy of the outcome of the disciplinary proceeding. Plaintiff primarily argues that the Committee erred by crediting Jane Doe's version of events. However, Plaintiff alleges that Jane Doe consumed a hydrocodone pill and five drinks prior to the group sex. (FAC ¶¶ 43, 139, 165). As UCSB's student code provides that consent cannot be given if a person is incapacitated, there appears to have been a sufficient basis for the Committee to find that Jane Doe could not consent to the group sex. (*Id.* ¶ 25).

Nevertheless, even assuming that Plaintiff has sufficiently cast doubt on the accuracy of the proceeding, his amended complaint suffers from the same deficiencies as his initial complaint—namely, a lack of factual allegations giving rise to a plausible inference that the erroneous outcome was caused by gender bias. Plaintiff alleges that his disciplinary outcome was rendered in the context of a growing national and local backlash against sexual assaults on campuses, including campaigns directed against male students such as "Don't Be That Guy," statements by UCSB that sexual assaults were predominantly committed by men against women, and a Roundtable discussion wherein Defendant Perkin was personally criticized for not finding more men guilty. Plaintiff asserts that this backdrop gives rise to a plausible inference that Perkin created an inaccurate and biased investigative report against Plaintiff because he is male and, more pertinently, that the disciplinary committee credited Jane Doe's version of events against contradicting testimony by Plaintiff and other eyewitnesses because Plaintiff is male.

After ignoring Plaintiff's conclusory allegations that the alleged procedural deficiencies in the hearings, and the Committee's crediting of Jane Doe's version of events, were the result of gender bias, as the Court is required to do under *Iqbal* and *Twombly*, what remains is plainly insufficient. First, Plaintiff does not allege that the various campaigns directed against male students were promulgated by UCSB. Second, UCSB's statement regarding the higher incidence of sexual assault committed by men against women was purely factual; the Court cannot plausibly infer, as Plaintiff does, that a higher rate of sexual assaults committed by men against women, or filed by women against men, indicates discriminatory treatment of males accused of sexual assault in the consequent proceedings. Third, while Plaintiff alleges that Perkin was personally criticized for not finding more men guilty, there is no allegation that Perkin reacted or responded to the criticism in a manner demonstrating a gender bias against males. To impute gender bias on Perkin based on a critique made by a third party is purely speculative. Moreover, as the Court noted in its prior order dismissing Plaintiff's initial complaint, the Court gives limited weight to any

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

alleged gender bias of Perkin given that she was not a member of the disciplinary tribunal that issued the decision against Plaintiff. Ultimately, Plaintiff's allegations, at best, only suggest a bias against those accused of sexual assault and in favor of victims of sexual assault.

The Court notes that district courts across the country are divided in addressing similar Title IX claims (i.e., cases where a male student has sued a university that found him responsible for committing sexual assault after an allegedly flawed disciplinary proceeding) on a motion to dismiss. Specifically, courts are split on whether allegations that a university was influenced by gender bias in light of national and local backlash satisfy the pleading requirements of *Iqbal* and *Twombly*. Compare *Columbia Univ.*, 101 F. Supp. 3d 356 (dismissing Title IX claim under erroneous outcome theory because the only allegations of gender bias were conclusory); *Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783 (N.D. Ill. 2015) (same); *Salau v. Denton*, 2015 WL 5885641 (W.D. Mo. Oct. 8, 2015) (same); *Doe v. Univ. of Cincinnati*, 2016 WL 1161935 (S.D. Ohio Mar. 23, 2016) (same); *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774 (S.D. Ohio 2015) (same); with *Doe v. Brown Univ.*, 2016 WL 715794, at *8 (D. R.I. Feb. 22, 2016) (finding similar allegations sufficient to demonstrate that the outcome of a disciplinary hearing was motivated by gender bias because to require more "is both practically impossible and inconsistent with the standard used in other discrimination contexts"); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748 (D. Md. 2015) (finding similar allegations sufficient on a motion to dismiss); *Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 751 (S.D. Ohio 2014) (finding allegation that "Defendants were reacting against him, as a male, to demonstrate to the [Office of Civil Rights] that Defendants would take action, as they had failed to in the past, against males accused of sexual assault" sufficient on a motion to dismiss).

The Court also recognizes the difficulty a plaintiff faces in such cases to plausibly plead gender bias absent gender biased statements or actions made by disciplinary officials, or indications that female students accused of sexual assault are treated differently than male students accused of sexual assault. Nonetheless, the Court is constrained by the Supreme Court's holdings in *Iqbal* and *Twombly*. Difficult as it may be to allege sufficient *factual* matter permitting a plausible inference of gender bias, conclusory legal allegations will not suffice.

Therefore, because Plaintiff's non-conclusory allegations fail to give rise to a plausible inference that the outcome of his disciplinary proceeding was motivated by gender, the Court GRANTS Defendants' motion to dismiss.

### 2. Selective Enforcement

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

For similar reasons, Plaintiff's Title IX claim under a selective enforcement theory must be dismissed. To succeed on a claim under a selective enforcement theory, Plaintiff must show that regardless of his guilt or innocence, the severity of punishment was affected by Plaintiff's gender. *Yusuf*, 35 F.3d at 715. As discussed above, Plaintiff has failed to plead sufficient factual matter giving rise to the inference that his punishment was affected by gender bias. In addition, Plaintiff has failed to cure the deficiencies in his initial complaint and provides only conclusory allegations that his punishment—a two-quarter suspension—was disproportionate to the severity of the charges against him. Plaintiff has not sufficiently alleged that such a punishment is disproportionate for a charge of sexual assault or that a similarly situated student of the opposite gender was treated more leniently.

Therefore, the Court also dismisses Plaintiff's Title IX claim under a selective enforcement theory.

### B. 42 U.S.C. § 1983

Plaintiff alleges a variety of ways in which Defendant Perkin deprived him of due process including, but not limited to: (1) failing to provide Plaintiff a copy of the First Investigative Report until two days before the first hearing date; (2) failing to revise her First Investigative Report after Plaintiff informed her of inaccuracies; (3) failing to provide Plaintiff a copy of the Second Investigative Report until three and a half hours before the second hearing; (4) denying Plaintiff the right to be accompanied by counsel at the second hearing; (5) prohibiting Plaintiff from making a statement or submitting any evidence in support of his defense at the second hearing; (6) denying Plaintiff's request to present character evidence favorable to his defense; and (7) denying Plaintiff the opportunity to thoroughly cross-examine all witnesses. (*Id.* ¶ 195).

The Court previously dismissed Plaintiff's due process claim as it was brought against Defendant Regents of the University of California, which is not a "person" under section 1983. *See Armstrong v. Meyers*, 964 F.2d 948, 949 (9th Cir. 1992) ("The Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment purposes, and therefore is not a 'person' within the meaning of section 1983."); *Associated Students of University of California at Santa Barbara v. Regents of University of California*, 2007 WL 196747, at *3 (N.D. Cal. Jan. 23, 2007) (finding that the Regents are immune from suit under 42 U.S.C. § 1983 because they are not "persons" within the meaning of the statute). Plaintiff now brings his section 1983 claim against Defendant Perkin, the Assistant Dean of Students.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | July 25, 2016 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

It is not clear to the Court whether Plaintiff's claim against Perkin is in her official or individual capacity. Plaintiff's request for monetary damages in this claim suggests that it is against Perkin in her individual capacity. Yet, in Plaintiff's opposition to the motion to dismiss, he concedes that "actions for monetary damages may not be prosecuted against a state official in her official capacity" and argues that he in fact seeks prospective relief pursuant to the doctrine of *Ex parte Young*.[2] (Pl. Opp. at 19). Plaintiff then goes on, however, to argue that Perkin is not entitled to qualified immunity.

Therefore, the Court GRANTS Defendants' motion to dismiss WITHOUT PREJUDICE. Plaintiff is ordered to clarify the scope and request of his second cause of action.

### C. Declaratory Relief and Petition for Writ of Mandate

Under 28 U.S.C. § 1367(c), a district court may decline supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." Moreover, a court should usually decline to exercise supplemental jurisdiction when all federal claims are dismissed prior to trial. *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994). As no federal claims remain, the Court declines to exercise supplemental jurisdiction over the remaining claims and GRANTS Defendants' motion to dismiss WITHOUT PREJUDICE.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss in its entirety. As Plaintiff's claim under Title IX suffers from the same deficiencies as his initial complaint, the Court finds that further amendment would be futile. Accordingly Plaintiff's Title IX claim is DISMISSED WITH PREJUDICE. Plaintiff's claim under section 1983 and state claims are DISMISSED WITHOUT PREJUDICE. Plaintiff may file an amended complaint curing the deficiencies described above within twenty-one (21) days of this order.

---

[2] Plaintiff did not request injunctive relief as part of his second cause of action under section 1983, but rather as part of his third cause of action for declaratory relief. Moreover, the third cause of action is brought against Defendant Regents of the University of California, not Defendant Perkin.

Initials of Preparer   PMC