1 | CHRISTOPHER J. MEAD, ESQ. (SBN 115091)
SCOTT MCLEOD, ESQ. (SBN 242035)
2 | COOPER, WHITE & COOPER, LLP
3 | 201 California Street, 17th Floor
San Francisco, CA 94111
4 | Telephone number:  (415) 765-6232
Facsimile number:   (415) 433-5530
5 |

6 | WARSHAW BURSTEIN, LLP
555 Fifth Avenue
7 | New York, NY 10017
Telephone number:  (212) 984-7700
8 | Facsimile number:   (212) 972-9150

9 |
10 | **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

11 |

12 | JOHN DOE,                              CASE NO. 15 CV-02478

13 |          Plaintiff,                   PLAINTIFF'S OPPOSITION TO
                                           DEFENDANTS' MOTION TO DISMISS
14 |   vs.                                 PLAINTIFF'S SECOND AMENDED
                                           COMPLAINT
15 | REGENTS OF THE UNIVERSITY OF
CALIFORNIA and SUZANNE PERKIN,

16 |          Defendants.

17 |

1080991.1
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT ........................................... 1

    A.    The Evening of June 16, 2014 ................................................................. 1

    B.    UCSB Was Experiencing Significant Pressure to Resolve Complaints of Sexual Misconduct Against Accused Male Students ................................. 2

    C.    UCSB's Dubious Decision to Initiate Charges of Sexual Assault ........... 5

    D.    The Investigation Was Driven By Gender Bias ...................................... 5

    E.    Plaintiff's Appeal and Damages ............................................................ 6

II. ARGUMENT .............................................................................................................. 7

    A.    THE LEGAL STANDARD GOVERNING MOTIONS TO DISMISS ... 7

    B.    PLAINTIFF HAS STATED CLAIMS UNDER 42. U.S.C. § 1983 FOR DUE PROCESS VIOLATIONS .................................................................. 8

        1.    Perkin is Not Entitled to Sovereign Immunity ............................ 8

        2.    Federal Qualified Immunity Does Not Apply Here .................... 11

        3.    Perkin Is Not Entitled To Quasi-Judicial Immunity .................. 15

    C.    PLAINTIFF IS ENTITLED TO A DECLARATORY JUDGMENT ... 17

    D.    THIS COURT ALREADY RULED THAT PLAINTIFF MAY FILE A PETITION FOR WRIT OF MANDATE ............................................... 18

III. CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alden v. Maine,*
    527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999) ................................... 8

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ................................ 7

*Atlantica Holdings, Inc.,*
    2014 WL 917055 * 4 ............................................................................................. 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................ 7

*Bennett v. Yoshina,*
    140 F.3d 1218 (9th Cir. 1998) ....................................................................... 10

*Brown v. Superior Court,*
    116 Cal. App. 4th 320 (2004) ........................................................................ 20

*Cohen v. Avande, Inc.,*
    874 F.Supp.2d 315 (S.D.N.Y. 2012) .............................................................. 7

*Constantineau,*
    400 U.S. at 437, 91 S.Ct. 507 .......................................................................... 9

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.,*
    911 F.2d 242 (9th Cir. 1990) ........................................................................... 7

*Doe v. Rector & Visitors of George Mason Univ.,*
    CV 15-00209 TSE (MSN) [Dkt. 27] ......................................................... 9, 13

*Doe v. Univ. of the South,*
    687 F. Supp. 2d 744 (E.D. Tenn. 2009) ....................................................... 18

*Erickson v. Pardus,*
    551 U.S. 89 (2007) ............................................................................................ 7

*Ex parte Young,*
    209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) .......................................... 8

*Fed. Agr. Mortgage Corp. v. It's A Jungle Out There, Inc.,*
    No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) ......... 1

*Gomes v. Univ. of Maine Sys.,*
    365 F. Supp. 2d 6 (D.Me. 2005) ................................................................... 12

*Goss v. Lopez,*
    419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) ............................ 11, 13

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

*Harris v. Amgen, Inc.*,
    788 F.3d 916 (9th Cir. 2015) ............................................................................................... 7

*Hasbrouck v. Texaco, Inc.*,
    879 F.2d 632 (9th Cir.1989) .............................................................................................. 19

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009) ................................................................................................. 7

*Jaksa v. Regents of Univ. of Michigan*,
    597 F. Supp. 1245 (E.D. Mich. 1984) *aff'd*, 787 F.2d 590 (6th Cir. 1986) .................. 11

*John Doe v. Washington & Lee Univ.*,
    No. 6:14-CV-00052, 2015 WL 4647996, *10 (W.D. Va. Aug. 5, 2015) ......................... 11

*Johnson v. City of Loma Linda*,
    24 Cal.4th 61 (2000) ......................................................................................................... 20

*Keene v. Rodgers*,
    316 F.Supp. 217 (D.Me. 1970) ......................................................................................... 12

*Lam Research Corp. v. Schunk Semiconductor*,
    65 F. Supp. 3d 863 (N.D. Cal. 2014) ................................................................................ 18

*Largan Precision Co, Ltd. v. Genius Elec. Optical Co.*,
    No. 13-CV-02502-JD, 2014 WL 6882275, at *2 (N.D. Cal. Dec. 5, 2014) ..................... 18

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................................. 7

*Nat. Res. Def. Council v. California Dep't of Transp.*,
    96 F.3d 420 (9th Cir. 1996) ................................................................................................. 8

*Parks School of Business, Inc. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) ............................................................................................... 7

*Pearson v. Callahan*,
    555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) .................................................... 11

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89,  S.Ct. 900, 79 L.Ed.2d 67 (1984) .................................................................. 8

*Prasad v. Cornell University*,
    Civ. No. 15-cv-00322, *32 (N.D.N.Y. Feb. 24, 2016) ...................................................... 11

*Principal Life Ins. Co. v. Robinson*,
    394 F.3d 665 (9th Cir. 2005) ............................................................................................. 18

*Sambonet Paderno Industrie, S.P.A. v. Sur La Table, Inc.*,
    No. CV 14-9473 FMO (RZX), 2015 WL 4498795, at *4 (C.D. Cal. July 23, 2015) .......... 8

*Sciolino*,
    480 F.3d at 649 ................................................................................................................... 9

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1
iii
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint
Case No. 2:15 cv 02478 (SVW)(JEM)

*Streit v. Bushell,*
    424 F.Supp.2d 633 (S.D.N.Y. 2006) ..................................................... 7

*Vasquez v. Los Angeles County,*
    487 F.3d 1246 (9th Cir. 2007) .............................................................. 7

*Will v. Michigan Dep't of State Police,*
    491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ...................... 8

*Y.K.A. Industries, Inc. v. Redevelopment Agency of the City of San Jose,*
    174 Cal.App.4th 339 (2009) .............................................................. 20

**STATUTES**

28 U.S.C. § 2201 ....................................................................................... 18

42 U.S.C. 1983 ..................................................................................... 1, 8

C.D. Cal. Local R. 7-18 ............................................................................ 19

Fed. R. Civ. P. 12 (b)(6) ...................................................................... 1, 7

Fed. R. Civ. P. 12(g)(2) .............................................................................. 1

Title VII of the Civil Rights Act of 1964 .................................................. 20

**8**

Charles Alan Wright, *The Constitution on the Campus,* 22 Vand. L.Rev. 1027, 1071–72
    (1969) ............................................................................................... 12

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

**PRELIMINARY STATEMENT**

Plaintiff John Doe ("Plaintiff") submits this Memorandum of Law in opposition to the Regents of University of California's ("University" or "Regents") motion to dismiss ("Motion") Plaintiff's Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12 (b)(6).

The Motion represents the Regents' third attempt to dismiss the instant action. The Regents' proclaim that Perkin is insulated by three (3) separate bases for immunity; sovereign immunity, qualified immunity and quasi-judicial immunity. The Regents' recycled arguments of sovereign immunity and qualified immunity fail in light of the exception found in *Ex Parte Young*, and Plaintiff's amendment to clarify that Perkin is being sued in her official capacity, curing the sole deficiency outlined in Hon. Stephen V. Wilson's Order, dated July 25, 2016 (Dkt. # 73). Now, the Regents raise, for the first time, the application of quasi-judicial immunity, which does not apply to school officials and, in any event, fails on the basis of Fed. R. Civ. P. 12(g)(2). *Fed. Agr. Mortgage Corp. v. It's A Jungle Out There, Inc.*, No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005).  The Motion should be denied in its entirety.

Plaintiff brings this action under 42 U.S.C. 1983, not to retry his underlying disciplinary hearing, but to seek prospective relief in light of the University's substantive and procedural failures during the disciplinary process, which ultimately stymied Plaintiff's ability to mount a defense to charges rising to the utmost seriousness. Plaintiff was not provided with notice of the exact charges or evidence prior to his second hearing. Perkin's failure to allow Plaintiff to review the evidence until a mere three (3) hours before his second hearing deprived him of the ability to gather evidence or witnesses to refute critical dispositive evidence that demonstrably changed an initial "not responsible" finding to a finding of "responsibility." Perkin's failures to afford Plaintiff proper notice and a meaningful opportunity to be heard in his defense of allegations of sexual assault constitute a deprivation of Plaintiff's substantive and procedural due process rights under the Fourteenth Amendment.

## I. STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT

**A.   The Evening of June 16, 2014**

During the weekend of June 14-16, 2014, Plaintiff, Jane Doe and a group of their friends

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1

1

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint

Case No. 2:15 cv 02478 (SVW)(JEM)

1  traveled to Jane Doe's parents' home in Lake Tahoe to celebrate the end of the school year. (SAC

2  ¶ 33.)  During the trip, Jane Doe repeatedly bragged about a "threesome" she had previously

3  participated in with a model and photographer in New York. (SAC ¶ 35.)  On June 16, 2014, Jane

4  Doe, L.B., and D.J. advised B.R that they wanted to engage in group sex, but only if Plaintiff was

5  involved too. (SAC ¶ 38.)  Plaintiff agreed to participate. (SAC ¶ 40.)

6         Plaintiff and Jane Doe engaged in consensual sexual intercourse that night ("Incident").

7  (SAC ¶¶ 43-46.)  According to accounts by Plaintiff, L.B., D.J. and B.R., at no point leading up to

8  or through the sexual activity did Jane Doe exhibit any signs of incapacitation. (SAC ¶¶ 41, 79,

9  80.) In fact, Jane Doe was a willing participant; she got on top of Plaintiff at one point, she kissed

10  him passionately, she rubbed his hair during oral sex, and verbalized that she liked what he was

11  doing. (SAC ¶ 46.) The following morning, everyone joked about the night before. (SAC ¶ 50.)

12         At the time of the Incident, Plaintiff was on a leave of absence from the University, and

13  Jane Doe was no longer a student at the University – the semester had concluded and her transfer

14  to Cornell University had been finalized several months prior. (SAC ¶¶ 68-69.)

15  **B.     UCSB Was Experiencing Significant Pressure to Resolve Complaints of Sexual
       Misconduct Against Accused Male Students**

16

17         In 2014, the California State Auditor (CSA) reviewed California's compliance with reports

18  of campus crime, including sexual assault, and determined that six California institutions were not

19  in complete compliance with federal reporting requirements, including University of California,

20  San Diego, a sister school to UCSB.  (SAC ¶ 51; Exhibit D.)

21         Additionally, the UCSB campus was on high alert for sexual predators on campus after

22  news broke about female UCSB students who were gang raped in February 2014. *See*, UC-Santa

23  Barbara campus on alert after weekend gang rape, sexual assault, *available at*

24  http://www.nydailynews.com/news/crime/calif-campus-alert-gang-rape-sex-assault-article-

25  1.1700427 (last visited January 20, 2016). (SAC ¶ 52; Exhibit E.)

26         At UCSB, the Women, Gender & Sexual Equity Department uses a feminist approach to

27  provide support, advocacy, resources and education to the UCSB community." *See*, Women,

28  Gender & Sexual Equity Program Calendar 2014, *available at*

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                              2
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)

1   http://wgse.sa.ucsb.edu/docs/default-source/women_docs/ucsb_wgse_fall2014_calendar_web.pdf

2   (last visited January 20, 2016). One of the Department's resources includes, Campus Advocacy

3   Resources & Education (CARE), which provides advocacy and support to students impacted by

4   sexual assault, dating/domestic violence and stalking.  CARE has taken strides to increase

5   awareness about sexual assault on campus and is located in the Women's Center of UCSB. (SAC

6   ¶ 53; Exhibit F.)

7          Under Student Affairs campus resources for "Distressed Students Guide," UCSB states

8   that **Sexual assaults at UCSB are predominantly committed by men against women.**" *See,*

9   Sexual Assault, *available at* http://www.sa.ucsb.edu/responding-to-distressed-

10  students/concerns/interpersonal-violence/sexual-assault (last visited January 20, 2016). (SAC ¶ 54;

11  Exhibit G.)

12         According to statistics reported in June 2014, the reports of sexual assault at UCSB are six

13  times the rate at California Polytechnic State University.  According to CARE director Jill Dunlap,

14  the CARE program is the reason for the high rate of reports of sexual assault, "I think higher

15  numbers are always a benefit, because it's a sign that we're doing our job." (SAC ¶ 55; Exhibit H.)

16         In fact, UCSB received a three-year grant of nearly $300,000, which was awarded by the

17  Department of Justice Office of Violence Against Women in 2011, and a $1 million grant from the

18  Office of Violence Against Women in 2007. (SAC ¶ 56.)

19         In July 2014, UC President Janet Napolitano established a Task Force to improve the

20  University's processes to address sexual violence or sexual assault, and implement strategies

21  across the UC system, including UCSB. Suzanne Perkin was a participant of the Task Force. *See,*

22  Exhibit I. The President was aiming for the UC to be the national leader in prevention and

23  response to sexual violence and sexual assault. (SAC ¶ 57; Exhibit I.)

24         On or about September 3, 2014, six female UCSB students filed a highly-publicized Title

25  IX complaint with the Department of Education Office of Civil Rights (OCR) claiming that their

26  respective sexual assault complaints were mishandled by the University and that it failed to

27  appropriately sanction their male assailants. *See,* Students File Federal Complaint Alleging

28  UCSB Mishandled Sexual Assault Cases, *available at* http://dailynexus.com/2014-09-

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                             3

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint        Case No. 2:15 cv 02478 (SVW)(JEM)

1   12/students-file-federal-complaint-alleging-ucsb-mishandled-rape-case/ (last visited October 13,

2   2015). (SAC ¶ 58; Exhibit J.)

3        In September 2014, Centers for Disease Control and Prevention (CDC) released a report

4   that one in five women in the United States — more than 23 million in all — have been raped

5   during their lifetimes. Following the CDC report, student protests began on the issue of sexual

6   assault on UCSB's campus, calling for greater strides and efforts to hold students accountable.

7   *See,* 1 in 5 U.S. women raped during their lifetimes, CDC study finds, *available at*

8   https://www.minnpost.com/second-opinion/2014/09/1-5-us-women-raped-during-their-lifetimes-

9   cdc-study-finds (last visited January 20, 2016). (SAC ¶ 59; Exhibit K.)

10       Perkin was also a participant in Sexual Assault and Harassment on Campus; A Roundtable

11  Discussion of UC Santa Barbara's Prevention and Response Efforts. The Roundtable took place

12  on November 14, 2014, and included Assembly member Das Williams and Senator Hannah-Beth

13  Jackson. The Roundtable's focus appears to have been the Complaint Process and Disciplinary

14  Policies, and Sexual Assault Education and Prevention Programs. At the Roundtable discussion,

15  Perkin was publicly disparaged for failing to do enough to address the problem of sexual assault.

16  The assembly members repeatedly accused Perkin of her failure to handle investigations of sexual

17  misconduct properly. Specifically, Perkin was personally criticized for not finding more men

18  guilty of sexual misconduct. One participant found the Roundtable outrageous because the

19  politicians ruthlessly pointed out that there were not enough men being found guilty. (SAC ¶ 60;

20  Exhibit L.)

21       The Roundtable Discussion was just an outgrowth of the existing pressure and climate on

22  UCSB's campus during the time period of John Doe's case; men accused of sexual misconduct

23  were perpetrators, and they should be found guilty. (SAC ¶ 61.)

24       Perkin's significant role in the disciplinary process – whether to find male students at

25  UCSB responsible of sexual assault – was highlighted by the fact that the criticism and pressure at

26  the Roundtable was personally directed at Perkin. (SAC ¶ 62.)

27       Campaigns such as, "Don't Be That Guy" and "Make Your Move" were posted

28  everywhere on campus and in restaurants in the campus community in the form of flyers to warn

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                                    4

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)

1  the entire UCSB community that male students were perpetrators of sexual assault. (SAC ¶ 63;

2  Exhibit M.)

3  **C.**      **UCSB's Dubious Decision to Initiate Charges of Sexual Assault**

4         On November 6, 2014, approximately five months after the "foursome" in Lake Tahoe,

5  John Doe first received notice that he was being charged with sexual assault in violation of

6  Section 102.08 of the UCSB General Standards of Conduct; namely, "physical abuse, sexual

7  assault, threats of violence, or other conduct that threatens the health or safety of any persons."

8  John Doe was directed to meet with Assistant Dean of Students Suzanne Perkin ("Perkin") on

9  November 13, 2014. (SAC ¶ 64.)

10         However, UCSB's decision to investigate the Lake Tahoe incident in the first instance was

11  suspect. According to its own policies, UCSB did not have jurisdiction to investigate or adjudicate

12  the subject Incident.  The UC Santa Barbara General Standards of Conduct state that the

13  University may only exercise jurisdiction over student conduct that occurs off University property

14  in certain situations.  In considering whether to exercise such off campus jurisdiction, the

15  University may consider a variety of factors including: (1) whether the alleged victim is a member

16  of campus community; (2) whether a crime has been reported to the criminal authorities; (3) the

17  risk of future harm involved; and (4) whether the off-campus conduct is part of a series of actions

18  that occurred both on and off campus.  Any request to extend the University's jurisdiction beyond

19  its typical borders must be reviewed by the Associate Dean for Judicial Affairs, Dean of Students,

20  Vice Chancellor for Student Affairs and a committee composed of both faculty members and

21  students.  None of these factors were considered, and there was no requisite review conducted.

22  (SAC ¶ 65.)

23         Nevertheless, before any witnesses were ever interviewed, Plaintiff was notified that he

24  was being charged with sexual assault. At the beginning of the process, Assistant Dean Suzanne

25  Perkin asked Plaintiff if he was "ready to take responsibility?" (SAC ¶ 66.)

26  **D.**      **The Investigation Was Driven By Gender Bias**

27         Perkin performed an unfair and biased investigation; she gathered evidence of text

28  messages and Facebook messages between Jane Doe and witnesses who were not in the room and

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                              5
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)

1    did not personally observe Jane Doe's alleged state of intoxication at the time of sexual activity

2    (SAC ¶ 83); accepted prejudicial character evidence against Plaintiff but not against Jane Doe

3    (SAC ¶¶ 87, 127); ignored eye-witness accounts of Witness B.R. and Witness L.B. who both

4    testified that Jane Doe appeared "fine," "energetic" and "bubbly" and that she "did not seem

5    intoxicated" (SAC ¶ 80.); and presented a cherry-picked summary of witness statements, omitting

6    key, qualifying facts to support a predetermined conclusion that Jane Doe was incapable of

7    consenting to sexual activity with Plaintiff (SAC ¶ 85).

8         The first hearing was held on December 11, 2014 ("First Hearing") before the Sexual

9    Violence Conduct Committee (the "Committee"). (SAC ¶ 86.)  Then on December 16, 2014, the

10   Committee re-opened the case to make additional inquiries, based on Jane Doe's last-minute

11   inclusion of Facebook messages between herself and a non-UCSB friend who she confided in

12   about the case. (SAC ¶¶ 94, 97.)  Perkin had prepared a second investigative report based on

13   additional evidence (and potentially additional meetings) with Jane Doe, consisting of text

14   message conversations between L.B. and Jane Doe, Facebook messages between M.M. and Jane

15   Doe; text messages exchanged between Jane Doe and C.B., and Facebook messages presumably

16   exchanged between L.B. and an individual named "Juliana Amarah." (SAC ¶ 97.) Yet, the second

17   investigative report was withheld from John Doe until a mere *three and a half hours before the*

18   *Second Hearing*. (SAC ¶ 98.) The University scheduled the second hearing on the one date that

19   Plaintiff's attorney advisor was unavailable, December 16, 2014 ("Second Hearing").  (SAC. ¶

20   96.)  Despite the evidence and testimony provided, the Committee found Plaintiff responsible for

21   sexual assault, and was sanctioned to a two-quarter suspension ("Decision"). (SAC ¶ 103.)

22   Plaintiff's transcript and records will now reflect that he was found responsible of "sexual

23   assault." (SAC ¶ 152.)

24   **E.      Plaintiff's Appeal and Damages**

25        Plaintiff appealed from the Decision on January 29, 2015, where he listed numerous

26   procedural errors, and based upon newly discovered evidence, namely, that the Facebook

27   messages were authored by a fictitious person and fabricated by Jane Doe in an attempt to support

28   her claims ("Appeal"). (SAC ¶ 105.) However, the University denied his Appeal on February 16,

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                            6
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)

1   2015 without any explanation or rationale for the denial. (SAC ¶ 106.) As a result of the

2   University's actions, Plaintiff has suffered tremendous damages and faces significant losses to his

3   future. (SAC ¶¶ 148-154.)

## II.  ARGUMENT

### A.  THE LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

This Court, in *Atlantica Holdings, Inc.*, 2014 WL 917055 * 4, reviewed the legal standard applicable to a motion to dismiss as follows:

> In reviewing a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Cohen v. Avande, Inc.*, 874 F.Supp.2d 315, 319 (S.D.N.Y. 2012) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  The Court will not dismiss any claims pursuant Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See, Id.* at 555; *Erickson v. Pardus,* 551 U.S. 89, 93–94 (2007); *Vasquez v. Los Angeles County,* 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir. 1990)).

A Court is to consider a motion to dismiss in terms of the plaintiff's actual pleadings in the Complaint, and not in terms of a defendant's selective characterization of the facts.  *Streit v. Bushell*, 424 F.Supp.2d 633 (S.D.N.Y. 2006); *Harris v. Amgen, Inc.*, 788 F.3d 916, 934 (9th Cir. 2015) (courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                      7

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)

into the complaint by reference, and matters of which a court may take judicial notice); *Sambonet Paderno Industrie, S.P.A. v. Sur La Table, Inc.*, No. CV 14-9473 FMO (RZX), 2015 WL 4498795, at *4 (C.D. Cal. July 23, 2015) (the level of detail and information contained in plaintiff's allegations, not defendant's characterization thereof, adequately put defendant on notice of the elements of plaintiffs' trademark claims).

**B.      PLAINTIFF HAS STATED CLAIMS UNDER 42. U.S.C. § 1983 FOR DUE PROCESS VIOLATIONS**

   1.      **Perkin is Not Entitled to Sovereign Immunity**

        a.      **The *Ex Parte Young* Doctrine Applies Here**

Sovereign immunity bars relief against States and their officers in both state and federal courts, and that certain suits for declaratory or injunctive relief against state officers must therefore be permitted if the Constitution is to remain the supreme law of the land. *Alden v. Maine*, 527 U.S. 706, 747, 119 S. Ct. 2240, 2263, 144 L. Ed. 2d 636 (1999). One exception to the doctrine of sovereign immunity was recognized in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).  The Eleventh Amendment does not bar suit against a state official acting in violation of federal law. *Ex parte Young,* 209 U.S. 123, 159-60, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984).

        b.      **The Second Amended Complaint Requests Prospective Relief**

While actions for monetary damages may not be sustained against a state official in their official capacity, 42 U.S.C. § 1983 does not preclude actions seeking prospective relief and attorneys' fees. *Ex parte Young*, 209 U.S. 123, 159–60, 28 S. Ct. 441, 454, 52 L. Ed. 714 (1908) (finding suit against state official for injunction, barring threatened violation of federal constitutional right, does not implicate state's immunity from suit); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989).

Requiring a state official to take a number of specific actions in order to comply with federal statute constitutes prospective relief.  *Nat. Res. Def. Council v. California Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996) (After a ten-day trial, the district court found that Van Loben Sels

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                                           8
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint                Case No. 2:15 cv 02478 (SVW)(JEM)

1  had violated the Clean Water Act. Subsequently, the court entered a permanent injunction against

2  Van Loben Sels, requiring a number of specific actions in order to comply with the Clean Water

3  Act permit in the future).

4       The court in *Doe v. Rector & Visitors of George Mason Univ*. had the occasion to address

5  a similarly-situated plaintiff seeking the same prospective relief from a state official as Plaintiff in

6  this action:

7       Here, the undisputed record facts reflect that plaintiff was expelled from GMU on a
charge of sexual misconduct. Such a charge plainly calls into question plaintiff's

8  "good name, reputation, honor, or integrity." *Constantineau*, 400 U.S. at 437, 91
S.Ct. 507. Moreover, plaintiff's expulsion constitutes an alteration of his legal status

9  as a student. *Cf. Sciolino*, 480 F.3d at 649 (termination of employment constitutes a

10  qualifying alteration of status). The record further discloses that plaintiff's transcript
bears a notation that he was the subject of a non-academic expulsion. Thus,

11  plaintiff's future educational and employment endeavors, which routinely require
disclosure of academic transcripts, may well lead to the public's learning that

12  plaintiff was expelled for misconduct. Although the specific nature of the charge is
not disclosed, any reasonable person will conclude that a non-academic

13  justification for an expulsion implies "the existence of serious character defects."
*Id.* at 646 n. 2 (internal quotations omitted). And if this were not sufficient, the

14  undisputed record reflects that Roe, a member of the general public, was in fact
informed that plaintiff was found liable for sexual misconduct by Ericson. Given

15  this analysis, and because plaintiff's expulsion was indisputably a state action, the

16  undisputed record makes clear that state action has deprived plaintiff of a protected
liberty interest.

17   

18      49 F. Supp. 3d 602, 613–14 (E.D. Va. 2016); *see also*, Second Amended Complaint, *Doe*

19  *v. Rector & Visitors of George Mason Univ*., CV 15-00209 TSE (MSN) [Dkt. 27].

20       The claim that Plaintiff is seeking retroactive, not prospective, relief is not supported by

21  the allegations of the SAC (SAC ¶¶ 183-188). The Regents' willful blindness to Plaintiff's

22  demand for prospective relief is undeserving of any credit. The SAC clearly outlines Plaintiff's

23  demand for prospective relief in its Prayer for Relief:

24      (i)    That this Court issue preliminary and permanent injunctive relief
restraining Perkin (1) from making any notation on Plaintiff's transcript or

25  educational records; (2) from retaining any record related to Plaintiff's his
disciplinary hearing in his educational records due to UCSB's flawed disciplinary

26  process and erroneous finding that Plaintiff violated the Handbook; and (3) from
reporting any record of Plaintiff's disciplinary hearing in response to third party

27  inquiries.

28       The SAC clearly states that Plaintiff seeks prospective relief regarding his tarnished

**COOPER, WHITE
& COOPER LLP**
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1               9
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint         Case No. 2:15 cv 02478 (SVW)(JEM)

education records, which will continue to cause him damages into the future namely:

> ➢ That the outcome and findings made by UCSB be reversed;

> ➢ John Doe's reputation be restored;

> ➢ John Doe's disciplinary record be expunged;

> ➢ That the record of John Doe's suspension from UCSB be removed from his education file;

> ➢ That any record of the complaint filed against John Doe's be permanently destroyed; and

> Declaration that UCSB's rules, regulations and guidelines are unconstitutional as applied.

(SAC, Prayer for Relief.)

Any prospective relief granted in this action will necessarily require Perkin's involvement due to her role as Director of the Office of Judicial Affairs. As UCSB's Assistant Dean of Students and Director of the Office of Judicial Affairs, Perkin is conferred with the authority to investigate student misconduct, influence the decision of misconduct hearings, maintain custody and control over student records of misconduct, direct the notation of sanctions on student records, report such notations in response to third party inquiries, and retain disciplinary records for students. (SAC ¶ 177.) Certainly, Perkin, not the Committee members, will be in charge of reporting on and retaining Plaintiff's disciplinary records, which are the fruits of an unlawful hearing process. *Bennett v. Yoshina*, 140 F.3d 1218, 1224 (9th Cir. 1998), as amended on denial of reh'g and reh'g en banc (June 23, 1998) ("What Bennett objects to is not the mere occurrence of an allegedly unfair vote, but the state's decision to give effect to that vote. And obviously, the legal effectiveness of the 1996 vote—i.e., whether a constitutional convention will take place—is something that will, or will not, happen in the future. Thus, we conclude that Bennett seeks prospective, not retrospective, relief"). Perkin may be sued in her official capacity, and should not be dismissed from this action.

    c.    **Perkin's Role Was Critical To The Decision**

Perkin may not have possessed the formal title of "decision-maker" (Regents Mem. at 9),

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                        10

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint                    Case No. 2:15 cv 02478 (SVW)(JEM)

1    but she significantly influenced the outcome of Plaintiff's disciplinary proceeding. *Prasad v.*

2    *Cornell University*, Civ. No. 15-cv-00322, *32 (N.D.N.Y. Feb. 24, 2016); *John Doe v.*

3    *Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996, *10 (W.D. Va. Aug. 5, 2015).

4    Perkin's influence was even greater here since she was present while the Committee deliberated.

5    (SAC ¶¶ 93-94.) Dispossessed of an independent investigative role, the Committee relied on

6    Perkin's slanted investigation, including information that was not provided to Plaintiff, to inform

7    its decision. (SAC ¶ 93.)

8           2.    **Federal Qualified Immunity Does Not Apply Here**

9          Qualified immunity does not apply where: (1) the facts adduced constitute the violation of

10   a constitutional right; and (2) the constitutional right was clearly established at the time of the

11   alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565

12   (2009); *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016).

13          a.    **Plaintiff's Rights To Due Process Were Clearly Established**

14         The Fourteenth Amendment to the United States Constitution provides that no state shall

15   "deprive any person of life, liberty, or property, without due process of law." Pursuant to the

16   Fourteenth Amendment, a student enjoys a property interest in a public education. *Goss v. Lopez*,

17   419 U.S. 565, 574, 95 S. Ct. 729, 736, 42 L. Ed. 2d 725 (1975); *Gorman v. Univ. of Rhode Island*,

18   837 F.2d 7, 12 (1st Cir. 1988).

19         The Due Process Clause forbids arbitrary deprivations of liberty where his good name,

20   reputation, honor, or integrity is at stake because of the government's actions. *Goss*, 419 U.S. at

21   574, 95 S. Ct. at 736. A finding of guilt can "have a major immediate and life-long impact on

22   [their] personal life, education, employment, and public engagement." *Goss,* 419 U.S. at 574, 95

23   S.Ct. 729.

24         Students at a public educational institution have a right to notice and a fundamentally fair

25   hearing during the disciplinary process. *Goss*, 419 U.S. at 574, 95 S. Ct. at 736. Notice satisfies

26   due process if the student had sufficient notice of the charges against him and a meaningful

27   opportunity to prepare for the hearing. *Jaksa v. Regents of Univ. of Michigan*, 597 F. Supp. 1245,

28   1250 (E.D. Mich. 1984) *aff'd*, 787 F.2d 590 (6th Cir. 1986) (student had sufficient time to prepare

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                              11
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)

his defense where the hearing was held approximately six weeks after plaintiff was advised of the charges against him); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 16 (D.Me. 2005) (at a public university, a student facing serious charges of misconduct and exposure to substantial sanctions is entitled to receive notice and a fundamentally fair hearing).

Courts have recognized the following minimum due process requirements owed to students facing major disciplinary charges:

> (1) [T]he student must be advised of the charges against him; (2) he must be informed of the nature of the evidence against him; (3) he must be given an opportunity to be heard in his own defense; and (4) he must not be punished except on the basis of substantial evidence.

*Gomes*, 365 F. Supp. 2d at 15-16 (citing *Keene v. Rodgers,* 316 F.Supp. 217, 221 (D.Me. 1970) (quoting Charles Alan Wright, *The Constitution on the Campus,* 22 Vand. L.Rev. 1027, 1071–72 (1969)).

Additionally, the *Keene* court added: 1) the student must be permitted the assistance of a lawyer, at least in major disciplinary proceedings; 2) he must be permitted to confront and to cross-examine the witnesses against him; and, 3) he must be afforded the right to an impartial tribunal, which must make written findings. *Id.* (citations omitted); *see also, Carey ex rel. Carey v. Maine Sch. Admin. Dist. No. 17,* 754 F.Supp. 906, 919 (D.Me.1990) (setting forth the seven minimum requirements which must be observed in student disciplinary hearings to assure the requisite balance).

Students have a right to counsel and right to confront and examine adverse witnesses during a disciplinary hearing involving serious charges. *See, Givens v. Poe,* 346 F.Supp. 202 (W.D.N.C. 1972) (students have right to counsel and right to confront and examine adverse witnesses); *Fielder v. Board of Education,* 346 F.Supp. 722 (D.Neb.1972) (right to cross-examine is constitutionally required; right to counsel and cross-examination by counsel is at least "good technique"); *Marin v. University of Puerto Rico,* 377 F.Supp. 613 (D.P.R. 1974) (students were entitled to cross-examine opposing witnesses with the assistance of retained counsel); *Mills v. Board of Education,* 348 F.Supp. 866 (D.D.C.1972).

Any argument that Perkin was unaware of Plaintiff's clearly established rights to due process is belied by UCSB's own policies:

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1

12

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint

Case No. 2:15 cv 02478 (SVW)(JEM)

> Students who are subject to University discipline shall be afforded procedural due process, which is a basic principle underpinning the proper enforcement of University policies and campus regulations. The primary purpose of any University disciplinary proceeding is to determine the guilt or innocence of the accused student.
>
> Proceedings will provide a prompt, fair, and impartial investigation and resolution.

(SAC ¶ 21.)

Like the school board members in *Wood v. Strickland*, 420 U.S. 308, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975), Perkin knew or should have known that her actions would violate Plaintiff's constitutional rights to due process.

In the context of student discipline, school officials are aware of the importance of providing notice and a meaningful opportunity to be heard where a possible disciplinary violation will "interfere with later opportunities for higher education and employment." *Goss*, 419 U.S. at 575, 95 S. Ct. at 736; *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir.2005) (citing *Goss*).

Perkin's actions are akin to the investigator in *Doe v. Rector & Visitors of George Mason Univ.* where there was a failure to provide notice of the full scope of the factual allegations at issue, the school deviated from its own procedures, John Doe was not afforded an adequate opportunity to mount an effective defense, and the school failed to provide the basis for its decision, thereby foreclosing any meaningful review. No. 1:15-CV-209, 2016 WL 775776, at *12 (E.D. Va. Feb. 25, 2016). Like the student in *Doe v. Rector & Visitors of George Mason Univ.*, Plaintiff's rights to due process during his disciplinary hearing were clearly established.

b.   **Perkin's Actions Were Not Objectively Reasonable; Perkin Failed to Provide Plaintiff With Adequate Notice Or A Meaningful Opportunity To Be Heard**

To trigger protection from suit by the doctrine of qualified immunity, the official must demonstrate that her actions were objectively reasonable. *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987). Perkin's actions were anything but reasonable.

At all relevant times, Defendant Perkin was UCSB's Assistant Dean of Students and Director of the Office of Judicial Affairs. (SAC ¶ 12.) As Director of the Office of Judicial Affairs, it is her duty to determine whether there is enough evidence to move forward with a

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

charge and if the case should go to a conduct hearing. (SAC ¶ 29.)  Perkin was objectively

unreasonable when she charged Plaintiff with sexual assault on November 6, 2014,

notwithstanding the University's jurisdictional policies on off-campus incidents.  (SAC ¶¶ 65-70.)

Perkin was objectively unreasonable in failing to interview Plaintiff before deciding to charge him

with sexual assault, and basing the charge on Jane Doe's bare allegations. (SAC ¶ 74.)

Perkin's actions also deprived Plaintiff of any meaningful opportunity to prepare his

defense or be heard at the Second Hearing. Five days after the First Hearing, Perkin advised

Plaintiff that the Committee sought to re-open the hearing for additional questions (SAC ¶ 94.)

Unbeknownst to Plaintiff, in the days following the First Hearing, Perkin had prepared a second

investigative report based on additional evidence (and potentially additional meetings) with Jane

Doe. (SAC ¶ 97-98.) The second investigative report contained text messages between L.B. and

Jane Doe, Facebook messages between M.M. and Jane Doe; text messages between Jane Doe and

C.B., and Facebook messages presumably exchanged between L.B. and an individual named

"Juliana Amarah." (SAC ¶ 101.) Yet, the second investigative report was withheld from John Doe

until a mere *three and a half hours before the Second Hearing*, at a time when UCSB was well

aware that John Doe's attorney was unavailable. (SAC ¶ 96.) Significantly, the Facebook

messages from "Juliana Amarah" were introduced by Jane Doe in support of her claim that she

was sexually assaulted by John Doe. (SAC ¶¶ 101, 141.) Plaintiff raised his suspicions as to their

authenticity, but was unable to mount a defense in such a short amount of time. (SAC ¶¶ 141-143.)

Plaintiff had no meaningful opportunity to review or defend against the new evidence introduced

against him at his Second Hearing.

Given that Plaintiff was facing major sanctions of suspension or expulsion, Perkin was

objectively unreasonable in failing to provide the evidence she gathered deprived him of his

clearly established rights to due process. Perkin's inability to accommodate a 1-day rescheduling

of the second hearing was objectively unreasonable and in contravention of *Goss'* intent for

difficult cases such as Plaintiff's case. 419 U.S. 565, 575, 95 S. Ct. 729, 736, 42 L. Ed. 2d 725

("…[the disciplinarian] may then determine himself to summon the accuser, permit cross-

examination, and allow the student to present his own witnesses. In more difficult cases, he may

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1

14

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint

Case No. 2:15 cv 02478 (SVW)(JEM)

1    permit counsel. In any event, his discretion will be more informed and we think the risk of error

2    substantially reduced").

3         c.    **The Degree of Plaintiff's Ultimate Sanction Does Not Obviate His**
              **Entitlement To Due Process**

4

5         The Regents' reliance on *Goldberg v. Regents of Univ. of Calif.*, 248 Cal.App.2d 867, 881

6    (1967) for the proposition that Plaintiff's suspension did not entitle him to a hearing on the

7    charges is misconceived. Plaintiff's ultimate sanction of suspension does not change the fact that

8    Plaintiff was exposed to sanctions as serious as expulsion. *See*, Exhibit A to SAC, pp. 15-16;

9    *Charles S. v. Bd. of Educ.*, 20 Cal. App. 3d 83, 93, 97 Cal. Rptr. 422 (Ct. App. 1971) (*Dixon* dealt

10   with expulsion of college students, so stricter standards are obviously required). Facing sanctions

11   up to expulsion, Plaintiff was entitled to the level of due process suggested in *Dixon v. Alabama*

12   *State Board of Education, supra*, 294 F.2d 150 (1961).

13        Additionally, that Plaintiff's two-quarter suspension has now expired, and Plaintiff has

14   returned to school, is of no moment. Plaintiff's disciplinary record is now tarnished with a finding

15   of responsibility for "sexual assault," which brands him as a sexual predator.  His future plans for

16   law school will most certainly be curtailed, and any argument to the contrary is ignorant of the

17   realities of stigmas and public perception. *John Doe v. Middlebury College*, No. 1:15-cv-00192 (D.

18   Vt. Sept. 16, 2015) (John Doe will experience irreparable harm from the gap in his education due

19   to a charge of sexual assault, which will last for the remainder of his professional life, and any

20   explanation is unlikely to fully erase the stigma); *King v. DePauw Univ.*, 2014 WL 4197507, at

21   *13 (S.D. Ind. Aug. 22, 2014) (any explanation is unlikely to fully erase the stigma associated

22   with a finding of sexual misconduct when plaintiff is asked to explain the situation to future

23   employers or graduate school admissions committees); *Doe v. Salisbury Univ.*, No. CIV. JKB-14-

24   3853, 2015 WL 3478134, at *9 (D. Md. June 2, 2015) (the longstanding impact of being labeled

25   responsible of "sexual assault" is so severe that monetary damages alone are insufficient).

26        3.    **Perkin Is Not Entitled To Quasi-Judicial Immunity**

27        Notwithstanding two prior iterations of its motions to dismiss Plaintiff's Complaint [Dkt.

28   12] and Amended Complaint [Dkt. 55], the Regents' claim of Perkin's entitlement to absolute

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                    15
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint        Case No. 2:15 cv 02478 (SVW)(JEM)

1  quasi-judicial immunity has never been raised before, and Defendants are precluded from raising it

2  now. Fed. R. Civ. P. 12 (g)(2). Even if the issue were properly before the Court, absolute quasi-

3  judicial immunity does not insulate Perkin.

4      It is well-settled that actions taken by judges in their judicial capacity are granted absolute

5  judicial immunity. *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988);

6  *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

7      Absolute judicial immunity may be extended to non-judicial officials where their

8  judgments require the exercise of discretion and are functionally comparable to those of judges;

9  otherwise known as quasi-judicial immunity. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429,

10  436, 113 S. Ct. 2167, 2171, 124 L. Ed. 2d 391 (1993) (citing *Imbler v. Pachtman,* 424 U.S., at

11  423, n. 20, 96 S.Ct., at 991, n. 20. Cf. *Westfall v. Erwin,* 484 U.S. 292, 297–298, 108 S.Ct. 580,

12  584, 98 L.Ed.2d 619 (1988)) (absolute immunity from state-law tort actions available to executive

13  officials only when their conduct is discretionary).

14      However, quasi-judicial immunity is generally extended to a limited number of non-

15  judicial individuals, such as, state prosecutors performing criminal prosecution and trial (*Imbler v.

16  Pachtman*, 424 U.S. 409, 420, 96 S. Ct. 984, 990, 47 L. Ed. 2d 128 (1976)), arbitrators (*Wagshal

17  v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994)), or parole board members (*Bricker v. Michigan

18  Parole Bd.*, 18 Crim. L. Rep. 2362 (E.D. Mich. Dec. 18, 1975)).

19      As the proponent of the claim to absolute immunity, Perkin bears the burden of

20  establishing her entitlement to such immunity. *Antoine*, 508 U.S. at 432, 113 S. Ct. at 2169. Yet,

21  the Regents have failed to cite to any case law extending absolute immunity, quasi-judicial or

22  otherwise, to a college administrator investigating student misconduct.

23      Indeed, the U.S. Supreme Court has indicated that *qualified immunity*, not absolute

24  immunity, is more appropriately extended to school officials with respect to decisions of

25  suspension or expulsion:

26      These considerations have undoubtedly played a prime role in the development by
        state courts of a qualified immunity protecting school officials from liability for

27      damages in lawsuits claiming improper suspensions or expulsions. But at the same
        time, the judgment implicit in this common-law development is that absolute

28      immunity would not be justified since it would not sufficiently increase the ability

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1
2

of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations.

3
4
5
6

Therefore, in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under s 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.

7

8   *Wood*, 420 U.S. at 320, 322, 95 S. Ct. at 1000, 1001; *Imbler v. Pachtman*, 424 U.S. 409, 434, 96 S.

9   Ct. 984, 997, 47 L. Ed. 2d 128 (1976) ("Accordingly, we have declined to construe s 1983 to

10  extend absolute immunity from damage suits to a variety of state officials, *Wood v. Strickland*,

11  420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board members); *Scheuer v. Rhodes*,

12  supra (various executive officers, including the State's chief executive officer); *Pierson v. Ray*,

13  386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (policemen); and this notwithstanding the fact

14  that, at least with respect to high executive officers, absolute immunity from suit for damages

15  would have applied at common law.  *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780

16  (1896); *Alzua v. Johnson*, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142 (1913)"); *see also*, *Fettig v.*

17  *Amity Pub. Sch. Dist.*, 133 F.3d 926 (9th Cir. 1998);

18          In any event, the Regents inadvertently admit that Perkin is not entitled to quasi-judicial

19  immunity where they claim that she did not perform any judicial function at all in Plaintiff's

20  student disciplinary case, "Ms. Perkin was not the decision maker." (Regents Mem. at 9.)

21  Certainly, the Regents' reliance upon *Goldberg* to distinguish the University's process from a

22  typical judicial proceeding (Regents Mem. at 11, 13) highlights the inconsistency in arguing that

23  Perkin performed duties functionally comparable to that of a judge, state prosecutor, arbitrator or

24  parole board member.

25          Given that Perkin's position, at best, implicates the doctrine of qualified immunity, the

26  analysis in Section 2, *supra*, provides ample support for why Perkin is ineligible to invoke

27  absolute or qualified immunity here.

28  C.      **PLAINTIFF IS ENTITLED TO A DECLARATORY JUDGMENT**

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                        17
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)

1    There is no dispute that the district court has discretion and authority to declare the rights

2    and other legal relations of any interested party seeking such declaration under 28 U.S.C. § 2201.

3    *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

4    As discussed at length in Section B, *supra*, Plaintiff has demonstrated an actual

5    controversy within the Court's jurisdiction under § 1983.  And unlike the plaintiff in *Doe v. Univ.*

6    *of the South*, 687 F. Supp. 2d 744, 759 (E.D. Tenn. 2009) who unsuccessfully sought a declaratory

7    judgment that the University's policies and Procedures governing Sexual Assault Allegations

8    violates the Clery Act, Plaintiff's requested declaration would settle the underlying controversy

9    between the parties. By vacating the outcome of the student hearing, restoring his reputation,

10   expunging his records and ruling that the University's policies are unconstitutional as applied,

11   Plaintiff's requests go to the heart of the underlying dispute, namely, that the University

12   mishandled his case and came to an erroneous finding based upon a discriminatory animus. (SAC

13   ¶¶ 184-188.)

14   **D.    THIS COURT ALREADY RULED THAT PLAINTIFF MAY FILE A PETITION
     FOR WRIT OF MANDATE**

15

16   In its December 14, 2015 Order, the Court granted Defendant's motion to dismiss,

17   dismissing Plaintiff's claims without prejudice, and specifically ordered that "Plaintiff may

18   petition for a writ of mandate as to his state claims."  (Docket # 43, p. 7.)   UCSB now asks for an

19   order that Plaintiff may *not* petition for a writ of mandate.  Its motion is an improper motion for

20   reconsideration of the Court's December 14 Order.  *Lam Research Corp. v. Schunk*

21   *Semiconductor*, 65 F. Supp. 3d 863, 869 (N.D. Cal. 2014) ("The Court will not exalt form over

22   substance and permit a party to circumvent the applicability of [local rules governing motions for

23   reconsideration] merely by avoiding the 'motion for reconsideration' label.  Courts routinely look

24   to the *substance* of the motion rather than how it is styled in determining the standard to apply");

25   *Largan Precision Co, Ltd. v. Genius Elec. Optical Co.*, No. 13-CV-02502-JD, 2014 WL 6882275,

26   at *2 (N.D. Cal. Dec. 5, 2014) ("The parties may not use summary judgment or other motions as

27   stealth weapons for reconsideration, whether based on 'new' expert opinions or anything else not

28   provided for in the Local Rules"); *see also Hasbrouck v. Texaco, Inc.,* 879 F.2d 632, 635 (9th

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                                18
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)

1  Cir.1989) ("The nomenclature the movant uses is not controlling. This court must decide whether

2  a motion, however styled, is appropriate for the relief requested.")

3       A motion for reconsideration of the decision on any motion may be made ***only*** on the

4  grounds of:

5            (a) a material difference in fact or law from that presented to the
           Court before such decision that in the exercise of reasonable
6            diligence could not have been known to the party moving for
           reconsideration at the time of such decision, or (b) the emergence of
7            new material facts or a change of law occurring after the time of
           such decision, or (c) a manifest showing of a failure to consider
8            material facts presented to the Court before such decision.

9            C.D. Cal. Local R. 7-18.

10      Relevant to Defendants' motion to dismiss, there is no material difference in fact or law

11 that could not have been known previously; there is no emergence of new facts or law since the

12 decision; and there was no failure by the Court to consider material facts.  Instead, UCSB repeats

13 arguments already made.  For example, in its reply in support of its first motion to dismiss, UCSB

14 argued that to "challenge … the findings of the University's disciplinary decision, Plaintiff must

15 first seek judicial review via a writ of administrative mandate" and that his "failure to do this bars

16 his present suit."  (Docket # 35 at 6:3-6.)  In the present motion, the Regents argue that "Plaintiff

17 did not first file a petition for writ of mandate to challenge the administrative decision.  His failure

18 to do so effectively bars the present claim."  (Docket # 78 at 20:10-12.)  Rearguing the point here

19 is improper.  C.D. Cal. Local R. 7-18 ("[n]o motion for reconsideration shall in any manner repeat

20 any oral or written argument made in support of or in opposition to the original motion.")  Despite

21 UCSB's prior argument (Docket # 35 at 6:3-6) that Plaintiff's failure to first file a writ petition

22 barred his suit, this Court correctly ruled that Plaintiff nonetheless could file such a petition.

23 (Docket  # 43, p. 7.)  There is no basis for challenging the Court's ruling.

24      Substantively, UCSB cites only two cases in support of its argument that Plaintiff is

25 somehow forever barred from filing a petition for a writ of mandate because he filed a lawsuit

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                    19
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint              Case No. 2:15 cv 02478 (SVW)(JEM)

first.[1]  Neither remotely stands for such a proposition.  Neither involved whether a plaintiff could file a petition for a writ after he had already filed a lawsuit or whether it was proper for a court to grant leave permitting a plaintiff to do so.  In *Y.K.A. Industries, Inc. v. Redevelopment Agency of the City of San Jose,* 174 Cal.App.4th 339, 343 (2009), the trial court granted summary judgment in favor of cross-defendant because cross-complainant had failed to challenge an administrative decision via a writ of mandate.  The court of appeal reversed, finding that there was no evidence that the doctrine of judicial exhaustion applied to the agency decision at issue, and no evidence that cross-complaint had not sought a writ.  *Id.* at 366-367.  In *Johnson v. City of Loma Linda,* 24 Cal.4th 61, 66-67 (2000), the plaintiff filed a complaint alleging several causes of action and joining with it a petition for writ of administrative mandamus.[2]  The trial court found that the writ was barred by the doctrine of laches, and the Supreme Court affirmed.  The Supreme Court also found that plaintiff's failure to timely seek a writ barred his claims under the Fair Employment and Housing Act, but did not bar his claims under Title VII of the Civil Rights Act of 1964.  *Id.* at 65. Neither case remotely stands for the proposition that Plaintiff here is barred now from seeking a writ because he had initially filed a complaint for damages and other relief.  *See Brown v. Superior Court*, 116 Cal. App. 4th 320, 332 (2004) ("a case is not authority for a proposition not considered.")   This Court properly gave Plaintiff leave to file a writ of petition for administrative mandate, and Plaintiff complied with that order.

Plaintiff employed the usual pleading practice of pleading in the alternative under Code of Civil Procedure sections 1094.5 and 1085.  If, as the facts develop, it becomes apparent that section 1094.5 is appropriate, Plaintiff will proceed with that process.  But until proof of section 1094.5 relief is developed, it is premature to dismiss the claim under section 1085.

---

[1] UCSB cited one of those cases, *Johnson v. City of Loma Linda,* 24 Cal.4th 61 (2000), in its first motion to dismiss, further demonstrating that the present motion is a stealth motion for reconsideration.   (Docket # 12 at pp. 5, 6.)

[2] If UCSB's argument was correct, the practice of joining a petition with a complaint (as recognized in *Johnson v. Loma Linda*) would be prohibited because a plaintiff supposedly must file the petition "before" filing the complaint.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                                                20
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint                     Case No. 2:15 cv 02478 (SVW)(JEM)

1
### III.  <u>CONCLUSION</u>

2      Based on the foregoing, the Regents' motion to dismiss the Second Amended Complaint

3 should be denied, and the Court should order such further and other relief as deemed just and

4 proper.

5 Dated: September 26, 2016                COOPER, WHITE & COOPER, LLP

6

7

8                                    By:_____/s/_____

   Christopher J. Mead, Esq.
9   Scott McLeod, Esq.
   Attorney for Plaintiff, JOHN DOE
10

11 Dated: September 26, 2016                WARSHAW BURSTEIN, LLP

12

13

14                                    By: ___/s/_____

   Kimberly C. Lau, Esq.
15   Attorney for Plaintiff, JOHN DOE

16      Local Rule 5-4.3.4 Certification: I hereby attest that all other signatories listed, on whose

17 behalf this filing is submitted, concur in the filing's content and have authorized this filing.

18          /s/ Christopher J. Mead

19

20

21

22

23

24

25

26

27

28

**COOPER, WHITE**
**& COOPER LLP**
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1080991.1                                   21
Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint          Case No. 2:15 cv 02478 (SVW)(JEM)