1  COOPER, WHITE & COOPER LLP
   CHRISTOPHER J. MEAD (SBN 115091)
2    cmead@cwclaw.com
   SCOTT M. McLEOD (SBN 242035)
3    smcleod@cwclaw.com
   201 California Street, 17th Floor
4  San Francisco, California 94111
   Telephone:    (415) 433-1900
5  Facsimile:    (415) 433-5530

6  WARSHAW BURSTEIN, LLP
   Kimberly C. Lau
7    klau@wbcsk.com
   555 Fifth Avenue
8  New York, NY 10017
   Telephone:    (212) 984-7709
9  Facsimile:    (212) 972-9150

10 Attorneys for John Doe

11

12                   UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14 JOHN DOE,                          CASE NO. 2:15 CV 02478 (SVW)(JEM)

15          Plaintiff,               **JOHN DOE'S OPPOSITION TO MOTION
                                     TO   DISMISS   AND/OR   STAY   ALL
16      vs.                          CLAIMS  UNDER  RULES  12(B)(1)  AND
                                     12(B)(6)**
17 REGENTS   OF   THE   UNIVERSITY   OF
   CALIFORNIA,                       Judge:   Hon. Steven V. Wilson
18                                   Date:    February 13, 2017
          Defendants.               Time:    1:30 p.m.
19                                   Crtrm.:  10A

20                                   Trial Date:  None Set

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

                                                     2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

## <u>TABLE OF CONTENTS</u>

**Page**

I.  PRELIMINARY STATEMENT ................................................................... 1

II.  ARGUMENT ......................................................................................... 4

    A.  THE SECOND AMENDED COMPLAINT STATES A CLAIM FOR GENDER DISCRIMINATION UNDER TITLE IX................................................ 4

        1.  The Second Circuit Identified the Controlling Title IX Standard ................. 4

        2.  *Doe v. Columbia University* Refined and Clarified the Controlling Title IX Standard Under *Twombly* and *Iqbal* Regarding Discrimination Plaintiffs ........................................ 5

        3.  The Application of the *McDonnell Douglas* Framework to Claims of Discrimination Under Title IX Makes Sense ................. 7

        4.  Under *Doe v. Columbia University*, Plaintiff Has Sufficiently Pleaded a Title IX Claim ............................................. 9

            a.  The Complaint Alleges an Erroneous Outcome ............................... 9

            b.  The Erroneous Outcome Was Motivated by Plaintiff's Male Gender ............................................... 12

        5.  Plaintiff Has Sufficiently Pleaded Selective Enforcement ....................... 15

    B.  The *Younger* Abstention Doctrine Is Inapplicable to this Case ............................. 15

        1.  Plaintiff Has Pursued His State Administrative and Judicial Remedies ................................................. 17

        2.  Even If Plaintiff Had Not Pursued Any State Judicial Remedy, *Younger* Would Still Be Inapplicable.......................... 18

    C.  The Eleventh Amendment Does Not Bar Any of Plaintiff's Claims ..................... 23

III.  CONCLUSION ................................................................................... 25

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

# TABLE OF AUTHORITIES

**Page**

## CASES

*Agriesti v. MGM Grand Hotels, Inc.*,
 53 F.3d 1000 (9th Cir. 1995) .............................................................. 19

*Alleghany Corp. v. Pomeroy*,
 898 F.2d 1314 (8th Cir. 1990) ...................................................... 22, 23

*Annamaria M v. Napa Valley Unified Sch. Dist.*,
 2006 WL 1525733, at *4 (N.D. Cal. May 30, 2006) ............................ 9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................... 4, 5, 8

*AT&T Wireless Servs. of California LLC v. City of Carlsbad*,
 308 F. Supp. 2d 1148 (S.D. Cal. 2003) ............................................ 18

*Austin v. Univ. of Or.*,
 2016 WL 4708540 (D. Or. Sep. 8, 2016) ......................................... 7

*Azkour v. Bowery Residents' Comm., Inc.*,
 646 F. App'x 40 (2d Cir. 2016) ...................................................... 6

*Bacon v. Rutland R. Co.*,
 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914) ............................ 23

*Barrett v. Forest Labs., Inc.*,
 39 F. Supp. 3d 407 (S.D.N.Y. 2014) .............................................. 14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................... 4, 5, 8

*BNSF Ry. Co. v. O'Dea*,
 572 F.3d 785,  158 (9th Cir. 2009) ................................................ 18

*Burch v. Regents of Univ. of California*,
 433 F. Supp. 2d 1110 (E.D. Cal. 2006) ............................................ 6

*Camarda v. Selover*,
 No. 15-3262-CV, 2016 WL 7234686, at *1 (2d Cir. Dec. 14, 2016) ........... 6

*Cannon v. Univ. of Chicago*,
 441 U.S. 677 (1979) .................................................................. 6

*Cecos Int'l, Inc. v. Jorling*,
 895 F.2d 66  (2d Cir. 1990) .......................................................... 19

*City Bank Farmers' Trust Co. v. Schnader*,
 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934) .............................. 23

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

*Collick v. William Paterson Univ.*,
    2016 WL 6824374, at *11 (D.N.J. Nov. 17, 2016) ........................................ 12, 13

*Colorado River Water Cons. Dist. v. United States*,
    424 U.S. 800 (1974) .................................................................................................. 15

*Cornwell v. Electra Cent. Credit Union*,
    439 F.3d 1018 n. 8 (9th Cir. 2006) ........................................................................... 7

*Davis. Hawkins v. Sarasota County Sch. Bd.*,
    322 F.3d 1279 (11th Cir. 2003) ................................................................................ 9

*Dawson v. N.Y.C. Transit Auth.*,
    624 F. App'x 763 (2d Cir. 2015) ........................................................................... 5, 6

*Doe By & Through Doe v. Petaluma City Sch. Dist.*,
    949 F. Supp. 1415 (N.D. Cal. 1996) ....................................................................... 6

*Doe v. Brown Univ.*,
    2016 WL 715794 (D.R.I. Feb. 22, 2016) ......................................................... passim

*Doe v. Columbia University*,
    831 F.3d 46 (2d Cir. July 29, 2016) ................................................................. passim

*Doe v. Lawrence Livermore Nat. Lab.*,
    131 F.3d 836 (9th Cir. 1997) .................................................................................. 24

*Doe v. Salisbury Univ.*,
    123 F. Supp. 3d at 766 ....................................................................................... 13, 14

*Doe v. Sch. Bd. of Broward Cty., Fla.*,
    604 F.3d 1248 (11th Cir. 2010) ................................................................................ 8

*Emeldi v. Univ. of Oregon*,
    698 F.3d 715 (9th Cir. 2012) .................................................................................... 6

*Ex parte Young*,
    209 U.S. 123 (1908) ................................................................................................ 24

*Flint v. Dennison*,
    488 F.3d 816 (9th Cir. 2007) .................................................................................. 25

*Garity v. APWU Nat'l Labor Org.*,
    828 F.3d 848 (9th Cir. 2016) .................................................................................... 6

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) .................................................................................................. 8

*Hudson v. Campbell*,
    663 F.3d 985 (8th Cir. 2011) .................................................................................. 21

*Huffman v. Pursue, Ltd.*,
    420 U.S. 592 (1975) .......................................................................................... 22, 23

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

*International Brotherhood of Teamsters v. United States*,
    431 U.S. 324 n.44 (1977) ................................................................................... 7

*Jackson v. Birmingham Board of Education*,
    544 U.S. 167 (2005) ........................................................................................... 8

*Jensen v. Cty. of Sonoma*,
    2010 WL 2330384, at *6 (N.D. Cal. June 4, 2010), *aff'd,* 444 F. App'x 156 (9th Cir.
    2011)................................................................................................................. 17

*John Doe v. Washington & Lee Univ.*,
    2015 WL 4647996 (W.D. Va. Aug. 5, 2015) .................................................... 4

*Kay v. City of Rancho Palos Verdes*,
    504 F.3d 803 (9th Cir. 2007) .......................................................................... 18

*Kercado-Melendez v. Aponte-Roque*,
    829 F.2d 255 (1st Cir. 1987) .......................................................................... 21

*Kessler v. Bishop*,
    2011 WL 207981, at *3-4 (N.D. Cal. Jan. 21, 2011) .................................. 19, 20

*Laurel Sand & Gravel, Inc. v. Wilson*,
    519 F.3d 156 (4th Cir. 2008)........................................................................ 22, 23

*Littlejohn v. City of N.Y.*,
    795 F.3d 297 (2d Cir. 2015) ............................................................................ 5

*Lowe v. City of Monrovia*,
    775 F.2d 998 (9th Cir. 1985), *amended,* 784 F.2d 1407 (9th Cir. 1986) ............................ 6

*Lyons v. England*,
    307 F.3d 1092 (9th Cir. 2002) ........................................................................ 6

*Majors v. Engelbrecht*,
    149 F.3d 709 (7th Cir. 1998) ........................................................................ 21

*Mansourian v. Regents of Univ. of California*,
    602 F.3d 957 (9th Cir. 2010)........................................................................... 8

*Marrerro-Rodriguez v. Municipality of San Juan*,
    677 F.3d 497 (1st Cir. 2012) ........................................................................ 14

*Maymo-Melendez v. Alvarez-Ramirez*,
    364 F.3d 27 (1st Cir. 2004) .......................................................................... 21

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ............................................................................... passim

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982) ....................................................................................... 18

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ....................................................................................... 25

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

*Monroe v. Pape*,
    365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ............................................. 22

*Mullis v. U.S. Bankruptcy Court*,
    828 F.2d 1385 (9th Cir. 1987) ........................................................................... 25

*Murrell v. Sch. Dist. No. 1, Denver, Colo.*,
    186 F.3d 1238 (10th Cir. 1999) ........................................................................... 8

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989) ........................................................................................... 16

*Norfolk & W. Ry. Co. v. Pub. Utilities Comm'n of Ohio*,
    926 F.2d 567 (6th Cir. 1991) ............................................................................. 19

*Ocasio-Hernández v. Fortuño-Burset*,
    640 F.3d 1 (1st Cir. 2011) ................................................................................. 14

*O'Neill v. City of Philadelphia*,
    32 F.3d 785 (3d Cir. 1994) ........................................................................... 22, 23

*Osby v. City of New York*,
    633 Fed. Appx. 12 (2d Cir. 2016) ....................................................................... 6

*Prasad v. Cornell University*,
    2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) ................................................. 4, 9

*Quern v. Jordan*,
    440 U.S. 332 (1979) ........................................................................................... 24

*Riojas v. United States Dep't of Agric.*,
    2016 WL 3566941, at *7 (N.D. Cal. June 30, 2016) ......................................... 17

*Riojas v. United States Dep't of Agric.*,
    2016 WL 3566941, at *8 (N.D. Cal. June 30, 2016) ......................................... 24

*Robinson v. Univ. of Washington*,
    2016 WL 4218399, at *5 (W.D. Wash. Aug. 9, 2016) ......................................... 6

*Sakhrani v. City of San Gabriel*,
    No. 2:16-cv-01756-CAS-PLA, 2016 WL 7378088, at *7 (C.D. Cal. Dec. 20, 2016) ........ 17

*San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*,
    546 F.3d 1087 (9th Cir. 2008) ........................................................................... 19

*Shepard v. Irving*,
    77 F. App'x  615 (4th Cir. 2003) ....................................................................... 24

*Sprint Commc'ns, Inc. v. Jacobs*,
    134 S. Ct. 584 (2013) ......................................................................................... 16

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ........................................................................................... 23

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

*Stucky v. Dep't of Educ.*,
   283 F. App'x 503 (9th Cir. 2008) ........................................................................ 6

*Stucky v. Hawaii Dep't of Educ.*,
   2007 WL 602105, at *6 (D. Haw. Feb. 15, 2007), *aff'd sub nom.* ...................... 6

*Swierkiewicz v. Sorema N. A.*,
   534 U.S. 506 ...................................................................................................... 14

*Terry v. Ashcroft,*
   336 F.3d 128 (2d Cir. 2003) ............................................................................... 6

*Thomas v. Texas State Bd. of Med. Examiners*,
   807 F.2d 453 (5th Cir. 1987) ............................................................................. 19

*Trans World Airlines v. Thurston*,
   469 U.S. 111 (1985) ............................................................................................ 7

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015) ................................................................................. 5

*Walnut Properties, Inc. v. City of Whittier*,
   861 F.2d 1102 (9th Cir. 1988) ........................................................................... 16

*Wells v. Xavier Univ.*,
   2014 WL 972172 (S.D. Ohio Mar. 12, 2014) ..................................................... 4

*Wells v. Xavier Univ.*,
   7 F. Supp. 3d 746 (S.D. Ohio 2014) ................................................................. 13

*Weser v. Glen*,
   190 F. Supp. 2d 384 (E.D.N.Y. 2002) .............................................................. 14

*Wesner v. Cty. of Napa*,
   2009 WL 650274, at *2 (N.D. Cal. Mar. 11, 2009) .......................................... 17

*Younger v. Harris*,
   401 U.S. 37 (1971) ..................................................................................... passim

*Yusuf v. Vassar College*,
   35 F.3d 709 (2d Cir. 1994) ......................................................................... passim

## **STATUTES**

Cal. Code of Civil Procedure § 1094.5 .............................................. 3, 16, 17, 24

Civil Rights Act of 1964, Title VI.......................................................................... 6

Civil Rights Act of 1964, Title VII .................................................................... 6, 7

Civil Rights Act of 1991,
   § 107(a), 42 U.S.C. § 2000e–2(m) (Supp. IV 1992) .......................................... 4

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

vi       2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

1

Title IX ..................................................................................................................... 6, 7, 8, 9

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

vii                                         2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

# I. **PRELIMINARY STATEMENT**

Plaintiff John Doe ("Plaintiff" or "John Doe") respectfully submits this memorandum in opposition to the motion of defendants Regents of the University of California and Suzanne Perkin (collectively, "Defendants") to dismiss and/or stay all claims under Rules 12(b)(1) and 12(b)(6).

Plaintiff was suspended from the University of California, Santa Barbara ("UCSB") based on disciplinary proceedings that were more akin to a "kangaroo court" than anything resembling due process. He was accused of sexual assault. However, this was not the typical "he said/she said" scenario where there are no other witnesses. During the incident in question, Plaintiff and his accuser ("Jane Doe") were engaged in group sex together with two other students (a male and a female). Another female student was also present for the initial part of the events at issue. All three eyewitnesses corroborated Plaintiff's version of events -- that Jane Doe was consensually and actively engaged in sexual activity, and that she did not appear inebriated or unable to consent. All witnesses confirmed that she demonstrated her consent by verbally consenting just prior to engaging in sexual activity, by her active participation in various sex acts, by her expression of pleasure from those sex acts, and by her statements the following day. Indeed, it was Jane Doe who had suggested that the participants engage in group sex in the first place.

The overwhelming evidence (including the statements of the other witnesses) demonstrated that no sexual assault had occurred and that, even by a preponderance of the evidence standard, there was insufficient evidence to find Plaintiff guilty. After Jane Doe filed a complaint with campus officials (months after the events at issue), UCSB assigned defendant Suzanne Perkin to investigate the matter. Unfortunately for Plaintiff, the day after Perkin began her investigation, she was publically disparaged in front of influential politicians for failing to adequately address the problem of campus sexual assault. She was specifically disparaged for her personal failure to find more men guilty of sexual misconduct and was told that not enough men were being found guilty.

This clearly affected Perkin, who then went out of her way to issue a report that grossly misrepresented the facts, invented certain facts out of thin air, accepted Jane Doe's allegations at face value, ignored the statements of the other witnesses, and engaged in a wholly one-sided and

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1   biased disciplinary proceeding. Perkin even scheduled a hearing on the one day that she knew

2   Plaintiff's attorney would be unavailable, despite Plaintiff's prior request that the hearing be held

3   on any day but that one.

4        Plaintiff alleges, *inter alia*, that he was discriminated against based on his gender, in

5   violation of Title IX. He has adequately alleged a violation of Title IX. Based on the

6   overwhelming evidence of his innocence, he has plead an "erroneous outcome." He also alleged

7   that the erroneous outcome was the result of gender discrimination. Indeed, Perkin was all but

8   forced to go after males accused of sexual misconduct and secure findings of culpability. The

9   manner in which Perkin went out of her way to skew the process against Plaintiff is further

10  evidence of bias.

11       Under any pleading standard, Plaintiff had adequately alleged a Title IX claim. However,

12  recently, the Second Circuit applied the *McDonnell Douglas* framework to Title IX discrimination

13  claims. Under that framework, a plaintiff's pleading burden is somewhat lessened based on the

14  reality that, in general, in cases such as this, the bulk of the evidence of a defendant's

15  discriminatory intent will be in the sole possession of the defendant. It would be inequitable to

16  deny a victim of discrimination access to the courts solely because, at the pleadings stage, without

17  the benefit of discovery, he or she is unable to allege all the facts that demonstrate a defendant's

18  discriminatory conduct. Nevertheless, here, the information that is available to Plaintiff is more

19  than sufficient to allege discrimination. It is more than plausible that Perkin felt compelled to

20  specifically go after men accused of sexual misconduct and to do what she could to ensure a

21  finding of culpability.

22       The *McDonnell Douglas* framework is applied in Title VII discrimination cases and Title

23  IX standards are often borrowed from the existing Title VII standards because the two statutes are

24  so similar and designed to combat similar unlawful conduct. The only difference is that Title IX

25  applies to school-related conduct. Indeed, several courts within the Ninth Circuit have adopted the

26  *McDonnell Douglas* framework for Title IX discrimination cases. There is no reason why this

27  Court should not do the same.

28       Additionally, despite filing three prior motions to dismiss, on their fourth time around,

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

1   Defendants raise an all new abstention argument that was not previously made. It was not

2   previously made for good reason -- it is without merit. Defendants argue that Plaintiff must avail

3   himself of, not just California state administrative remedies, but California state judicial remedies.

4   Defendants argue, therefore, that because Plaintiff has supposedly failed to avail himself of state

5   judicial remedies, the Court should abstain from hearing Plaintiff's claims under the *Younger*

6   abstention doctrine.

7       This is wrong for two reasons. *First*, despite the fact that there is no requirement that

8   Plaintiff pursue state judicial remedies (as opposed to administrative remedies) before bringing

9   federal claims, Plaintiff has, in fact, pursued his state judicial remedy. The one judicial remedy

10  provided for under California law is a writ of mandate under Cal. Code of Civil Procedure §

11  1094.5. Plaintiff is availing himself of this remedy in this very action. An aggrieved party may

12  seek a writ of mandate in federal court and Defendants have never disputed this fact. Moreover, as

13  far as the *Younger* abstention doctrine is concerned, it makes no difference whether a writ of

14  mandate is sought in a federal court or in a state court.

15      *Second*, even if Plaintiff never sought a writ of mandate (in either federal or state court),

16  the *Younger* abstention doctrine would still be inapplicable. A federal court can only abstain under

17  *Younger* if there is an ongoing state proceeding (either administrative or judicial). This is based on

18  concerns of a federal court interfering with ongoing state proceedings. Here, the administrative

19  proceeding has been completed and the determination of UCSB is final. There is no ongoing state

20  administrative proceeding. Nor is there any ongoing state court proceeding. This federal court

21  would not be interfering with any ongoing state process by hearing Plaintiff's claims.

22  Accordingly, *Younger* is inapplicable.

23      Nevertheless, Defendants assert that, because Plaintiff could theoretically pursue claims in

24  a California state court, the state proceedings at issue must be deemed to be "ongoing."  Several

25  district courts within the Ninth Circuit have come to the logical conclusion and made clear that,

26  where an administrative proceeding is over and the aggrieved party elects to forgo any state court

27  action, there is simply no ongoing state proceeding with which a federal court could possibly

28  interfere. For all the reasons set forth in this memorandum of law, this motion should be denied.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

3                                    2:15 CV 02478 (SVW)(JEM)

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

## II.  <u>ARGUMENT</u>[1]

**A.  THE SECOND AMENDED COMPLAINT STATES A CLAIM FOR GENDER DISCRIMINATION UNDER TITLE IX**

In denigrating *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. July 29, 2016), Defendants insist that the Second Circuit simply got it wrong. The legal authorities upon which Defendants rely to support their strong disagreement with *Doe v. Columbia University*, however, are unavailing and inapplicable. The allegations of the Second Amended Complaint taken as a whole, state a Title IX claim that is sufficient under the pleading standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

1.  The Second Circuit Identified the Controlling Title IX Standard

In *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994), the Second Circuit observed that attacks on student conduct proceedings on grounds of gender bias can be expected to fall generally within two categories – erroneous outcome and selective enforcement. The Second Circuit's framework has been adopted by district courts throughout the nation. *See, e.g., Prasad v. Cornell University*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016); *Doe v. Brown Univ.*, 2016 WL 715794 (D.R.I. Feb. 22, 2016); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 765 (D. Md. 2015); *John Doe v. Washington & Lee Univ.*, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015); *Wells v. Xavier Univ.*, 2014 WL 972172 (S.D. Ohio Mar. 12, 2014).

Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline. *Yusuf* at 715 (citing Civil Rights Act of 1991, § 107(a), 42 U.S.C. § 2000e–2(m) (Supp. IV 1992) ("an unlawful employment practice is established when ... sex ... was a motivating factor for any employment practice, even though other factors also motivated the practice")).

---

[1] This is the second motion to dismiss filed by Defendants seeking the dismissal of claims asserted in the Second Amended Complaint ("SAC"). The first motion (Dkt. 78) is still pending and the Court has indicated that it intends to decide both motions together. (Dkt. 85 at 8.) In opposing that first motion, Plaintiff provided a detailed recitation of the facts alleged in the SAC. (Dkt. 79 at 1-7). So that the Court will not have to double its efforts to review two separate, but substantially similar, recitations of the facts, Plaintiff respectfully refers the Court to its previous recitation of the facts and adopts that recitation as if fully set forth herein.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

4                                    2:15 CV 02478 (SVW)(JEM)

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

2.    *Doe v. Columbia University* Refined and Clarified the Controlling Title IX Standard Under *Twombly* and *Iqbal* Regarding Discrimination Plaintiffs

Nowhere in Plaintiff's motion for reconsideration does he claim to alter the "*Yusuf* framework" in relying upon *Doe v. Columbia*. The same Title IX elements outlined in *Yusuf* continue to apply. However, *Yusuf* was decided prior to the Supreme Court's decisions in *Twombly* and *Ashcroft*. *Doe v. Columbia University* merely refines and clarifies the accepted Second Circuit standard in light of the pleading requirements set forth in *Twombly* and *Iqbal*.

Under *Twombly* and *Iqbal*, a plaintiff must plead sufficient facts to state a claim of relief that is facially plausible, but not necessarily *the most plausible*. *Doe v. Columbia Univ.*, 831 F.3d at 57; *Twombly*, 550 U.S. at 547; *Iqbal*, 556 U.S. at 678 ("The Supreme Court explained that '[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully'"); *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) ("The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation").

The Second Circuit recognized that, in discrimination cases, the facts and evidence needed to prove plaintiffs' claims are often in the exclusive possession of the defendant. That is why the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) has been applied to Title VII cases. 411 U.S. at 805 ("respondent must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a cover-up for a racially discriminatory decision"). Imposing too high a burden on plaintiffs pleading discrimination claims would be a mistake. *Doe v. Columbia Univ.*, 831 F.3d at 55; *accord, Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face...."). Appellate courts have vacated Rule 12(b)(6) and 12(c) dismissals of complaints alleging discrimination. *See, e.g., Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (vacating 12(c) dismissal of Title VII claim because the district court held

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

5         2:15 CV 02478 (SVW)(JEM)

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1) AND 12(B)(6)

1  plaintiff to overly stringent pleading standards); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x

2  763, 770 (2d Cir. 2015) (vacating Rule 12(b)(6) dismissal of plaintiff's complaint); *Azkour v.*

3  *Bowery Residents' Comm., Inc.*, 646 F. App'x 40, 41–42 (2d Cir. 2016); *Osby v. City of New York*,

4  633 Fed. Appx. 12, 13 (2d Cir. 2016).

5       The application of the *McDonnell Douglas* framework in Title VII cases has been long

6  accepted in the Second Circuit, the Ninth Circuit, and most other circuits. *Camarda v. Selover*, No.

7  15-3262-CV, 2016 WL 7234686, at *1 (2d Cir. Dec. 14, 2016) (discrimination claims brought

8  under Title VII are governed by the burden-shifting framework set forth in *McDonnell Douglas*

9  *Corp. v. Green*); *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003); *Garity v. APWU Nat'l Labor*

10  *Org.*, 828 F.3d 848, 859 (9th Cir. 2016) (the "standard burden-shifting framework established by

11  the Supreme Court in *McDonnell Douglas*, ... applie[d] to a Title VII action against a union);

12  *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002); *Lowe v. City of Monrovia*, 775 F.2d 998,

13  1005 (9th Cir. 1985), *amended,* 784 F.2d 1407 (9th Cir. 1986). *Doe v. Columbia University*

14  merely applied this same framework to Title IX discrimination claims. Indeed, Title IX was

15  modeled after Title VI and VII of the Civil Rights Act of 1964, and courts regularly consider Title

16  VI and VII legal precedent as guidance for the application of Title IX. *Cannon v. Univ. of*

17  *Chicago*, 441 U.S. 677, 678 (1979); *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012)

18  (adopting the Title VII framework for Title IX retaliation claims).

19       Indeed, the application of the *McDonnell Douglas* framework to Title IX discrimination

20  cases has been adopted by courts within the Ninth Circuit. *See Robinson v. Univ. of Washington*,

21  2016 WL 4218399, at *5 (W.D. Wash. Aug. 9, 2016); *Burch v. Regents of Univ. of California*,

22  433 F. Supp. 2d 1110, 1125-26 (E.D. Cal. 2006); *Doe By & Through Doe v. Petaluma City Sch.*

23  *Dist.,* 949 F. Supp. 1415, 1421-22 (N.D. Cal. 1996); *Stucky v. Hawaii Dep't of Educ.*, 2007 WL

24  602105, at *6 (D. Haw. Feb. 15, 2007), *aff'd sub nom.*, *Stucky v. Dep't of Educ.*, 283 F. App'x 503

25  (9th Cir. 2008) ("The *McDonnell Douglas* burden shifting standards apply to Stucky's Title IX

26  gender discrimination claims."). On the *Stucky* appeal, the Ninth Circuit acknowledged the

27  application of the *McDonnell Douglas* framework). *Stucky*, 283 F. App'x at 505 (with respect to

28  Title IX discrimination claim, "[w]hen evidence to refute the defendant's legitimate explanation is

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

6                                                                2:15 CV 02478 (SVW)(JEM)

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

1  totally lacking, summary judgment is appropriate even though plaintiff may have established a

2  minimal prima facie case based on a *McDonnell Douglas* type presumption.") (quoting *Cornwell*

3  *v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 n. 8 (9th Cir. 2006)).

4         Evidence of discrimination is not required to plead a discrimination claim under

5  *McDonnell Douglas*. *See Trans World Airlines v. Thurston*, 469 U.S. 111, 121 (1985) ("The

6  shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the plaintiff

7  [has] his day in court despite the unavailability of direct evidence."); *International Brotherhood of*

8  *Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) ("the *McDonnell Douglas* formula does

9  not require direct proof of discrimination").

10        Like Title VII plaintiffs, plaintiffs pursuing discrimination claims under Title IX should

11 receive the benefit of a temporary presumption of discriminatory intent under the *McDonnell*

12 *Douglas* framework. *Doe v. Columbia Univ.*, 831 F.3d at 56. Despite Defendants suggestions to

13 the contrary, to receive that temporary presumption of discrimination, a Title IX plaintiff must still

14 plead specific facts that support a minimal plausible inference of such discrimination in order to

15 discharge plaintiff's burden at the pleadings stage. *Id*; *McDonnell Douglas*, 411 U.S. at 803.[2]

16        3.    The Application of the *McDonnell Douglas* Framework to Claims of
              Discrimination Under Title IX Makes Sense
17

18        The relevant quagmire for plaintiffs attempting to plead discrimination is that "discerning

19 whether alleged discrimination was based on the plaintiff's gender as opposed to his status as an

20 accused student is generally in the possession of the defendant: namely, what are the overall

21 outcomes of such cases and, more specifically, how have cases been handled in which the accused

22 student is female and/or the alleged victim is male?" *Doe v. Brown Univ.*, 166 F. Supp. 3d at 187.

23

24 [2] Defendants cite *Austin v. Univ. of Or.*, 2016 WL 4708540 (D. Or. Sep. 8, 2016) for the
   proposition that *Doe v. Columbia University* should be rejected in the Ninth Circuit. But *Austin*
25 is of questionable weight, given that it relied upon this Court's July 25, 2016 decision (Dkt. 85).
   Where this Court has withdrawn its July 25, 2016 decision as a result of the Second Circuit's
26 recent decision in *Doe v. Columbia University*, it would be illogical for this Court to then base a
   determination on a District of Oregon decision that relies on the very decision that this Court has
27 withdrawn. Moreover, unlike the plaintiff in *Austin*, Plaintiff alleges how Perkin and the university
   were specifically targeted and pressured into finding "more men guilty."  (SAC ¶¶ 60-62.)
28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

1   Courts have no requirement to "pause at the pleading stage of the proceedings to consider issues

2   regarding what statistical sample would be significant or what degree of consistency in outcome

3   would constitute a relevant pattern." *Id* at 185-86.

4       Just because there were no similarly situated females, does not mean that discrimination

5   did not occur. In the current case, as in *Brown*, there are allegations that the actions of the

6   defendant were unjust; whether those actions were driven by a general desire to crack down on

7   students accused of sexual assault, or a specific desire to crack down on accused men, may not be

8   resolved at the pleadings stage. *Id* at 188-89. The *Brown* court rejected the notion that the type of

9   allegation found to be sufficient in *Yusuf* — that male students accused of sexual assault are

10  "invariably found guilty, regardless of the evidence, or lack thereof" — is now insufficient

11  under *Iqbal* and *Twombly* absent some smoking gun evidence set forth in the complaint. *Id*. The

12  *Brown* complaint is strikingly similar to the complaint in our case.

13      The pleading standard in *Doe v. Columbia University* is designed to address this issue.

14  While it is ultimately the plaintiff's burden to prove discrimination, such a burden will not be

15  unfairly "front-loaded" to the pleadings stage when victims of discrimination with potentially

16  meritorious claims would otherwise be unable to demonstrate defendants' discriminatory intent

17  without the benefit of discovery.[3]

18  _____

19      [3] Additionally, Defendants are wrong when they assert that this action is subject to the
    notice requirements of *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). *Gebser* is

20  only applicable to cases where a school official sexually harasses a student, and requires that "an
    official who at a minimum has authority to address the alleged discrimination and to institute

21  corrective measures on the recipient's behalf has actual knowledge of the discrimination in the
    recipient's programs and fails to adequately respond." 524 U.S. at 290. However, "[c]onsistent

22  with the reasoning underlying *Gebser*, the Supreme Court has made clear that no notice
    requirement is applicable to Title IX claims that rest on an affirmative institutional decision."

23  *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 967 (9th Cir. 2010) (citing *Jackson v.
    Birmingham Board of Education*, 544 U.S. 167 (2005)). An official school disciplinary proceeding is

24  certainly an affirmative institutional action.

25      Moreover, even if *Gebser* applied, whether a school official with the requisite authority
    had notice is a question of fact that cannot be resolved on a motion to dismiss. *See Doe v. Sch. Bd.*

26  *of Broward Cty., Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010) ("We think these allegations are
    sufficient to satisfy Doe's burden of raising a material issue of fact on the issue of actual notice.");

27  *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1248 (10th Cir. 1999) ("At this stage in
    the proceedings we must accept as true the allegation that Ms. Jones's teachers were invested with

28  the authority to halt Mr. Doe's known sexually assaultive behavior."); *Annamaria M v. Napa*
    (footnote continued)

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

8                                          2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

4.    Under *Doe v. Columbia University*, Plaintiff Has Sufficiently Pleaded a Title IX Claim

   a.    The Complaint Alleges an Erroneous Outcome

To sustain an erroneous outcome claim, Plaintiff must allege facts sufficient to cast articulable doubt on the accuracy of the outcome of the disciplinary proceeding. *Yusuf*, 35 F.3d at 715. This may be done through allegations of evidentiary weaknesses in the student conduct process, investigative failures to question witnesses about the victim's incapacitation, accepting the victim's account of her level of intoxication despite numerous statements to the contrary, misconstrued and misquoted witnesses' statements, the drawing of prejudicial conclusions without sufficient evidentiary support, and casting Plaintiff's actions in highly inflammatory terms. *Prasad*, 2016 WL 3212079; *Doe v. Brown Univ.*, 2016 WL 715794 at *3 (despite extensive evidence of consent including John Doe's statement, corroborating witnesses, Jane Doe's concessions in her testimony of providing consent and significant issues with Jane Doe's credibility, John Doe was found responsible).

Plaintiff has alleged facts that sufficiently cast doubt on the accuracy of the outcome of the disciplinary proceeding at issue. Defendants' skewed rendition of the facts is just plain inaccurate.[4] The argument that Plaintiff was aware that Jane Doe was incapacitated or that she was somehow unconscious during the entire sexual encounter is belied by the allegations and the underlying evidentiary record. At no point, was Plaintiff (or anyone else) aware that Jane Doe had consumed a hydrocodone pill and five drinks prior to the group sex. (SAC ¶ 42.) Obviously, no objective reasonable person could know she had. Moreover, Plaintiff and the other witnesses who were in the room testified that Jane Doe was sitting upright in the bed, conscious, and eager to

*Valley Unified Sch. Dist.*, 2006 WL 1525733, at *4 (N.D. Cal. May 30, 2006) ("'In order to answer the question, it would be necessary to examine how [California] law organizes its public schools, the authority and responsibility granted by state law to . . . teachers, the school district's discrimination policies and procedures, and the facts and circumstances of the particular case.'") (quoting *Davis. Hawkins v. Sarasota County Sch. Bd.,* 322 F.3d 1279, 1286 (11th Cir. 2003)).

[4] Notably, Defendants choose to recite the facts set forth in the First Amended Complaint, as opposed to the facts set forth in the Second Amended Complaint that were amended in light of the Court's prior decisions.

COOPER, WHITE & COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1) AND 12(B)(6)

1    engage in group sex when the encounter began. (SAC ¶¶ 40-41.)

2        Like the plaintiff in *Doe v. Columbia University*, Plaintiff and Jane Doe engaged in

3    consensual sexual intercourse that night. (SAC ¶¶ 43-46.)   Indeed, this is not the typical "he

4    said/she said" scenario where no other witnesses are present. The sexual conduct at issue involved

5    a "foursome" in which two other students participated and a fifth was present in the room initially

6    to observe Jane Doe's lack of incapacitation. (SAC ¶¶ 35-50.)   Plaintiff's account of the events at

7    issue were fully corroborated by all of the multiple other witnesses who were present. According

8    to accounts of Plaintiff, as well as of L.B., D.J. and B.R. (the fellow students who were present

9    during the events at issue), at no point leading up to or through the sexual activity, did Jane Doe

10   exhibit any signs of incapacitation. (SAC ¶¶ 41, 79, 80.)   In actuality, Jane Doe was a willing

11   participant; she got on top of Plaintiff at one point, she kissed him passionately, she rubbed his

12   hair while receiving oral sex, and verbalized that she liked what he was doing. (SAC ¶ 46.) The

13   following morning, everyone joked about the night before. (SAC ¶ 50.)

14       Moreover, substantial evidence demonstrated that Jane Doe was not credible. Even her best

15   friend (one of the aforementioned witnesses) testified that Jane Doe had a propensity to lie. (SAC

16   ¶¶ 92, 102.) Indeed, Jane Doe manufactured false evidence to support her story in the form of

17   communications she supposedly had with a friend on Facebook. However, it is clear that this

18   Facebook friend never existed and was created by Jane Doe. (SAC ¶¶ 97-98, 101-05, 141-42.)

19       For all these reasons, the overwhelming evidence (and not just the required preponderance

20   of the evidence) demonstrated that Plaintiff did not commit a sexual assault. Nevertheless, Perkin,

21   who investigated the matter, drafted a report setting forth facts that were untrue, contrary to the

22   evidence, and designed to demonstrate Plaintiff's guilt. (SAC ¶¶ 70, 75-85.)   Contrary to Perkin's

23   investigative report, Plaintiff and witnesses L.B. and B.R never indicated that Jane Doe was

24   "completely out of it" as soon as Jane Doe's "switch" of sexual partners occurred from Plaintiff to

25   B.R. (SAC ¶ 80.)   At the first hearing, L.B. explicitly stated that B.R. and Jane Doe actively

26   engaged in sexual activity for ten to fifteen minutes before B.R. left the room. (SAC ¶ 80.)  Also,

27   L.B. stated that she "did not know Jane Doe described this as sexual assault" and stated, "I don't

28   think John Doe had an intention to take advantage of Jane Doe. I really believe this." (SAC ¶ 80.)

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

10                                                                    2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

Plaintiff's Second Amended Complaint identifies specific witnesses, facts, and evidence that support Jane Doe's informed and voluntary consent (by actions and words) to sexual activity, including sexual intercourse with John Doe:

> ➢ Jane Doe was the participant who first raised, and expressed her interest in, engaging in group sex, but stated that she was only interested if Plaintiff was involved (SAC ¶ 38);

> ➢ Immediately prior to the sexual activity, in front of the other witnesses, John Doe asked Jane Doe "are we really going to do this?" to which Jane Doe responded "yes" (SAC ¶ 41);

> ➢ Jane Doe was conscious, responsible, and did not appear incapacitated to any of the witnesses present (SAC ¶ 41);

> ➢ Jane Doe and John Doe began to kiss, before walking over to the other bed and laying down next to L.B. and B.R. (SAC ¶ 43);

> ➢ Jane Doe kissed John Doe intensely (SAC ¶ 44);

> ➢ John Doe began to remove her clothing while Jane Doe lifted her arms to assist John Doe in removing her shirt, and moved her hips to assist John Doe in removing her pants (SAC ¶ 44);

> ➢ John Doe and Jane Doe engaged in consensual sexual intercourse, during which they switched positions multiple times. At one point, Jane Doe was on top of John Doe. When John Doe initiated oral sex on Jane Doe, she encouraged him by rubbing his hair and expressing her enjoyment verbally (SAC ¶ 45); and

> ➢ Jane Doe was an active and willing participant throughout the entire sexual encounter, demonstrating her consent physically, by kissing John Doe passionately, rubbing his hair as he performed oral sex on her and assisting in the removal of clothing; and verbally, by expressing to John Doe that she liked what he was doing. (SAC ¶ 46.)

These allegations show that John Doe obtained voluntary consent through words and actions to sexual activity with Jane Doe. Nevertheless, over the testimony of Plaintiff and all the other witnesses, the university credited Jane Doe's self-serving statement that she did not consent. That was plain error. The other witnesses all observed that Jane Doe was not incapacitated while engaging in sexual activity with Plaintiff and refuted statements by Jane Doe and findings by Perkins:

> ➢ Jane Doe was *not* "tugged" into the master bedroom; five (5) witnesses stated she was already in the master bedroom when John Doe and B.R. arrived (SAC ¶ 80);

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

11                                                        2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

➢ Jane Doe _did_ care why John Doe and B.R. arrived to the master bedroom; text messages between D.J. and C.B. indicated that just moments prior, Jane Doe discussed wanting to engage in a threesome with John Doe and B.R. (SAC ¶ 80);

➢ Jane Doe was _not_ losing physical control and too inebriated; five (5) witnesses interacted with Jane Doe just moments prior and did not report Jane Doe as incapacitated. They reported that Jane Doe was "fine, "energetic" and "bubbly" (SAC ¶ 80);

➢ Jane Doe was _not_ laying down on the bed when John Doe and B.R. arrived; four (4) witnesses stated Jane Doe was sitting up on the bed when John Doe and B.R. entered the master bedroom (SAC ¶ 80);

➢ Jane Doe was _not_ incapacitated or unable to consent at the time of her "switch" of sexual partners from John Doe to B.R.; B.R. saw Jane Doe sitting up in bed and smiling (SAC ¶ 80); and

➢ Jane Doe was _not_ completely out of it at the time the "switch" occurred; B.R. and Jane Doe kissed for approximately ten minutes before he developed impotence issues; and that after resting his head on the bed for approximately two to five minutes, he then noticed that Jane Doe had fallen asleep. (SAC ¶ 80.)

There was no basis for UCSB to rely on Jane Doe's testimony, to the exclusion of the testimony of the three other witnesses who were also in the room. Its reliance upon Jane Doe's _controverted_ testimony that she was incapacitated was gross error. Its determination that Jane Doe did not consent to sexual activity was clearly erroneous. Under _Yusuf_ and _Doe v. Columbia University_, Plaintiff has sufficiently stated a basis for finding that his disciplinary proceeding ended in an erroneous outcome. _See Collick v. William Paterson Univ._, 2016 WL 6824374, at *11 (D.N.J. Nov. 17, 2016) ("At the pleading stage, however, an allegation that the process was one-sided, irregular, and unsupported by evidence may give rise to an inference of bias.").

b.       The Erroneous Outcome Was Motivated by Plaintiff's Male Gender

When the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based on the evidence), at the pleadings stage, it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias. _Doe v. Columbia Univ._, 831 F.3d at 57. In _Doe v. Columbia University_, plaintiff showed plausible support for the claim that the investigator, panel,

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1) AND 12(B)(6)

1  and dean were motivated by gender bias during the investigation and adjudication of the

2  disciplinary charge where they chose to accept the accuser's unsupported accusations over

3  plaintiff's. *Id* at 57. Specifically, in that case, Columbia's Title IX investigator was motivated by

4  pro-female sex bias, attributed to a desire to refute criticisms of herself and of the school for their

5  past handling of similar complaints, to perform her duties in a manner that discriminated against

6  the accused male. *Id* at 56. Here, Plaintiff has alleged the exact same type of circumstances – only

7  with stronger allegations.

8          In general, with respect to allegations of pressure to comply with governmental intrusions,

9  "it is no more than a commonsense inference that the public's and the policymaker'' attention to

10  the issue of campus sexual assault may have caused a university to believe it was in the spotlight."

11  *Collick* , 2016 WL 6824374, at *11. Here, however, the allegations are far more specific. The SAC

12  outlines more than a mere generalized sense of public pressure to vigilantly prosecute campus

13  sexual assault. Just two months prior to charging Plaintiff with sexual assault, six female UCSB

14  students filed a highly-publicized Title IX complaint with the Department of Education Office of

15  Civil Rights (OCR) claiming that their respective sexual assault complaints were mishandled by

16  UCSB and that it failed to appropriately sanction their male assailants. (SAC ¶ 58; Exhibit J).

17  Moreover, UCSB had received multiple grants from the Office of Violence Against Woman.

18  (SAC ¶ 56.)  Such allegations raise a sufficient inference of bias. *See, e.g., Wells v. Xavier Univ.*, 7

19  F. Supp. 3d 746, 751 (S.D. Ohio 2014) ("[Plaintiff's] allegations show Defendants were reacting

20  against him, as a male, to demonstrate to the [Office of Civil Rights] that Defendants would take

21  action, as they had failed to in the past, against males accused of sexual assault.").

22          There was an evolving campus culture at UCSB aimed at identifying male students as the

23  perpetrators of sexual assault, increasing sexual assault reporting, finding more male students

24  guilty of sexual assault, and issuing harsher sanctions against male students. (SAC ¶¶ 51-63.).

25  That also can raise an inference of anti-male bias. *Doe v. Salisbury Univ.*, 123 F. Supp. 3d at 766;

26  *Doe v. Columbia Univ.*, 831 F.3d at 57. On campus, there were publicly posted campaigns

27  directed against male students, such as "Don't Be That Guy" (SAC ¶ 63; Exhibit M).

28          Most damning are Perkin's actions. In her role as Assistant Dean of Students and Title IX

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

13                                                                2:15 CV 02478 (SVW)(JEM)

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

1  Coordinator, Perkin oversees the Office of Judicial Affairs and is tasked with investigating and

2  substantiating allegations of sexual misconduct. (SAC ¶¶ 29, 60-62.) Like the Title IX investigator

3  in *Doe v. Columbia University*, Perkin was under extreme pressure to find more *male students*

4  guilty, which informed her decision to charge Plaintiff, perform a slanted investigation, and

5  influence the decision against Plaintiff because of his gender. (SAC ¶¶ 60-62.) Perkin was

6  publically disparaged in front of influential politicians for failing to adequately address the

7  problem of campus sexual assault. *Id*. She was specifically disparaged for her personal failure to

8  find more men guilty of sexual misconduct. *Id*. Indeed, the politicians who were present

9  specifically noted that there were not enough men being found guilty. *Id*. Critically, this public

10  criticism of Perkin occurred ***the day after she began her investigation of Plaintiff***. (SAC ¶¶ 60,

11  64.)  The temporal connection between her excoriation for failure to crack down on males accused

12  of sexual misconduct and her grossly improper actions with respect to the disciplinary proceedings

13  against Plaintiff could not be closer. Based on her conduct, as alleged in the Second Amended

14  Complaint, given the great lengths to which Perkin strained to issue a report indicating that a

15  sexual assault had occurred (despite the overwhelming evidence to the contrary), Plaintiff has

16  sufficiently alleged facts that indicate her gender-based bias.

17      At the pleading stage, the foregoing allegations are more than sufficient to demonstrate a

18  plausible connection between gender bias and the outcome of John Doe's disciplinary proceeding.

19  *Doe v. Salisbury Univ.*, 123 F. Supp. 3d at 768-69; *Doe v. Brown Univ.*, 2016 WL 715794 at *8

20  (requiring the male student to conclusively demonstrate, at the pleading stage, with statistical

21  evidence or data analysis that female students accused of sexual assault were treated differently, is

22  both practically impossible and inconsistent with standard used in other discrimination contexts);

23  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 506-07; *Marrerro-Rodriguez v. Municipality of San*

24  *Juan*, 677 F.3d 497, 502 (1st Cir. 2012); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14 (1st

25  Cir. 2011); *Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y. 2002) ("[s]tatistics may be used as

26  circumstantial evidence to support an individual disparate treatment claim"); *Barrett v. Forest*

27  *Labs., Inc.*, 39 F. Supp. 3d 407, 432 (S.D.N.Y. 2014) (in most cases, plaintiffs will be unable to

28  provide reliable statistics before they have access to discovery).

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

14                                                    2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

5.      Plaintiff Has Sufficiently Pleaded Selective Enforcement

As discussed above, Plaintiff has sufficiently alleged facts demonstrating an inference of gender-based bias. Under a "selective enforcement" theory, Plaintiff must show that "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715. Based on the anti-male climate and the pressure to crack down on alleged male sexual offenders, it can certainly be inferred from the Second Amended Complaint that, but for this gender-based bias, Jane Doe's allegations would not have progressed to the investigation stage and certainly would have advanced to the hearing stage. Indeed, by the time Jane Doe had filed her complaint with campus officials, she had already finalized her transfer to another school and Plaintiff was on a leave of absence from UCSB. (SAC ¶¶ 65-70.)  Where the victim is not even a student and the incident occurred in another state, the university had no jurisdiction to proceed with any kind of investigative or disciplinary proceeding. *Id*. Plaintiff has sufficiently alleged an inference that the whole process would never have started, but for the pressure to crack down on male students accused of sexual misconduct.

Moreover, to the extent Plaintiff must show that he was treated differently than other similarly situated students, *McDonnell Douglas* and its progeny express a more lenient pleading standard so that a plaintiff who is the victim of discrimination has the opportunity, through discovery, to obtain evidence of the discrimination that is generally in the sole possession of defendants. *See, e.g., Doe v. Brown Univ.*, 166 F. Supp. 3d at 188-89. Plaintiff has alleged enough to entitle him to that discovery.

**B.      The *Younger* Abstention Doctrine Is Inapplicable to this Case**

*Younger* is inapplicable because there is no ongoing state proceeding and there is no risk that this federal court will interfere with the operations of any state court. The Supreme Court cautions that abstention "represents an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 813 (1974). This is because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id* at 817. "[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

2:15 CV 02478 (SVW)(JEM)

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1) AND 12(B)(6)

1   should not 'refus[e] to decide a case in deference to the States.'" *Sprint Commc'ns, Inc. v. Jacobs*,

2   134 S. Ct. 584, 588 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New*

3   *Orleans*, 491 U.S. 350, 368 (1989)). *Younger v. Harris*, 401 U.S. 37 (1971) "exemplifies one class

4   of cases in which federal-court abstention is required:" parallel, pending state criminal

5   proceedings. *Sprint*, 134 S. Ct. at 588. "Circumstances fitting within the *Younger* doctrine, [the

6   Supreme Court has] stressed, are 'exceptional'; they include, as catalogued in *NOPSI,* 'state

7   criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain

8   orders that are uniquely in furtherance of the state courts' ability to perform their judicial

9   functions.'" *Id* (quoting *NOPSI,* 491 U.S. at 367–368).

10      The present matter cannot fall within the confines of the *Younger* abstention doctrine

11   because there is simply no pending state court proceeding. There is absolutely no risk that this

12   federal court will interfere with the operations of any state court. Despite the absence of any state

13   court proceeding, the crux of Defendants' argument is that *Younger* should apply because Plaintiff

14   has *not* initiated any action in a state court. Defendants insist that, if Plaintiff does not initiate a

15   state court action to address the administrative action taken by UCSB, this federal court action

16   may not proceed. As discussed below, there is absolutely no requirement under *Younger* that a

17   plaintiff exhaust his state judicial remedies (as opposed to administrative remedies).

18      More importantly, Plaintiff is, in fact, pursuing the available state judicial remedy – a writ

19   of mandate under Cal. Civ. Code § 1094.5. The fact that the writ is being sought in a federal court

20   is of no moment. Indeed, Defendants do not dispute that a federal court can issue a writ of

21   mandate. Even if there was a requirement under the *Younger* abstention doctrine that Plaintiff

22   pursue state judicial remedies (which there is not), there is no requirement that Plaintiff pursue a

23   remedy in a state court when he can seek the same state remedy in a federal court.[5]

24

25   ---

    [5] Notably, only now, in their *fourth* motion to dismiss, do Defendants raise this abstention

26   argument. If the argument truly had merit, presumably, it would have been raised earlier. To that
    end, Defendants are incorrect when they assert that abstention arguments are only waived through

27   an express waiver. *See, e.g., Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102, 1106 (9th
    Cir. 1988) (*Younger* arguments waived where not raised timely). Having already taken three bites

28   at the apple, Defendants should not be permitted to raise the argument at this juncture.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

16                                                    2:15 CV 02478 (SVW)(JEM)

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

1.     <u>Plaintiff Has Pursued His State Administrative and Judicial Remedies</u>

Defendants argue that Plaintiff must avail himself of, not just California state administrative remedies, but California state judicial remedies. Defendants argue, therefore, that because Plaintiff has supposedly failed to avail himself of state judicial remedies, the Court should abstain from hearing Plaintiff's claims under the *Younger* abstention doctrine. One immediate hole in this argument is that Plaintiff has pursued the available state judicial remedies.

It is undisputed that Plaintiff pursued all administrative remedies with respect to his suspension from UCSB and that the school's administrative determination is now final. California law provides Plaintiff with one specific judicial remedy after the conclusion of the administrative process: a writ of mandate under Cal. Code of Civil Procedure § 1094.5. Plaintiff is pursuing this judicial remedy in this Court. As a result, *Younger* cannot apply under any circumstances.

Defendants do not dispute that Plaintiff may seek a writ of mandate from this Court. Indeed, the law is clear that federal courts have jurisdiction to issue writs of mandate under Cal. Code of Civil Procedure § 1094.5. *See Jensen v. Cty. of Sonoma*, 2010 WL 2330384, at *6 (N.D. Cal. June 4, 2010), *aff'd,* 444 F. App'x 156 (9th Cir. 2011) (plaintiff permitted to seek writ, together with claims under Section 1983); *Sakhrani v. City of San Gabriel*, No. 2:16-cv-01756-CAS-PLA, 2016 WL 7378088, at *7 (C.D. Cal. Dec. 20, 2016) ("In its order on defendants' motion to dismiss, the Court rejected defendants' request and exercised supplemental jurisdiction because 'plaintiffs' claim for a writ of mandate is "so related" to their federal ADA and Rehabilitation Act claims as to 'form a part of the same case or controversy.'") (citation omitted); *Riojas v. United States Dep't of Agric.*, 2016 WL 3566941, at *7 (N.D. Cal. June 30, 2016) (state agency "argues that the Court lacks subject matter jurisdiction because the sole cause of action against [it], California Code of Civil Procedure section 1094.5, is a state law cause of action. The Court disagrees.") (internal citation omitted); *Wesner v. Cty. of Napa*, 2009 WL 650274, at *2 (N.D. Cal. Mar. 11, 2009) ("The state law claims under Section 1094.5 and the California Constitution are so related to the federal civil rights claims under Section 1983 that the Court finds that they form a part of the same case or controversy. Therefore, the Court can properly exercise supplemental jurisdiction under 28 U.S.C. § 1367(a)."); *AT&T Wireless Servs. of California LLC*

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

*v. City of Carlsbad*, 308 F. Supp. 2d 1148, 1167 (S.D. Cal. 2003) (federal court may issue writ); *see also Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 811 (9th Cir. 2007) (plaintiff may obtain writ of mandate from federal district court); *BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 788, 158 (9th Cir. 2009) (with respect to the judicial review of an administrative determination, "[a] state cannot confer rights upon private parties and require that litigation between those parties must be confined to the courts of the state itself").[6]

       2.     <u>Even If Plaintiff Had Not Pursued Any State Judicial Remedy, *Younger* Would Still Be Inapplicable</u>

In determining whether *Younger* applies, courts look at three factors: "*first*, [is there] . . . an ongoing state judicial proceeding; *second*, do the proceedings implicate important state interests; and *third*, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

As an initial matter, *Younger* is inapplicable here because there simply is no "ongoing state judicial proceeding." Nevertheless, Defendants posit that, where "a state administrative proceeding is final and state-court judicial review is available but has not been invoked, the state proceeding is nevertheless 'ongoing' for purposes of *Younger* abstention." (Def. Mem. at 10.) Defendants entirely ignore the fact that Plaintiff is pursuing the judicial remedy afforded him under California state law, a writ of mandate. Instead, Defendants put forth a fiction by implying that state judicial relief has not been sought because Plaintiff seeks a writ of mandate under California law in a federal court. Defendants have not – and cannot -- cite a single authority for the proposition that *Younger* applies where the available state judicial remedy can be and is brought in a federal court.[7]

In actuality, there is substantial authority for the proposition that, even if Plaintiff did not

---

[6] Despite Defendants suggestion to the contrary, there is also no requirement that plaintiff seek a writ of mandate before asserting federal claims. *See, e.g., Jensen*, 2010 WL 2330384, at *6; *Wesner*, 2009 WL 650274, at *2.

[7] Indeed, Defendants fail to provide any reason why it should matter if the writ is issued by a state court or by a federal court. There is no logical reason why *Younger* would mandate the former or preclude the latter.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

18        2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1) AND 12(B)(6)

pursue any state judicial remedy (in either state or federal court), he may still assert federal and constitutional claims in a federal court action without risking the application of the *Younger* abstention doctrine. *See Norfolk & W. Ry. Co. v. Pub. Utilities Comm'n of Ohio*, 926 F.2d 567, 572–73 (6th Cir. 1991) ("The administrative hearing has concluded and the agency has issued its final order. The order has not been appealed to the Ohio Supreme Court. Thus, *Younger* abstention is inappropriate."); *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 72 (2d Cir. 1990) ("A federal court need not stay its jurisdictional hand when there is no state action pending at the time the federal suit is filed, even if there is a substantial likelihood that a state proceeding will be instituted in the future to vindicate the state's interests."); *Thomas v. Texas State Bd. of Med. Examiners*, 807 F.2d 453, 457 (5th Cir. 1987) ("A litigant who initiates state court review of a state administrative decision and then changes his mind and voluntarily dismisses the suit is not irrevocably bound either to continue his action in state court or to forfeit his right to vindicate his constitutional rights in a federal court. When no state proceedings are pending, a federal action does not interfere with or insult state processes and 'the policies on which the *Younger* doctrine is premised "have little force . . . .'"") (citation omitted).

In *Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000 (9th Cir. 1995), the Ninth Circuit held that, with respect to *Younger*, where "no action has been filed in state court against defendants, there are no ongoing state judicial proceedings to which this court can defer." *Agriesti*, 53 F.3d at 1001-02 ("This case offers only the potential for future state judicial proceedings, which does not trigger *Younger* abstention.").[8]  Similarly, district courts in the Ninth Circuit have held that, where an administrative proceeding has been completed, it is not "ongoing," even where a plaintiff has the option to pursue relief in state court. *See Kessler v. Bishop*, 2011 WL 207981, at *3-4 (N.D. Cal. Jan. 21, 2011) ("As defendants themselves contend, the university's decision on plaintiff's grievance constitutes a 'final decision,' and plaintiff has also stated that he does not intend to seek a writ of mandate, further demonstrating the finality to be accorded the university's

---

[8] In *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1094 (9th Cir. 2008), the Ninth Circuit noted that it had previously addressed the issue in a withdrawn 1993 decision, but there was no discussion of the 1995 *Agriesti* decision.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

19                                    2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

decision. Accordingly, no 'concurrent state proceeding' is pending that would warrant abstention."); *Contest Promotions, LLC v. City & Cty. of San Francisco*, 2010 WL 1998780, at *3 (N.D. Cal. May 18, 2010) ("Although the potential exists for state court review of the ALJ's decision, no party has yet invoked that review. Because there are presently no ongoing proceedings in state court 'to which this Court can defer,' *Younger* abstention does not apply at this time.") (quoting *Agriesti*, 53 F.3d at 1001-02); s*ee also Commc'ns Tele. Int'l v. California Pub. Util. Comm'n*, 14 F. Supp. 2d 1165, 1169 (N.D. Cal. 1998), *aff'd,* 196 F.3d 1011 (9th Cir. 1999) (abstaining only where there were available administrative remedies, "*in addition to* judicial review") (emphasis in the original); *Contasti v. City of Solana Beach*, at *5 (S.D. Cal. Sept. 18, 2012) (even where plaintiffs did not pursue a writ of mandate under Cal. Code of Civil Procedure § 1094.5, "the Court concludes that Plaintiffs' failure to exhaust their state court remedies does not bar them from bringing this § 1983 action in federal court"); *Hellmann-Blumberg v. Univ. of Pac.*, 2013 WL 1326469, at *4–5 (E.D. Cal. Mar. 29, 2013) (permitting assertion of common law claims in federal courts because, although a writ of mandate is the only available judicial remedy under California law, "'[b]arring only exceptional circumstances, or explicit [federal] statutory requirements, resort to a federal court may be had without first exhausting the judicial remedies of state courts.'") (quoting *Lane v. Wilson,* 307 U.S. 268, 274–75 (1939)).

*Kessler* is directly on point. There, plaintiff, the former Dean of the School of Medicine and Vice Chancellor of Medical Affairs at the University of California, San Francisco, asserted claims under Section 1983 regarding his termination from the school. Plaintiff followed the school's administrative procedures, which culminated in a "final decision" against him. However, plaintiff did not seek a writ of mandate and explicitly stated that he had no intention of seeking a writ. Instead, after the conclusion of the administrative proceedings, he chose to assert claims in federal court. Because the administrative proceeding had concluded and there was no pending state court action, "the court f[ound] that the lack of an 'ongoing' state proceeding prevents application of the [*Younger* abstention] doctrine to this case." *Kessler*, 2011 WL 207981, at *4.

Although Defendants refer to their view regarding when a state proceeding is "ongoing" as the "majority view," in fact, several of the appellate court decisions cited by Defendants did not

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

20                                                                      2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

1    reach the issue. Rather, the discussion of the topic is nothing but non-binding *dicta*. In *Majors v.*

2    *Engelbrecht,* 149 F.3d 709 (7th Cir. 1998), there was not just the possibility of a state court action,

3    but an actual pending state court action that required the invocation of *Younger*. *Majors*, 149 F.3d

4    at 712 ("Majors quickly filed such a petition in the Marion County Superior Court, asking the

5    court to reverse the board's order and reinstate his license, . . . rais[ing] the same constitutional

6    issues as in his federal suit. That action, as far as we know, is still pending."). Therefore, any

7    discussion of a scenario where no state court proceeding is pending is *dicta*.

8           In both *Hudson v. Campbell*, 663 F.3d 985 (8th Cir. 2011) and *Maymo-Melendez v.*

9    *Alvarez-Ramirez*, 364 F.3d 27 (1st Cir. 2004), administrative proceedings had not been finalized

10   and the plaintiff failed to exhaust administrative remedies. *Hudson,* 663 F.3d at 986 ("Hudson did

11   not file a second hearing request but instead filed this § 1983 action in the Western District of

12   Missouri seeking declaratory and injunctive relief."); *Maymo-Melendez*, 364 F.3d at 34 (plaintiff,

13   a horse trainer whose license had been suspended, did not exhaust his administrative remedies

14   before an administrative racing board). Thus, in both of these cases, the courts were not presented

15   with a situation where a plaintiff failed to seek relief from a state court after completing the

16   administrative process.[9] Again, any discussion of such a scenario in these cases is just *dicta*. [10]

17

18   [9] In a prior decision, the First Circuit permitted a plaintiff to pursue Section 1983 claims despite failing to seek relief from a state court as a result of a final administrative decision. *See Kercado-*

19   *Melendez v. Aponte-Roque,* 829 F.2d 255 (1st Cir. 1987). Further, in both *Sprint* and *NOPSI*, the Supreme Court declined to apply the *Younger* abstention doctrine. Indeed, in *NOPSI*, although

20   "Respondents urge[d] that these principles apply equally where the initial adjudicatory tribunal is an agency—i.e., that the litigation, from agency through courts, is to be viewed as a unitary

21   process that should not be disrupted, so that federal intervention is no more permitted at the conclusion of the administrative stage than during it," the Court declined to make such a holding.

22   491 U.S. at 369. While Justices Rehnquist and Blackmun discussed the issue in concurring opinions, Justice Blackmun made clear that "the majority's observations on these questions are not

23   necessary to the result or to the legal standard the majority has adopted." *Id* at 375 (Blackmun, J., concurring).

24

25   [10] The district court cases cited by Defendants are also inapposite. As in *Hudson* and *Maymo-Melendez*, in *Devall v. Hammond Mun. Fire & Police Civil Serv. Bd.*, 2014 WL 6774249, at *2-3

26   (E.D. La. Dec. 2, 2014), plaintiff was in the middle of uncompleted administrative proceedings when the federal action was initiated. There were also *actual* (as opposed to theoretical) ongoing

27   state proceedings in *Fund v. City of N.Y.*, 2014 WL 2048204, at *9 (S.D.N.Y. May 19, 2014) ("there is no question that there is an ongoing state proceeding: its pendency is the very reason for

28   Plaintiffs' application for emergent relief."), as well as in *Chester Bross Const. Co. v. Schneider*, 886 F. Supp. 2d 896, 907 (C.D. Ill. 2012) ("The state proceedings are also ongoing. To this Court's
     (footnote continued)

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

1   As for *O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994), *Laurel Sand & Gravel,*

2   *Inc. v. Wilson*, 519 F.3d 156 (4th Cir. 2008), and *Alleghany Corp. v. Pomeroy*, 898 F.2d 1314 (8th

3   Cir. 1990), again, those cases did not involve a situation where the plaintiff did, in fact, pursue a

4   state judicial remedy, but in federal court. Moreover, the reasoning of those cases is faulty. To

5   begin, each relied heavily on language in *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) relating to

6   a wholly distinguishable scenario. In *Huffman*, after the conclusion of a state administrative

7   proceeding, the plaintiff sought relief from an Ohio state court, but lost. However, instead of

8   appealing the trial court decision to an Ohio appellate court, plaintiff brought an action in federal

9   court. Thus, plaintiff effectively attempted to use a federal district court to hear an appeal of a state

10   trial court determination. The Supreme Court found such a clear disregard for notions of

11   federalism to be at the heart of what *Younger* abstention doctrine was designed to avoid. 420 U.S.

12   at 608-09. Of course, such an extreme situation in not present here. Indeed, *Huffman* stressed that

13   there is a clear distinction between the scenario that was then before the Supreme Court and

14   situations where plaintiffs choose not to seek any state court relief and initiate federal court actions

15   after the conclusion of administrative proceedings:

16          By requiring exhaustion of state appellate remedies for the purposes of
       applying *Younger* we in no way undermine *Monroe v. Pape*, 365 U.S. 167, 81

17   S.Ct. 473, 5 L.Ed.2d 492 (1961). There we held that one seeking redress under 42
       U.S.C. s 1983 for a deprivation of federal rights need not first initiate state

18   proceedings based on related state causes of action. 365 U.S., at 183, 81 S.Ct., at
       482. *Monroe v. Pape* had nothing to do with the problem presently before us, that

19   of the deference to be accorded state proceedings *which have already been*
       *initiated* and which afford a competent tribunal for the resolution of federal issues.

20

21

22   knowledge, the suspension proceedings before IDOT are still pending, and the Chief Procurement
       Officer has not yet issued a decision regarding the Hearing Officer's recommended decision."). In

23   *Mir v. Kirchmeyer*, 2014 WL 2436285, at *13 (S.D. Cal. May 30, 2014), the court denied the
       abstention motion. In *M.R. v. Bd. of Sch. Comm'rs of Mobile Cty.*, 2012 WL 3778283, at *4 (S.D.

24   Ala. Aug. 30, 2012), the court accepted defendants' abstention argument where there was a
       "paucity of briefing on this point, [and] the Court decline[d] to wade into that morass *sua*

25   *sponte*"). In a footnote, Defendants also cite to *Ohio Civil Rights Comm'n v. Dayton Christian*
       *Sch., Inc.*, 477 U.S. 619, 627 n.2 (1986) and *Green v. City of Tucson*, 255 F.3d 1086, 1102 (9th

26   Cir. 2001). However, each of those cases discussed abstention in favor of actual ongoing
       proceedings. Neither dealt with the theoretical possibility of a state court proceeding, or the

27   assertion of state judicial remedies in federal courts. In fact, in *Green*, the Ninth Circuit held that
       abstention was inappropriate. 255 F.3d at 1104.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

22                                          2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

Our exhaustion requirement is likewise not inconsistent with such cases as *City Bank Farmers' Trust Co. v. Schnader*, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934), and *Bacon v. Rutland R. Co.*, 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914), which expressed the doctrine that a federal equity plaintiff challenging state administrative action need not have exhausted his state judicial remedies. *Those cases did not deal with situations in which the state judicial process had been initiated.*

*Id.* at 609 n.21 (emphasis added). The aforementioned appellate decisions ignored the distinction set forth in *Huffman*. This point was made in the strenuous dissenting opinion in *O'Neil*. 32 F.3d at 799-800 (Lewis, J., dissenting) ("virtually none of those justifications for abstention [in *Huffman*] apply here").

Judge Lewis then went to great length discussing the fallacies of the arguments asserted in the *O'Neil* majority opinion (the same discussion would apply to the similar reasoning in *Laurel Sand & Gravel* and A*llegheny*). *See id* at 793-805. "The most significant and frequently cited reason federal courts have articulated for abstaining under *Younger* has been the importance of not interfering with state proceedings." *Id* at 796. However, where there is no actual state proceeding, there can be no interference of which to be concerned. *Id* at 796-97. "[T]he relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding.' In such circumstances . . . a federal court can exercise its given jurisdiction without creating duplicative legal proceedings or disrupting the state system; nor could a decision allowing the federal suit to go forward 'be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.'" *Id* at 797 (quoting *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)). Moreover, state courts would not be unduly insulted if, in the first instance, a plaintiff sought judicial relief for deprivations of federal or constitutional rights in a federal court (as opposed to seeking the aid of a federal court only after losing in a state court). *Id* at 797-800.

For all these reasons, the *Younger* abstention doctrine is inapplicable to the present case.

## C. The Eleventh Amendment Does Not Bar Any of Plaintiff's Claims

In addition to the Eleventh Amendment arguments made in Defendants' prior motion to

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

23                                          2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)

1   dismiss the Second Amended Complaint, Defendants now make additional arguments.[11]   They,

2   too, are without merit. The Eleventh Amendment does not bar Plaintiff's claims.

3       Specifically, the Eleventh Amendment does not bar claims seeking prospective relief in the

4   form of a writ of mandate under Cal. Code Civil. Procedure § 1094.5. *See Riojas v. United States*

5   *Dep't of Agric.,* 2016 WL 3566941, at *8 (N.D. Cal. June 30, 2016). "'[A] federal court, consistent

6   with the Eleventh Amendment, may enjoin state officials to conform their *future* conduct to the

7   requirements of federal law, even though such an injunction may have an ancillary effect on the

8   state treasury.'" *Id* (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979)) (emphasis in the

9   original). Such "'a suit for prospective injunctive relief provides a narrow, but well-established,

10  exception to Eleventh Amendment immunity.'" *Id* (quoting *Doe v. Lawrence Livermore Nat. Lab.*,

11  131 F.3d 836, 839 (9th Cir. 1997)). This is consistent with *Ex parte Young*, 209 U.S. 123 (1908),

12  which Defendants concede, "allows an exception to the Eleventh Amendment for prospective

13  injunctive relief against state officials."  (Def. Mem. at 25.)

14      Here, Plaintiff seeks a writ directing the Regents, to set aside the decision and sanction

15  against Plaintiff. Through a writ of mandate, this Court may issue such prospective injunctive

16  relief in the form of an "order [for] the reconsideration of the case in light of the court's opinion

17  and judgment and may order respondent to take such further action as is specially enjoined upon it

18  by law." *Id* (permitting claim for writ of mandate directing the California Department of Social

19  Services to make a new determination regarding plaintiff's eligibility for benefits). *Accord,*

20  *Shepard v. Irving*, 77 F. App'x  615, 620 (4th Cir. 2003) (order to school to expunge student's

21  record with respect to erroneous disciplinary determination permitted under *Ex parte Young*).

22      With respect to the claims against defendant Suzanne Perkin under 28 U.S.C. § 1983,

23  Plaintiff is not seeking compensatory monetary relief. However, it cannot be disputed that, under

24  *Ex parte Young*, Plaintiff may bring claims against Ms. Perkin, in her official capacity, for the type

25

---

26  [11]  Plaintiff respectfully refers the Court to his responses to Defendants' prior Eleventh

27  Amendment arguments. *See* Dkt. 79 at 8-17. Defendants' new arguments are outside the scope of the Court's direction to brief the issue of the applicability of the Second Circuit's decision in *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016). *See* Dkt. 85 at 8.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1) AND 12(B)(6)

1    of prospective injunctive relief sought in the Second Amended Complaint.[12] Moreover, with

2    respect to Plaintiff's entitlement to his attorney's fees and costs, "it must be accepted as settled

3    that an award of attorney's fees ancillary to prospective relief is not subject to the strictures of the

4    Eleventh Amendment." *Missouri v. Jenkins*, 491 U.S. 274, 279 (1989).

5    ## III.  CONCLUSION

6         For all the forgoing reasons, Plaintiff respectfully request that the Court: 1) deny

7    Defendants' pending motions in their entirety; 2) direct the filing of a third amended complaint

8    alleging all of the claims for relief before the Court, including the clam under Title IX; and 3)

9    grant such other and further relief as the Court deems just and proper.

10        In the alternative: 1) should the Court dismiss any claims alleged by Plaintiff, Plaintiff

11   respectfully requests leave to replead such dismissed claims; and 2) should the Court conclude that

12   the standard for alleging claims under Title IX set forth in *Doe v. Columbia University* should not

13   be adopted and dismiss Plaintiff's Title IX claim with prejudice, Plaintiff respectfully requests that

14   the Court grant that portion of Plaintiff's prior motion dated September 9, 2016 (Dkt. 77) seeking

15   an interlocutory appeal to the Ninth Circuit pursuant to 28 U.S.C. § 1292(b).

16   DATED:  January 12, 2017          **WARSHAW BURSTEIN, LLP**

17

18                                     By:        /s/
                                           Kimberly C. Lau
                                           Attorneys for John Doe

19   DATED:  January 12, 2017          **COOPER, WHITE & COOPER LLP**

20

21                                     By:        /s/
                                           Scott M. McLeod
                                           Attorneys for John Doe

22        Local Rule 5-4.3.4 Certification: I hereby attest that all other signatories listed, on whose

23   behalf this filing is submitted, concur in the filing's content and have authorized this filing.
              /s/ Christopher J. Mead

24

25   ---
     [12] In their memorandum, Defendants concede "that a request for a university to expunge a

26   student's records of evidence of disciplinary sanctions is a claim for prospective relief that may be
     made under § 1983." (Def. Mem. at 13, n. 7) (citing *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir.

27   2007)). They further concede that "judicial immunity does not bar declaratory or injunctive relief
     in actions under § 1983 [against state officials.]" *Id.* (quoting *Mullis v. U.S. Bankruptcy Court*, 828

28   F.2d 1385, 1391 (9th Cir. 1987)).

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

25                                    2:15 CV 02478 (SVW)(JEM)
JOHN DOE'S OPPOSITION TO MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1)
AND 12(B)(6)