BRADLEY S. PHILLIPS (SBN 85263)
brad.phillips@mto.com
HAILYN J. CHEN (SBN 237436)
hailyn.chen@mto.com
JOHN F. MULLER (SBN 300839)
john.muller@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

JONATHAN D. MILLER (SBN 220848)
jonathan@nps-law.com
ALISON M. BERNAL (SBN 264629)
alison@nps-law.com
NYE, PEABODY, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 563-5385

Attorneys for Defendants THE REGENTS
OF THE UNIVERSITY OF
CALIFORNIA and SUZANNE PERKIN

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Doe,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Regents of the University of California; Suzanne Perkin,<br><br>　　　　Defendants. | Case No. 2:15-cv-02478-SVW<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ALL CLAIMS UNDER RULES 12(B)(1) AND 12(B)(6)**<br><br>Judge: Stephen V. Wilson<br>Date: February 13, 2017<br>Time: 1:30 p.m.<br>Courtroom: 10A |

# TABLE OF CONTENTS

**Page**

I. The Eleventh Amendment Bars Plaintiff's Claim for a Writ of Mandate ........ 1

II. *Younger* Abstention Applies ............................................................................. 2

    A. Plaintiff Has Not Pursued His State Judicial Remedies ............... 2

    B. There Is an Ongoing State Proceeding for *Younger* Purposes ................................................................................................ 3

III. Plaintiff Fails to State a Claim Under Title IX ................................................. 8

    A. Plaintiff's Erroneous-Outcome Claim Fails ................................. 8

        1. Plaintiff Casts No Doubt on the Accuracy of the Proceedings ............................................................................. 8

        2. Plaintiff Makes No Prima Facie Showing of Gender Bias ................................................................................. 9

    B. Plaintiff's Selective-Enforcement Claim Fails ........................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Agriesti v. MGM Grand Hotels, Inc.*,
53 F.3d 1000 (9th Cir. 1995) ...................................................................................... 7

*Alleghany Corp. v. Pomeroy*,
898 F.2d 1314 (8th Cir. 1990) ................................................................................ 5, 6

*Boardman v. Estelle*,
957 F.2d 1523 (9th Cir. 1992) ................................................................................... 2

*Cecos International, Inc. v. Jorling*,
895 F.2d 66 (2d Cir. 1990) ......................................................................................... 6

*Communications Telesystems International v. California Public
Utilities Commission*,
14 F. Supp. 2d 1165 (N.D. Cal. 1998) ................................................................. 7, 8

*Contasti v. City of Solana Beach*,
2012 WL 4109207 (S.D. Cal. Sept. 18, 2012) ........................................................ 7

*Contest Promotions, LLC v. City of San Francisco*,
2010 WL 1998780 (N.D. Cal. May 18, 2010) ........................................................ 7

*Doe v. Columbia University*,
831 F.3d 46 (2d Cir. 2016) ......................................................................................... 1

*Hellmann-Blumberg v. University of the Pacific*,
2013 WL 1326469 (E.D. Cal., Mar. 29, 2013) ....................................................... 7

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975) ..................................................................................... 3, 4, 5, 6

*Kessler v. Bishop*,
2011 WL 207981 (N.D. Cal. Jan. 21, 2011) ........................................................... 8

*Laurel Sand & Gravel, Inc. v. Wilson*,
519 F.3d 156 (4th Cir. 2008) ............................................................................ 3, 5, 6

*Majors v. Engelbrecht*,
149 F.3d 709 (7th Cir. 1998) ..................................................................................... 5

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Maymó-Meléndez v. Álvarez-Ramírez*,
  364 F.3d 27 (1st Cir. 2004) ................................................................................. 5

*New Entm't Indus., Inc. v. City of Henderson*,
  8 F.3d 1348 (9th Cir. 1993), *withdrawn by* 21 F.3d 895 (9th Cir.),
  *on reh'g* 26 F.3d 131 (9th Cir. 1994) ................................................................. 4

*New Orleans Public Serv., Inc. v. Council of New Orleans*,
  491 U.S. 350 (1989) ............................................................................................ 3

*Norfolk & Western Railway Co. v. Public Utilities Commission of Ohio*,
  926 F.2d 567 (6th Cir. 1991) ............................................................................... 6

*O'Neill v. City of Philadelphia*,
  32 F.3d 785 (3d Cir. 1994) .............................................................................. 5, 6

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*,
  477 U.S. 619 (1986) ......................................................................................... 2, 7

*Pennhurst State School & Hospital v. Halderman*,
  465 U.S. 89 (1984) .............................................................................................. 1

*Pennzoil Co. v. Texaco, Inc.*,
  481 U.S. 1 (1987) ............................................................................................ 4, 6

*Riojas v. United States Department of Agriculture*,
  2016 WL 3566941 (N.D. Cal. June 30, 2016) ................................................... 1

*San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*,
  546 F.3d 1087 (9th Cir. 2008) .................................................................... 3, 4, 5

*Shepard v. Irving*,
  77 F. App'x 615 (4th Cir. 2003) ......................................................................... 1

*Thomas v. Texas State Board of Medical Examiners*,
  807 F.2d 453 (5th Cir. 1987) .............................................................................. 6

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Walnut Properties, Inc. v. City of Whittier*,
  861 F.2d 1102 (9th Cir. 1988) .......................................................................... 2

*Younger v. Harris*,
  401 U.S. 37 (1971) ............................................................................... 1, passim

**FEDERAL STATUTES**

28 U.S.C. § 1983 .................................................................................................. 1, 7

**STATE STATUTES**

Cal. Code Civ. Proc. § 1094.5 .................................................................................. 2

Plaintiff offers no response to Defendants' core arguments. He ignores *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), which dictates dismissal of the writ petition. He ignores the principles underlying *Younger v. Harris*, 401 U.S. 37 (1971), which require abstention. With respect to his Title IX claim, Plaintiff rehashes arguments this Court has already rejected, offering no reason why *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016) ("*Columbia*"), warrants a different result. Plaintiff still casts no doubt on the outcome of his disciplinary proceeding and still makes no allegations of gender-specific bias. The Court should grant Defendants' Motion.

## I. The Eleventh Amendment Bars Plaintiff's Claim for a Writ of Mandate[1]

Plaintiff does not meaningfully respond to Defendants' argument that, under *Pennhurst*, his claim for a writ of mandate under California law is barred by the Eleventh Amendment. Plaintiff does not so much as mention *Pennhurst*.

Instead, Plaintiff cites cases for the proposition that a federal court may enjoin state officials to conform their future conduct to *federal* law. Opp. at 24. For example, in *Riojas v. United States Department of Agriculture*, 2016 WL 3566941, at *8 (N.D. Cal. June 30, 2016), the court rejected the defendant's Eleventh Amendment argument because the writ claim turned "exclusively on federal law" (citation and internal quotation marks omitted). *See also Shepard v. Irving*, 77 F. App'x 615, 617, 620 (4th Cir. 2003) (unpublished) (rejecting Eleventh Amendment argument where the plaintiff asserted only federal claims). Those authorities are irrelevant, as Plaintiff seeks a writ of mandate based on state-law claims. *See* SAC ¶¶ 14, 194; *see also* Order Granting Defendant's Motion to Dismiss, ECF No. 43, at 4 (finding "Plaintiff must first petition for a writ of mandate as to his state claims").

---

[1] Plaintiff now concedes that he does not seek damages against Defendant Perkin under 28 U.S.C. § 1983 and does not contest Defendants' argument that any damages claim would be barred by the Eleventh Amendment.

Elsewhere, Plaintiff asserts that "the law is clear that federal courts have jurisdiction to issue writs of mandate under Cal. Code of Civil Procedure § 1094.5." Opp. at 17. Other than *Riojas*—which, as discussed above, involved only federal-law claims—none of the cases cited in support of this proposition involved an argument that the Eleventh Amendment barred a petition for writ of mandate based on state-law claims. The cases are therefore irrelevant.

## II.   *Younger* Abstention Applies

Plaintiff makes two arguments against the application of *Younger* abstention here. First, he argues that he has pursued his state judicial remedies by bringing a petition for writ of mandate in this Court. Second, he argues that, even if he had not pursued that remedy, *Younger* would not apply because there is no ongoing state judicial proceeding. Both arguments are wrong.[2]

### A.   **Plaintiff Has Not Pursued His State Judicial Remedies**

Plaintiff's only argument that he has pursued his state judicial remedies is based upon his petition for a writ of mandate in this Court. As explained above, however, that petition is barred by the Eleventh Amendment; it may be brought *only* in state court. While Plaintiff cites numerous cases in which federal courts considered petitions for writs of mandate under California Code of Civil Procedure § 1094.5, none of those cases, other than *Riojas* (which involved only federal-law claims), addressed the Eleventh Amendment or *Younger*. They are all irrelevant.

---

[2] In a footnote, Plaintiff wrongly asserts that Defendants have waived *Younger* abstention. In *Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102 (9th Cir. 1988), the court held it was "too late" for the defendant to challenge, on appeal, the district court's decision not to abstain under *Younger*—after the defendant *had* raised the issue in the trial court—because it had twice failed to raise the issue on appeal. *Id*. at 1106. That application of the appellate rule that a party waives an alleged error by the trial court by failing (repeatedly) to raise it on appeal in no way undermines the holdings of the Supreme Court and the Ninth Circuit that *Younger* abstention may not be waived in the trial court absent express waiver or urging for adjudication. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 626 (1986); *Boardman v. Estelle*, 957 F.2d 1523, 1535 (9th Cir. 1992).

Regardless, it would be nonsensical to allow a plaintiff to defeat *Younger* abstention by pursuing state-law claims for judicial review of a state administrative proceeding in federal, rather than state, court.  The central point behind *Younger* abstention is that "a party may not procure federal intervention by terminating the state judicial process prematurely—foregoing the state appeal to attack the trial court's [or administrative body's] judgment in federal court." *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 369 (1989) ("*NOPSI*").  "[A] State's judicial system would [not] be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609 (1975).  Further, a purpose of *Younger* abstention "is to ensure that state courts may construe state law in a way that avoids unwarranted determinations of federal constitutional questions and to maintain comity between the state and federal courts." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008).

While Plaintiff asserts "[t]here is no logical reason why *Younger* would mandate" bringing the state-law writ claim in state rather than federal court, Opp. at 18 n.7, there are compelling reasons.  If a plaintiff could avoid *Younger* simply by filing for a state-law writ of mandate in federal, rather than state, court, the purposes of *Younger* would be frustrated.  Here, the question is academic, because Plaintiff *may not*, under the Eleventh Amendment, bring the writ claim in this Court.

**B.     There Is an Ongoing State Proceeding for *Younger* Purposes**

Plaintiff argues that this Court should follow the minority view that *Younger* abstention does not apply where a federal plaintiff challenges a state administrative decision in federal court without pursuing an available judicial remedy in state court.  *See* Opp. at 18-19; *see also San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1093-94 (9th Cir. 2008) (describing the contrary rule as the "majority rule"); Mot. at 10-11.  Defendants submit that the opinions of those circuits that have adopted the majority rule are

better-reasoned, more faithful to the purposes of *Younger* abstention as articulated by the Supreme Court, and more likely to be followed by the Ninth Circuit.[3]

In *Huffman*, the plaintiff argued *Younger* abstention did not apply because the state trial-court proceedings had concluded and, although available, review had not been sought in the state's appellate courts, so there was no "pending state court proceeding." 420 U.S. at 607-08. The Supreme Court rejected that argument, holding that "a necessary concomitant of *Younger* is that a party in [the federal plaintiff's] posture must exhaust his state appellate remedies before seeking relief in [federal court], unless he can bring himself within one of the exceptions specified in *Younger*." *Id*. at 608 (emphasis added). The Court explained:

> Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial. Intervention at the later stage is if anything more highly duplicative, since an entire trial has already taken place, and it is also a direct aspersion on the capabilities and good faith of state appellate courts….
>
> Federal post-trial intervention, in a fashion designed to annul the results of a state trial, also deprives the States of a function which quite legitimately is left to them, that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction…. In short, we do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts.

*Id*. at 608-09; *see also NOPSI*, 481 U.S. at 369 (holding "a party may not procure federal intervention by terminating the state judicial process prematurely").

---

[3] Indeed, as noted in *San Jose*, the Ninth Circuit has already joined the majority rule once, in 1993, but that opinion was withdrawn because the *Younger* abstention issue was mooted. *See San Jose*, 546 F.3d at 1094 (citing *New Entm't Indus., Inc. v. City of Henderson*, 8 F.3d 1348 (9th Cir. 1993) (per curiam), *withdrawn by* 21 F.3d 895 (9th Cir.), *on reh'g* 26 F.3d 131 (9th Cir. 1994) (unpublished disposition)).

   The First, Third, Fourth, Seventh, and Eighth Circuits have, in well-reasoned opinions, held that the rationale relied upon by the Supreme Court in *Huffman* applies equally to state-court judicial review of a state administrative decision. For example, in *O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994), the Third Circuit found that "the grounds offered by the Supreme Court to support its holding in *Huffman*—that state appellate review of a state court judgment must be exhausted before federal court intervention is permitted—are equally persuasive when considered with respect to state-court judicial review of a state administrative determination." *Id*. at 791; *see also Laurel Sand & Gravel*, 519 F.3d at 166 (applying the rationale of *Huffman* to a party's failure to seek state-court review of an administrative decision); *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 34-35 (1st Cir. 2004) (holding that *Huffman* "dictated" that the plaintiff could not refuse to seek judicial review of an administrative decision in state court); *Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998) (holding that the "distinction … that the proceedings here are administrative, not judicial [is] a distinction without a difference" such that *Huffman* was controlling); *Alleghany Corp. v. Pomeroy*, 898 F.2d 1314, 1317-18 (8th Cir. 1990) ("*Pomeroy*") (holding that "the interests of comity which underlie *Huffman* also support abstention in this case [where the federal plaintiff had failed to seek state-court review of an adverse administrative decision]").[4]

   As the Third Circuit reasoned in *O'Neill*, "federal intervention before a state court has had the opportunity to review an agency's decision is no less an 'aspersion on the capabilities and good-faith of state appellate courts,' and no 'less a disruption of the State's efforts to protect interests which it deems important,' than the federal

---

[4] Plaintiff attempts to characterize the rulings in *Majors* and *Maymó-Meléndez* as dicta. The cases speak for themselves, but the Ninth Circuit has stated that those courts "have *held* that the administrative proceeding and the possibility for state court review are to be viewed as one unitary proceeding" for purposes of deciding whether there is an ongoing state proceeding. *San Jose*, 546 F.3d at 1093-94 (emphasis added).

intervention with the state judicial appellate process explicitly condemned in *Huffman*." 32 F.3d at 791 (citation omitted); *see also Laurel Sand & Gravel*, 519 F.3d at 166 (quoting *O'Neill*). The *O'Neill* court further reasoned, analogizing to *Huffman*, that "federal intervention which would annul the results of an agency determination would deprive 'the States of a function which quite legitimately is left to them,' i.e., the disposition of constitutional issues which arise in litigation over which they have jurisdiction." 32 F.3d at 791 (quoting *Huffman*, 420 U.S. at 609); *see also Pomeroy*, 898 F.2d at 1318 ("interests of comity are advanced, and friction reduced, if the courts of a state, rather than the federal courts, determine that the United States Constitution requires the state to alter its practices"). In addition, "[t]he requirement that litigants pursue state-court judicial review of state administrative decisions serves [the purpose that] … 'the state courts may construe state law in a way which renders a constitutional decision unnecessary." *O'Neill*, 32 F.3d at 791 (quoting *Pomeroy*, 898 F.2d at 1317); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (stating that an "important reason for abstention is to avoid unwarranted determination of federal constitutional questions").

By contrast to these well-reasoned opinions, the three circuit-court decisions relied upon by Plaintiff are not persuasive. In *Thomas v. Texas State Board of Medical Examiners*, 807 F.2d 453 (5th Cir. 1987), the Fifth Circuit undertook no substantive analysis of the question whether the policies underlying the *Younger* doctrine, as articulated in *Huffman*, would be served by requiring abstention when state-court review of a state administrative proceeding is available but has not been pursued. *See id.* at 455-57. In *Norfolk & Western Railway Co. v. Public Utilities Commission of Ohio*, 926 F.2d 567 (6th Cir. 1991), the Sixth Circuit simply followed *Thomas* without even mentioning *Huffman*. And the Second Circuit's decision in *Cecos International, Inc. v. Jorling*, 895 F.2d 66 (2d Cir. 1990), is inapposite. There, the court determined that *Younger* abstention was not warranted because, at the time the federal court lawsuit was filed, neither the relevant state

administrative proceeding nor any state-court review of such proceeding had commenced. *Id*. at 72.

Plaintiff's reliance on *Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000 (9th Cir. 1995), is likewise misplaced. There, the federal plaintiffs had been arrested and issued a misdemeanor citation, but no prosecution had begun. *Id*. at 1000-01. The Ninth Circuit held that, unlike an administrative proceeding such as the student-conduct proceeding here, "[n]either an arrest nor the issuance of a misdemeanor citation by a police officer are judicial in nature." *Id*. at 1002. Thus, "[the] case offer[ed] only the potential for future state judicial proceedings, which does not trigger *Younger* abstention." *Id*. at 1001-02. *Contest Promotions, LLC v. City of San Francisco*, 2010 WL 1998780 (N.D. Cal. May 18, 2010), mistakenly applied *Agriesti* to the different situation where a state administrative proceeding *had* occurred and state court review was available, without citing any of the Court of Appeal decisions that actually address that situation. *Id*. at *3.

The other district court decisions cited by Plaintiff also do not help him. In *Contasti v. City of Solana Beach*, 2012 WL 4109207 (S.D. Cal. Sept. 18, 2012), there was no *Younger* abstention argument; instead, the district court merely held that exhaustion of state judicial remedies is not required where the underlying state administrative proceeding (a permit application) was remedial, rather than coercive, consistent with the distinction drawn by the Supreme Court in *Ohio Civil Rights*, 477 U.S. at 627 n.2. In *Hellmann-Blumberg v. University of the Pacific*, 2013 WL 1326469 (E.D. Cal., Mar. 29, 2013), there was again no *Younger* abstention argument; the court merely held—albeit wrongly under *Ohio Civil Rights—*that exhaustion of state judicial review of a university faculty-conduct proceeding was not required prior to bringing a § 1983 action. *Id*. at *5. In *Communications Telesystems International v. California Public Utilities Commission*, 14 F. Supp. 2d 1165 (N.D. Cal. 1998), the court granted *Younger* abstention because state administrative proceedings were still pending when the federal court action was

commenced; the court did not reach the question of whether abstention would have been appropriate if the administrative proceedings had been final and state judicial review had not been sought. *Id*. at 1168-69.

Finally, *Kessler v. Bishop*, 2011 WL 207981 (N.D. Cal. Jan. 21, 2011), which Plaintiff characterizes as "directly on point," Opp. at 20, is inapposite. In *Kessler*, the court found there was no ongoing state proceeding because the plaintiff had opted not to seek state judicial review of a decision by the University of California in a proceeding initiated, *not by the University, but by the plaintiff. Id*. at *1-4; *see also Kessler v. Bishop*, 2011 WL 4635117, at *1-5 (N.D. Cal. Oct. 5, 2011) (detailing the facts and proceedings). The federal plaintiff had filed a grievance against the defendant; it was the denial of that grievance, not any coercive action taken against plaintiff, that was the subject of potential state judicial review. *Id*.

### III. Plaintiff Fails to State a Claim Under Title IX

Plaintiff concedes that *Columbia* did not modify or overrule *Yusuf* but simply applied that decision, which incorporates certain Title VII standards. *See* Opp. at 4-6; *see also* Mot. at 14-16. He offers no reason why *Columbia* warrants departing from this Court's prior dismissal of his Title IX claim under *Yusuf* for failure to cast doubt on the accuracy of the proceedings and failure to show gender bias.

#### A. Plaintiff's Erroneous-Outcome Claim Fails

##### 1. *Plaintiff Casts No Doubt on the Accuracy of the Proceedings*

Plaintiff asserts that he has cast doubt on the accuracy of his disciplinary proceeding because he and others allegedly were not "aware that Jane Doe was incapacitated." Opp. at 9. But subjective perceptions of Jane Doe's capacity are irrelevant to the fact that, as this Court found, "Plaintiff alleges that Jane Doe consumed a hydrocodone pill and five drinks prior to the group sex," and "UCSB's student code provides that consent cannot be given if a person is incapacitated." Order Granting Defendants' Motion to Dismiss ("DO"), ECF No. 73, at 7. Plaintiff does not meaningfully argue that *Columbia* disturbs this conclusion. He merely

reiterates his argument that "the Committee erred by crediting Jane Doe's version of events." *Id.* And, even if the Court found perceptions of Jane Doe's capacity relevant (contrary to its prior ruling), Plaintiff's allegations concern only others' purported perception of Jane Doe's willingness to engage in sexual intercourse, not her actual capacity to consent to sexual intercourse notwithstanding her consumption of the hydrocodone pill and five drinks. *See* Opp. at 9-12.

### 2. *Plaintiff Makes No Prima Facie Showing of Gender Bias*

Plaintiff asserts that, with respect to gender bias, he has alleged the "exact same type of circumstances" as the plaintiff in *Columbia*. *Id.* at 13. Yet Plaintiff does not refute Defendants' showing that *Columbia* placed undue weight on public pressure, contrary to requirements *Columbia* purported to apply under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See* Mot. at 17-20. Plaintiff also does not meaningfully contend he has stated a prima facie case under *McDonnell Douglas* and *Iqbal*. Instead, he once again repeats arguments that this Court has already rejected.

Plaintiff first contends that there was an "evolving campus culture" at UCSB that "aimed" to "find[] more male students guilty of sexual assault" and "issu[e] harsher sanctions against male students." Opp. at 13. But Plaintiff points only to allegations that indicate the existence of pressure on the University to resolve *all* complaints of sexual assault, not merely complaints against men. *See* Opp. at 13; *see also* Mot. at 4-5. Such pressure is, necessarily, gender-neutral. *See* Mot. at 17-18. Plaintiff emphasizes his allegations that (1) a Title IX complaint was filed against the University in 2016, and (2) UCSB received grants from the Office of Violence Against Women in 2007 and 2011. Opp. at 13. These allegations merely reflect the importance of University compliance with Title IX. No part of combating violence against women, pursuant to a federal grant awarded to dozens of colleges and universities each year, suggests treating men accused of sexual assault

less favorably than women who are so accused. Neither does the existence of a lawsuit brought to enforce Title IX's gender-neutral requirements.[5]

Plaintiff also asserts Defendant Perkin was "all but forced" to "go after" men accused of sexual assault and to "secure findings of culpability." Opp. at 2. But he makes only conclusory allegations of gender-based pressure on Perkin. Plaintiff alleges that, at a roundtable discussion, "Perkin was personally criticized for not finding more men guilty of sexual misconduct." FAC ¶ 61; *see also* SAC ¶ 61; Opp. at 13-14. As men more commonly commit and are accused of sexual assault, FAC ¶ 55; *see also* SAC ¶ 55, this allegation simply suggests criticism for "failure to handle investigations of sexual misconduct properly," FAC ¶ 61; *see also* SAC ¶ 61. Indeed, the agenda of the roundtable and a news recap of the event, which are attached to Plaintiff's complaints as Exhibit L, refer only to discussion of the need to discipline all perpetrators of sexual assault, not discussion of applying different standards to men and women accused of sexual assault.

To the extent that *McDonnell Douglas* applies, even if Plaintiff could allege that there was public pressure to treat men accused of sexual assault differently from women, Plaintiff nowhere disputes Defendants' showing that the existence of such pressure is insufficient, without allegations of actual discrimination, to give rise to a prima facie case under *McDonnell Douglas*. *See* Mot. at 17. Plaintiff offers no argument at all that his allegations are sufficient, under decisions applying *McDonnell Douglas*, to show gender bias. *See* Opp. at 12-14. Instead, Plaintiff reiterates prior claims, already rejected by this Court, that Perkin "set[] forth facts that were untrue, contrary to the evidence, and designed to demonstrate Plaintiff's guilt" in her investigative report. Opp. at 10. But Plaintiff never responds to this Court's prior conclusion that he has made "no allegation that Perkin reacted or

---

[5] In addition, Plaintiff emphasizes his allegation that there were "publicly posted campaigns directed against male students, such as 'Don't Be That Guy.'" Opp. at 13. As this Court already found, however, "Plaintiff does not allege that the various campaigns directed against male students were promulgated by UCSB." DO at 7.

responded to the criticism in a manner demonstrating a gender bias against males." DO at 7. At bottom, Plaintiff's claim amounts to nothing more than the assertion that alleged gender-based pressure on Perkin possibly influenced her, and possibly affected the outcome of his hearing. That is insufficient not only under *McDonnell Douglas*, but also under *Iqbal*. *See Iqbal*, 556 U.S. at 679 (the "mere possibility of misconduct" is insufficient to state a prima facie case); *see also* Mot. at 20-21.

In any event, Plaintiff's claims based on alleged bias by Perkin should be reviewed under *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), and Plaintiff's allegations do not satisfy *Gebser*. Plaintiff contends that *Gebser* does not apply to "[a]n official school disciplinary proceeding," because such a proceeding is not an "affirmative institutional action." Opp. at 8 n.3. But Plaintiff's allegations regarding Perkin do not concern the affirmative institutional actions of the disciplinary hearing board, as Perkin was "not a member of the disciplinary tribunal." *See* DO at 8. Instead, Plaintiff's claim is that the University should be held liable for the alleged discriminatory acts of its "employee and agent." *See* FAC ¶ 13; *see also* SAC ¶ 13. Under *Gebser*, such claims may be brought only if the plaintiff demonstrates that the university had "actual notice" of the allegedly wrongful conduct and responded with "deliberate indifference to discrimination." *Gebser*, 524 U.S. at 290-91. Here, Plaintiff does not even allege either that he notified University officials of his belief that Perkin discriminated against him or that the University responded with deliberate indifference.

Ultimately, Plaintiff's argument boils down to a claim that the facts alleged here are similar to the facts alleged in *Columbia*. *See* Opp. at 12-13. But, even if the Court accepted *Columbia*'s erroneous analysis of public pressure—contrary to Defendants' uncontroverted showing that *Columbia* misapplied *McDonnell Douglas* and *Iqbal*—Plaintiff does not meaningfully dispute that his allegations of gender-based public pressure, as well as his allegations of the University's response to such pressure, are much more limited than the corresponding allegations in *Columbia*.

Plaintiff merely asserts, with only conclusory references to the facts in *Columbia*, that he has advanced "stronger allegations" than the plaintiff in that case. *See* Opp. at 13. As Defendants have shown, that is plainly incorrect. *See* Mot. at 22.

### B. Plaintiff's Selective-Enforcement Claim Fails

Plaintiff has abandoned his argument, rejected by this Court, that the University imposed a disproportionately large penalty on him because of his gender. *See* DO at 7. He now contends for the first time that, but for Perkin's alleged gender bias, "Jane Doe's allegations would not have progressed to the investigation stage and certainly would have [sic] advanced to the hearing stage." Opp. at 15.

This new theory, which is not based on *Columbia*, has no more merit than the old one. For the reasons set out above, Plaintiff's allegations do not support an inference that Perkin was under public pressure to discriminate against men, or an inference that Perkin acted pursuant to such pressure. In addition, Plaintiff makes only conclusory allegations that the investigation and hearing would not have proceeded in the absence of gender bias by Perkin. Indeed, as described above, Plaintiff cannot even cast doubt on the outcome of the proceeding.

Moreover, because Plaintiff's new theory of selective enforcement amounts to a claim against the University for Perkin's alleged conduct, it must be reviewed under *Gebser*. Plaintiff does not allege that he gave notice to University officials of his belief that Perkin instituted the investigation because of gender bias against men or that the University responded to such notice with deliberate indifference. To the extent *McDonnell Douglas* applies, Plaintiff's claim also fails because he has not alleged that "similarly situated [students] not in [his] protected class received more favorable treatment." *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006).

DATED: January 30, 2017

MUNGER, TOLLES & OLSON LLP
   BRADLEY S. PHILLIPS
   HAILYN J. CHEN
   JOHN F. MULLER

NYE, PEABODY, STIRLING, HALE & MILLER, LLP
   JONATHAN D. MILLER
   ALISON M. BERNAL


By:    /s/ *Bradley S. Phillips*
      BRADLEY S. PHILLIPS

Attorneys for Defendants The Regents of the University of California and Suzanne Perkin