## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**       IN CHAMBERS ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS [78][91].

On April 3, 2015, Plaintiff John Doe filed this Title IX suit against Defendant Regents of the University of California.   On December 14, 2015, the Court granted Defendants' motion to dismiss without prejudice.   Dkt. 43.   On January 25, 2016, the Plaintiff filed a First Amended Complaint ("FAC") and added Defendant Suzanne Perkin, the Assistant Dean of Students.   Dkt. 48.   The FAC included claims for violations of Title IX and the Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.   On July 25, 2016, the Court granted the Defendants' Motion to Dismiss the Plaintiff's Title IX claim with prejudice and the Plaintiff's due process claim without prejudice.   Dkt. 73.   The Court granted the Plaintiff leave to amend his due process claim in order to clarify whether he was suing Ms. Perkin in her individual capacity or official capacity.   *Id.*

The Plaintiff subsequently filed a Second Amended Complaint ("SAC"), clarifying that he was suing Ms. Perkin in her official capacity.   SAC, ¶ 12.   The Defendants then filed a motion to dismiss Plaintiff's SAC, then comprised solely of the due process claim and claims for declaratory judgment and a writ of mandate against Ms. Perkin.   Dkt. 78.   The Defendants argued that the Plaintiff's due process claim against Ms. Perkin is barred by three separate kinds of immunity: 1) absolute sovereign immunity under the Eleventh Amendment; 2) federal qualified immunity; and 3) quasi-judicial immunity.

Meanwhile, the Plaintiff filed a Motion for Reconsideration of the Court's previous dismissal of his Title IX claim.   Dkt. 77.   The Plaintiff argued that reconsideration was warranted because a new opinion from the Second Circuit clarified the appropriate standard that should be applied to Title IX

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|----------|------------------------|------|--------------|
| Title | *John Doe v. Regents of The University of California* | | |

causes of action brought in relation to investigations and punishments issued by public schools against alleged perpetrators of sexual assault. The Court granted the Plaintiff's Motion for Reconsideration, finding that the new Second Circuit opinion constituted proper grounds for reconsideration because the Second Circuit had handed down the original case outlining the appropriate framework for Title IX sexual assault cases. Dkt. 85. The Court delayed consideration of the Defendants' Motion to Dismiss the Plaintiff's due process causes of action in order to rule on the due process and Title IX causes of action together. *Id.*

The Defendants have now filed a subsequent Motion to Dismiss the Plaintiff's Title IX cause of action. Dkt. 91. Therefore, presently before this Court are the Defendants' Motion to Dismiss the Plaintiff's due process claims and Motion to Dismiss the Plaintiff's Title IX claims. Dkts. 78, 91. For the reasons stated below, the Court DENIES both motions.

I.      **Plaintiff's Allegations**

        A.      **The Alleged Sexual Assault**

The alleged facts are by now familiar to the parties from previous orders. On June 14, 2014, Plaintiff John Doe, Jane Doe, and a group of their friends traveled to Lake Tahoe to celebrate the end of the school year. SAC, ¶ 33. Throughout the trip, Jane Doe bragged about a "threesome" she had previously engaged in. *Id.* at ¶ 35.

On June 16, 2014, after drinking together, Jane Doe, L.B., and D.J. advised B.R. that they wanted to engage in group sex, but only if Plaintiff also participated. *Id.* at ¶¶ 38-39. Plaintiff agreed and the friends engaged in group sex. *Id.* ¶¶ 40-48. Unbeknownst to Plaintiff, L.B., B.R., and D.J., Jane Doe took a hydrocodone pill for an ankle injury and consumed five drinks before engaging in the group sex. *Id.* at ¶ 42. Plaintiff alleges that Jane Doe was a willing participant throughout—getting on top of Plaintiff at one point, kissing him passionately, rubbing his hair during oral sex, and verbalizing that she liked what he was doing. *Id.* at ¶ 45. Jane Doe did not exhibit any signs of incapacitation and the following morning, the friends joked about the night before. *Id.* at ¶¶ 45, 50.

At the time of the trip, Plaintiff was on a leave of absence from the University of California at Santa Barbara ("UCSB") and Jane Doe had just finalized her transfer to another school. *Id.* at ¶¶ 68-69.

Initials of Preparer                      :

                                        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

### B.  National and Local Pressure Regarding Sexual Misconduct

Plaintiff alleges that prior to and during the relevant events in this case, UCSB experienced growing local and national pressure to resolve complaints of sexual misconduct:

- In 2014, the California State Auditor ("CSA") reviewed California's compliance with reports of campus crime, including sexual assault, and found that six California institutions were not in compliance with federal reporting requirements.  *Id.* at ¶ 51.  One such institution was the University of California, San Diego, a sister school to UCSB.  *Id.*

- In February 2014, the UCSB campus was on high alert for sexual predators following reports that female UCSB students were victims to a gang rape.  *Id.* at ¶ 52.

- In June 2014, reports of sexual assault at UCSB were six times the rate at California Polytechnic State University.  *Id.* at ¶ 55. Under Student Affairs campus resources for "Distressed Students Guide," UCSB states that "Sexual assaults at UCSB are predominantly committed by men against women."  *Id.* at ¶ 54.

- In July 2014, UC President Janet Napolitano established a Task Force to implement strategies for schools within the UC system to more effectively respond to sexual violence and sexual assault on campus.  *Id.* at ¶ 57. Assistant Dean of Students Suzanne Perkin ("Defendant Perkin" or "Perkin") was a participant of the Task Force.  *Id.*

- On September 3, 2014, six female UCSB students filed a highly-publicized Title IX complaint with the Department of Education Office of Civil Rights claiming that USCB failed to adequately handle their complaints of sexual assault.  *Id.* at ¶ 58.

- Also in September 2014, the Centers for Disease Control and Prevention ("CDC") released a report that one in five women in the United States has been raped during her lifetime.  *Id.* at ¶ 59. Following the CDC report, student protests began at UCSB calling for greater strides against sexual assault on campus.  *Id.*

Initials of Preparer                                    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|----------|----------------------|------|--------------|
| Title | *John Doe v. Regents of The University of California* | | |

- On November 14, 2014, Perkin participated in a roundtable discussion at UCSB regarding sexual assault on campus.  *Id.* at ¶ 60. Perkin was personally criticized for failing to handle investigations of sexual misconduct and for not finding more men guilty of sexual misconduct.  *Id.*

- Campaigns such as "Don't Be That Guy" and "Make Your Move" posted flyers on and around the UCSB campus to warn the community that male students were perpetrators of sexual assault.  *Id.* at ¶ 63.

### C. UCSB's Investigation

The Plaintiff alleges that Perkin's investigation went beyond UCSB's jurisdiction because the Lake Tahoe trip was off campus and unrelated to any school activity, and Jane Doe was no longer a student at the time of the trip.[1]  *Id.* at ¶¶ 65, 67-70.

On November 6, 2014, Plaintiff received notice that he was being charged with sexual assault in violation of Section 102.28 of the UCSB General Standards of Conduct.  *Id.* at ¶ 64.  On November 13, 2014, Plaintiff met with Defendant Perkin.  *Id.*  At the meeting, Perkin asked Plaintiff, "Are you ready to take responsibility?" but Plaintiff declined to do so.  *Id.* at ¶ 66.  At John Doe's request, Perkin read Jane Doe's statement aloud to him.  *Id.*  On November 25, 2014, Plaintiff was advised that a hearing would take place before a disciplinary committee on December 11, 2014.  *Id.* at ¶ 76.

On December 9, 2014, Plaintiff received Perkin's First Investigative Report.  *Id.* at ¶ 77. Plaintiff contends that although the First Investigative Report was riddled with various inaccuracies and mischaracterized Plaintiff's testimony, Perkin refused to revise it.  *Id.* at ¶¶ 78-81.  Plaintiff alleges that Perkin's report was biased as a result of "extreme pressure to find more male students responsible of sexual assault, combined with the campus environment that 'sexual assaults at UCSB are predominantly committed by men against women.'"  *Id.* at ¶ 85.  In particular, Perkin's investigation concluded ten days after the Roundtable discussion where she was personally criticized for not finding more men guilty of sexual misconduct.  *Id.*

---

[1] The Court takes judicial notice of UCSB's Student Conduct Code, as it is referenced by the SAC and is attached to the Complaint.   The extent of the school's jurisdiction regarding disciplinary actions against students is contained in this Code.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

**D.  The Disciplinary Hearings and Suspension**

The first hearing took place on December 11, 2014 before the Sexual Violence Conduct Committee (the "Committee").  *Id.* at ¶ 86.   Plaintiff, Jane Doe, and witnesses D.J., L.B., and B.R. provided their testimony.  *Id.*   Perkin was not a member of the Committee, but was present during the Committee's deliberations.  *Id.* at ¶ 93.   Plaintiff alleges that he was deprived of a meaningful opportunity to be heard because (1) his request to produce character witnesses was denied, while Jane Doe was permitted to introduce such witnesses; and (2) he was denied the opportunity to thoroughly question witnesses.  *Id.* at ¶¶ 87-92.   For example, when John Doe asked L.B. whether Jane Doe's behavior had ever suggested that she was a dishonest person, the Committee interjected and directed L.B. to limit her testimony to the events of June 16, 2014.  *Id.* at ¶ 92.   Plaintiff asserts that these procedural deficiencies were "driven by the gender-based notion that 'sexual assaults at UCSB are predominantly committed by men against women.'"  *Id.* at ¶ 89.

On December 16, 2014, Perkin advised Plaintiff that the Committee had deliberated and sought to re-open the hearing to ask the witnesses additional questions.  *Id.* at ¶ 94.   Plaintiff alleges that despite his representation to Perkin that his attorney would be available any day during the week except for December 19, 2014, Perkin scheduled the hearing for that date.[2]  *Id.* at ¶ 96.   Perkin prepared a Second Investigative Report consisting of various text and Facebook messages between Jane Doe and L.B., M.M., C.B., and an individual named "Juliana Amarah."  *Id.* at ¶ 97.   The report was provided to Plaintiff three and a half hours before the December 19, 2014 hearing.  *Id.* at ¶ 98.   Plaintiff alleges that at the second hearing, he was again denied the right to thoroughly question witnesses.  *Id.* at ¶ 99.

Following the second hearing, the Committee issued a decision finding Plaintiff responsible for sexual assault.  *Id.* at ¶ 103.   The Committee recommended a two-quarter suspension, as well as exclusion from participating in registered campus organizations upon Plaintiff's return.  *Id.*   The decision was upheld by the Vice Chancellor for Student Affairs on January 15, 2015.  *Id.* at ¶ 103.   On January 29, 2015, Plaintiff appealed the decision based on the following grounds: (1) lack of substantial bases of fact to support the sanction; (2) substantial violations of fair process in the proceedings; (3) excessive or inappropriate sanctions; and (4) newly discovered important evidence not known at the time of the hearing.  *Id.* at ¶ 105.   Plaintiff's appeal was denied by the Chancellor on February 16, 2015.  *Id.*

---

[2]  The Court previously DENIED Defendants' request for judicial notice of e-mail communications between Plaintiff and Defendant Perkin.

Initials of Preparer                         :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

### E. Allegations of Gender Bias

Plaintiff alleges, upon information and belief, that "male students at UCSB who are accused of sexual misconduct are treated less favorably than female students who are accused of sexual misconduct due to the fact that 'sexual assaults at UCSB are predominantly committed by men against women.'" *Id.* at ¶ 109. Plaintiff also alleges that "male students at UCSB who are accused of sexual misconduct are sanctioned less favorably than female students who are accused of sexual misconduct due to the fact that 'sexual assaults are predominantly committed by men against women.'" *Id.* at ¶ 110. In light of the national and local pressure to combat sexual assault on campuses, Plaintiff contends that UCSB is biased against male students as evidenced by Defendant Perkin's inaccurate investigation and report, the procedural deficiencies during his hearings, and the Committee's ultimate crediting of Jane Doe's version of events over Plaintiff's. These allegations form the basis of his Title IX claim that was dismissed by the Court in its previous order and which the Plaintiff now moves to reconsider.

### II.   Defendants' Motions to Dismiss the Plaintiff's SAC

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted).

### B. Discussion

The Court will first evaluate the Defendants' original Motion to Dismiss the Plaintiff's § 1983 claims for due process violations and the related legal issues raised in the Motion. The Court will then turn to the most recent Motion to Dismiss the Title IX claims.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|----------|------------------------|------|--------------|
| Title | *John Doe v. Regents of The University of California* | | |

### 1.    Motion to Dismiss the Due Process Claims Under § 1983

#### a.    42 U.S.C. § 1983

The Plaintiff alleges a variety of ways in which Defendant Perkin deprived him of due process, including, but not limited to: (1) failing to provide the Plaintiff a copy of the First Investigative Report until two days before the first hearing date; (2) failing to revise her First Investigative Report after Plaintiff informed her of inaccuracies; (3) failing to provide Plaintiff a copy of the Second Investigative Report until three and a half hours before the second hearing; (4) denying Plaintiff the right to be accompanied by counsel at the second hearing; (5) prohibiting Plaintiff from making a statement or submitting any evidence in support of his defense at the second hearing; (6) denying Plaintiff's request to present character evidence favorable to his defense; and (7) denying Plaintiff the opportunity to thoroughly cross-examine all witnesses.   SAC, ¶ 170.

In support of their motion to dismiss the case, the Defendants argue that the Plaintiff's due process claims are barred by three different types of immunity: 1) Eleventh Amendment sovereign immunity; 2) federal qualified immunity; and 3) federal quasi-judicial immunity.   The Court will consider each of the Defendants' immunity arguments in turn.

#### b.    Eleventh Amendment Sovereign Immunity

The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   The Eleventh Amendment bars certain actions against state agents and instrumentalities, as "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."   *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 464 (1945). The Regents of the University of California are a state instrumentality that is entitled to invoke Eleventh Amendment immunity.   *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 431 (1997).   Sovereign immunity may also extend to individual defendants acting in their official capacities, as Ms. Perkin undisputedly did in this case.   *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

_____   :   _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

However, an exception to the doctrine of sovereign immunity was recognized in *Ex parte Young*, 209 U.S. 123 (1908).   The Supreme Court held that the Eleventh Amendment does not bar suit against a state official acting in violation of federal law.    *Id*. at 159-60.   This exception means that although actions for monetary damages may not be sustained against state officials acting in their official capacities, actions brought under 42 U.S.C. § 1983 for injunctive relief may be valid.   *Id*.; *Will*, 491 U.S. at 71.

On its face, the Plaintiff's prayer for relief requests injunctive relief, not money damages, seemingly satisfying the *Ex parte Young* exception to the Eleventh Amendment.   He requests specific relief against Ms. Perkin in the form of restraining her against making notations on his transcript or educational records, retaining records related to his disciplinary hearing, or reporting any record of his disciplinary hearing to third parties, as well as declarative relief related to the hearing and findings made by the Committee.   SAC at Prayer for Relief, § (i)-(ii).   He also requests a writ of mandate setting aside the Decision and Sanction against him.   *Id*. at § (iii).   Such requests for relief clearly seem to constitute injunctive and declarative relief and are not money damages normally precluded by Eleventh Amendment sovereign immunity.

Despite the apparent injunctive nature of the Plaintiff's requested relief, the Defendants contend that his § 1983 claims should still be barred by the Eleventh Amendment for two reasons.   First, although the Plaintiff appears to seek prospective injunctive relief, he in fact seeks retroactive relief.   For instance, he alleges that he sustained tremendous damages and injuries as a result of the Defendants' actions.   SAC at ¶ 181.   The Defendants argue that the *Ex parte Young* doctrine is only meant to apply where a plaintiff seeks injunctive relief to prevent future constitutional violations, not compensation for past harms.   The Defendants contend that the Plaintiff is seeking compensation for past harms and therefore does not properly invoke the *Ex parte Young* doctrine.   Second, the Defendants argue that even if the Plaintiff were requesting prospective relief, Ms. Perkin is incapable of granting such relief.   She was not the decision maker and was not on the hearing committee, and she did not issue the finding or a conduct violation or decide the sanction.   She would have no authority to reverse the disciplinary decision. Additionally, the Plaintiff has already served his suspension and returned to school.   Therefore, there is no injunctive relief available that Ms. Perkin would have the power to grant.

Neither of the Defendants arguments is availing.   First, while the Plaintiff alleges that he sustained damages as a result of the Defendants actions, SAC at ¶ 181, the relief he actually requests is prospective injunctive relief.   He wants changes made to his educational records and the Court to enjoin

Initials of Preparer _____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

the Defendants from distributing that record to third parties.   SAC at Prayer for Relief.   Although such requests are related to the past conduct of the Defendants, virtually all prospective relief will relate in some way to past conduct.   The important aspect of the Plaintiff's request is that he does not request compensation but rather affirmative future actions by the Defendants.   Thus, his requested relief is prospective and falls within the *Ex parte Young* exception to sovereign immunity.   Second, while it is possible that Ms. Perkin cannot provide the relief that the Plaintiff requests, the motion to dismiss phase of the litigation is not the appropriate time to litigate such a dispute.   The Court has not taken any evidence on the issue and therefore is not in a position to make a finding.   Therefore, this Court will not dismiss the Plaintiff's claim for that reason at this time, although the issue may be revisited later.   As a result, the Court finds that the Plaintiff's claim is not barred by sovereign immunity under the Eleventh Amendment.

### c.    Federal Qualified Immunity

Next, the Defendants argue that Ms. Perkin should receive federal qualified immunity for the actions she took with respect to the Plaintiff's case.   Government officials are extended a qualified good-faith immunity to damages under 42 U.S.C. § 1983 and other federal statutes.   Public school officials who issue disciplinary decisions are extended this qualified immunity.   *See Wood v. Strickland*, 420 U.S. 308, 318 (1975).   Further, defendants who properly plead qualified immunity are entitled to dismissal before the commencement of discovery, meaning that qualified immunity may properly be analyzed in a motion to dismiss.   *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   Finally, in deciding whether to grant qualified immunity at the pleading stage, the Court must determine: 1) whether the alleged facts make out a constitutional violation; and 2) whether the constitutional right at issue was clearly established at the time of the violation.   *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   A right is clearly established if it would be clear to a reasonable official that his or her conduct was unlawful.   *Id.* at 202.   The Court may exercise its discretion as to the order in which it addresses each prong.   *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Plaintiff does not dispute that this is the correct framework through which to analyze the issue of qualified immunity for Ms. Perkin.   Instead, the Plaintiff argues that Ms. Perkin is not entitled to qualified immunity because: 1) the Plaintiff's constitutional right to due process was violated; and 2) the Plaintiff's constitutional right to due process was clearly established at the time of the violation.   Dkt. 79, 11.   Therefore, the Court's task is to analyze whether Ms. Perkin's actions violated the requirements of due process as clearly established by law at the time of the violation.   The Court now finds that the allegations contained in the SAC are sufficient to overcome a qualified immunity defense at the current

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|----------|------------------------|------|--------------|
| Title | *John Doe v. Regents of The University of California* | | |

stage of litigation.   Therefore, while the Defendants may again raise qualified immunity at the summary judgment stage, the Court declines to dismiss the Plaintiff's § 1983 claim at this time.

The Plaintiff alleges that Ms. Perkin deprived him of his due process rights under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.   SAC at ¶¶ 169-70.   Specifically, the Plaintiff claims that he has a constitutionally-protected interest in his good name, reputation, honor and integrity, and his education.   *Id.* at ¶¶ 167-70.   Ms. Perkin violated the Plaintiff's constitutional rights by depriving him of these interests without the due process afforded to him by the Fourteenth Amendment.   *Id.*

It is undisputed that students in public schools, including colleges and universities, enjoy a property interest in a public education and in their own good names, reputations, honor, and integrity. *See, e.g., Goss v. Lopez*, 419 U.S. 565, 574 (1975).   A finding of guilt can "have a major immediate and life-long impact on [their] personal life, education, employment, and public engagement."[3]   *Id.* Therefore, before schools take disciplinary actions against students accused of breaking school rules, the students must be afforded "due process" in order to avoid arbitrary deprivations of liberty or property.   *Id.*

However, the "due process" owed to students in disciplinary hearings is not identical to the process owed to criminal defendants in a criminal proceeding, as the liberty and property interests are unquestionably stronger in criminal actions.   *See Goss*, 419 U.S. at 580-81.   In general, the Due Process Clause requires "'that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"   *Id.* at 579 (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950).   The *Goss* Court found that when a student faced a suspension of ten days or less, the Due Process Clause required "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."   *Goss*, 419 U.S. at 581.   However, the Court did not require a delay between the "notice" and the "hearing."   *Id.* at 582.

---

[3] The Defendants argue that a relatively minor sanction of suspension may be imposed without formal notice or hearing.   Dkt. 78, 11 (citing *Charles S. v. Board of Education*, 20 Cal.App.3d 93, 94 (1971).   However, the Court agrees with the Plaintiff that the severity of the Plaintiff's ultimate sanction does not affect his right to due process or the extent of it.   *See* Dkt. 79, 15. For one, the Plaintiff faced sanctions as serious as expulsion as the result of the disciplinary hearing in question.   SAC at Exh. A., 15-16.   Second, the consequences for the Plaintiff of a finding of responsibility for "sexual assault" are serious even though he was not ultimately expelled, as outlined by the Plaintiff in his Opposition brief.   *See* Dkt. 79, 15.   For these reasons, the Court finds that the Plaintiff was owed the full extent of due process owed to students in serious disciplinary hearings, the exact nature of which is outlined more fully in this opinion.

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

The present case is clearly more serious in nature than the short suspension considered in *Goss*, as the Plaintiff faced potential expulsion as a result of the disciplinary proceedings.   Therefore, the college must fulfill the *Goss* requirements at a bare minimum, while due process may actually require stricter notice and hearing requirements because of the nature of the case.   As noted above, in order to demonstrate that Ms. Perkin is not entitled to qualified immunity, the Plaintiff must show that any additional due process requirements beyond those outlined in *Goss* were clearly established at the time Ms. Perkin violated them through her actions related to the disciplinary proceedings against the Plaintiff.

The Court now finds that the allegations against Ms. Perkin demonstrate that she may have violated clearly established due process requirements in her handling of the Plaintiff's disciplinary proceedings, and she is therefore not entitled to qualified immunity to suit under § 1983 at the pleading stage of the litigation.   Specifically, according to the Plaintiff's allegations, the Plaintiff was not advised of the factual grounds for the charges against him until he met with Ms. Perkin on November 13, 2014, although this meeting did occur approximately a month before the disciplinary hearing.   SAC, ¶ 170. The Plaintiff did not receive a copy of the First Investigative Report until two days before the first hearing, and the report allegedly contained inaccurate and misleading information.   *Id.*   The Plaintiff was not provided a copy of the Second Investigative Report until three and a half hours before the second hearing, and the hearing was held on a day when his counsel could not attend.[4]   *Id.*   The Plaintiff was prohibited from making a statement or submitting any evidence in support of his defense at the second hearing, although he was permitted such opportunities at the first hearing.   *Id.*   The Plaintiff was prevented from presenting character evidence in support of his own character or to question the credibility of the victim, even though unsubstantiated character evidence was submitted against him.   *Id.*   Finally, Facebook messages between the victim and an alleged friend were presented at the second hearing, even though the Plaintiff expressed skepticism as to the authenticity of such messages.   *Id.*

The Court finds the allegations surrounding the second disciplinary hearing particularly troubling and a potential violation of due process.   Proper notice is a fundamental component of due process, a requirement that all reasonable school officials should be particularly concerned with providing.

---

[4] The Defendants allege that the Plaintiff was given the option of waiting until January to conduct the second hearing, but instead decided to proceed on a day in December when his counsel was not available.   Dkt. 78, 14.   However, for the purposes of this motion, all of the Plaintiff's allegations must be considered true, and he alleges that Ms. Perkin scheduled the hearing on a date when she knew the Plaintiff's counsel was not available.   SAC, ¶ 170.

Initials of Preparer                                                   :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

However, the Plaintiff in this case allegedly did not receive proper notice with regards to the second disciplinary hearing.  He did not receive a copy of the Second Investigative Report until hours before the hearing, and the school was aware that Plaintiff's counsel would not be able to attend the hearing. Perhaps most egregiously, the Plaintiff was not made aware that new evidence in the form of Facebook messages between the victim and an alleged friend would be presented at the second hearing until hours before the hearing.   This did not allow the Plaintiff sufficient time to investigate this new evidence and its reliability or adequately respond to such evidence, especially considering that his attorney was not there to help him.

Such procedures fall below even what was required for low-level disciplinary hearings in *Goss*. The *Goss* Court held that a student facing temporary suspension must be given "an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581. The Court further explained that this hearing was necessary in order to give the student "an opportunity to explain his version of the facts…." *Id.* at 582.  While the Plaintiff in this case may have been afforded this opportunity to present his side of the story with regards to his first disciplinary hearing, the same is not true of the second hearing.   He was not permitted to submit certain types of evidence, such as character evidence against the victim or in his own defense, and he was not given a proper explanation of the new evidence that would be introduced against him.   Because notice of this new evidence occurred hours before the hearing, the Plaintiff was unable to investigate its credibility and provide a full explanation as to his side of the story and how the Facebook messages could be explained.   These shortcomings in the disciplinary proceedings may have indeed violated the Plaintiff's due process rights. Making all plausible inferences in favor of the Plaintiff, the short notice, one-sided hearing, and failure to properly explain the new evidence together may have violated the Plaintiff's due process rights and prevented him from a full chance to present his side of the story.   While it is possible that the committee did not give much weight to the new evidence presented at the second hearing, the Court cannot conclude that such was the case. Conducting a second disciplinary hearing after a full first hearing had already been held suggests that the committee had doubts about their findings or at least sought more information about the events in question and the credibility of the witnesses.   Additionally, the committee did not present any factual findings on the record regarding what evidence they relied on in coming to their decision and whether that evidence at the first hearing or the second hearing.   Thus, the Court cannot conclude that the inadequacy of the notice and hearing provided to the Plaintiff did not affect the committee's ultimate decision.

Furthermore, the Due Process Clause does not limit the Plaintiff's rights solely to the requirements outlined in the *Goss* decision, as the *Goss* Court clearly stated that its findings regarding due process

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|----------|----------------------|------|--------------|
| Title | *John Doe v. Regents of The University of California* | | |

requirements applied specifically to students facing a temporary suspension of 10 days or less.   *Goss*, 419
U.S. at 581.   As the Plaintiff faced expulsion, the Due Process Clause may indeed require enhanced
notice and hearing standards as those outlined in *Goss*.   Therefore, the fact that the Plaintiff allegedly did
not even receive the general protections as outlined in *Goss* is particularly damaging to Ms. Perkin's
qualified immunity claim.   It is clear to the Court that the flawed procedures did not provide the Plaintiff
with the necessary due process protections, taking the allegations in the SAC as true.   A reasonable
official in Ms. Perkin's position would have known of the notice and hearing requirements mandated by
the Due Process Clause and allowed the Plaintiff to fairly present his side of the story with sufficient
notice regarding the evidence that would be presented against him.   Such notice was clearly lacking
according to the allegations of the Plaintiff.   Thus, the Court finds that the disciplinary proceedings, as
alleged, violated the Plaintiff's due process rights, and those due process rights were clearly established at
the time of the violation.   As a result, qualified immunity is not a proper defense to the Plaintiff's
allegations, at least at this stage of the litigation.[5]

### d.    Quasi-Judicial Immunity

Finally, the Defendants argue that the suit against Ms. Perkin should be barred by federal
quasi-judicial immunity.   Under federal law, absolute judicial immunity extends to non-judicial officers
for "all claims relating to the exercise of judicial functions."   *Burns v. Reed*, 500 U.S. 478, 499 (1991).
Additionally, absolute quasi-judicial immunity extends to non-judicial officers if they perform official
duties that are functionally comparable to those of judges, such as resolving disputes.   *Antoine v. Byers &
Anderson*, 508 U.S. 429, 435 (1993).   The Defendants argue that Ms. Perkin should be entitled to
quasi-judicial immunity because the Plaintiff's allegations portray Ms. Perkin's actions as comparable to
actions that judges might take.

However, the Supreme Court has addressed the question of the level of immunity enjoyed by
school officials in the context of school discipline.   While the Court acknowledged that some immunity is
appropriate in order to protect officials from suits related to the good faith performance of their duties, it
also found that absolute immunity was not appropriate.   *See Wood v. Strickland*, 420 U.S. 308, 320
(1975).   The Court concluded that in the context of school officials making disciplinary decisions

---

[5] The Court has received and considered the Defendants' submitted supplemental authority.   Dkt. 92 (citing *Doe v. Regents of
California*, Fourth Appellate District, Division One, No. D068901, Slip Op., November 22, 2016).   However, the Court finds
that the holdings of the case cited by the Defendants does not affect any part of the above analysis.

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

"absolute immunity would not be justified since it would not sufficiently increase the ability of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations." *Id.* Instead, "in the specific context of school discipline, [the Supreme Court held] that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student." *Id.* at 322. *Wood's* holding makes clear that school officials are protected by qualified immunity, not absolute judicial immunity. The Court has already analyzed Ms. Perkin's immunity argument in the preceding section. Thus, the Court now holds that Ms. Perkin is not entitled to absolute quasi-judicial immunity, and the suit against her cannot be dismissed on that basis. As a result, the Court concludes that the Plaintiff's due process claims against Ms. Perkin cannot be dismissed at this stage of the litigation under any theories of immunity presented by the Defendants.

### e. Declaratory Relief and Petition for Writ of Mandate

Finally, in their motion to dismiss the Plaintiff's due process cause of action, the Defendants also moved to dismiss the Plaintiff's claim for declaratory judgment and the Plaintiff's petition for a writ of mandate. However, neither request is appropriate at the current stage of litigation.

First, the Defendants moved to dismiss the Plaintiff's claim for declaratory judgment on two grounds: 1) this case does not present an actual controversy within the Court's jurisdiction because both the Title IX and § 1983 claims should be dismissed; and 2) the Court should decline to exercise its jurisdiction because issuing declaratory judgment would not resolve the underlying controversy nor aid the Court in clarifying the issues. However, as stated in this Order, the Court has not dismissed the Plaintiff's § 1983 or Title IX claims. Therefore, the Plaintiff's claims do present an actual controversy within the Court's jurisdiction. Second, the Court will not utilize its discretion to dismiss the Plaintiff's declaratory judgment claim because no evidence has been submitted regarding what type of declaratory judgment would resolve the underlying controversy or what issues require clarification. Thus, it would be premature for the Court to use its discretion to dismiss the Plaintiff's declaratory judgment claim at the pleading stage. As a result, the Court will not presently dismiss the declaratory judgment claim.

Second, the Defendants argue that the Plaintiff's cause of action, brought as a petition for writ of administrative mandamus under California's Code of Civil Procedure § 1085 and § 1094.5, fail under both

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

sections of the code. The Defendants contend that the Plaintiff has not exhausted his judicial remedies as required for writ relief under § 1094.5, and therefore may not bring a petition for a writ of mandate.

The doctrine of exhaustion requires a "party aggrieved by such a decision to petition for relief in mandate in order to challenge the administrative action or findings before filing a legal action." *Y.K.A. Indus., Inc. v. Redevelopment Agency of City of San Jose*, 174 Cal.App.4th 339, 355 (2009). Here, the Plaintiff initially filed several claims for civil damages before bringing an action for writ of mandate. Dkt. 1. Those claims were dismissed by this Court precisely because the Plaintiff had not yet filed for writ of mandate as required by the doctrine of exhaustion. Dkt. 43. The Plaintiff subsequently brought an action for writ of mandate. Dkt. 74. The Defendants brought the instant motion once again asking the Court to dismiss the action for writ of mandate under the doctrine of exhaustion. Dkt. 78, 20. The Defendants argue that the Plaintiff's action for writ of mandate "fails as Plaintiff cannot retroactively cure his defect of failing to first petition for writ of mandate in state court prior to bringing his claim for money damages." Dkt. 78, p. ii.

This Court finds that the Defendants have not shown a valid reason why the doctrine of exhaustion should bar Plaintiff from bringing his action for writ of mandate. The two cases that the Defendants rely on do not support their contention that filing an action for civil damages without first filing an action for writ of mandate results in a permanent bar against later filing an action for writ of mandate. In the first case the Defendants rely on, the California court upheld summary judgment precluding the plaintiff from recovering civil damages when the plaintiff did not first exhaust judicial remedies. *Y.K.A. Indus.*, 174 Cal. App. 4th at 343, 350. Namely, the court found that there was a dispute as to whether the plaintiff had pursued proper proceedings in mandate before filing its action for civil damages. *Id.* at 366-67. In other words, the plaintiff could not proceed with its action for civil damages because it had not yet shown that it had pursued an action for writ of mandate as required by the doctrine of exhaustion. *Id.* By contrast, that court did not discuss nor hold that the plaintiff would be barred from filing an action for writ of mandate due to a failure to exhaust.

Like in *Y.K.A. Indus., Inc.*, the Plaintiff here initially could not proceed with its action for civil damages when it had not yet pursued an action for writ of mandate. As such, this Court previously dismissed various actions for civil damages when it granted Defendants' prior motion to dismiss. Dkt. 43. In response, Plaintiff filed an action for writ of mandate in its Second Amended Complaint. Dkt. 74, p. 43. The question before this Court is distinguishable from the one in *Y.K.A. Indus., Inc.*, as it was never established that an action for writ of mandate was ever pursued by the plaintiff. Thus, the *Y.K.A. Indus.*

Initials of Preparer                :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|----------|------------------------|------|--------------|
| Title | *John Doe v. Regents of The University of California* | | |

case is distinct and does not serve as an authority supporting the contention that Plaintiff's claim for writ of mandate should be forever barred by having previously filed an action for civil damages.

The Defendant also cites *Johnson v. City of Loma Linda*, 24 Cal.4th 61 (2000).  There, the court barred a claim for writ of mandate in the *Johnson* plaintiff's ("Johnson") third amended complaint due to laches, because "[r]eview of the personnel decision of a public agency must be sought promptly."  *Id.* at 67-68.  Thus, because laches barred Johnson from bringing an action for writ of mandate, no subsequent suit for civil damages could be brought.  *Id.* at 69-70.  Essentially, laches prevented Johnson from satisfying the procedural prerequisite (i.e., pursuing an action for writ of mandate) necessary to pursue a subsequent claim for civil damages. By contrast, in the present case, laches—or any other independent doctrine which would bar Plaintiff from bringing an action for writ of mandate— does not bar the Plaintiff's writ of mandate cause of action.   Thus, the Plaintiff's action for writ of mandate is not barred under the reasoning in *Johnson*.

Instead, a recent decision by the Ninth Circuit provides more analogous circumstances to the present case.  In *D.L. v. United States*, the plaintiff initially failed to exhaust his administrative remedies before bringing suit under the Federal Tort Claims Act ("FTCA") against a federal employee.  2017 DJDAR 5260, 5260 (9th Cir. June 6, 2017) ("*D.L.*").   As a result, the parties stipulated to dismissing the federal employee defendant.  *Id.* at 5261.   When the plaintiff then exhausted his administrative remedies and amended his complaint to once again include the federal employee, the defendants argued that the plaintiff's initial failure to exhaust his administrative remedies deprived the district court of subject matter jurisdiction, just as the Defendants argue in the present case.  *Id.*  However, the Ninth Circuit held that the district court erred in dismissing the case for lack of subject matter jurisdiction, as the plaintiff was entitled to amend his complaint after he exhausted administrative remedies rather than needing to file an entirely new case.  *Id.* at 5263.   The Court acknowledges that the facts of *D.L.* are not perfectly aligned with the present case, and the *D.L.* case involved the FTCA statute and an administrative exhaustion requirement rather than judicial exhaustion.  However, because the Defendants have not presented any other case law directly on point, the Court finds the Ninth Circuit's holding analogous to the present case, suggesting that an initial failure to exhaust remedies, whether they are administrative or judicial remedies, does not deprive a plaintiff of the opportunity to fix his mistake and subsequently bring suit.

Unlike the requirement to exhaust administrative remedies, the failure to exhaust judicial remedies is a form of res judicata.  *Briggs v. City of Rolling Hills Estates*, 40 Cal.App.4th 637, 645-46 (1995).  In other words, when a plaintiff fails to pursue the exclusive judicial remedy for reviewing an administrative

|  |  | : |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

decision, that decision is given collateral estoppel effect and becomes binding on later civil actions.  *Id.* at 646.   This binding effect prevents plaintiffs from failing to challenge the administrative decision through a writ of mandate but then repackaging the same claims in constitutional terms.   However, such preclusive effect is not present in this case.   The Plaintiff clearly is challenging the school's decision to discipline him, and he is in fact pursuing his judicial remedy under state law in the form of a writ of mandate.   Thus, res judicata and collateral estoppel do not apply, and the Plaintiff is not barred from seeking that writ of mandate in federal court.

Finally, it is worth noting that it is unusual for a federal court to hear a petition for a writ of mandate from a state administrative proceeding even though it is undisputed that federal courts may properly exercise supplemental jurisdiction over such claims.  *See, e.g., AT&T Wireless Servs. of California, LLC v. City of Carlsbad*, 308 F. Supp. 2d 1148, 1167 (S.D. Cal. 2003); *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 811 (9th Cir. 2007); *Jensen v. Cty. of Sonoma*, 2010 WL 2330384, at *6 (N.D. Cal. June 4, 2010), *aff'd*, 444 F. App'x 156 (9th Cir. 2011).   Federal courts are reluctant to exercise such supplemental jurisdiction and "routinely deny supplemental jurisdiction over California writ of mandate claims" because "writs of mandate are exclusively state procedural remedies" and involve complex issues of state law.  *Mory v. City of Chula Vista*, No. 10-cv-252-JLS-WVG, 2011 WL 777914, at *2 (S.D. Cal. Mar. 1, 2011) (collecting cases).   However, the usual reasons for declining supplemental jurisdiction do not exist in this case.   First, this case does not involve complex issues of state law.   The Plaintiff has alleged a due process violation under § 1983 and a biased investigation under Title IX, both federal laws. The allegations that the school's investigation was biased and procedurally improper do not exclusively involve state policy and are readily determinable by a federal court.   Additionally, because the Plaintiff only seeks injunctive relief rather than any civil damages, his relief under § 1983 and Title IX are virtually identical to his potential relief under the writ of mandate.   Furthermore, this Court has stayed the Plaintiff's original state court causes of action until the writ of mandate issue is determined, thus ensuring that the Plaintiff exhausts his judicial remedies before pursuing state law causes of action.  Dkt. 43, 4. As a result, there are no compelling reasons for this Court to refrain from hearing the Plaintiff's petition for a writ of mandate while also deciding his federal § 1983 and Title IX causes of action.   The Court will exercise supplemental jurisdiction over the Plaintiff's petition for writ of mandate.

In conclusion, the authority that the Defendants cite does not stand for the proposition that an action for writ of mandate is forever barred once a plaintiff files a lawsuit for civil damages.   Overall, the Defendants have not shown a valid reason why Plaintiff should be barred from bringing his action for writ of mandate.   Thus, this Court finds that Plaintiff's third cause of action for writ of mandate is not barred

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

by the doctrine of exhaustion, and the Court will exercise supplemental jurisdiction over the claim.   As a result, the Court DENIES that portion of the Defendant's motion to dismiss the Plaintiff's § 1983 claim.

### 2.    Motion to Dismiss the Title IX Claim

The Defendants have also brought a motion to dismiss the Plaintiff's claim under Title IX.   Dkt. 91.   The Court originally dismissed the Plaintiff's Title IX claim with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.   Dkt. 73.   The Court found that the Second Amended Complaint did not give rise to a plausible inference that the outcome of the Plaintiff's disciplinary hearing was motivated by gender discrimination under the *Iqbal* and *Twombly* standards for pleading.   *Id*. at 8.   However, the Court subsequently granted the Plaintiff's Motion to Reconsider the dismissal of the Title IX claim because of a recent Second Circuit opinion that clarified the proper Rule 12(b)(6) analysis of a Title IX claim in this context.   The Court granted the Motion for Reconsideration in order to evaluate the Plaintiff's Title IX claim under the new framework, but explicitly stated that it was not deciding whether the claim would be dismissed after conducting a new analysis.   Dkt. 85, 8.   Now that the Defendants have brought a subsequent Motion to Dismiss the Title IX claim under the new Second Circuit framework, the Court now finds that the Plaintiff has alleged a plausible Title IX claim. Therefore, the Defendants' Motion to Dismiss the Title IX claim is DENIED.

### a.    Abstention Under *Younger v. Harris*

As a preliminary matter, the Defendants contend that this Court should abstain from hearing the Plaintiff's claims under the *Younger v. Harris* abstention doctrine.   In *Younger v. Harris*, the Supreme Court established that a federal court should not enjoin a state criminal proceeding absent exceptional circumstances.   *Younger*, 401 U.S. 37 (1971).   The *Younger* doctrine has been expanded and clarified such that three requirements must be met before a federal court abstains from a case. There must be (1) an ongoing state judicial proceeding that (2) implicates important state interests, and (3) the plaintiff must be afforded the opportunity to make constitutional claims in the state forum.   *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).   The Supreme Court has further clarified the doctrine by holding that *Younger* can extend to state administrative proceedings.   *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) ("*NOPSI*").   However, Younger is consistently applied as an unusual exception to the rule that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."   *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800,

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

817 (1974). *See also Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (holding that circumstances justifying application of the *Younger* doctrine are exceptional).

The Defendants contend that the Court should abstain from a ruling under the *Younger* doctrine because there is an ongoing proceeding for *Younger* purposes. Although it is undisputed that the administrative proceedings at the university have terminated and the Plaintiff has exhausted his administrative appeals, the Defendants argue that an ongoing proceeding remains because the Plaintiff could have brought his current claims in state court and thus continued his state proceeding. However, none of the cases cited by the Defendants support such a broad interpretation of the *Younger* abstention doctrine, and the Court finds that there is no ongoing state proceeding that would justify abstention.

First, the Defendants contend that abstention is warranted when a state proceeding is "akin to a criminal prosecution" in some respects. *Sprint*, 134 S. Ct. at 592. The disciplinary proceedings experienced by the Plaintiff falls into such a category. Additionally, the Supreme Court has twice assumed "that an administrative adjudication and the subsequent state court's review of it count as a 'unitary process' for Younger purposes." *Id.*; *NOPSI*, 491 U.S. at 369 (1989). A majority of federal circuits have held that where, as here, a state administrative proceedings is final and state-court judicial review is available but has not been invoked, the state proceedings is nevertheless "ongoing" for the purposes of Younger abstention. *See, e.g., Hudson v. Campbell*, 663 F.3d 985, 988 (8th Cir. 2011) (holding that where state-court review of an administrative decision is available the underlying state proceeding is "ongoing").

However, the present case is clearly distinguishable from the line of cases cited by the Defendants. The cases cited by the Defendant involved state proceedings in which state appellate review was explicitly available but not pursued by the plaintiff. For instance, in *NOPSI*, the petitioners had already filed a petition for review of an order by the New Orleans City Council in state court in Louisiana, and therefore the Supreme Court "assumed" that the Council proceeding and the state court proceeding were unitary "proceedings" for *Younger* purposes. *NOPSI*, 491 U.S. at 357-58. In *Hudson*, the plaintiff was contesting a denial of her Medicaid benefits and brought suit in federal court instead of pursuing the hearing to which she was entitled under state law. *Hudson*, 663 F.3d at 986. The Eighth Circuit held that the plaintiff was required to exhaust her state appellate remedies even if no state enforcement proceeding was pending. *Id.* at 988.

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|----------|----------------------|------|--------------|
| Title | *John Doe v. Regents of The University of California* | | |

The present case is unlike those cited by the Defendants because there is currently no parallel state proceeding currently ongoing, nor are there state appellate remedies that the Plaintiff has declined to pursue.   Instead, the Defendant argues that state-court review of the University's decision was available to the Plaintiff because he could have filed a write of administrative mandate or a civil action in state court.   However, such remedies are not the types of state appellate remedies that courts have held are "unitary" with the initial proceedings.   Rather, the Defendants are contending that the Plaintiff should have to pursue the exact same remedies he now seeks but do so in state court rather than in federal court.   In other words, they seek a finding that the Plaintiff must pursue all state *judicial* remedies after exhausting his *administrative* remedies.   The Court cannot grant such a finding.

California law provides the Plaintiff with one specific judicial remedy after the conclusion of the administrative process: a writ of mandate under Cal. Code of Civil Procedure § 1094.5.   However, the Plaintiff is pursuing that exact judicial remedy before this Court.   As discussed above in relation to the exhaustion of judicial remedies issue, it is undisputed that a plaintiff can pursue a writ of mandate in federal court as well as state court.   However, if the Court were to find for the Defendants and abstain from hearing the Plaintiff's claims, it would be equivalent to holding that the Plaintiff must pursue his claims in only state court, not federal court.   Such a holding would not be compatible with the purpose of the *Younger*, which seeks to prevent federal court interference in ongoing state court proceedings.   However, it is clearly not meant to force plaintiffs to pursue identical judicial remedies in state court *instead of* in federal court, even when federal courts have jurisdiction to hear those claims.

While the Ninth Circuit has not ruled on precisely this issue concerning school disciplinary hearings, it has made clear that it interprets "ongoing judicial proceedings" quite narrowly.   For instance, when certain plaintiffs challenged their arrests under the First and Fourteenth Amendments, the Ninth Circuit held that federal court abstention was improper because charges had not yet been brought against the plaintiffs, and therefore there were no ongoing judicial proceedings.   *Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000, 1001-02 (9th Cir. 1995).   Thus, even a potential for imminent state criminal proceedings was not sufficient to invoke *Younger* abstention.   In fact, this case provides an even stronger rationale against abstention, as the Plaintiff is the one who has chosen federal court over available state judicial remedies, whereas in *Agriesti* the commencement of state judicial proceedings was not in the control of the plaintiffs.   Therefore, the likelihood of this case interfering with state judicial proceedings is quite small in comparison with *Agriesti*.   Simply put, there are no ongoing judicial proceedings with which this case could interfere, and thus abstention under the *Younger* doctrine would be clearly inappropriate.

|  |  | : |
|--|--|---|
| | Initials of Preparer | |
| | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

In short, the Defendants propose a quite broad reading of the *Younger* doctrine, one that would force plaintiffs to only challenge state actions in state court even when federal courts have jurisdiction to hear the claims. The Defendants have not presented any case law that would justify such a broad abstention doctrine that would limit plaintiffs' options in such a way, and indeed it would contravene the accepted principle that abstention is an exceptional doctrine meant to be employed in specific limited circumstances. *See Sprint*, 134 S. Ct. at 591. The circumstances in this case are quite different than when a specific statutory state appellate remedy is mandated, or when a state court case or proceeding has been filed or is actually ongoing. Instead, the Plaintiff has elected to forego his remedies in state court. Thus, the Court holds there are no ongoing judicial proceedings that would justify *Younger* abstention.[6]

### b. Sufficiency of Title IX Claims

As the Court noted in its previous analysis, Title IX prohibits any school that receives federal funds from discriminating on the basis of sex. 20 U.S.C. § 1681. A claim under Title IX cannot be premised on the disparate impact a policy has with respect to a protected group. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). In its previous analysis, the Court utilized the framework described in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994) ("*Yusuf*"), which recognized two categories of potential claims for gender bias arising from a student disciplinary proceeding: erroneous outcome and selective enforcement. *Id*. at 715. Although *Yusuf* was a Second Circuit opinion, the Court noted that many courts have followed the framework described in *Yusuf* in analyzing these types of cases. Dkt. 73, 6. However, the Court also noted that *Yusuf* was decided before *Iqbal* and *Twombly*, meaning that plaintiffs faced a difficult challenge in alleging sufficient factual matter permitting a plausible inference of gender bias. *Id*. at 8. After the Court's initial dismissal of the Plaintiff's Title IX claim, the Second Circuit decided *Doe v. Columbia* University, 831 F.3d 46 (2d Cir. 2016) ("*Columbia*"), further clarifying the pleading standard in Title IX student discipline cases after *Iqbal* and *Twombly*. Because *Columbia* was decided by the same circuit that decided *Yusuf*, this Court finds it appropriate to now analyze the Plaintiff's Title IX claim under the framework described in *Columbia*.

Although *Columbia* did not fundamentally alter the framework established in *Yusuf*, it clarified and refined the standards a plaintiff must meet to plausibly state a Title IX claim under the requirements of

---

[6] Because the Court finds there are no ongoing state judicial proceedings, it need not reach the question of whether the available proceeding implicates an important state interest or whether the proceeding affords the Plaintiff an adequate forum.

Initials of Preparer _____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

*Iqbal* and *Twombly*. Most significantly, *Columbia* explicitly adopted the *McDonnell Douglas* burden-shifting framework used in Title VII cases into Title IX jurisprudence, although the Second Circuit recognized that *Yusuf* had previously suggested that such an adoption might be appropriate. *Columbia*, 831 F.3d at 55-56. Therefore, this Court will now apply the *McDonnell Douglas* burden-shifting framework to the Plaintiff's Title IX claim.

As stated in *Columbia*, the *McDonnell Douglas* standard requires a plaintiff to present at the initial phase of litigation some minimal evidence suggesting an inference that the employer acted with discriminatory motivation. *Columbia*, 831 F.3d at 54 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307-08 (2d Cir. 2015). Such a showing will raise a temporary presumption of discriminatory intent, which a defendant may later rebut with a valid justification for its actions. *Id.* The Second Circuit further noted that the *McDonnell Douglas* temporary presumption not only reduces the facts a plaintiff would need to show to defeat a motion for summary judgment but also reduces the facts needed to be pleaded under *Iqbal*. *Id.* at 54-55 (citing *Littlejohn*, 795 F.3d at 310). Thus, at the pleading stage the plaintiff faces a minimal burden to show discriminatory intent, meaning that a plaintiff must simply allege facts that supports a minimal plausible inference of discriminatory intent in order to defeat a 12(b)(6) motion to dismiss. *Id.* at 55.

Although this Court previously held that the Plaintiff's allegations failed to give rise to a plausible inference of gender bias under *Iqbal* and *Twombly*, the Court now finds that the Plaintiff has satisfied the minimal burden necessary to give rise to a temporary presumption of discriminatory intent as outlined in *Columbia*. Specifically, the Plaintiff has stated a plausible claim under the erroneous outcome theory of Title IX liability and the two prong test described in *Yusuf* and *Columbia*.

First, to sustain an erroneous outcome claim under Title IX, a plaintiff must allege facts sufficient to cast articulable doubt on the accuracy of the outcome of the disciplinary proceeding. *Yusuf*, 35 F.3d at 715. Taking the Plaintiff's factual allegations as true and making all reasonable inferences in favor of the Plaintiff, as required in a motion to dismiss, the facts alleged in the SAC sufficiently cast doubt on the accuracy of the outcome. Importantly, the SAC alleges that the Plaintiff presented substantial evidence during the proceedings that corroborated his own story, as a "he said/she said" scenario would likely not cast articulable doubt on the accuracy of a disciplinary proceeding. For instance, both the Plaintiff and the other witnesses who were in the room at the relevant time testified that Jane Doe was sitting upright in bed, conscious, and eager to engage in sex when the encounter began. SAC, ¶¶ 40-41. In fact, three other students who were present during the events at issue, including two who were in the room for the

Initials of Preparer _____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

majority of the sexual activity, testified that Jane Doe never exhibited any signs of incapacitation and indeed showed affirmative signs of encouragement and willingness.  *Id*. at ¶¶ 41, 46, 79, 80.  The participants also joked about the events the following morning.  *Id*. at ¶ 50.

Additionally, according to the Plaintiff's allegations Defendant Perkin introduced one-sided evidence that damaged the Plaintiff and supported Jane Doe's story.  Jane Doe allegedly manufactured false evidence to support her story in the form of Facebook communications that were in actuality created by Jane Doe herself.  SAC at ¶¶ 97-98, 101-05, 141-42.  Ms. Perkin included witness statements in the investigation report that were never said but that contradicted the Plaintiff's story.  *Id*. at ¶¶ 70, 75-85.  She failed to include facts and witness statements that contradicted Jane Doe's story and would have supported the Plaintiff's version of events.  *Id*. at ¶¶ 38-46.  The substantial amount of evidence presented by the Plaintiff, if true, strongly suggests that the Plaintiff's version of events was indeed correct and that the university erroneously credited Jane Doe's statement in contradiction of the evidence.  The accounts of every other person in the room disputed Jane Doe's testimony, and the presentation of one-sided evidence against the Plaintiff could plausibly of led to an erroneous outcome in the Plaintiff's disciplinary proceedings.  His allegations sufficiently cast doubt on the accuracy of the outcome because the university's conclusion is unsupported by the evidence as alleged by the Plaintiff.

It is not the Court's finding that the outcome of the disciplinary proceedings was definitively erroneous.  The Court has only considered the Plaintiff's version of events, as is proper at the pleading stage of the litigation, when all inferences must be made in favor of the non-moving party.  As a result, it is entirely possible that the Plaintiff's claims are simply untrue, or that there was persuasive evidence to justify the committee's ultimate decision to credit Jane Doe's version of events over the Plaintiff's.  After the evidence is collected and presented, the Plaintiff's allegations of an erroneous outcome may no longer be plausible.  However, such considerations are inappropriate for this Court at the motion to dismiss phase of the trial.  The Plaintiff's allegations cast doubt on the accuracy of the outcome of the disciplinary proceedings, as the SAC depicts the disciplinary proceedings as one-sided and against the weight of significant evidence.  Thus, the Plaintiff has satisfied the first prong of the erroneous outcome analysis at the pleading stage, although the question will likely be revisited at the summary judgment stage once the Defendants have been allowed to present their version of events.

Second, in addition to casting doubt on the accuracy of the outcome, a plaintiff must also allege facts sufficient to establish that the outcome was erroneous due to bias on account of sex.  *Columbia*, 831 F.3d at 57.  The Court also finds that the Plaintiff's allegations give rise to a plausible inference that the

:

Initials of Preparer

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|----------|------------------------|------|--------------|
| Title | *John Doe v. Regents of The University of California* | | |

erroneous outcome was caused by gender bias on the part of Ms. Perkin under the burden-shifting *McDonnell Douglas* framework.   The Plaintiff's allegations go beyond a general sense of pressure on universities to prosecute sexual assault.   For instance, two months prior to charging the Plaintiff with sexual assault, six female UCSB students filed a highly-publicized Title IX complaint claiming that their respective sexual assault complaints were mishandled by UCSB and that the university failed to appropriately sanction their male assailants. SAC at ¶ 58.   UCSB had also received multiple grants from the Office of Violence Against Women.   *Id*. at ¶ 56.   Additionally, the campus culture was evolving at UCSB in order to raise awareness of male students as perpetrators of sexual assault, increasing sexual assault reporting, and finding more male students guilty of sexual assault, including publicly posted campaigns directed against male students, such as "Don't Be That Guy."   *Id*. at ¶¶ 51-63.   Finally, Ms. Perkin faced direct pressure with regards to finding males guilty of sexual assault.   She was allegedly publicly disparaged in front of influential politicians for failing to adequately address the problem of campus sexual assault, and for specifically not finding enough men guilty.   *Id*. at ¶¶ 60-62.   Significantly, this public criticism occurred the day after she began her investigation of the Plaintiff.   *Id*. at ¶¶ 60, 64.

The Court now finds that all of these allegations taken together sufficiently allege a plausible connection between the erroneous outcome of the Plaintiff's proceedings and the Plaintiff's gender.   The fact that significant pressure on the Defendants to find males guilty of sexual assault coincided precisely with the investigation into the Plaintiff gives rise to a plausible inference that the Defendants' actions were the result of gender bias.   Thus, the Plaintiff has presented a prima facie showing of a Title IX violation under the *McDonnell Douglas* Framework.   The Defendants contend that such a conclusion places undue weight on public pressure.   *See Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 976 (9th Cir. 1994).   However, the Plaintiff's allegations go far beyond public pressure.   For one, there are the allegations of pressure on Ms. Perkin directly.   SAC at ¶ 60-62.   More importantly, the Court has already found that the Plaintiff has plausibly alleged that his disciplinary proceedings were biased and one-sided, even rising to the level of potential due process violations.   Therefore, it is not just the public pressure on the university that gives rise to an inference of gender bias but also the allegation that the Plaintiff's proceedings were not conducted fairly.[7]   Efforts to vigorously prosecute perpetrators of sexual assault

---

[7] For the same reason, the Defendants' contention that finding against them now would force them to litigate a flood of meritless suits past the motion to dismiss stage is unavailing.  Dkt. 91, 19-20.  Only investigations that give rise to plausible allegations of bias will survive a motion to dismiss.  In the present case, the Court has found that the allegations of bias are serious enough to potentially constitute due process violations.  In addition to the obvious importance of aggressively investigating and punishing perpetrators of sexual assault, it is also important that universities conduct fair investigations of such assaults.  Therefore, the university is not in a "double bind."  It can aggressively pursue allegations of sexual assault

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

alone would not give rise to a violation of Title IX, as indeed Title IX also requires such action from universities.   However, the Court now finds that conducting biased proceedings that lead to an erroneous outcome in order to find more males guilty of sexual assault can constitute a violation of Title IX.   The Plaintiff alleges precisely such an occurrence, and thus has plausibly stated a claim for a violation of Title IX.

Once again, this conclusion is based on the Plaintiff's allegations alone.   The allegations merely raise a temporary presumption of discriminatory intent, which the Defendants may later rebut with a valid justification for its actions under the *McDonnell Douglas* framework.   If the Defendants successfully make such a rebuttal, the Plaintiff will have to provide actual evidence of gender bias at a future stage of litigation in order to prevail on his Title IX claim.   However, the allegations in the SAC give rise to a plausible inference that the one-sidedness of the Plaintiff's disciplinary proceedings was the result of gender bias, given the climate on campus and the direct pressure allegedly directed specifically on Defendant Perkin.   Therefore, the Plaintiff has plausibly stated a claim under Title IX that he suffered discrimination as the result of his gender.   Whether the Plaintiff's allegations are supported by the evidence remains to be seen, but for now he has detailed a series of events that allow the Court to reasonably infer that the Defendants were influenced by gender bias and therefore violated Title IX.

In conclusion, the Court reiterates that aggressively investigating and punishing perpetrators of sexual assault cannot alone form the basis of a Title IX violation.   Indeed, it is a positive development that colleges and universities have become more aware of the dangers posed by sexual assault on campus and proactively and aggressively seek to prevent such horrors from occurring.   However, universities also have the responsibility to conduct unbiased investigations and cannot distort proceedings in order to find accused perpetrators guilty more often regardless of due process or basic fairness.   Fair and balanced investigations, which can include aggressive ones, benefit everyone on college campuses.   Biased proceedings that lead to erroneous outcomes can form the basis of Title IX claims because they may be more likely to find an accused perpetrator guilty just because he is male rather than because of the evidence presented against him.   The Plaintiff properly alleges that he was subjected to such a proceeding and thus states a sufficient Title IX cause of action.   For that reason, the Defendants' Motion to Dismiss the Plaintiff's Title IX claims is DENIED.

---

while ensuring that its disciplinary proceedings comport with due process and basic fairness.   In other words, the Defendants are not potentially subject to liability "simply for enforcing the rules" but rather for allegedly conducting a biased investigation. The Court finds no issue with incentivizing universities to be both aggressive and fair in their investigations of sexual assault.

Initials of Preparer      : 

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-02478-SVW-JEM | Date | June 8, 2017 |
|---|---|---|---|
| Title | *John Doe v. Regents of The University of California* | | |

### III.  Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss the Plaintiff's § 1983 claim in its entirety.   Dkt. 78.   The Court also DENIES Defendants' motion to dismiss the Plaintiff's Title IX claim in its entirety.   Dkt. 91.

This case will proceed to a court trial on October 31, 2017, at 9:00 am.   The parties should agree to their own discovery schedule.

IT IS SO ORDERED.

Initials of Preparer          :

PMC